# Exhibit 1

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10
                **UNITED STATES DISTRICT COURT**
11              **EASTERN DISTRICT OF WASHINGTON**
                          **AT YAKIMA**
12

13  STATE OF WASHINGTON, et          NO.  1:20-CV-03127-SAB
    al.,
                                     DECLARATION OF NIKKI
14                  Plaintiffs,      ANTHONASIN IN SUPPORT
                                     OF PLAINTIFF STATES'
15       v.                          MOTION FOR TEMPORARY
                                     RESTRAINING ORDER
    DONALD J. TRUMP, et al.,
16
                    Defendants.
17

18

19

20

21

22

DECLARATION OF NIKKI                   1
ANTHONASIN

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 2 of 342

1          I, NIKKI ANTHONASIN, declare as follows:

2          1.      I am over the age of 18, am competent to testify as to the matters

3      herein, and make this declaration based on my personal knowledge.

4          2.      I am the Clerk Craft Director of Manual and Mechanization for the

5      American Postal Workers Union at the United States Postal Service, and have

6      held this position since April 2019.  I was previously a union steward at the

7      Milwaukee Mail Processing Annex and the Milwaukee Processing and

8      Distribution Center since July of 2015. I work at the Milwaukee Mail Processing

9      Annex (MMPA) in Oak Creek, WI.  As the Clerk Craft Director of Manual and

10     Mechanization I represent the entire Clerk Craft at the MMPA and all Clerks in

11     the manual units at the Milwaukee Processing and Distribution Center (P & DC)

12     in downtown Milwaukee. Included in the manual units that I represent are

13     Expeditor Clerks, whose job duties include monitoring the schedules of all mail

14     drivers and trailers. My daily job duties at the Postal Service entail operating

15     automated parcel sorting machines. I have been employed with the Postal Service

16     since 1998.

17         3.      I am aware of recent changes to Postal Service operations involving

18     overtime policy and mail truck departure policy from the Oak Creek facility.

19         4.      In late March to early April of 2020, the Oak Creek facility started

20     seeing significant increases in mail volume, above even that normally received

21     during the holiday season. Although Postal Service staff typically do not work at

22

DECLARATION OF NIKKI                                    2          ATTORNEY GENERAL OF WASHINGTON
ANTHONASIN                                                                       Complex Litigation Division
                                                                                800 5th Avenue, Suite 2000
                                                                                Seattle, WA  98104-3188
                                                                                (206) 464-7744

1    both the Oak Creek and downtown Milwaukee locations, that policy was initially

2    relaxed in order to handle the overflow. Another option for handling overflow

3    was to transfer extra mail from the Oak Creek to the downtown Milwaukee

4    facility for processing. These procedures worked well for the first week or two to

5    handle the overflow.

6        5.    But then toward the end of June or early July, management at the

7    downtown Milwaukee facility began restricting certain forms of overtime for

8    employees at that facility. Specifically, they restricted employees from earning

9    double-time overtime for working more than 10 hours in a single day or on a

10    second scheduled off-day during a single week. Certain aspects of time-and-a-

11    half overtime were also restricted.

12        6.    At the Oak Creek facility at around the same time, a similar

13    restriction was put in place on double-time overtime for the second scheduled

14    off-day during a single week.

15        7.    After these overtime restrictions were put in place, available

16    employees at both the Oak Creek and downtown Milwaukee facilities were not

17    fully utilized to handle overflow mail at the Oak Creek facility. In other words,

18    the overtime restrictions drastically cut the available workforce at both facilities.

19        8.    At around this same time, significant amounts of incoming mail

20    began backing up at the Oak Creek facility. I witnessed large numbers of trailers

21    waiting to be unloaded at the facility, with up to 30 to 40 backed up trailers sitting

22

DECLARATION OF NIKKI
ANTHONASIN

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 4 of 342

1    outside the facility on some days. For example, on July 12, 2020, my notes

2    indicate that 39 trailers of mail were backed up. These backed up trailers included

3    trailers with Priority Mail, which is very unusual in my experience.

4        9.    The Oak Creek facility did not have enough staff available to unload

5    all this incoming mail. Although it requested support from the downtown

6    Milwaukee facility, the overtime restrictions there meant that it could not send

7    more of its staff to help out at Oak Creek. Similarly, because of the overtime

8    restrictions at the downtown Milwaukee facility, the Oak Creek facility could not

9    transfer its overflow mail to the downtown Milwaukee facility for processing—

10    the downtown Milwaukee facility did not have enough staff to handle Oak

11    Creek's overflow mail, either.

12        10.    As a result, the Oak Creek facility was forced to transfer some

13    overflow mail to other facilities around Wisconsin, and even one in Illinois.

14        11.    Toward the end of July, the mail volume at the Oak Creek facility

15    decreased, along with the most severe backups. However, in recent weeks I have

16    still sometimes seen around four to eight trailers backed up at the Oak Creek

17    facility. As recently as August 30th, 2020, I saw four trailers backed up at the

18    Oak Creek facility.

19        12.    I had never seen backups this large at the Oak Creek facility before

20    this summer. Perhaps two to four trailers would be backed up in the past on

21

22

DECLARATION OF NIKKI                4          ATTORNEY GENERAL OF WASHINGTON
ANTHONASIN                                     Complex Litigation Division
                                               800 5th Avenue, Suite 2000
                                               Seattle, WA  98104-3188
                                               (206) 464-7744

1    particular heavy days, but I do not recall ever seeking 30 to 40, or even four to

2    eight, trailers backed up at the same time before this summer.

3        13.    To the best of my knowledge, the overtime restrictions remain in

4    place at both the Oak Creek and downtown Milwaukee facilities.

5        14.    At around the same time that the overtime restrictions were put in

6    place, another policy change regarding outgoing truck scheduling occurred at

7    both the Oak Creek and downtown Milwaukee facilities. Under that new policy,

8    no outgoing mail trucks could leave behind schedule, even if more mail remained

9    to be loaded. Before that policy was put in place, mail trucks had a significant

10   amount of flexibility to leave later than a scheduled departure time in order to

11   ensure no mail was left behind.

12       15.    Another aspect of this new policy was that facilities could not

13   schedule extra truck delivery runs in a given day if some mail remained to be

14   delivered. For example, during June 2020 the Oak Creek facility ordered around

15   seven to nine extra trucks per day to deliver overflow mail to East Coast

16   locations. The new policy prohibited this kind of overflow measure.

17       16.    The new policy meant that outgoing mail trucks had to leave the

18   processing facility at the scheduled departure time with whatever mail had been

19   loaded by then.

20       17.    The effect of this policy was that if the facility could not deliver all

21   mail in a given day, that excess mail had to wait for a future delivery time.

22

DECLARATION OF NIKKI
ANTHONASIN

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

18.    I witnessed significant backups of outgoing mail occur inside the Oak Creek facility at around the time this new policy took effect. Mail that had already been processed was not being loaded onto outgoing mail trucks for delivery because those trucks had to depart on schedule, before they were fully loaded.

19.    Some mail trucks would even leave empty from our facility, just so they could leave on schedule. This can happen because it takes time to unload incoming mail from a truck for processing. By the time all the incoming mail is unloaded, there might not be enough time left before the truck's scheduled departure time to load it up with outgoing mail.

20.    The delays caused by backed up mail on the sorting floor compounded themselves. It can be difficult to sort through lots of mail backed up on the sorting floor, which further increases loading times for outgoing mail trucks. So, the more backed up mail on the sorting floor, the longer it takes to load the trucks, the more trucks have to leave before they are fully loaded, and the more mail becomes backed up on the sorting floor.

21.    These backups can lead to significant delays for outgoing mail. It is not always true that a piece of mail left behind on a given day necessarily makes it on a truck for delivery the next day, even though that is the goal. When significant backups occur on the floor of the processing facility, an item of mail

DECLARATION OF NIKKI
ANTHONASIN

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 7 of 342

1   might be buried in the backup for many days before it is found and placed on an

2   outgoing truck.

3       22.    To the best of my knowledge, the truck departure scheduling

4   restrictions remain in place at both the Oak Creek and downtown Milwaukee

5   facilities.

6

7   I declare under penalty of perjury under the laws of the State of Wisconsin

8   and the United States that the foregoing is true and correct.

9       DATED this 5th day of September, 2020, at Oak Creek, Wisconsin.

10

11                      Nikki Anthonasin

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF NIKKI
ANTHONASIN

**7**

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# Exhibit 2

1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4  ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5  *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7  KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8  800 Fifth Avenue, Suite 2000
   Seattle, WA 98104
9  (206) 464-7744

10

11                **UNITED STATES DISTRICT COURT**
                 **EASTERN DISTRICT OF WASHINGTON**
12                          **AT YAKIMA**

13  STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
    al.,
14                                   DECLARATION OF JESSICA
                        Plaintiffs,  ARNDT IN SUPPORT OF
15        v.                         PLAINTIFF STATES' MOTION
                                     FOR PRELIMINARY
16  DONALD J. TRUMP, et al.,         INJUNCTION

17                        Defendants.

18

19

20

21

22

    DECLARATION OF              1      ATTORNEY GENERAL OF WASHINGTON
    JESSICA ARNDT                              Complex Litigation Division
                                                800 5th Avenue, Suite 2000
    NO.  1:20-cv-03127-SAB                      Seattle, WA 98104-3188
                                                    (206) 464-7744

1   I, Jessica Arndt, declare as follows:

2      1.      I am over the age of 18, am competent to testify as to the matters

3   herein, and make this declaration based on my personal knowledge.

4      2.      I am a resident of Minneapolis, Minnesota.  I have been a clinical

5   social worker for nearly eleven years.

6      3.      I have voted in every election since I turned eighteen in the year 2000.

7   I generally follow politics and believe that is it my civic duty to be informed and

8   vote.

9      4.      I first voted absentee in 2016 because I was out of state during the

10   time of the general election.  I received by ballot in a timely manner and returned it

11   without incident.

12     5.      I attempted to vote absentee again in the 2020 primary.  I requested by

13   my ballot two to three weeks before the August primary.  I did not receive my

14   ballot before the primary election.

15     6.      Following the primary, I contacted the Minneapolis Office of Election

16   and Voter Services.  They informed me that my ballot had in fact been mailed on

17   August 5.  I still have not received that absentee ballot.

18     7.      I had planned to vote absentee for the general election because of the

19   pandemic.  Due to the problem in receiving my primary ballot, I plan on voting in

20   person in November.

DECLARATION OF                            2          ATTORNEY GENERAL OF WASHINGTON
JESSICA ARNDT                                                    Complex Litigation Division
                                                                800 5th Avenue, Suite 2000
                                                                  Seattle, WA  98104-3188
                                                                     (206) 464-7744

8. I believe it is important that I am able to cast my ballot. I have already had COVID-19, and am recovered now. But I plan on taking the risk of going to a polling location to ensure that I am able to vote.

9. I believe that if people are unable to vote absentee during a pandemic such as this it will lead to voter suppression. I feel that I was the victim of voter suppression for the primary. Because voting is such an important civic duty I will be casting my vote in person because I do not believe that I can trust in the absentee voting system to get my ballot in on time.

I declare under penalty of perjury under the laws of the States of Washington and Minnesota and the United States of America that the foregoing is true and correct.

Dated: _____9/4/2020_____    *Jessica Arndt*
    _____
    JESSICA ARNDT

DECLARATION OF
JESSICA ARNDT

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 12 of 342

# Exhibit 3

1   ROBERT W. FERGUSON
     *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9   (206) 464-7744

10

11

12

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WASHINGTON
### AT YAKIMA

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>                Plaintiffs,<br><br>   v.<br><br>DONALD J. TRUMP, et al.,<br><br>              Defendants. | NO.  1:20-cv-03127-SAB<br><br>DECLARATION OF MARY BARTOLOMUCCI IN SUPPORT OF PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION |

13

14

15

16

17

18

19

20

21

22

DECLARATION OF
MARY BARTOLOMUCCI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 14 of 342

1   I, MARY BARTOLOMUCCI, declare:

2       1.   I am a resident of the State of Illinois. I am over the age of 18 and

3   make this declaration from personal knowledge and based on records from the

4   Illinois Department of Healthcare and Family Services ("HFS"). If called as a

5   witness, I could and would testify competently to all the matters set forth below.

6       2.   I am the Interim IV-D Administrator of the Division of Child Support

7   Services ("DCSS") within HFS. The DCSS Administrator is responsible for

8   implementing the Title IV-D Program of the 1975 Social Security Act. I have

9   held this position since July 1, 2018.

10      3.   DCSS administers the Title IV-D Program of the 1975 Social

11  Security Act. The Child Support Services program establishes and enforces the

12  financial responsibility of parents for their children. DCSS establishes paternity,

13  establishes child support orders (including medical support provisions),

14  enforces orders and medical support for children, and distributes child support

15  collections. In addition, DCSS locates non-custodial parents and their financial

16  assets, reviews and adjusts support orders, and handles interstate and

17  international child support cases.

18      4.   As of August 1, 2020, DCSS was coordinating child support benefits

19  for approximately 425,000 custodial parents' child support cases, which

20  account for approximately 640,000 children. Our caseload is comprised of 96%

21  women; the racial makeup of the customers we serve is 43% Black, 41% White,

22

DECLARATION OF
MARY BARTOLOMUCCI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    8% Hispanic, and 7% unknown. Our caseload also represents a significant

2    population of low-income minority groups.

3        5.   DCSS's primary method of communication with these individuals

4    and households is through mail delivered by the United States Postal Service

5    ("USPS").

6        6.   Prompt mail service is crucial for the administration of child support

7    because interruption in mail service will cause delays in Illinois children

8    receiving necessary, court-ordered benefits. Unfortunately, any delay—

9    particularly significant delays—can wreak catastrophic results on children who

10    depend on these funds to meet their basic needs, as well as on well-meaning

11    non-custodial parents who are trying to comply with child support orders but

12    are stymied by unreliable mail service.

13        7.   The child support process is complicated and heavily dependent on

14    the mail at each step. Accordingly, continuous mail delays at each step of the

15    child support process will cause significant and severe repercussions for

16    children who depend upon that financial support. For example,

17            a.  A delay in an employer's receipt of our Income Withholding

18               Order for the collection of child support will result in missed

19               payments towards the collection of child support for

20               families.

21

22

DECLARATION OF
MARY BARTOLOMUCCI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1        b. A delay in an employer's receipt of the National Medical

2           Support Notice will result in the delay of medical coverage

3           for children.

4        c. A delay in an employer's receipt of new hire reporting

5           instruction may result in the delay in the service of income

6           withholding, impacting child support received by families.

7        d. A delay in child support payments received by the State

8           Disbursement Unit ("SDU") will postpone disbursements to

9           families, which will result in financial hardship.

10       e. A delay in mail would postpone the receipt of payments sent

11          out through the Illinois Comptroller's Office for child

12          support, which will result in financial hardship.

13       f. A delay in the agency's receipt of an application could result

14          in interruptions in providing location services,

15          establishment, disestablishment, and enforcement of court-

16          ordered child support obligations and establishment of

17          paternity.

18       g. A delay in the agency's receipt of a Voluntary

19          Acknowledgement of Paternity ("VAP") could result in

20          delays in providing information to the Illinois Department of

21          Public Health ("IDPH") and our customers. This would also

22

DECLARATION OF
MARY BARTOLOMUCCI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1     delay IDPH's ability to add a father's missing name to a

2     birth certificate, which would delay the establishment of

3     support that would provide financial support to the family.

4     h. A delay in the agency's receipt of requests for account

5     redeterminations, timely protests, or appeal requests could

6     result in delayed or denied outcomes. This could also result

7     in improper enforcement through our administrative

8     enforcement processes, which include, but are not limited to,

9     bank liens, tax offsets, and driver's license suspensions.

10    i. A delay could also result in an inadvertent case closure if not

11    notified in a timely manner.

12    j. A delay in our receipt of requested information from both

13    our custodial and non-custodial parents would result in a

14    delay in preparing a case for modification request.

15    k. A delay could also postpone our ability to provide and

16    request child support services for clients where another state

17    is involved. These cases would all have the exact same

18    issues as illustrated above in regards to location,

19    establishment, enforcement, and paternity establishment.

20

21

22

DECLARATION OF
MARY BARTOLOMUCCI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1        8.  In addition, mail delays affect our ability to function effectively with

2    county partners that we rely upon to establish and modify child support

3    obligations and establish paternity.

4        9.  For example, when an individual applies for services, they must

5    provide documents to DCSS that includes information like personal financial

6    data. DCSS in turn provides that information to the State's Attorney to file a

7    Legal Action Referral ("LAR"), the mechanism used to petition the court to

8    establish or modify child support or establish paternity.

9        10. Accordingly, the delay in receiving the referral can postpone the

10    amount of relief a customer receives. For example, if a non-custodial parent

11    needs a modification for a current support obligation due to job loss, the result

12    is not instantaneous; they must wait until the matter is filed in the court through

13    the LAR process. Likewise, in the case of paternity, delays in the return of

14    paperwork and the ultimate finding of parentage will postpone the

15    establishment of child support.

16        11. Aside from the postal service, no other reliable form of

17    communication exists for many of our required documents. For example, the

18    National Medical Support Notice is federally required to be sent out to each

19    employer to verify access to medical coverage. Specifically, this Notice is

20    issued under section 466(a)(19) of the Social Security Act and section

21

22

DECLARATION OF
MARY BARTOLOMUCCI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    609(a)(5)(C) of the Employee Retirement Income Security Act of 1974

2    ("ERISA").

3        12. DCSS sends out between 2,000-3,000 notices per month. There is not

4    currently an option to send or receive this information from employers

5    electronically; it is solely reliant on USPS mail services. The Income

6    Withholding Notice ("IWN") also relies heavily on USPS mail services. There

7    are some employers that are able to receive the document electronically, but the

8    majority of employers still are only able to receive the document through the

9    mail. We send on average 35,000 to 40,000 IWNs per month. All requests for

10   account reviews and appeals are processed through USPS mail services. All

11   VAP forms are also completely reliant on USPS mail services.

12       13. In addition, the postal service is the only viable method that DCSS

13   has to contact the majority of our customers who pay into or receive child

14   support benefits.  For example, electronic mail is not feasible as many of our

15   customers may not have regular or reliable access to the Internet, and we have

16   found that email addresses are not maintained and change frequently. We do

17   communicate with our customers through email received through the internet

18   and the customer service call center, but documents that are sent to our

19   customers are mailed. In addition, private delivery or courier services are cost-

20   prohibitive. As a result, DCSS relies heavily upon USPS and developed its

21   method to distribute benefits in reliance on timely, efficient mail delivery.

22

DECLARATION OF
MARY BARTOLOMUCCI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1      14. In addition, we receive payments from many countries, especially

2 Mexico and Canada. The SDU is monitoring what USPS reports regarding

3 expected delays by country, and, unfortunately, we have seen payments from

4 Mexico and Canada returned incorrectly to the SDU, which delays money

5 getting to individuals.

6      15. Mail delays resulting from the proposed cuts to the postal service will

7 impact approximately 125,233 paper checks per month through the SDU and

8 40,000 paper checks per month through the Illinois Comptroller's Office, which

9 together represent approximately 165,000 paper checks sent through USPS.

10 These combined checks total approximately $35 million per month in child

11 support payments. Delays to these benefits will have a significant impact on the

12 population of cases we serve.

13      16. For families with child support orders, child support is one of the

14 largest sources of income and makes up half of the income of low-income

15 parents who receive it. Our program serves over 600,000 children and is only

16 behind Medicaid and SNAP in helping lift children and families out of poverty.

17 Research shows regular child support payments reduce child poverty, promote

18 parental responsibility and involvement, and improve children's educational

19 outcomes. Additionally, the COVID-19 pandemic has caused economic

20 disruption across the country, which has led to increased difficulty in accessing

21 affordable and healthy food and meeting the family's financial obligations. This

22

DECLARATION OF
MARY BARTOLOMUCCI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    has hit children particularly hard. School closures have caused increased strain

2    on family food budgets as they need to replace meals that would have been

3    provided to school age children. The pandemic has also exacerbated racial

4    inequities in food insecurity. Black and Hispanic households are now about

5    twice as likely as White households to be struggling with food, and nearly four

6    out of ten Black households with children are experiencing food insecurity.

7    Delays in any of the processes that lead to child support checks to families

8    could have a disastrous effect.

9        **I declare under penalty of perjury under the laws of the State of**

10    **Washington and Illinois and the United States that the foregoing is true**

11    **and correct.**

12

13    DATED this 3ʳᵈ day of September, 2020, at Springfield, Illinois.

14

15    _____
      MARY BARTOLOMUCCI

16    Interim IV-D Administrator, Division of Child
      Support Services

17    Illinois Department of Healthcare and
      Family Services

18

19

20

21

22

DECLARATION OF
MARY BARTOLOMUCCI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# Exhibit 4

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
     KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
     CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
     EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
       (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
       *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
     Seattle, WA  98104
9    (206) 464-7744

10                    **UNITED STATES DISTRICT COURT**
11                    **EASTERN DISTRICT OF WASHINGTON**
                              **AT YAKIMA**
12
         STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
13       al.,
                                          DECLARATION OF JOCELYN
14                        Plaintiffs,     BENSON IN SUPPORT OF
                                          PLAINTIFF STATES' MOTION
          v.                              FOR PRELIMINARY
15                                        INJUNCTION
         DONALD J. TRUMP, et al.,
16
                          Defendants.
17

18

19

20

21

22

DECLARATION OF JOCELYN BENSON

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 24 of 342

I, Jocelyn Benson, declare as follows:

1.    I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.    I am the elected Secretary of State for the State of Michigan.  *See* Mich. Const. 1963, Art. 5, § 21.

3.    By statute, I am Michigan's Chief Election Officer with supervisory control over local election officials in the performance of their duties.  *See* Mich. Comp. Laws § 168.21.  In that capacity, I also oversee the Bureau of Elections, which is responsible for the integrity of the state's elections by ensuring election laws are followed, training and advising 1,603 clerks, compiling election results for federal and state elections and providing instructional materials.

4.    Under Michigan's Constitution, "every citizen of the United States who is an elector qualified to vote in Michigan shall have . . . the right, once registered, to vote an absent voter ballot without giving a reason, during the forty (40) days before an election, and the right to choose whether the absent voter ballot is applied for, received and submitted in person or by mail."  Const. 1963, art 2, §4(1)(g).

5.    An application for an absent voter ballot may be made by a written request signed by the voter, on an absent voter ballot application form provided by the clerk, or on a federal postcard application.  MCL 168.759.  The application may be returned by mail or by delivering it in-person.  *Id.*

DECLARATION OF JOCELYN BENSON

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 25 of 342

6.    Requests to have an absent voter ballot mailed must be received by the local clerk no later than 5:00 p.m. the Friday before the election.   MCL 168.759.

7.    Mailed ballots must reach the clerk before the close of the polls at 8:00 p.m. on election day to be counted.  MCL 168.764a; MCL 168.720.

8.    Mailed ballots that reach the clerk after the polls close on election day are rejected and may not be counted, even if they were postmarked before Election Day.

9.    Local clerks in Michigan use both First Class and marketing mail to mail ballots.  Historically, the USPS has worked with the state and clerks to ensure that election mail is marked and receives expedited service regardless of the class of mail.

10.    In 2019 and 2020, the state, clerks, and print vendors have expended significant time and money on ensuring absent voter ballot envelopes meet USPS standards for election mail.  Since a statewide election in March 2020, the state has allocated more than $2 million for the purchase of absent voter ballot envelopes that meet these standards.  The state led this effort largely at the urging of the USPS.  The USPS did not request that absent voter ballot envelopes be sent only by First Class mail as part of this process.  Rather, the state's expectation was that USPS would continue to provide expedited service for election mail

DECLARATION OF JOCELYN BENSON

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 26 of 342

1    regardless of class, and that increased statewide compliance with USPS design

2    standards for election mail would facilitate this service.

3         11.    Voters pay First Class to have ballots returned, though some local

4    jurisdictions prepay for postage.

5         12.    On July 29, 2020, Mr. Thomas Marshall, General Counsel for the

6    USPS, sent a letter to me, Michigan Secretary of State Jocelyn Benson, to notify

7    me that "certain deadlines for requesting and casting mail-in ballots [in

8    Michigan] are incongruous with the Postal Service's delivery standards."

9    Accordingly, Mr. Marshall notified me that "this mismatch creates a risk that

10   ballots requested near the deadline under state law will not be returned by mail

11   in time to be counted under your laws as we understand them."

12        13.    Mr. Marshall also advised me that, as a result of the Postal Service's

13   delivery standards, to the extent the mail is used to transmit ballots to and from

14   voters, "there is significant risk that, at least in certain circumstances, ballots may

15   be requested in a manner that is consistent with your election rules and returned

16   promptly, and yet not be returned in time to be counted."

17        14.    The scourge of COVID-19 in Michigan has increased reliance on

18   voting by mail by more than 50 percent.  In Michigan's previous statewide

19   election in March, under 40 percent of voters cast ballots by mail.  In the August

20   election, 65 percent of votes were cast by mail (a record for a statewide election).

21

22

DECLARATION OF JOCELYN BENSON

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 27 of 342

1       15.    The August election set a state record for number of votes by mail

2    (1.6 million) despite having much lower turnout than November presidential

3    elections. Although we have not yet received statewide empirical data, my

4    Department has received reports from several clerks that ballots they put in the

5    mail took several weeks to reach voters.

6        I declare under penalty of perjury under the laws of the State of Michigan

7    and the United States that the foregoing is true and correct.

8        DATED this __18th__ day of August, 2020, at Detroit, Michigan.

9

10    JOCELYN BENSON
       Secretary of State

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF JOCELYN BENSON

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 5

1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4  ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5  *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7  KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9  (206) 464-7744

10                **UNITED STATES DISTRICT COURT**
11              **EASTERN DISTRICT OF WASHINGTON**
                          **AT YAKIMA**
12

13 STATE OF WASHINGTON, et       NO.  1:20-cv-03127-SAB
   al.,
                                 DECLARATION OF ANNE
14              Plaintiffs,       BIPES IN SUPPORT OF
                                 PLAINTIFF STATES' MOTION
15      v.                        FOR PRELIMINARY
                                 INJUNCTION
   DONALD J. TRUMP, et al.,
16
                Defendants.
17

18

19      I, Anne Bipes, declare as follows:

20      1.      I am over the age of 18, am competent to testify as to the matters

   herein, and make this declaration based on my personal knowledge.
21

22

DECLARATION OF                          ATTORNEY GENERAL OF WASHINGTON
ANN BIPES                                     Complex Litigation Division
                                               800 5th Avenue, Suite 2000
                                                Seattle, WA  98104-3188
                                                   (206) 464-7744

2.    I am a resident of Saint Louis Park, in Hennepin County, Minnesota.

3.    I am temporarily staying with a friend of mine in Portola Valley, California.

4.    On July 23, 2020, I submitted an electronic application through the Minnesota Secretary of State's website for a Minnesota absentee ballot to enable me to vote in the statewide primary election that was held on August 11.

5.    According to the Secretary of State's website, my absentee ballot was mailed to me from Minnesota on July 23. The ballot did not reach me in California until August 4, 12 days later.

6.    At that time, I was concerned that if I returned my completed ballot by standard U.S. Mail, it would not reach election officials in Minnesota in time to be counted in the August 11 primary. As a result, on August 5, I sent my completed ballot to the Hennepin County election office by Priority Mail, which promised expedited delivery but cost $7.75.

7.    The Postal Service reported that my ballot was delivered to the county election office on August 8. I learned from the Secretary of State's website that the ballot was accepted by election officials. If I had not sent my ballot by the expedited Priority Mail service, I do not believe it would have arrived in time to be counted.

DECLARATION OF
ANNE BIPES

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

8.    I have voted in every even-year election since I became old enough to be eligible to vote. I believe that voting is a responsibility as well as right and a privilege. It is of utmost importance to me that every voter's vote is counted, and I am deeply opposed to any attempt to impair any person's right to have their vote received and counted.

9.    I am concerned about my ability to cast an effective vote in Minnesota's November 2020 general election. Because I expect to stay in California until after Election Day, I will need to use the absentee process to cast my ballot. In light of my experience casting a ballot in the primary, I am concerned that using the mail process from 2,000 miles away from my home could lead to delivery delays that could prevent my vote from being timely received and counted.

I declare under penalty of perjury under the laws of the States of Washington and California and the United States that the foregoing is true and correct.

Dated:  August 18, 2020                              /s/ **Anne Bipes**
                                                     ANNE BIPES

DECLARATION OF                      3              ATTORNEY GENERAL OF WASHINGTON
ANNE BIPES                                               Complex Litigation Division
                                                         800 5th Avenue, Suite 2000
                                                         Seattle, WA  98104-3188
                                                              (206) 464-7744

# Exhibit 6

1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4  ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5  *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7  KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9  (206) 464-7744

10

11          **UNITED STATES DISTRICT COURT**
          **EASTERN DISTRICT OF WASHINGTON**
12                  **AT YAKIMA**

13  STATE OF WASHINGTON, et        NO.  1:20-cv-03127-SAB
    al.,
14                                 DECLARATION OF ELISA
                   Plaintiffs,     CAFFERATA IN SUPPORT OF
15       v.                        PLAINTIFF STATES' MOTION
                                   FOR PRELIMINARY
16  DONALD J. TRUMP, et al.,       INJUNCTION

17                 Defendants.

18

19

20

21

22

DECLARATION OF ELISA
CAFFERATA

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 34 of 342

1        I, Elisa Cafferata, declare as follows:

2        1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4        2.    I am the Acting Director for the Nevada Department of

5    Employment, Training and Rehabilitation ("DETR"), the Nevada state agency

6    responsible for administering and distributing unemployment benefits to

7    qualified recipients.

8        3.    DETR relies upon the United States Postal Service to administer its

9    benefit programs.

10        4.    Specifically, DETR's method of payment for the traditional

11    unemployment program recipients is a prepaid debit MasterCard issued by Bank

12    of America.

13        5.    The prepaid debit cards are transmitted to recipients by United

14    States Mail.

15        6.    Given Nevada's historic unemployment rate during the COVID-19

16    emergency, DETR is serving many first-time benefit recipients, which requires

17    mailing them the prepaid debit cards.

18        7.    Delays in mail service delay benefit payments to these first-time

19    recipients, harming Nevada's ability to administer the benefit programs and

20    harming recipients.

21

22

DECLARATION OF ELISA
CAFFERATA

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1       8.    DETR also relies on the United States Postal Service to transport

2  other important unemployment insurance-related documentation to recipients.

3       9.    As noted to recipients in the "Nevada Unemployment Insurance

4  Facts for Claimants," failure to have an updated address may result in a delay or

5  a denial of benefits.

6      10.    Similarly, delays in mail service may result in missed deadlines and

7  denial of benefits, harming Nevada's ability to administer these benefit programs

8  and harming Nevadans who otherwise are qualified for benefits.

9      11.    I declare under penalty of perjury under the laws of the State of

10  Nevada and the United States that the foregoing is true and correct.

11      DATED this 19th day of August, 2020, at Carson City, Nevada.

12  State of Nevada
Carson City

13  _____
    ELISA CAFFERATA

14    Acting Director, Nevada Department of
    Employment, Training and Rehabilitation

15  Signed and sworn to before me on Aug. 19, 2020
by Elisa Cafferata.

16

17  _____
18  Signature of notarial officer

GEORGINA Z. CASTANEDA
Notary Public, State of Nevada
Appointment No. 12-7130-3
My Appt. Expires Mar 12, 2024

19

20

21

22

DECLARATION OF ELISA
CAFFERATA

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# Exhibit 7

1   ROBERT W. FERGUSON
   *Attorney General*

2

3

4

5          **UNITED STATES DISTRICT COURT**
        **EASTERN DISTRICT OF WASHINGTON**

6                 **AT YAKIMA**

7

8   STATE OF WASHINGTON, et al.,      NO. 1:20-CV-03127

9             Plaintiff,      DECLARATION OF
                            JOSEPH COGAN

10     v.

11   DONALD J. TRUMP, et al.,

12             Defendants.

13

14      I, Joseph Cogan, declare as follows:

15      1.     I am over the age of 18, am competent to testify as to the matters

16  herein, and make this declaration based on my personal knowledge.

17      2.     I have been a United States Postal Service (USPS) employee for

18  over 36 years.  In addition to my role as a Postal Clerk for the USPS, I currently

19  serve as President of the Portland Oregon Area Local (Portland Local) of the

20  American Postal Workers Union (APWU), a role I have held since 2016. I

21  make this declaration personally and not on behalf of any organization or entity.

22

DECLARATION OF          1        ATTORNEY GENERAL OF WASHINGTON
JOSEPH COGAN                          Complex Litigation Division
10423341v2                            800 5th Avenue, Suite 2000
                                      Seattle, WA  98104-3188
                                       (206) 464-7744

1       3.    The Portland Local represents over 1000 postal service workers in

2    more than 30 communities in Northwest Oregon, including Oregon's three most

3    populous counties.

4       4.    The USPS Distribution Center in Portland Oregon (Portland

5    Distribution Center) is one of the newest and largest mail processing facilities

6    in the United States and handles mail originating in and destined for the entire

7    Willamette Valley and a number of Oregon communities on the east side of the

8    Cascade Mountains. At this time the Portland Distribution Center operates 24

9    hours a day, seven days a week sorting mail and packages.

10       5.    I am familiar with operations in the Portland Distribution Center. I

11    worked as a Postal Clerk in the predecessor facility in Portland, and as part of

12    my duties as Union President I visit the Portland Distribution Center two or

13    three times each week.

14       6.    Portland Local represents USPS workers in multiple job classes

15    including clerks, expediters, and carriers. I regularly communicate with union

16    members employed across different job functions regarding policies, working

17    conditions, and mail volumes in the Portland Distribution Center and other

18    USPS facilities in Northwest Oregon.

19       7.    The USPS has recently made several significant changes to the

20    way it processes and delivers mail in the State of Oregon, including reducing

21

22

DECLARATION OF        2        ATTORNEY GENERAL OF WASHINGTON
JOSEPH COGAN                       Complex Litigation Division
10423341v2                        800 5th Avenue, Suite 2000
                                    Seattle, WA  98104-3188
                                    (206) 464-7744

1   the mail sorting capacity in the Portland Distribution Center and imposing and

2   then retracting rules affecting distribution and delivery schedules.

3         8.    The Portland Distribution Center recently removed 5 out of 40

4   high capacity mail sorting machines for handling letter-sized mail (rectangular

5   mailpieces up to 6 1/8 x 11 1/2 inches). The high capacity mail sorting

6   machines handle up to 35,000 pieces of mail per hour and those removed

7   represent approximately 12% of letter-sized mail capacity in the Portland

8   Distribution Center. The Portland Distribution Center also recently removed

9   one of 1 of 4 flat sorting machines for handling magazines and large envelopes.

10   This reduced capacity makes it less likely the facility will be able to process all

11   mail prior to the departure of trucks conveying mail for delivery.

12         9.    Ballots for state, local, and national elections are of the dimensions

13   processed by high capacity mail sorting machines. Oregon conducts elections

14   by mail only. USPS in Oregon experiences noticeable increases in volume

15   associated with elections, including the distribution of ballots and voter

16   pamphlets, and the return of ballots by votes.

17         10.   Since March of 2020 package mail volume passing through the

18   Portland Distribution Center has increased to resemble the high volumes USPS

19   handles during December holidays.

20         11.   Mail routing and handling includes these common steps: a mail

21   carrier on a daily route picks up outgoing mail from various sources, including

22

DECLARATION OF             3         ATTORNEY GENERAL OF WASHINGTON
JOSEPH COGAN                           Complex Litigation Division
10423341v2                             800 5th Avenue, Suite 2000
                                          Seattle, WA  98104-3188
                                          (206) 464-7744

1    from private mailboxes and public blue boxes. When the mail carrier finishes

2    their route, they bring that outgoing mail back to the local postal station, where

3    it is put on a truck that will take it to a regional processing center in the

4    evening. At the processing center, mail is postmarked and sorted by destination.

5    Most mail to a local or in-state destination will be loaded onto a truck the next

6    morning that will take it to a station for delivery.

7         12.    One of the recent changes to the way mail is being processed in

8    Oregon is that trucks traveling between stations and processing centers must

9    now depart their origin facility by a set time each day, without exception. This

10   applies both to trucks leaving stations at the end of the day to take outgoing

11   mail to a processing center, and to trucks leaving processing centers in the

12   morning to take mail to a station for delivery.

13        13.    Previously, if a large volume of mail was nearly complete,

14   meaning being postmarked and sorted for delivery, trucks could wait to make

15   sure they got all the mail that should go to the station that day. Now, however,

16   those trucks must also leave at the set time without any exception. As a result,

17   mail that was nearly done being processed will may miss the truck entirely and

18   could sit at the facility for at least another day until it can be driven to the

19   station for delivery.

20        14.    In the past, significant changes such as removal of equipment

21   impacting mail handling capacity, or changes in policies affecting the timeliness

22

DECLARATION OF                    4        ATTORNEY GENERAL OF WASHINGTON
JOSEPH COGAN                                    Complex Litigation Division
                                               800 5th Avenue, Suite 2000
10423341v2                                     Seattle, WA  98104-3188
                                               (206) 464-7744

1    of mail delivery, were announced well ahead of their implementation. Personnel

2    that I represent at the Portland Distribution Center and postal stations in our

3    region have not been able to fully assess likely impacts to the system. These

4    changes have been announced and put into place with very little notice.

5        I declare under penalty of perjury under the laws of the State of Oregon

6    and the United States that the foregoing is true and correct.

7        DATED this _3_ day of September, 2020, at Portland, Oregon.

8

9

10    JOSEPH COGAN

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF                           5                    ATTORNEY GENERAL OF WASHINGTON
JOSEPH COGAN                                                       Complex Litigation Division
10423341v2                                                        800 5th Avenue, Suite 2000
                                                                  Seattle, WA  98104-3188
                                                                  (206) 464-7744

Exhibit 8

1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4  ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5  *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7  KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9  (206) 464-7744

10                  **UNITED STATES DISTRICT COURT**
11                  **EASTERN DISTRICT OF WASHINGTON**
                             **AT YAKIMA**
12
   STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
13 al.,
                                    DECLARATION OF KEITH
14                    Plaintiffs,   COMBS IN SUPPORT OF
         v.                         PLAINTIFF STATES' MOTION
15                                  FOR PRELIMINARY
   DONALD J. TRUMP, et al.,         INJUNCTION
16
                      Defendants.
17

18

19

20

21

22

DECLARATION OF COMBS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 44 of 342

I, Keith Combs, declare as follows:

1.      I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.      I am the local president for the Detroit District Area Local of the American Postal Workers Union, AFL-CIO.

3.      Among other duties, I supervise the officers and stewards of our local union.

4.      I have also operated mail sorting machines for the United States Postal Service (USPS).

5.      I learned from Union stewards that USPS removed four (4) Delivery Bar Code Sorter mail sorting machines all at once from the George W. Young Post Office in Detroit.

6.      I was told that the removal of these machines occurred after the appointment of Postmaster General Louis DeJoy.

7.      Typically, a DBCS can process approximately 32,000 pieces of mail in an hour.

8.      Based on my experience, the removal of machines like the DBCS's could slow down the mail sorting process. In some situations, decreasing the number of available machines can make it more difficult to keep the mail sorting process going because there are fewer secondary machines available when another machine breaks down.

DECLARATION OF COMBS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2   I declare under penalty of perjury under the laws of the State of Michigan

and the United States that the foregoing is true and correct.

3   DATED this 20th day of August, 2020, at Lansing, Michigan.

4

5

Keith Combs
6   Local President, Detroit district
American Postal Workers Union

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF COMBS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 46 of 342

# Exhibit 9

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11                **UNITED STATES DISTRICT COURT**
                  **EASTERN DISTRICT OF WASHINGTON**
12                            **AT YAKIMA**

13  STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
    al.,
14                                   DECLARATION OF LESLIE
                        Plaintiffs,  CULLY IN SUPPORT OF
15         v.                        PLAINTIFF STATES' MOTION
                                     FOR PRELIMINARY
16  DONALD J. TRUMP, et al.,         INJUNCTION

17                      Defendants.

18

19

20

21

22

DECLARATION OF                          ATTORNEY GENERAL OF WASHINGTON
LESLIE CULLY                                  Complex Litigation Division
                                               800 5th Avenue, Suite 2000
                                               Seattle, WA  98104-3188
                                                    (206) 464-7744

1    I, LESLIE CULLY, declare:

2        1.   I am a resident of the State of Illinois.  I am over the age of 18 and

3    make this declaration from personal knowledge and based on records from the

4    Illinois Department of Human Services.  If called as a witness, I could and

5    would testify competently to all the matters set forth below.

6        2.   I am the Associate Director of the Division of Family and

7    Community Services within the Illinois Department of Human Services. I

8    oversee the administration of the local offices across Illinois that administer

9    public assistance programs. I have held this position since April 2019.

10        3.   The Division of Family and Community Services (the "Division")

11    administers the following federal and state benefit programs for low income

12    households: Supplemental Nutrition Assistance Program ("SNAP"), Temporary

13    Assistance for Needy Families ("TANF"), and Medicaid programs.

14        4.   As of August 1, 2020, the Division was administering benefits for a

15    total of 2,032,767 individuals receiving SNAP, 69,631 individuals receiving

16    TANF (including state-funded programs), and 2,954,142 individuals receiving

17    Medicaid.

18        5.   The Division's primary method of communication with these

19    individuals and households is through mail delivered by the United States

20    Postal Service ("USPS").

21

22

DECLARATION OF
LESLIE CULLY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 49 of 342

1    6.   On August 12 and 19, 2020, the Division mailed a combined total of

2    110,361 SNAP redetermination notices to recipients. As of August 31, 2020,

3    however, we have only received 1594 responses. This amount is significantly

4    lower than our normal response rate, which is typically 60% of applications

5    mailed.

6    7.   Federal and state laws governing the programs administered by the

7    Division impose strict timelines on the processing and delivery of benefits,

8    notification to applicants and recipients, and appeals associated with public

9    benefits. For example, the Division must provide at least 10 days' advance

10   notice before reducing or terminating benefits. *See* 7 CFR § 273.13.

11   8.   The Division also depends upon the USPS to ensure timely

12   communication with the more than 2 million individuals it serves.

13   9.   Mail delays resulting from the proposed cuts to the postal service will

14   impede the Division's ability to timely communicate with households in need of

15   assistance.

16   10. No other viable form of communication exists to contact the

17   Division's benefit recipients. For example, electronic mail or use of a website is

18   not feasible because our constituents do not have regular or reliable access to

19   the Internet. In addition, private delivery or courier services are cost-

20   prohibitive. As a result, the Division relies heavily upon USPS services and

21

22

DECLARATION OF
LESLIE CULLY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  developed its method to distribute benefits in reliance on timely, efficient postal

2  services.

3        11. Mail delays resulting from the proposed cuts to the postal service will

4  slow the delivery of approximately $353 million in monthly SNAP benefits and

5  $11 million in monthly TANF and related state-funded program benefits,

6  potentially impacting the ability of low income households to meet their basic

7  needs.

8        **I declare under penalty of perjury under the laws of the State of**

9  **Washington and Illinois and the United States that the foregoing is true**

10  **and correct.**

11

12        DATED this 4th day of September, 2020, at Springfield, Illinois.

13

14  *Leslie K. Cully*
      LESLIE CULLY

15        Associate Director
      Illinois Department of Human Services

16

17

18

19

20

21

22

DECLARATION OF
LESLIE CULLY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# Exhibit 10

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
     KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
     CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
     EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
       (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
       *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
     Seattle, WA  98104
9    (206) 464-7744

10
                    **UNITED STATES DISTRICT COURT**
11                  **EASTERN DISTRICT OF WASHINGTON**
                              **AT YAKIMA**
12

13   STATE OF WASHINGTON, et      NO.  1:20-cv-03127-SAB
     al.,
14                               DECLARATION OF CHRIS
                      Plaintiffs, CZUBAKOWSKI IN SUPPORT
15        v.                     OF PLAINTIFF STATES'
                                 MOTION FOR PRELIMINARY
16   DONALD J. TRUMP, et al.,    INJUNCTION

17                     Defendants.

18

19

20

21

22

     DECLARATION OF CHRIS                    ATTORNEY GENERAL OF WASHINGTON
     CZUBAKOWSKI                                 Complex Litigation Division
                                                  800 5th Avenue, Suite 2000
                                                  Seattle, WA  98104-3188
                                                      (206) 464-7744

                                                         Page 53 of 342

1    I, **CHRIS CZUBAKOWSKI**, declare as follows:

2    1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4    2.    I am a mail processing clerk at the Postal Service's Milwaukee

5    processing facility and have worked in that position since 1996. In that role, I

6    operate and process mail on DBCS and DIOSS sorting machines. The Milwaukee

7    processing facility serves a large section of southern and central Wisconsin,

8    including the cities of Milwaukee and Madison.

9    3.    I also serve as the Vice President and Legislative Director of the

10    Milwaukee Area Local branch of the American Postal Workers Union, positions

11    I have held since 2019.  In those roles, I perform the duties of the President in

12    case of his absence and guide and direct all activities of the union relating to

13    legislation.

14    4.    I am aware of recent changes to Postal Service operations involving

15    the decommissioning of sorting machines in the Milwaukee processing facility

16    in which I work.

17    5.    Timely Postal Service mail processing in southern and central

18    Wisconsin depends on a set of sorting machines at the Milwaukee processing

19    facility called Delivery Bar Code Sorters ("DBCS"). These machines are used to

20    sort first-class mail based on the delivery destination, before sending first-class

21    mail to local post offices for final delivery to Postal Service customers. My

22

DECLARATION OF CHRIS
CZUBAKOWSKI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    processing facility also operates DIOOS machines that serve essentially the same

2    function.

3        6.    Each of these DBCS and DIOOS machines can process up to 30,000

4    to 35,000 pieces of mail per hour. These machines typically run for around 20

5    hours per day, with four hours of downtime for maintenance. I estimate that the

6    machines typically do not run at 100% efficiency, and so a more realistic estimate

7    of hourly processing is 25,000 pieces of mail per hour. That amounts to 500,000

8    pieces of mail per day, per machine.

9        7.    The Milwaukee processing facility used to have 36 sorting

10    machines, but four have been removed over the past month or so. I am not aware

11    of any plans to reinstall those machines.

12        8.    One DIOOS machine has also been disconnected at the Milwaukee

13    facility (but not removed from the premises, like the DBCS machines). This

14    machine also was disconnected around a month ago.

15        9.    With four DBCS and one DIOOS machines removed from operation

16    over the past month, that has reduced the Milwaukee processing facility's

17    capacity by around 2,500,000 pieces of first-class mail per day.

18        10.    Also, two other machines called AFCS machines have been

19    disconnected in the past month or so, out of nine total in the entire facility. These

20    machines also are used to process first-class mail, before it is sorted by the DBCS

21

22

DECLARATION OF CHRIS
CZUBAKOWSKI

1    machines. These disconnections could also potentially reduce the facility's daily

2    processing capacity.

3        11.    Historically, two Postal Service employees staffed each DBCS and

4    DIOOS sorting machine at a time. But given current understaffing, only one

5    employee now staffs each sorting machine, which lowers the efficiency with

6    which each machine sorts and processes the mail. Once the machines approach

7    their sorting capacity, jams and other sorting problems increase that can be more

8    efficiently resolved with two employees than one.

9        12.    With the reduction in sorting machines and supporting staff, periods

10   of high mail volume will strain my facility's processing capacity and potentially

11   lead to processing delays.

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21

22

DECLARATION OF CHRIS
CZUBAKOWSKI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    13.    I understand that Wisconsin election officials expect a surge of

2  absentee voting by mail during the November 2020 general election. If the

3  machines that have been removed from operation described above are not

4  replaced, I believe there is a risk that Wisconsin voters will experience delays in

5  receiving and returning their absentee ballots by mail in the upcoming election.

6

7    I declare under penalty of perjury under the laws of the State of Wisconsin

8  and the United States that the foregoing is true and correct.

9    DATED this 8th day of September, 2020, at Wauwatosa, Wisconsin.

10

11    Chris Czubakowski

12    Legislative Director, American Postal Workers
      Union, Milwaukee Area Local

13

14

15

16

17

18

19

20

21

22

DECLARATION OF CHRIS
CZUBAKOWSKI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 11

ROBERT W. FERGUSON
*Attorney General*
NOAH GUZZO PURCELL, WSBA #43492
*Solicitor General*
NATHAN K. BAYS, WSBA #43025
KRISTIN BENESKI, WSBA #45478
ANDREW R.W. HUGHES, WSBA #49515
CRISTINA SEPE, WSBA #53609
*Assistant Attorneys General*
EMMA GRUNBERG, WSBA #54659
TERA M. HEINTZ, WSBA #54921
  (*application for admission forthcoming*)
KARL D. SMITH, WSBA #41988
  *Deputy Solicitors General*
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
## AT YAKIMA

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>DONALD J. TRUMP, et al.,<br><br>                    Defendants. | NO.  1:20-cv-03127-SAB<br><br>DECLARATION OF DAVID W. DART IN SUPPORT OF PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION |

DECLARATION OF
DAVID W. DART

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

I, David W. Dart, declare as follows:

1.    I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.    I am a U.S. Navy veteran. I entered the service in December 1980 and separated from service in July 1985.

3.    I am long-time resident of Washington State.

4.    I have an underlying medical condition that puts me at increased risk for severe illness from COVID-19. I am following my state's stay at home orders. But because I am at increased risk, I have taken additional precautions and try to avoid leaving my home.

5.    I primarily buy the basic necessities I need online through retailers like Wal-Mart and Amazon. These necessities include household cleaning items, bulk items, pet food, and clothes. Over the last few months, I have experienced package delays ranging from two weeks to a month from the expected delivery date. At least twice, the original item arrived after the replacement item. Through delivery tracking, I saw that another package was stuck at the same facility in California for 10 days.

6.    I also get my medication delivered to me through the United States Postal Service. I use the Department of Veterans Affairs to get my medication. My doctor has prescribed me with eleven medications and four supplements, three of which treat my chronic condition.

DECLARATION OF
DAVID W. DART

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

7.      I refill my prescriptions online and am able to track their delivery status.

8.      Generally, through the VA refill process, I receive my refills three or four days before I run out of that medication.

9.      Starting sometime in July 2020, I began noticing and experiencing delays in Postal Service deliveries for my medications. Because of these delays, I have received prescription refills three or four days after I run out of that medication.

10.    I am very concerned about how these mail delays will affect me and that future deliveries of critical medication will be delayed.

11.    I am most worried about getting delayed refills of one of the medications that I take to manage my chronic condition. I am anxious about the consequences if the delivery of this refill does not get to me on time before I run out. I must take this medication every day around the same time and cannot miss a dose. Skipping even for just a few days of this medicine can be life-threatening. Missing doses increases my risk for blood clots, which could result in stroke, heart attack, or a pulmonary embolism (where a blood clot blocks blood flow to my lungs).

DECLARATION OF
DAVID W. DART

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1        I declare under penalty of perjury under the laws of the State of

2    Washington and the United States that the foregoing is true and correct.

3

4        DATED this __18__ day of August, 2020, at Seattle, Washington.

5                      *David William Dart*

6                      David W. Dart

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF
DAVID W. DART

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 12

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5     (*application for admission forthcoming*)
    *Assistant Attorneys General*
6   EMMA GRUNBERG, WSBA #54659
    TERA M. HEINTZ, WSBA #54921
7     (*application for admission forthcoming*)
    KARL D. SMITH, WSBA #41988
8     (*application for admission forthcoming*)
    *Deputy Solicitors General*
9   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
10  (206) 464-7744

11
                **UNITED STATES DISTRICT COURT**
12              **EASTERN DISTRICT OF WASHINGTON**
                           **AT YAKIMA**
13

14  STATE OF WASHINGTON, et al.,          NO. 1:20-cv-03127-SAB

15                      Plaintiffs,       DECLARATION OF NICOLE
          v.                             DAVIDSON IN SUPPORT OF
                                         PLAINTIFF STATES' MOTION FOR
16  DONALD J. TRUMP, et al.,             PRELIMINARY INJUNCTION

17                      Defendants.

18

19

20

21

22

DECLARATION OF
NICOLE DAVIDSON

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

1    I, Nicole Davidson, declare as follows:

2    1.    I am over the age of 18, am competent to testify as to the matters herein, and

3    make this declaration based on my personal knowledge.

4    2.    I am the Secretary of the Board of Directors of Ring Dog Rescue, Inc. (Ring),

5    a women-run nonprofit based in Virginia that rescues, rehabilitates and places abused,

6    abandoned, and homeless dogs. Ring focuses its efforts on pit bulls given the overwhelming

7    need for their adoption in animal shelters across Virginia. Ring operates a foster program

8    with homes throughout Virginia, including a number that are dedicated to caring for senior

9    and terminally ill dogs. Ring acts as a liaison between shelters, animal control, and disaster

10   agencies state-wide, and assists in providing appropriate medical care. This includes ensuring

11   that dogs are spayed and neutered and up-to-date on vaccinations. Ring specifically works

12   with other rescue and transport organizations to rescue, foster, and re-home dogs from

13   municipal shelters.

14   3.    I also serve on the Board of Directors of A.L. Shilling Spay & Neuter, Inc.

15   (Shilling), another women-run and Virginia-based nonprofit that strives to provide low-cost

16   or free spay and neuter services to companion animals in the greater Richmond, Virginia

17   area. Shilling focuses its resources on animals in underserved areas, municipal shelters, and

18   other animal rescue organizations.  Shilling's goal is to reduce the number of homeless

19   companion animals in Virginia, and to improve the health and quality of life of owned

20   companion animals and those awaiting adoption.

21   4.    Recent changes in delivery of mail by the United States Postal Service have

22   materially impaired the ability of both Ring and Shilling to offer their services to Virginians

DECLARATION OF
NICOLE DAVIDSON

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

across the Commonwealth. These impacts have been particularly acute as pet adoption has markedly increased during the ongoing COVID-19 pandemic.

5.      Ring relies on the mail to deliver necessary paperwork and contracts to those who are interested in adopting a dog, along with medications for adopted dogs. In recent months, Ring has begun to rely even more heavily on the mail to minimize in-person interactions and decrease the likelihood of exposure to COVID-19.

6.      However, on two separate occasions in the last three months, adoption packs—which include both the relevant contractual paperwork and medications—have been lost in transit by the United States Postal Service. One adoption pack was eventually located at a North Carolina facility, even though that pack was sent from Henrico County to Chesterfield County, both of which are located in Central Virginia. The Postal Service never provided an explanation as to why that adoption pack was routed to North Carolina, nor has that pack ever been delivered. The other adoption pack was never located. Ring incurred additional expenses as the lost packages forced the organization to replace the lost medication and reproduce the lost paperwork.

7.      Ring also relies on the mail to ensure compliance with various State laws that require nonprofits to register in order to solicit donations. Ring spends thousands of dollars each year to file the necessary paperwork and remain eligible to fundraise in these States. The registration process requires regular consultation with outside counsel, including sending notarized documents through the Postal Service. On multiple occasions in recent months, however, notarized documents sent via Priority Mail were delayed in transit to Ring's

DECLARATION OF
NICOLE DAVIDSON

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

Page 66 of 342

1   counsel. In some cases, those delays have jeopardized Ring's registrations, which would

2   render the nonprofit ineligible to solicit donations in each of the affected States.

3       8.      Finally, Ring relies on the United States Postal Service to deliver merchandise

4   sold by the organization to raise funds for its operations. In the last three months, over a

5   dozen orders have been delayed between five and ten days. Despite repeated inquiries, the

6   Postal Service has been unable to track those missing packages for Ring, leaving the

7   nonprofit unable to provide accurate estimates to customers as to when their purchases would

8   arrive. The organization's inability to rely on the Postal Service to deliver merchandise

9   undermines its efforts to fundraise for its adoption services.

10      9.      Shilling also relies on the mail to provide spaying and neutering services to

11  pet owners across Virginia. But, as with Ring, Shilling has experienced delays in the delivery

12  of critical mail sent through the United States Postal Service.

13      10.     Just this month, a set of documents necessary for an insurance audit and sent

14  through the United States Postal Service were delayed by over a month. As a result of that

15  delay, Shilling nearly lost its insurance coverage.

16      11.     Shilling also recently received word from a laboratory with which the

17  nonprofit contracts that Shilling had not paid various medical bills. The laboratory, which

18  among other things provides heartworm tests for Shilling, threatened to discontinue service

19  in the event that Shilling did not pay those bills. Upon investigation, Shilling learned that the

20  medical bills had been sent through the United States Postal Service but were never

21  delivered.

22

DECLARATION OF
NICOLE DAVIDSON

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

1       12.    Shilling separately experienced a week-and-a-half period in recent months

2 during which the nonprofit received absolutely no mail, which was highly unusual. Although

3 mail delivery resumed after Shilling filed a complaint with the local Post Office, no mail

4 from that period was ever delivered.

DECLARATION OF
NICOLE DAVIDSON

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

1    I declare under penalty of perjury under the laws of the United States that the

2    foregoing is true and correct.

3    DATED this 3 day of September, 2020, at Richmond, Virginia.

4

5    _____

Nicole Davidson

6    Secretary, Ring Dog Rescue, Inc.

Director, A.L. Shilling Spay & Neuter, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF
NICOLE DAVIDSON

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

# Exhibit 13

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10
                **UNITED STATES DISTRICT COURT**
11              **EASTERN DISTRICT OF WASHINGTON**
                        **AT YAKIMA**
12

13  STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
    al.,
                                     DECLARATION OF STEVE H.
14                    Plaintiffs,    FISHER IN SUPPORT OF
                                     PLAINTIFF STATES' MOTION
        v.                           FOR PRELIMINARY
15                                   INJUNCTION
    DONALD J. TRUMP, et al.,
16
                      Defendants.
17

18

19

20

21

22

DECLARATION OF STEVE H
FISHER

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 71 of 342

1    I, Steve Fisher, declare as follows:

2    1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4    2.    I am the Administrator for the Division of Welfare and Supportive

5    Services at the Nevada Department of Health and Human Services ("DWSS"),

6    the Nevada state agency responsible for administering and distributing various

7    public assistance benefits to qualified recipients.

8    3.    I have served this agency for 22 years holding many different roles

9    along the way.  Currently, I serve as Administrator of the Division of Welfare

10   and Supportive Services and have served in this role for 6 years.

11   4.    DWSS relies upon the United States Postal Service to administer its

12   benefit programs.

13   5.    Specifically, federal regulations require DWSS to use the United

14   States Postal Service for mailed applications, redetermination notices and

15   applications, notices of action, requests for information, and timely hearing

16   processes.

17   6.    While benefit recipients have the option to request electronic

18   notifications, DWSS is required to offer and use the United States Postal Service.

19   7.    To date, only approximately 1% of DWSS recipient households

20   have opted for electronic notification in lieu of the United States mail.

21

22

DECLARATION OF STEVE H
FISHER

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 72 of 342

8.      Delays in mail service may result in missed deadlines and lost benefits, harming Nevada's ability to administer these public assistance programs and harming recipients.

9.      DWSS's method of payment to recipients is a prepaid debit card.

10.      The prepaid debit cards are transmitted to recipients by United States Mail.

11.      Given Nevada's historic economic harm during the COVID-19 emergency, DWSS is serving many first-time benefit recipients, which requires mailing them the prepaid debit cards.

12.      Delays in mail service delay benefit payments to these first-time recipients, harming Nevada's ability to administer the benefit programs and harming recipients.

13.      I declare under penalty of perjury under the laws of the State of Nevada and the United States that the foregoing is true and correct.

DATED this 19th day of August, 2020, at Carson City, Nevada.

STEVE H FISHER
Administrator, Nevada Department of Health
and Human Services
Division of Welfare and Supportive Services

DECLARATION OF STEVE H
FISHER

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 73 of 342

# Exhibit 14

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF WASHINGTON**
                        **AT YAKIMA**
12

13  STATE OF WASHINGTON, et        NO.  1:20-cv-03127-SAB
    al.,
                                   DECLARATION OF NATHAN
14                   Plaintiffs,   GEISSEL IN SUPPORT OF
                                   PLAINTIFF STATES' MOTION
          v.                       FOR PRELIMINARY
15                                 INJUNCTION
    DONALD J. TRUMP, et al.,
16
                     Defendants.
17

18

19

20

21

22

DECLARATION OF
NATHAN GEISSEL
NO. 1:20-CV-03127-SAB

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1        I, Nathan Geissel, declare as follows:

2        1.      I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4        2.      I am a resident of Grants Pass, Oregon.

5        3.      I am an Emergency Medical Technician. Before this, I worked as a

6    patient access specialist

7        4.      Two years ago, my doctor prescribed me Eliquis—a medication to

8    treat and prevent blood clots and to prevent stroke.

9        5.      I have received this medication by mail for the last year and a half.

10   I get my medication delivered by mail because my insurance covers more of the

11   cost of the medication when it is delivered by mail. Otherwise, I have to pay a

12   $135 copay for a month's supply of medicine if I pick it up at a retail pharmacy.

13   Getting my prescription by mail is also more convenient.

14       6.      I ordered a refill for this medication on August 10, 2020, but I did

15   not receive it until August 21, 2020. It took 11 days for the medication to get

16   from Portland, Oregon to Grants Pass, Oregon.

17       7.      Before this delayed delivery for my medicine ordered on August 10,

18   2020, I had never experienced a delay in receiving my medicine. Generally, I

19   receive my prescription refills by mail two days, at most three days, after ordering

20   it.

21

22

DECLARATION OF                              2              ATTORNEY GENERAL OF WASHINGTON
NATHAN GEISSEL                                                    Complex Litigation Division
                                                                   800 5th Avenue, Suite 2000
NO. 1:20-CV-03127-SAB                                              Seattle, WA  98104-3188
                                                                       (206) 464-7744

8.      After ordering the refill on August 10, I tracked the package to make sure it would get to me before I ran out my medication on August 18.

9.      I saw that the package was stuck in Portland, Oregon until August 16, and then it remained in Eugene, Oregon for another few days.

10.     When I realized that this refill package might not get to me before I would run out on August 18, 2020, I began to panic and called my doctor and insurer to figure out what I should do. I spent over three hours on the phone with various folks, and it seemed like everyone passed the buck.

11.     Eventually, a local pharmacist approved two more weeks of the medication that I picked up in person. I initially paid out of pocket for this emergency refill but my insurance has since covered it.

12.     I finally received my refill on August 21, 2020. If I had not taken all of these efforts to get an emergency supply, I would have gone three days without this critical medication.

13.     The potential consequences of missing doses of this medicine are serious. This medication is vital to my health because of my blood clotting disorder. If I do not take this blood thinner twice a day in regular intervals, I run an extremely high risk of having another serious blood clot.

14.     I consider myself lucky because I work in the healthcare field and know how the system works and how to advocate for myself within it. I worry about how the mail delays will affect seniors and veterans who do not know the

DECLARATION OF
NATHAN GEISSEL
NO. 1:20-CV-03127-SAB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   system and would not be able to get a local supply. I worry that many of them

2   would simply go without their medication, leading to dire consequences.

3        I declare under penalty of perjury under the laws of the United States that

4   the foregoing is true and correct.

5

6        DATED this 31st day of August, 2020, at Grants Pass, Oregon.

7

8                                     Nathan Geissel

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF                           4          ATTORNEY GENERAL OF WASHINGTON
NATHAN GEISSEL                                            Complex Litigation Division
NO. 1:20-CV-03127-SAB                                     800 5th Avenue, Suite 2000
                                                          Seattle, WA  98104-3188
                                                          (206) 464-7744

# Exhibit 15

1    ROBERT W. FERGUSON
      *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
      *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
      KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
      CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
      EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
        (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
        *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
      Seattle, WA  98104
9    (206) 464-7744

10

11                **UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF WASHINGTON
                          AT YAKIMA**

12

13   STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
      al.,

14                                     DECLARATION OF RUTH Y.
                          Plaintiffs,  GOLDWAY IN SUPPORT OF
                                       PLAINTIFF STATES' MOTION
15        v.                           FOR PRELIMINARY
                                       INJUNCTION
16   DONALD J. TRUMP, et al.,

17                        Defendants.

18

19

20

21

22

DECLARATION OF RUTH Y.              1
GOLDWAY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

I, Ruth Y. Goldway, declare as follows:

1.     I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.     I was a commissioner of the U.S. Postal Regulatory Commission (PRC) from 1998 to 2015 and its chair from 2009 to 2014. From 2016 to 2018, I worked as an independent consultant to several research firms offering expertise on the Postal Service's operations to investors wanting to invest in publicly traded companies involved in the postal sector.

3.     The PRC is an independent agency with oversight and regulatory authority over the United States Postal Service. Among other things, the PRC works with the USPS to develop and maintain postal rate regulations and service standards and to adjudicate complaints against the USPS.

4.     I am aware that in late July USPS General Counsel Thomas Marshall sent letters to state election officials indicating that state election mail, including ballots, would no longer be treated as First Class Mail unless states paid the higher First Class Mail rates.

5.     Mr. Marshall's letter represents a very concerning change in USPS policy.

6.     Typically, states have sent election mail at the Non-Profit Marketing Mail rate, which is considerably less expensive than First Class Mail. Currently,

DECLARATION OF RUTH Y.
GOLDWAY

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

First Class postage is 55 cents per item, while Marketing Mail postage is only 20 cents per item.

7.    Even though states typically pay Marketing rate, the Postal Service has a longstanding practice of providing extra care and attention to election-related mail, on the level of First Class mail.

8.    USPS created a special logo and bar code identifiers several years ago so that mail sorters are able to pull election mail out from the routine mail stream to be sure it is delivered as soon as possible.

9.    As a result, election mail has historically been subject to the delivery standards for First Class Mail, usually 2–5 days, rather than the slower standard for Marketing Mail, usually 3–10 days.

10.    The practical effect of treating election mail as Marketing Mail versus First Class Mail is actually much greater than the differing delivery standards would suggest. This is because First Class is delivered on time at higher rates than Marketing Mail.

11.    According to the PRC's most recent Quarterly Service Performance Reports, published August 10, 2020, between April 1 and June 30, 2020, the USPS delivered between 81 percent and 95 percent of domestic First Class Mail

DECLARATION OF RUTH Y. GOLDWAY

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

on time.[1] Upwards of 98 percent of First Class Mail was delivered no more than three days late. Thus, nearly 100 percent of First Class Mail was delivered within eight days of mailing.

12.     By contrast, USPS delivered between 70.4 and 92.2 percent of Marketing Mail on time and 88.8 to 98.1 percent no more than three days late, depending on whether senders delivered mail to a USPS facility themselves. Put another way, where USPS was responsible for both pick-up and delivery, as much as 10 percent of Marketing Mail took longer than 13 days to deliver.

13.     The differing on-time performance between First Class and Marketing Mail compounds the differences in stated delivery standards, and makes it more likely that treating election mail as Marketing Mail will result in voters not getting their ballots in time to vote.

14.     True and correct copies of the PRC's most recent Quarterly Service Performance Reports are attached hereto as Exhibit A.

15.     Offering citizens the option of voting by mail provides significant advantages, including the potential to increase voter turnout for national, state, and local elections. Mail-in voting means voters do not need to take time off from

---

[1] The variance between 81% and 95% depends chiefly on two factors: (1) whether the mail was presorted, which speeds delivery; and (2) how far the mail has to travel.

DECLARATION OF RUTH Y. GOLDWAY

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 83 of 342

1  work, find transportation, locate the right polling station, get babysitters, or rush

2  through critical, yet sometimes complicated ballot initiatives.

3      16.    Mail-in voting makes it much easier for disabled people, people with

4  limited English proficiency, and others who might need additional time or

5  assistance to vote.

6      17.    Mail-in voting is secure, tamper-resistant, and, in contrast to

7  electronic voting machines, leaves a paper trail to ensure an accurate count.

8      18.    As we are facing the global COVID-19 pandemic, mail-in voting

9  has never been more important to facilitate the right of individuals to safely and

10  securely participate in our democracy.

11      19.    As I wrote recently in the New York Times, the USPS is fully

12  capable of handling what is expected to be a record number of mail-in ballots for

13  the November election. *See* Ruth Y. Goldway, *I Was a Postal Service Regulator*

14  *for 18 Years. Don't Panic., N.Y. Times* (Aug. 18, 2020),

15  https://www.nytimes.com/2020/08/18/opinion/usps-vote-by-mail.html.  But to

16  ensure that citizens' votes are actually counted, the USPS needs to ensure that

17  mailed ballots continue to be treated as First Class Mail and delivered in a timely

18  manner.

19  //

20  //

21  //

22

DECLARATION OF RUTH Y.
GOLDWAY

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 84 of 342

1    I declare under penalty of perjury under the laws of the State of

2  Washington and the United States that the foregoing is true and correct.

3    DATED this 28th day of August, 2020, at Venice, California.

4                          Ruth Y. Goldway

5                          _____
                          Ruth Y. Goldway

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF RUTH Y.              6
GOLDWAY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**Goldway Declaration**

**Exhibit A**

United States Postal Service®                                                                                                    Quarter III
**Quarterly Performance for USPS Marketing Mail®**                                                              FY2020

*Overview*

Beginning FY2019 Q1, service performance for USPS Marketing Mail® Letters and non-Saturation flats is measured through the USPS® internal measurement system. The system uses documented arrival time at a designated postal facility to start the clock, and an Intelligent Mail® barcode (IMB®) scan by postal personnel at randomly selected delivery points to stop the clock. Mail piece tracking from IMB® in-process scans is used in conjunction with the sampling data to extrapolate results for the entire volume of measurement eligible Full Service Intelligent Mail. The transit time from the start-the-clock through final automated processing is the Processing Duration leg, and the transit time from final automated processing until delivery is the Last Mile. Total transit time was calculated for the mail and compared with the appropriate service standard for the product to determine the service performance.

Scores prior to FY2019 Q1 were calculated and compiled by an independent external contractor. The system used for this reporting was called the Intelligent Mail® Accuracy and Performance System (iMAPS). The external contractor determined service performance based on the elapsed time between the start-the-clock event recorded by U.S. Postal Service® and the stop-the-clock event recorded by anonymous households and small businesses that report delivery information directly to the contractor. The service measure consisted of two parts: (1) how long mail pieces take to get through processing, and (2) how long mail takes from the last processing scan to delivery. The second portion was used as a delivery factor differential to determine the percent of all USPS Marketing Mail® delivered on the last processing date versus the percent delivered after the last processing date. Service performance was measured by comparing the transit time to USPS® service standards to determine the percent of mail delivered on time.

The service performance measure for Destination Delivery Unit (DDU) Entry Saturation flats involves the identification of major weekly Saturation mailings within delivery units. Delivery of these mailings is captured with a scan made by carriers at the completion of delivery of all pieces on the route. Service performance is measured by comparing the delivery date to the end date of the mailer requested in-home window to determine the percent delivered on time.

The service performance measurement system for Every Door Direct Mail – Retail® (EDDM Retail®) uses the documented arrival time of a mailing at a retail unit to start the clock, using the point-of-sale scan when mail is handed to U.S. Postal Service®, and an Intelligent Mail® parcel barcode (IMpb®) scan by a USPS® carrier to stop the clock. The delivery of bundles of EDDM Retail® pieces is captured with a scan made by carriers at the delivery unit upon distribution for delivery. Service performance is measured by comparing the total transit time of mail piece bundles to the service standard to determine the percent delivered on time.

Results for DDU Entry Saturation flats and EDDM Retail® are combined with other Destination Entry Standard Mail in the Destination Entry scores in this report.

The service performance measure for USPS Marketing Mail® Parcels with USPS Tracking® serves as a proxy for measuring service performance for USPS Marketing Mail® Parcels.

*Limitations*

Due to limited automated processing for USPS Marketing Mail® Flats, the service performance results may not be representative of all USPS Marketing Mail® Flats performance. While Destination Delivery Unit (DDU) entered Saturation Flats and EDDM Retail® Flats have been included this quarter, significant gaps in the coverage of non-Saturation/non-EDDM Retail® DDU Entry mail still remain and are excluded from measurement. Results for USPS Marketing Mail® Parcels, which represent less than 0.1 percent of all USPS Marketing Mail®, are not included in the overall USPS Marketing Mail® results.

*Performance Highlights*

National Destination Entry mail achieved 92.2 percent on time in FY2020 Quarter 3, which is 1.9 points lower than the same period last year. For Destination Entry mail, 98.1 percent was delivered within service standard plus three days. The Alaska Performance Cluster led the nation in Destination Entry performance with 97.8 percent on time. Forty-nine out of 67 districts achieved an on-time performance at or above the performance target of 91.8 for Destination Entry mail.

End-To-End Entry national performance was 70.4 percent on time, which is 2.9 points higher than the same period last year. In FY2020 Quarter 3, 88.8 percent of End-To-End Entry USPS Marketing Mail® was delivered within the service standard plus three days. The Alaska District had the highest End-To-End Entry score with 92.2 percent on time.

United States Postal Service®

**Quarterly Performance for USPS Marketing Mail®**

Mailpieces Delivered Between 04/01/2020 and 06/30/2020

Quarter III
FY2020

| District | Destination Entry Percent On Time | End-To-End Percent On Time |
|---|---|---|
| **Capital Metro Area** | **92.3** | **67.8** |
| Atlanta | 89.7 | 50.5 |
| Baltimore | 83.9 | 63.5 |
| Capital | 94.9 | 76.0 |
| Greater South Carolina | 95.1 | 78.7 |
| Greensboro | 94.1 | 78.3 |
| Mid-Carolinas | 93.8 | 77.1 |
| Northern Virginia | 96.3 | 66.6 |
| Richmond | 91.4 | 63.8 |
| **Eastern Area** | **94.5** | **73.5** |
| Appalachian | 97.1 | 75.4 |
| Central Pennsylvania | 93.5 | 61.4 |
| Kentuckiana | 96.6 | 79.4 |
| Northern Ohio | 92.9 | 76.0 |
| Ohio Valley | 94.4 | 79.2 |
| Philadelphia Metro | 92.8 | 62.2 |
| South Jersey | 93.7 | 63.0 |
| Tennessee | 92.9 | 67.8 |
| Western New York | 95.7 | 78.2 |
| Western Pennsylvania | 97.7 | 85.8 |
| **Great Lakes Area** | **86.2** | **63.8** |
| Central Illinois | 90.4 | 64.3 |
| Chicago | 86.7 | 53.1 |
| Detroit | 63.3 | 52.5 |
| Gateway | 94.7 | 73.0 |
| Greater Indiana | 91.6 | 66.2 |
| Greater Michigan | 91.8 | 61.2 |
| Lakeland | 91.6 | 63.2 |
| **Northeast Area** | **84.5** | **58.0** |
| Albany | 96.0 | 70.4 |
| Caribbean | 76.1 | 67.6 |
| Connecticut Valley | 88.1 | 62.8 |
| Greater Boston | 85.1 | 58.8 |
| Long Island | 77.7 | 46.8 |
| New York | 59.5 | 52.1 |
| Northern New England | 92.7 | 67.1 |
| Northern New Jersey | 84.6 | 50.8 |
| Triboro | 83.3 | 56.7 |
| Westchester | 79.3 | 54.1 |
| **Pacific Area** | **95.1** | **72.0** |
| Bay-Valley | 95.2 | 73.6 |
| Honolulu | 96.8 | 72.4 |
| Los Angeles | 92.4 | 66.4 |
| Sacramento | 93.8 | 68.9 |
| San Diego | 95.3 | 74.1 |
| San Francisco | 94.8 | 79.3 |
| Santa Ana | 96.5 | 72.4 |
| Sierra Coastal | 96.4 | 74.4 |

United States Postal Service®

**Quarterly Performance for USPS Marketing Mail®**

**Mailpieces Delivered Between 04/01/2020 and 06/30/2020**

Quarter III
FY2020

| District | Destination Entry Percent On Time | End-To-End Percent On Time |
|---|---|---|
| **Southern Area** | **94.0** | **74.6** |
| Alabama | 93.2 | 63.7 |
| Arkansas | 95.5 | 64.9 |
| Dallas | 94.5 | 74.2 |
| Fort Worth | 92.9 | 75.7 |
| Gulf Atlantic | 95.1 | 74.0 |
| Houston | 94.0 | 83.8 |
| Louisiana | 89.8 | 67.7 |
| Mississippi | 92.2 | 66.9 |
| Oklahoma | 96.2 | 76.6 |
| Rio Grande | 95.7 | 77.6 |
| South Florida | 92.8 | 75.1 |
| Suncoast | 94.9 | 72.3 |
| **Western Area** | **96.1** | **74.8** |
| Alaska | 97.8 | 92.2 |
| Arizona | 96.7 | 66.0 |
| Central Plains | 97.4 | 77.7 |
| Colorado/Wyoming | 90.5 | 69.4 |
| Dakotas | 97.4 | 75.3 |
| Hawkeye | 97.7 | 81.3 |
| Mid-America | 95.3 | 68.8 |
| Nevada-Sierra | 97.4 | 77.9 |
| Northland | 96.5 | 74.6 |
| Portland | 97.7 | 77.0 |
| Salt Lake City | 96.3 | 75.4 |
| Seattle | 96.8 | 80.9 |
| **Nation FY2020 Q3** | **92.2** | **70.4** |
| | | |
| **Nation FY2019 Q3 (SPLY)** | **94.1** | **67.5** |
| | | |
| **Nation FY2009 Annual** | **86.4** | **70.7** |
| **Nation FY2010 Annual** | **83.4** | **59.0** |
| **Nation FY2011 Annual** | **70.3** | **38.4** |
| **Nation FY2012 Annual** | **82.0** | **56.5** |
| **Nation FY2013 Annual** | **88.8** | **63.3** |
| **Nation FY2014 Annual** | **89.9** | **63.5** |
| **Nation FY2015 Annual** | **89.1** | **59.6** |
| **Nation FY2016 Annual** | **92.3** | **65.9** |
| **Nation FY2017 Annual** | **93.7** | **69.8** |
| **Nation FY2018 Annual** | **91.6** | **66.4** |
| **Nation FY2019 Annual** | **91.9** | **66.2** |
| **Nation FY2020 Q1** | **92.0** | **67.2** |
| **Nation FY2020 Q2** | **93.9** | **73.9** |
| | | |
| **FY2020 Annual Target** | **91.8** | **91.8** |

United States Postal Service®                Quarter III
**Quarterly Performance for USPS Marketing Mail®**        FY2020
**Service Variance**

### *Overview*

Beginning FY2019 Q1, service performance for USPS Marketing Mail® Letters and non-Saturation flats is measured through the USPS® internal measurement system. The system uses documented arrival time at a designated postal facility to start the clock, and an Intelligent Mail® barcode (IMB®) scan by postal personnel at delivery for randomly selected delivery points to stop the clock. Mail piece tracking from IMB® in-process scans is used in conjunction with the sampling data to extrapolate results for the entire volume of measurement eligible Full Service Intelligent Mail. The transit time from the start-the-clock through final automated processing is the Processing Duration leg, and the transit time from final automated processing until delivery is the Last Mile. Total transit time was calculated for the mail and compared with the appropriate service standard for the product to determine the service performance.

Scores prior to FY2019 Q1 were calculated and compiled by an independent external contractor. The system used for this reporting was called the Intelligent Mail® Accuracy and Performance System (iMAPS). The external contractor determined service performance based on the elapsed time between the start-the-clock event recorded by U.S. Postal Service® and the stop-the-clock event recorded by anonymous households and small businesses that report delivery information directly to the contractor. The service measure consisted of two parts: (1) how long mail pieces take to get through processing, and (2) how long mail takes from the last processing scan to delivery. The second portion was used as a delivery factor differential to determine the percent of all USPS Marketing Mail® delivered on the last processing date versus the percent delivered after the last processing date. Service performance was measured by comparing the transit time to USPS® service standards to determine the percent of mail delivered on time.

The service performance measure for Destination Delivery Unit (DDU) Entry Saturation flats involves the identification of major weekly Saturation mailings within delivery units. Delivery of these mailings is captured with a scan made by carriers at the completion of delivery of all pieces on the route. Service performance is measured by comparing the delivery date to the end date of the mailer requested in-home window to determine the percent delivered on time.

The service performance measurement system for Every Door Direct Mail – Retail® (EDDM Retail®) uses the documented arrival time of a mailing at a retail unit to start the clock, using the point-of-sale scan when mail is handed to U.S. Postal Service®, and an Intelligent Mail® parcel barcode (IMpb®) scan by a USPS® carrier to stop the clock. The delivery of bundles of EDDM Retail® pieces is captured with a scan made by carriers at the delivery unit upon distribution for delivery. Service performance is measured by comparing the total transit time of mail piece bundles to the service standard to determine the percent delivered on time.

Results for DDU Entry Saturation flats and EDDM Retail® are combined with other Destination Entry Standard Mail in the Destination Entry scores in this report.

The service performance measure for USPS Marketing Mail® Parcels with USPS Tracking® serves as a proxy for measuring service performance for USPS Marketing Mail® Parcels.

### *Limitations*

Due to limited automated processing for USPS Marketing Mail® Flats, the service performance results may not be representative of all USPS Marketing Mail® Flats performance. While Destination Delivery Unit (DDU) entered Saturation Flats and EDDM Retail® Flats have been included this quarter, significant gaps in the coverage of non-Saturation/non-EDDM Retail® DDU Entry mail still remain and are excluded from measurement. Results for USPS Marketing Mail® Parcels, which represent less than 0.1 percent of all USPS Marketing Mail®, are not included in the overall USPS Marketing Mail® results.

### *Performance Highlights*

National Destination Entry mail achieved 92.2 percent on time in FY2020 Quarter 3, which is 1.9 points lower than the same period last year. For Destination Entry mail, 98.1 percent was delivered within service standard plus three days. The Alaska Performance Cluster led the nation in Destination Entry performance with 97.8 percent on time. Forty-nine out of 67 districts achieved an on-time performance at or above the performance target of 91.8 for Destination Entry mail.

End-To-End Entry national performance was 70.4 percent on time, which is 2.9 points higher than the same period last year. In FY2020 Quarter 3, 88.8 percent of End-To-End Entry USPS Marketing Mail® was delivered within the service standard plus three days. The Alaska District had the highest End-To-End Entry score with 92.2 percent on time.

United States Postal Service®

**Quarterly Performance for USPS Marketing Mail®**
**Service Variance**
**Mailpieces Delivered Between 04/01/2020 and 06/30/2020**

Quarter III
FY2020

| District | Destination Entry | | | End-To-End | | |
|---|---|---|---|---|---|---|
| | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days |
| **Capital Metro Area** | **96.9** | **98.4** | **99.1** | **77.4** | **83.9** | **88.4** |
| Atlanta | 95.8 | 97.9 | 98.9 | 64.3 | 74.6 | 82.1 |
| Baltimore | 93.6 | 96.6 | 97.8 | 73.6 | 81.4 | 86.5 |
| Capital | 97.7 | 98.8 | 99.3 | 83.1 | 87.7 | 90.6 |
| Greater South Carolina | 98.3 | 99.3 | 99.6 | 86.0 | 90.6 | 93.5 |
| Greensboro | 98.0 | 99.1 | 99.4 | 85.9 | 90.3 | 93.2 |
| Mid-Carolinas | 97.5 | 98.7 | 99.3 | 84.5 | 89.4 | 92.4 |
| Northern Virginia | 98.2 | 98.8 | 99.4 | 75.8 | 82.3 | 86.8 |
| Richmond | 96.5 | 98.4 | 99.0 | 74.7 | 81.6 | 86.1 |
| **Eastern Area** | **97.5** | **98.6** | **99.1** | **81.7** | **86.7** | **90.1** |
| Appalachian | 98.7 | 99.3 | 99.5 | 83.4 | 88.4 | 91.6 |
| Central Pennsylvania | 97.1 | 98.5 | 99.2 | 71.2 | 78.3 | 83.4 |
| Kentuckiana | 98.7 | 99.2 | 99.5 | 86.2 | 90.4 | 93.2 |
| Northern Ohio | 95.6 | 96.7 | 97.4 | 84.0 | 88.0 | 90.6 |
| Ohio Valley | 97.7 | 98.9 | 99.3 | 87.4 | 91.4 | 94.0 |
| Philadelphia Metro | 96.3 | 98.0 | 98.8 | 73.0 | 80.4 | 85.2 |
| South Jersey | 96.7 | 98.1 | 98.7 | 72.2 | 79.0 | 83.7 |
| Tennessee | 96.9 | 98.3 | 98.9 | 77.3 | 83.3 | 87.8 |
| Western New York | 98.3 | 99.2 | 99.5 | 86.0 | 90.2 | 92.9 |
| Western Pennsylvania | 99.1 | 99.5 | 99.7 | 90.7 | 93.4 | 95.1 |
| **Great Lakes Area** | **90.6** | **92.6** | **94.0** | **72.5** | **78.6** | **82.9** |
| Central Illinois | 94.5 | 96.4 | 97.5 | 73.2 | 79.8 | 84.4 |
| Chicago | 92.7 | 95.5 | 96.9 | 63.1 | 71.3 | 77.4 |
| Detroit | 69.1 | 73.0 | 76.5 | 60.1 | 65.3 | 69.8 |
| Gateway | 97.9 | 98.9 | 99.3 | 82.2 | 87.9 | 91.3 |
| Greater Indiana | 95.7 | 97.4 | 98.4 | 74.5 | 80.0 | 83.4 |
| Greater Michigan | 94.6 | 95.8 | 96.5 | 66.9 | 71.8 | 76.2 |
| Lakeland | 96.1 | 97.8 | 98.7 | 73.3 | 80.2 | 85.1 |
| **Northeast Area** | **90.7** | **93.3** | **94.9** | **67.5** | **74.4** | **79.4** |
| Albany | 98.5 | 99.2 | 99.5 | 79.9 | 85.6 | 89.2 |
| Caribbean | 87.4 | 92.2 | 95.6 | 77.9 | 82.7 | 86.8 |
| Connecticut Valley | 92.9 | 95.0 | 96.4 | 72.6 | 79.3 | 83.9 |
| Greater Boston | 92.9 | 95.7 | 96.9 | 69.1 | 76.6 | 81.8 |
| Long Island | 87.0 | 91.8 | 94.2 | 56.7 | 64.2 | 70.0 |
| New York | 67.2 | 74.6 | 80.0 | 60.8 | 67.6 | 72.9 |
| Northern New England | 96.5 | 97.7 | 98.4 | 74.9 | 81.1 | 85.6 |
| Northern New Jersey | 89.2 | 90.8 | 91.7 | 60.2 | 67.8 | 73.1 |
| Triboro | 89.5 | 92.4 | 94.0 | 64.9 | 71.1 | 75.7 |
| Westchester | 88.2 | 91.2 | 94.2 | 63.9 | 71.4 | 76.7 |
| **Pacific Area** | **98.0** | **99.0** | **99.4** | **81.8** | **87.7** | **91.4** |
| Bay-Valley | 98.0 | 99.0 | 99.4 | 83.1 | 88.9 | 92.7 |
| Honolulu | 98.3 | 99.1 | 99.3 | 81.6 | 88.4 | 92.2 |
| Los Angeles | 97.0 | 98.6 | 99.1 | 78.5 | 85.3 | 89.6 |
| Sacramento | 97.2 | 98.5 | 99.2 | 80.6 | 87.5 | 92.1 |
| San Diego | 98.0 | 99.0 | 99.3 | 82.5 | 87.3 | 90.5 |
| San Francisco | 97.9 | 98.9 | 99.4 | 87.2 | 91.7 | 94.4 |
| Santa Ana | 98.6 | 99.4 | 99.7 | 81.2 | 86.4 | 89.9 |
| Sierra Coastal | 98.5 | 99.3 | 99.6 | 83.0 | 88.5 | 92.1 |

United States Postal Service®
**Quarterly Performance for USPS Marketing Mail®**
**Service Variance**
**Mailpieces Delivered Between 04/01/2020 and 06/30/2020**

Quarter III
FY2020

| District | Destination Entry | | | End-To-End | | |
|---|---|---|---|---|---|---|
| | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days |
| **Southern Area** | **97.6** | **98.8** | **99.3** | **83.1** | **88.2** | **91.6** |
| Alabama | 97.0 | 98.5 | 99.1 | 74.3 | 81.1 | 86.4 |
| Arkansas | 97.9 | 98.9 | 99.3 | 73.7 | 80.8 | 85.7 |
| Dallas | 97.4 | 98.6 | 99.1 | 83.5 | 88.4 | 91.7 |
| Fort Worth | 97.0 | 98.2 | 98.7 | 83.3 | 88.0 | 91.2 |
| Gulf Atlantic | 97.8 | 98.9 | 99.4 | 81.9 | 87.4 | 91.0 |
| Houston | 97.7 | 98.9 | 99.3 | 89.9 | 93.2 | 95.2 |
| Louisiana | 95.8 | 97.9 | 98.8 | 76.1 | 82.3 | 87.0 |
| Mississippi | 96.5 | 98.1 | 98.8 | 75.9 | 82.9 | 87.3 |
| Oklahoma | 98.6 | 99.3 | 99.5 | 85.7 | 90.4 | 93.1 |
| Rio Grande | 98.3 | 99.2 | 99.4 | 86.9 | 91.4 | 93.9 |
| South Florida | 97.1 | 98.8 | 99.3 | 83.3 | 88.5 | 92.0 |
| Suncoast | 98.3 | 99.3 | 99.6 | 81.4 | 87.3 | 91.0 |
| **Western Area** | **98.6** | **99.3** | **99.6** | **84.4** | **89.5** | **92.6** |
| Alaska | 98.7 | 99.2 | 99.4 | 94.6 | 96.6 | 97.4 |
| Arizona | 98.8 | 99.3 | 99.5 | 77.1 | 84.4 | 89.4 |
| Central Plains | 99.0 | 99.4 | 99.6 | 87.1 | 91.5 | 94.0 |
| Colorado/Wyoming | 97.2 | 98.8 | 99.3 | 82.1 | 88.0 | 91.4 |
| Dakotas | 98.9 | 99.4 | 99.6 | 83.8 | 88.8 | 92.1 |
| Hawkeye | 99.0 | 99.4 | 99.6 | 88.5 | 92.2 | 94.4 |
| Mid-America | 98.5 | 99.3 | 99.5 | 80.9 | 87.4 | 91.0 |
| Nevada-Sierra | 98.7 | 99.3 | 99.5 | 87.1 | 91.1 | 93.7 |
| Northland | 98.9 | 99.4 | 99.6 | 83.7 | 89.0 | 92.3 |
| Portland | 99.1 | 99.5 | 99.7 | 85.8 | 90.5 | 93.4 |
| Salt Lake City | 98.8 | 99.3 | 99.6 | 84.3 | 89.2 | 92.2 |
| Seattle | 99.0 | 99.5 | 99.7 | 89.6 | 93.0 | 95.2 |
| **Nation FY2020 Q3** | **96.0** | **97.4** | **98.1** | **79.4** | **85.1** | **88.8** |
| | | | | | | |
| **Nation FY2019 Q3 (SPLY)** | **97.9** | **98.9** | **99.4** | **80.3** | **87.8** | **92.2** |
| | | | | | | |
| **Nation FY2009 Annual** | **93.4** | **96.4** | **98.0** | **78.1** | **85.1** | **90.0** |
| **Nation FY2010 Annual** | **92.3** | **96.0** | **97.8** | **68.8** | **75.8** | **80.7** |
| **Nation FY2011 Annual** | **86.5** | **93.2** | **96.2** | **53.9** | **67.1** | **77.1** |
| **Nation FY2012 Annual** | **92.2** | **96.0** | **97.7** | **70.0** | **79.7** | **86.3** |
| **Nation FY2013 Annual** | **96.3** | **98.4** | **99.2** | **77.2** | **86.3** | **91.7** |
| **Nation FY2014 Annual** | **96.7** | **98.6** | **99.3** | **77.8** | **86.6** | **91.9** |
| **Nation FY2015 Annual** | **96.3** | **98.4** | **99.1** | **74.7** | **84.0** | **90.0** |
| **Nation FY2016 Annual** | **97.4** | **98.8** | **99.3** | **79.3** | **87.0** | **91.6** |
| **Nation FY2017 Annual** | **97.9** | **99.0** | **99.4** | **82.0** | **88.9** | **92.9** |
| **Nation FY2018 Annual** | **97.3** | **98.8** | **99.3** | **79.8** | **87.5** | **92.1** |
| **Nation FY2019 Annual** | **97.1** | **98.6** | **99.1** | **79.3** | **87.1** | **91.7** |
| **Nation FY2020 Q1** | **97.1** | **98.5** | **99.1** | **80.1** | **87.6** | **92.1** |
| **Nation FY2020 Q2** | **97.8** | **98.9** | **99.4** | **84.6** | **90.3** | **93.7** |

United States Postal Service®

Quarter III
FY2020

**Quarterly Performance for Presort First-Class Mail®**

*Overview*

Beginning FY2019 Q1, service performance for Presort First-Class Mail® is measured through the USPS® internal measurement system. The system uses documented arrival time at a designated postal facility to start the clock, and an Intelligent Mail® barcode (IMB®) scan by postal personnel at delivery for randomly selected delivery points to stop the clock. Mail piece tracking from IMB® in-process scans is used in conjunction with the sampling data to extrapolate results for the entire volume of measurement eligible Full Service Intelligent Mail. The transit time from the start-the-clock through final automated processing is the Processing Duration leg, and the transit time from final automated processing until delivery is the Last Mile. Total transit time was calculated for the mail and compared with the appropriate service standard for the product to determine the service performance.

Scores prior to FY2019 Q1 were calculated and compiled by an independent external contractor. The system used for this reporting was called the Intelligent Mail® Accuracy and Performance System (iMAPS). The external contractor determined service performance based on the elapsed time between the start-the-clock event recorded by U.S. Postal Service® and the stop-the-clock event recorded by anonymous households and small businesses that report delivery information directly to the contractor. The service measure consisted of two parts: (1) how long mail pieces take to get through processing, and (2) how long mail takes from the last processing scan to delivery. The second portion was used as a delivery factor differential to determine the percent of all Presort First-Class Mail® delivered on the last processing date versus the percent delivered after the last processing date. Service performance was measured by comparing the transit time to USPS® service standards to determine the percent of mail delivered on time.

*Performance Highlights*

National Presort First-Class Mail® Overnight performance in FY2020 Quarter 3 was 95.7 percent on time, which is 0.6 points lower than the same period last year. National Two-Day performance was 93.2 percent on time, which is 2.1 points lower than the same period last year. National Three-To-Five-Day performance was 90.7 percent on time, which is 2.9 points lower when compared to the same period last year.

Southern Area led the nation in Overnight service performance, with 96.8 percent on time. Western Area led the nation in Two-Day service performance, with 96.0 percent on time in FY2020 Quarter 3. Eastern Area led the nation in Three-To-Five-Day service performance, with 91.9 percent on time.

In FY2020 Quarter 3, 29 districts met or exceeded the Overnight performance target of 96.80, eight districts met or exceeded the Two-Day service performance target of 96.50, and none of the districts met or exceeded the Three-To-Five-Day service performance target of 95.25. Alaska led the nation in Overnight service performance with 98.8 percent on time. Caribbean led in Two-Day service performance with 97.7 percent on time, and San Francisco led the nation in Three-To-Five-Day service performance with 94.7 percent on time.

United States Postal Service®
**Quarterly Performance for Presort First-Class Mail®**
Mailpieces Delivered Between 04/01/2020 and 06/30/2020

Quarter III
FY2020

| District | Overnight | Two-Day | Three-To-Five-Day |
|---|---|---|---|
| | Percent On Time | Percent On Time | Percent On Time |
| **Capital Metro Area** | **95.8** | **94.5** | **91.6** |
| Atlanta | 95.8 | 95.2 | 92.7 |
| Baltimore | 92.6 | 88.5 | 83.2 |
| Capital | 88.8 | 91.9 | 89.4 |
| Greater South Carolina | 97.2 | 95.9 | 92.4 |
| Greensboro | 97.2 | 96.4 | 92.2 |
| Mid-Carolinas | 96.7 | 95.2 | 93.2 |
| Northern Virginia | 95.5 | 93.2 | 90.6 |
| Richmond | 94.2 | 93.6 | 90.3 |
| **Eastern Area** | **96.3** | **93.6** | **91.9** |
| Appalachian | 97.9 | 95.4 | 93.4 |
| Central Pennsylvania | 97.0 | 93.6 | 91.7 |
| Kentuckiana | 97.1 | 94.9 | 92.2 |
| Northern Ohio | 95.6 | 92.4 | 90.7 |
| Ohio Valley | 94.5 | 93.1 | 91.6 |
| Philadelphia Metro | 95.4 | 92.4 | 92.6 |
| South Jersey | 97.2 | 93.0 | 91.5 |
| Tennessee | 96.2 | 94.9 | 91.2 |
| Western New York | 97.2 | 95.8 | 92.4 |
| Western Pennsylvania | 97.7 | 94.7 | 93.7 |
| **Great Lakes Area** | **92.7** | **90.3** | **88.8** |
| Central Illinois | 93.5 | 92.0 | 87.3 |
| Chicago | 91.5 | 90.1 | 87.6 |
| Detroit | 82.4 | 74.7 | 78.6 |
| Gateway | 95.8 | 94.4 | 92.8 |
| Greater Indiana | 95.2 | 92.5 | 93.8 |
| Greater Michigan | 94.5 | 90.1 | 91.2 |
| Lakeland | 95.8 | 93.6 | 88.0 |
| **Northeast Area** | **94.3** | **90.7** | **86.8** |
| Albany | 97.4 | 92.4 | 91.7 |
| Caribbean | 94.8 | 97.7 | 83.2 |
| Connecticut Valley | 95.5 | 92.9 | 88.4 |
| Greater Boston | 96.0 | 94.8 | 88.1 |
| Long Island | 88.6 | 87.5 | 82.5 |
| New York | 64.1 | 66.8 | 65.6 |
| Northern New England | 95.8 | 94.2 | 84.5 |
| Northern New Jersey | 92.4 | 92.1 | 91.4 |
| Triboro | 88.7 | 84.7 | 80.1 |
| Westchester | 90.5 | 88.6 | 86.9 |
| **Pacific Area** | **95.8** | **95.5** | **91.0** |
| Bay-Valley | 97.5 | 95.2 | 93.2 |
| Honolulu | 98.2 | N/A | 80.4 |
| Los Angeles | 94.1 | 95.9 | 91.3 |
| Sacramento | 95.5 | 94.6 | 89.5 |
| San Diego | 97.3 | 95.6 | 90.0 |
| San Francisco | 95.6 | 94.5 | 94.7 |
| Santa Ana | 98.1 | 96.6 | 92.3 |
| Sierra Coastal | 96.7 | 96.2 | 92.8 |

United States Postal Service®

**Quarterly Performance for Presort First-Class Mail®**

**Mailpieces Delivered Between 04/01/2020 and 06/30/2020**

Quarter III
FY2020

| District | Overnight Percent On Time | Two-Day Percent On Time | Three-To-Five-Day Percent On Time |
|---|---|---|---|
| **Southern Area** | **96.8** | **95.2** | **91.5** |
| Alabama | 96.9 | 96.2 | 92.5 |
| Arkansas | 97.0 | 95.2 | 92.9 |
| Dallas | 96.2 | 94.6 | 90.8 |
| Fort Worth | 94.5 | 93.7 | 91.7 |
| Gulf Atlantic | 98.1 | 96.2 | 92.6 |
| Houston | 96.9 | 94.5 | 89.5 |
| Louisiana | 95.3 | 94.4 | 89.6 |
| Mississippi | 96.9 | 94.0 | 91.4 |
| Oklahoma | 97.6 | 94.6 | 93.1 |
| Rio Grande | 96.3 | 94.9 | 92.7 |
| South Florida | 97.0 | 95.2 | 91.9 |
| Suncoast | 97.3 | 96.5 | 92.3 |
| **Western Area** | **96.7** | **96.0** | **91.3** |
| Alaska | 98.8 | 97.3 | 92.4 |
| Arizona | 96.9 | 97.0 | 91.9 |
| Central Plains | 95.2 | 96.4 | 93.6 |
| Colorado/Wyoming | 95.3 | 90.0 | 87.3 |
| Dakotas | 98.5 | 97.4 | 92.8 |
| Hawkeye | 96.1 | 95.7 | 92.4 |
| Mid-America | 97.0 | 95.6 | 90.8 |
| Nevada-Sierra | 98.6 | 92.0 | 94.1 |
| Northland | 97.2 | 95.7 | 87.5 |
| Portland | 97.3 | 96.5 | 89.7 |
| Salt Lake City | 96.8 | 97.6 | 89.3 |
| Seattle | 96.6 | 96.1 | 89.6 |
| **Nation FY2020 Q3** | **95.7** | **93.2** | **90.7** |
| | | | |
| **Nation FY2019 Q3 (SPLY)** | **96.3** | **95.3** | **93.6** |
| | | | |
| **Nation FY2009 Annual** | **94.3** | **90.0** | **85.1** |
| **Nation FY2010 Annual** | **93.4** | **92.7** | **88.2** |
| **Nation FY2011 Annual** | **90.8** | **89.1** | **90.6** |
| **Nation FY2012 Annual** | **96.8** | **95.7** | **95.1** |
| **Nation FY2013 Annual** | **97.2** | **97.0** | **95.1** |
| **Nation FY2014 Annual** | **97.0** | **96.4** | **92.2** |
| **Nation FY2015 Annual** | **95.7** | **93.6** | **87.8** |
| **Nation FY2016 Annual** | **96.2** | **95.1** | **91.7** |
| **Nation FY2017 Annual** | **96.5** | **95.6** | **93.2** |
| **Nation FY2018 Annual** | **96.0** | **94.9** | **92.0** |
| **Nation FY2019 Annual** | **95.5** | **94.1** | **92.0** |
| **Nation FY2020 Q1** | **94.4** | **93.5** | **91.2** |
| **Nation FY2020 Q2** | **95.9** | **94.4** | **92.6** |
| | | | |
| **FY2020 Annual Target** | **96.80** | **96.50** | **95.25** |

United States Postal Service®

**Quarterly Performance for Presort First-Class Mail®**
**Service Variance**

Quarter III
FY2020

*Overview*

Beginning FY2019 Q1, service performance for Presort First-Class Mail® is measured through the USPS® internal measurement system. The system uses documented arrival time at a designated postal facility to start the clock, and an Intelligent Mail® barcode (IMB®) scan by postal personnel at delivery for randomly selected delivery points to stop the clock. Mail piece tracking from IMB® in-process scans is used in conjunction with the sampling data to extrapolate results for the entire volume of measurement eligible Full Service Intelligent Mail. The transit time from the start-the-clock through final automated processing is the Processing Duration leg, and the transit time from final automated processing until delivery is the Last Mile. Total transit time was calculated for the mail and compared with the appropriate service standard for the product to determine the service performance.

Scores prior to FY2019 Q1 were calculated and compiled by an independent external contractor. The system used for this reporting was called the Intelligent Mail® Accuracy and Performance System (iMAPS). The external contractor determined service performance based on the elapsed time between the start-the-clock event recorded by U.S. Postal Service® and the stop-the-clock event recorded by anonymous households and small businesses that report delivery information directly to the contractor. The service measure consisted of two parts: (1) how long mail pieces take to get through processing, and (2) how long mail takes from the last processing scan to delivery. The second portion was used as a delivery factor differential to determine the percent of all Presort First-Class Mail® delivered on the last processing date versus the percent delivered after the last processing date. Service performance was measured by comparing the transit time to USPS® service standards to determine the percent of mail delivered on time.

*Performance Highlights*

National Presort First-Class Mail® Overnight performance in FY2020 Quarter 3 was 95.7 percent on time, which is 0.6 points lower than the same period last year. National Two-Day performance was 93.2 percent on time, which is 2.1 points lower than the same period last year. National Three-To-Five-Day performance was 90.7 percent on time, which is 2.9 points lower when compared to the same period last year.

Southern Area led the nation in Overnight service performance, with 96.8 percent on time. Western Area led the nation in Two-Day service performance, with 96.0 percent on time in FY2020 Quarter 3. Eastern Area led the nation in Three-To-Five-Day service performance, with 91.9 percent on time.

In FY2020 Quarter 3, 29 districts met or exceeded the Overnight performance target of 96.80, eight districts met or exceeded the Two-Day service performance target of 96.50, and none of the districts met or exceeded the Three-To-Five-Day service performance target of 95.25. Alaska led the nation in Overnight service performance with 98.8 percent on time. Caribbean led in Two-Day service performance with 97.7 percent on time, and San Francisco led the nation in Three-To-Five-Day service performance with 94.7 percent on time.

United States Postal Service®

**Quarterly Performance for Presort First-Class Mail®**

**Service Variance**

**Mailpieces Delivered Between 04/01/2020 and 06/30/2020**

Quarter III
FY2020

| District | Overnight | | | Two-Day | | | Three-To-Five-Day | | |
|---|---|---|---|---|---|---|---|---|---|
| | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days |
| **Capital Metro Area** | **98.5** | **99.1** | **99.4** | **98.0** | **99.0** | **99.4** | **97.1** | **98.6** | **99.2** |
| Atlanta | 98.4 | 99.0 | 99.3 | 98.3 | 99.1 | 99.5 | 97.3 | 98.5 | 99.1 |
| Baltimore | 98.0 | 98.9 | 99.2 | 96.1 | 98.2 | 99.0 | 94.2 | 97.5 | 98.6 |
| Capital | 97.2 | 98.6 | 99.3 | 96.8 | 98.5 | 99.0 | 96.3 | 98.1 | 98.8 |
| Greater South Carolina | 99.0 | 99.5 | 99.7 | 98.6 | 99.3 | 99.6 | 97.5 | 99.0 | 99.4 |
| Greensboro | 99.1 | 99.5 | 99.6 | 98.7 | 99.3 | 99.7 | 97.4 | 98.9 | 99.5 |
| Mid-Carolinas | 98.8 | 99.2 | 99.5 | 98.2 | 99.1 | 99.5 | 97.5 | 98.8 | 99.2 |
| Northern Virginia | 98.0 | 98.8 | 99.2 | 97.6 | 98.7 | 99.1 | 97.1 | 98.6 | 99.1 |
| Richmond | 97.6 | 98.9 | 99.2 | 97.6 | 98.8 | 99.3 | 97.0 | 98.6 | 99.2 |
| **Eastern Area** | **98.6** | **99.2** | **99.5** | **97.5** | **98.7** | **99.2** | **97.2** | **98.6** | **99.2** |
| Appalachian | 99.2 | 99.5 | 99.7 | 98.2 | 99.2 | 99.5 | 97.7 | 99.0 | 99.5 |
| Central Pennsylvania | 99.0 | 99.4 | 99.6 | 97.9 | 98.9 | 99.3 | 97.0 | 98.4 | 99.1 |
| Kentuckiana | 98.9 | 99.4 | 99.6 | 98.3 | 99.1 | 99.5 | 97.4 | 98.7 | 99.3 |
| Northern Ohio | 98.3 | 99.1 | 99.4 | 96.4 | 98.1 | 99.0 | 96.3 | 98.0 | 98.8 |
| Ohio Valley | 97.9 | 98.8 | 99.2 | 96.6 | 98.1 | 98.9 | 97.0 | 98.6 | 99.2 |
| Philadelphia Metro | 98.4 | 99.0 | 99.3 | 97.4 | 98.6 | 99.1 | 97.5 | 98.8 | 99.2 |
| South Jersey | 98.9 | 99.4 | 99.5 | 97.6 | 98.8 | 99.2 | 97.3 | 98.8 | 99.3 |
| Tennessee | 98.5 | 99.2 | 99.5 | 98.3 | 99.2 | 99.5 | 97.1 | 98.7 | 99.3 |
| Western New York | 99.0 | 99.5 | 99.7 | 98.6 | 99.3 | 99.6 | 97.6 | 98.9 | 99.4 |
| Western Pennsylvania | 99.3 | 99.6 | 99.8 | 98.5 | 99.2 | 99.6 | 98.0 | 99.0 | 99.4 |
| **Great Lakes Area** | **97.2** | **98.5** | **99.1** | **95.9** | **97.8** | **98.7** | **95.6** | **97.7** | **98.7** |
| Central Illinois | 97.6 | 98.9 | 99.4 | 97.2 | 98.8 | 99.3 | 95.5 | 97.9 | 98.8 |
| Chicago | 97.8 | 98.9 | 99.2 | 96.5 | 98.2 | 98.9 | 94.7 | 96.8 | 98.3 |
| Detroit | 92.4 | 96.1 | 97.7 | 85.9 | 91.6 | 94.7 | 89.5 | 94.2 | 96.5 |
| Gateway | 98.3 | 99.0 | 99.3 | 98.0 | 99.0 | 99.4 | 97.6 | 98.8 | 99.3 |
| Greater Indiana | 98.3 | 99.2 | 99.5 | 97.4 | 98.7 | 99.3 | 97.8 | 99.0 | 99.4 |
| Greater Michigan | 98.1 | 99.0 | 99.3 | 95.9 | 97.7 | 98.6 | 96.7 | 98.3 | 99.0 |
| Lakeland | 98.7 | 99.3 | 99.6 | 97.8 | 98.9 | 99.4 | 95.6 | 97.8 | 98.8 |
| **Northeast Area** | **97.7** | **98.7** | **99.2** | **96.4** | **98.0** | **98.7** | **95.2** | **97.8** | **98.7** |
| Albany | 99.0 | 99.5 | 99.7 | 97.1 | 98.4 | 99.0 | 97.6 | 99.0 | 99.5 |
| Caribbean | 98.4 | 99.1 | 99.4 | 99.0 | 99.4 | 99.5 | 94.0 | 96.7 | 98.2 |
| Connecticut Valley | 97.9 | 98.7 | 99.3 | 97.3 | 98.5 | 99.0 | 95.9 | 98.2 | 99.0 |
| Greater Boston | 98.3 | 99.1 | 99.4 | 98.1 | 98.9 | 99.3 | 96.4 | 98.5 | 99.1 |
| Long Island | 97.7 | 99.1 | 99.5 | 95.5 | 97.7 | 98.6 | 93.9 | 97.8 | 98.8 |
| New York | 79.7 | 89.6 | 94.4 | 85.4 | 92.2 | 95.2 | 83.0 | 91.4 | 94.9 |
| Northern New England | 98.0 | 99.3 | 99.5 | 98.0 | 99.1 | 99.4 | 93.8 | 97.4 | 98.7 |
| Northern New Jersey | 96.6 | 97.9 | 98.5 | 96.7 | 98.1 | 98.7 | 96.9 | 98.3 | 99.0 |
| Triboro | 95.1 | 97.1 | 97.9 | 94.5 | 96.7 | 97.6 | 92.6 | 96.0 | 97.3 |
| Westchester | 95.5 | 97.3 | 98.0 | 95.3 | 97.4 | 98.3 | 95.4 | 97.7 | 98.6 |
| **Pacific Area** | **98.8** | **99.3** | **99.6** | **98.8** | **99.4** | **99.6** | **97.0** | **98.6** | **99.2** |
| Bay-Valley | 99.1 | 99.5 | 99.7 | 98.9 | 99.4 | 99.7 | 97.3 | 98.7 | 99.3 |
| Honolulu | 99.2 | 99.6 | 99.8 | N/A | N/A | N/A | 92.8 | 96.9 | 98.6 |
| Los Angeles | 98.3 | 99.0 | 99.3 | 98.9 | 99.4 | 99.6 | 96.9 | 98.4 | 99.1 |
| Sacramento | 98.8 | 99.4 | 99.6 | 98.6 | 99.3 | 99.6 | 96.8 | 98.6 | 99.2 |
| San Diego | 99.1 | 99.5 | 99.7 | 98.9 | 99.6 | 99.7 | 97.1 | 98.8 | 99.4 |
| San Francisco | 98.3 | 99.1 | 99.4 | 98.4 | 99.1 | 99.4 | 98.0 | 99.0 | 99.3 |
| Santa Ana | 99.4 | 99.7 | 99.8 | 99.0 | 99.5 | 99.7 | 97.5 | 98.9 | 99.5 |
| Sierra Coastal | 98.9 | 99.5 | 99.6 | 99.0 | 99.5 | 99.7 | 97.4 | 98.9 | 99.4 |

United States Postal Service®

**Quarterly Performance for Presort First-Class Mail®**

**Service Variance**

**Mailpieces Delivered Between 04/01/2020 and 06/30/2020**

Quarter III
FY2020

| District | Overnight | | | Two-Day | | | Three-To-Five-Day | | |
|---|---|---|---|---|---|---|---|---|---|
| | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days |
| **Southern Area** | **98.9** | **99.4** | **99.6** | **98.4** | **99.3** | **99.5** | **97.2** | **98.7** | **99.3** |
| Alabama | 98.9 | 99.4 | 99.6 | 98.5 | 99.3 | 99.6 | 97.6 | 98.8 | 99.3 |
| Arkansas | 98.9 | 99.5 | 99.6 | 98.5 | 99.2 | 99.5 | 97.4 | 98.9 | 99.4 |
| Dallas | 98.7 | 99.2 | 99.5 | 98.3 | 99.2 | 99.5 | 97.0 | 98.6 | 99.2 |
| Fort Worth | 98.7 | 99.3 | 99.6 | 98.1 | 99.2 | 99.5 | 97.3 | 98.8 | 99.3 |
| Gulf Atlantic | 99.1 | 99.5 | 99.7 | 98.7 | 99.4 | 99.6 | 97.5 | 98.9 | 99.4 |
| Houston | 98.8 | 99.3 | 99.6 | 98.1 | 99.2 | 99.5 | 96.4 | 98.4 | 99.2 |
| Louisiana | 98.4 | 99.2 | 99.4 | 98.4 | 99.1 | 99.4 | 96.5 | 98.5 | 99.2 |
| Mississippi | 99.0 | 99.4 | 99.6 | 97.6 | 99.0 | 99.4 | 96.7 | 98.5 | 99.2 |
| Oklahoma | 99.0 | 99.4 | 99.6 | 98.5 | 99.3 | 99.5 | 97.7 | 98.9 | 99.4 |
| Rio Grande | 98.7 | 99.3 | 99.6 | 98.1 | 99.2 | 99.6 | 97.4 | 98.9 | 99.4 |
| South Florida | 98.8 | 99.2 | 99.5 | 98.5 | 99.2 | 99.6 | 97.3 | 98.7 | 99.3 |
| Suncoast | 99.1 | 99.5 | 99.7 | 99.0 | 99.5 | 99.7 | 97.7 | 98.9 | 99.4 |
| **Western Area** | **98.9** | **99.4** | **99.6** | **98.7** | **99.3** | **99.6** | **97.1** | **98.6** | **99.2** |
| Alaska | 99.2 | 99.6 | 99.7 | 98.4 | 98.8 | 98.9 | 96.6 | 98.4 | 99.0 |
| Arizona | 98.9 | 99.3 | 99.5 | 98.9 | 99.2 | 99.4 | 97.4 | 98.8 | 99.3 |
| Central Plains | 98.5 | 99.2 | 99.5 | 98.8 | 99.3 | 99.6 | 97.6 | 98.8 | 99.3 |
| Colorado/Wyoming | 98.2 | 99.0 | 99.3 | 97.7 | 99.0 | 99.4 | 96.1 | 98.2 | 99.1 |
| Dakotas | 99.4 | 99.7 | 99.7 | 99.1 | 99.5 | 99.7 | 97.3 | 98.7 | 99.3 |
| Hawkeye | 98.7 | 99.4 | 99.6 | 98.5 | 99.3 | 99.6 | 97.6 | 98.8 | 99.3 |
| Mid-America | 99.0 | 99.4 | 99.7 | 98.6 | 99.3 | 99.6 | 97.2 | 98.6 | 99.2 |
| Nevada-Sierra | 99.4 | 99.7 | 99.7 | 97.6 | 98.8 | 99.5 | 97.7 | 98.9 | 99.3 |
| Northland | 98.9 | 99.5 | 99.7 | 98.6 | 99.4 | 99.6 | 96.1 | 98.4 | 99.2 |
| Portland | 99.0 | 99.5 | 99.7 | 98.8 | 99.4 | 99.6 | 96.7 | 98.5 | 99.2 |
| Salt Lake City | 99.0 | 99.4 | 99.6 | 98.9 | 99.3 | 99.6 | 96.4 | 98.4 | 99.1 |
| Seattle | 98.9 | 99.4 | 99.6 | 98.9 | 99.4 | 99.6 | 97.0 | 98.7 | 99.3 |
| **Nation FY2020 Q3** | **98.4** | **99.1** | **99.4** | **97.5** | **98.7** | **99.2** | **96.7** | **98.4** | **99.1** |
| | | | | | | | | | |
| **Nation FY2019 Q3 (SPLY)** | **98.6** | **99.2** | **99.5** | **98.2** | **99.1** | **99.4** | **97.9** | **98.9** | **99.4** |
| | | | | | | | | | |
| **Nation FY2009 Annual** | **98.7** | **99.3** | **99.4** | **97.2** | **98.6** | **99.2** | **93.3** | **96.7** | **98.3** |
| **Nation FY2010 Annual** | **98.9** | **99.6** | **99.8** | **98.3** | **99.3** | **99.6** | **96.8** | **98.4** | **99.0** |
| **Nation FY2011 Annual** | **98.6** | **99.5** | **99.7** | **98.0** | **99.4** | **99.7** | **97.8** | **99.1** | **99.6** |
| **Nation FY2012 Annual** | **99.5** | **99.8** | **99.9** | **99.1** | **99.7** | **99.8** | **98.9** | **99.6** | **99.8** |
| **Nation FY2013 Annual** | **99.6** | **99.8** | **99.9** | **99.4** | **99.8** | **99.9** | **98.9** | **99.6** | **99.8** |
| **Nation FY2014 Annual** | **99.5** | **99.8** | **99.9** | **99.2** | **99.7** | **99.9** | **97.8** | **99.2** | **99.6** |
| **Nation FY2015 Annual** | **99.1** | **99.6** | **99.8** | **98.5** | **99.4** | **99.7** | **96.6** | **98.8** | **99.5** |
| **Nation FY2016 Annual** | **99.1** | **99.6** | **99.8** | **98.7** | **99.4** | **99.7** | **97.6** | **99.0** | **99.5** |
| **Nation FY2017 Annual** | **99.1** | **99.6** | **99.8** | **98.7** | **99.4** | **99.7** | **98.1** | **99.2** | **99.6** |
| **Nation FY2018 Annual** | **99.0** | **99.5** | **99.7** | **98.6** | **99.4** | **99.7** | **97.8** | **99.1** | **99.5** |
| **Nation FY2019 Annual** | **98.4** | **99.1** | **99.4** | **97.9** | **99.0** | **99.4** | **97.4** | **98.7** | **99.3** |
| **Nation FY2020 Q1** | **97.9** | **98.8** | **99.2** | **97.7** | **98.9** | **99.3** | **97.1** | **98.7** | **99.2** |
| **Nation FY2020 Q2** | **98.6** | **99.2** | **99.5** | **98.1** | **99.1** | **99.5** | **97.6** | **98.9** | **99.4** |

United States Postal Service®

Quarter III
FY2020

**Quarterly Performance for Single-Piece First-Class Mail®**

### Overview

Beginning FY2019 Q1, service performance for Single-Piece First-Class Mail® is measured through the USPS® internal measurement system. The system combines scanning of mailpieces by postal personnel at randomly selected collection and delivery points with in-process machine scans for all eligible mail to estimate total transit time for the mail. The total transit is comprised of three legs: collection to initial automated processing, known as First Mile; initial processing to final automated processing, known as Processing Duration; and final processing to delivery, known as Last Mile. The estimated transit-time is compared against Single-Piece First-Class Mail® service standards to determine the percent of mail delivered on time.

Scores prior to FY2019 Q1 were calculated via the External First-Class Mail® Measurement System (EXFC). EXFC was an external sampling system that measured the time it took from deposit of mail into a collection box or lobby chute until its delivery to a home or business.

Single-Piece First-Class Mail® parcels were classified as a competitive product effective for pieces mailed on or after September 3, 2017; therefore, Single-Piece First-Class Mail® parcel results are no longer included in Single-Piece First-Class Mail® reporting.

### Limitations

Single piece mail that is first observed in incoming processing operations rather than the expected outgoing processing operations is referred to as First Processing Operation Type 2 mail, or FPO2. The volume of FPO2 mail as a proportion of total single-piece volume observed in processing duration in Internal SPM is significantly higher than the proportion observed for pieces sampled in collection or associated from the retail channel, particularly for flats. This is likely due to the inclusion of commercial mail that is sorted to destination and begins processing in incoming sort operations but is not able to be identified as commercial mail. Because FPO2 mail generally experiences longer durations in First Mile than mail first observed in outgoing operations, the higher proportion of FPO2 mail led to scores which were not accurate. FPO2 volume proportions in single-piece processing duration have been weighted for reporting such that they are aligned with the volume proportions observed for pieces in the collection sampling process and retail pieces to improve the measurement accuracy.

Sampling for most high-volume courtesy and business reply mail delivery points was not enabled during the quarter, resulting in very limited representation of the reply mail portion of Single-Piece First-Class Mail® letters/postcards in the Last Mile sample. Due to the very limited data available to measure the overall transit time for this mail, all of the courtesy and business reply mail were excluded from these results. It should be noted that the legacy system did not measure delivery to these delivery points either. This is a deviation to the plan, not a degradation in comparison to the legacy system.

### Performance Highlights

In FY2020 Quarter 3, national Single-Piece First-Class Mail® Two-Day performance was 92.4 percent on time and national Three-To-Five Day performance was 81.4 percent on time. The Two-Day performance score was 1.5 points lower than the same period last year. The Three-To-Five-Day performance score was 5.1 points lower than the same period last year.

Nationally, at least 98.1 percent of mail across all service standards was delivered within the service standard plus three days in FY2020 Quarter 3.

In FY2020 Quarter 3 at the district level, there were not any districts that scored at or above the performance target of 96.50 for Two-Day. Dakotas had the highest Two-Day performance at 96.1 percent on time. Two-Day performance improved for 9 out of 67 districts compared to the same period last year. Hawkeye had the highest Three-To-Five-Day performance at 87.3 percent on time. Three-To-Five-Day performance improved for one district compared to the same period last year.

United States Postal Service®

**Quarterly Performance for Single-Piece First-Class Mail®**

Mailpieces Delivered Between 04/01/2020 and 06/30/2020

Quarter III
FY2020

| District | Overnight Percent On Time | Two-Day Percent On Time | Three-To-Five-Day Percent On Time |
|---|---|---|---|
| **Capital Metro Area** | **N/A** | **92.0** | **82.2** |
| Atlanta | N/A | 92.1 | 83.5 |
| Baltimore | N/A | 88.9 | 73.6 |
| Capital | N/A | 88.9 | 81.4 |
| Greater South Carolina | N/A | 95.1 | 85.3 |
| Greensboro | N/A | 93.2 | 83.2 |
| Mid-Carolinas | N/A | 93.4 | 81.7 |
| Northern Virginia | N/A | 91.6 | 84.8 |
| Richmond | N/A | 91.0 | 80.3 |
| **Eastern Area** | **N/A** | **93.6** | **83.6** |
| Appalachian | N/A | 94.7 | 84.8 |
| Central Pennsylvania | N/A | 93.5 | 82.1 |
| Kentuckiana | N/A | 94.6 | 83.3 |
| Northern Ohio | N/A | 92.3 | 82.8 |
| Ohio Valley | N/A | 92.5 | 83.7 |
| Philadelphia Metro | N/A | 91.8 | 83.3 |
| South Jersey | N/A | 92.8 | 82.0 |
| Tennessee | N/A | 94.4 | 83.6 |
| Western New York | N/A | 95.2 | 84.0 |
| Western Pennsylvania | N/A | 95.7 | 86.7 |
| **Great Lakes Area** | **N/A** | **90.2** | **80.7** |
| Central Illinois | N/A | 91.8 | 82.0 |
| Chicago | N/A | 88.7 | 80.0 |
| Detroit | N/A | 73.5 | 64.7 |
| Gateway | N/A | 92.6 | 83.9 |
| Greater Indiana | N/A | 93.6 | 84.0 |
| Greater Michigan | N/A | 91.8 | 81.9 |
| Lakeland | N/A | 94.0 | 83.7 |
| **Northeast Area** | **N/A** | **88.3** | **73.8** |
| Albany | N/A | 93.6 | 83.0 |
| Caribbean | N/A | 90.0 | 67.5 |
| Connecticut Valley | N/A | 90.0 | 77.8 |
| Greater Boston | N/A | 90.9 | 77.8 |
| Long Island | N/A | 86.6 | 72.2 |
| New York | N/A | 68.4 | 53.6 |
| Northern New England | N/A | 94.0 | 76.5 |
| Northern New Jersey | N/A | 87.1 | 72.2 |
| Triboro | N/A | 74.5 | 60.9 |
| Westchester | N/A | 88.2 | 74.4 |
| **Pacific Area** | **N/A** | **92.9** | **80.8** |
| Bay-Valley | N/A | 93.4 | 84.0 |
| Honolulu | N/A | 92.1 | 61.1 |
| Los Angeles | N/A | 89.2 | 76.2 |
| Sacramento | N/A | 92.1 | 80.6 |
| San Diego | N/A | 94.0 | 79.8 |
| San Francisco | N/A | 93.7 | 84.6 |
| Santa Ana | N/A | 94.3 | 83.2 |
| Sierra Coastal | N/A | 93.5 | 82.1 |

United States Postal Service®

**Quarterly Performance for Single-Piece First-Class Mail®**

Mailpieces Delivered Between 04/01/2020 and 06/30/2020

Quarter III
FY2020

| District | Overnight Percent On Time | Two-Day Percent On Time | Three-To-Five-Day Percent On Time |
|---|---|---|---|
| **Southern Area** | **N/A** | **93.6** | **82.1** |
| Alabama | N/A | 93.1 | 82.2 |
| Arkansas | N/A | 95.2 | 84.7 |
| Dallas | N/A | 92.6 | 83.6 |
| Fort Worth | N/A | 92.0 | 81.1 |
| Gulf Atlantic | N/A | 94.5 | 80.9 |
| Houston | N/A | 92.1 | 79.6 |
| Louisiana | N/A | 93.1 | 80.9 |
| Mississippi | N/A | 94.1 | 82.0 |
| Oklahoma | N/A | 96.0 | 84.4 |
| Rio Grande | N/A | 93.7 | 82.9 |
| South Florida | N/A | 92.2 | 80.9 |
| Suncoast | N/A | 94.1 | 82.6 |
| **Western Area** | **N/A** | **94.4** | **82.5** |
| Alaska | N/A | 92.3 | 87.0 |
| Arizona | N/A | 94.2 | 81.9 |
| Central Plains | N/A | 95.6 | 83.9 |
| Colorado/Wyoming | N/A | 90.4 | 75.4 |
| Dakotas | N/A | 96.1 | 85.4 |
| Hawkeye | N/A | 95.9 | 87.3 |
| Mid-America | N/A | 94.3 | 81.3 |
| Nevada-Sierra | N/A | 95.0 | 84.9 |
| Northland | N/A | 94.3 | 83.3 |
| Portland | N/A | 92.7 | 81.8 |
| Salt Lake City | N/A | 96.0 | 83.7 |
| Seattle | N/A | 94.6 | 82.1 |
| **Nation FY2020 Q3** | **N/A** | **92.4** | **81.4** |
| | | | |
| **Nation FY2019 Q3 (SPLY)** | **N/A** | **93.9** | **86.5** |
| | | | |
| **Nation FY2009 Annual** | **96.1** | **93.5** | **90.8** |
| **Nation FY2010 Annual** | **96.3** | **93.6** | **91.6** |
| **Nation FY2011 Annual** | **96.2** | **93.4** | **91.2** |
| **Nation FY2012 Annual** | **96.5** | **94.8** | **92.3** |
| **Nation FY2013 Annual** | **96.1** | **95.3** | **91.6** |
| **Nation FY2014 Annual** | **96.0** | **94.9** | **87.7** |
| **Nation FY2015 Annual** | **95.6** | **93.2** | **76.5** |
| **Nation FY2016 Annual** | **N/A** | **94.7** | **83.7** |
| **Nation FY2017 Annual** | **N/A** | **94.7** | **85.6** |
| **Nation FY2018 Annual** | **N/A** | **93.8** | **82.5** |
| **Nation FY2019 Annual** | **N/A** | **92.0** | **80.9** |
| **Nation FY2020 Q1** | **N/A** | **91.9** | **78.2** |
| **Nation FY2020 Q2** | **N/A** | **93.0** | **83.3** |
| | | | |
| **FY2020 Annual Target** | **N/A** | **96.50** | **95.25** |

United States Postal Service®

Quarter III
FY2020

**Quarterly Performance for Single-Piece First-Class Mail®**
**Service Variance**

*Overview*

Beginning FY2019 Q1, service performance for Single-Piece First-Class Mail® is measured through the USPS® internal measurement system. The system combines scanning of mailpieces by postal personnel at randomly selected collection and delivery points with in-process machine scans for all eligible mail to estimate total transit time for the mail. The total transit is comprised of three legs: collection to initial automated processing, known as First Mile; initial processing to final automated processing, known as Processing Duration; and final processing to delivery, known as Last Mile. The estimated transit-time is compared against Single-Piece First-Class Mail® service standards to determine the percent of mail delivered on time.

Scores prior to FY2019 Q1 were calculated via the External First-Class Mail® Measurement System (EXFC). EXFC was an external sampling system that measured the time it took from deposit of mail into a collection box or lobby chute until its delivery to a home or business.

Single-Piece First-Class Mail® parcels were classified as a competitive product effective for pieces mailed on or after September 3, 2017; therefore, Single-Piece First-Class Mail® parcel results are no longer included in Single-Piece First-Class Mail® reporting.

*Limitations*

Single piece mail that is first observed in incoming processing operations rather than the expected outgoing processing operations is referred to as First Processing Operation Type 2 mail, or FPO2. The volume of FPO2 mail as a proportion of total single-piece volume observed in processing duration in Internal SPM is significantly higher than the proportion observed for pieces sampled in collection or associated from the retail channel, particularly for flats. This is likely due to the inclusion of commercial mail that is sorted to destination and begins processing in incoming sort operations but is not able to be identified as commercial mail. Because FPO2 mail generally experiences longer durations in First Mile than mail first observed in outgoing operations, the higher proportion of FPO2 mail led to scores which were not accurate. FPO2 volume proportions in single-piece processing duration have been weighted for reporting such that they are aligned with the volume proportions observed for pieces in the collection sampling process and retail pieces to improve the measurement accuracy.

Sampling for most high-volume courtesy and business reply mail delivery points was not enabled during the quarter, resulting in very limited representation of the reply mail portion of Single-Piece First-Class Mail® letters/postcards in the Last Mile sample. Due to the very limited data available to measure the overall transit time for this mail, all of the courtesy and business reply mail were excluded from these results. It should be noted that the legacy system did not measure delivery to these delivery points either. This is a deviation to the plan, not a degradation in comparison to the legacy system.

*Performance Highlights*

In FY2020 Quarter 3, national Single-Piece First-Class Mail® Two-Day performance was 92.4 percent on time and national Three-To-Five Day performance was 81.4 percent on time. The Two-Day performance score was 1.5 points lower than the same period last year. The Three-To-Five-Day performance score was 5.1 points lower than the same period last year.

Nationally, at least 98.1 percent of mail across all service standards was delivered within the service standard plus three days in FY2020 Quarter 3.

In FY2020 Quarter 3 at the district level, there were not any districts that scored at or above the performance target of 96.50 for Two-Day. Dakotas had the highest Two-Day performance at 96.1 percent on time. Two-Day performance improved for 9 out of 67 districts compared to the same period last year. Hawkeye had the highest Three-To-Five-Day performance at 87.3 percent on time. Three-To-Five-Day performance improved for one district compared to the same period last year.

United States Postal Service®

**Quarterly Performance for Single-Piece First-Class Mail®**
**Service Variance**
Mailpieces Delivered Between 04/01/2020 and 06/30/2020

Quarter III
FY2020

| District | Overnight | | | Two-Day | | | Three-To-Five-Day | | |
|---|---|---|---|---|---|---|---|---|---|
| | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days |
| **Capital Metro Area** | **N/A** | **N/A** | **N/A** | **97.1** | **98.5** | **99.0** | **93.9** | **97.0** | **98.2** |
| Atlanta | N/A | N/A | N/A | 96.9 | 98.3 | 98.8 | 93.9 | 96.8 | 98.1 |
| Baltimore | N/A | N/A | N/A | 96.0 | 97.8 | 98.6 | 90.8 | 95.6 | 97.5 |
| Capital | N/A | N/A | N/A | 95.6 | 97.6 | 98.4 | 93.2 | 96.4 | 97.8 |
| Greater South Carolina | N/A | N/A | N/A | 98.4 | 99.1 | 99.4 | 95.1 | 97.7 | 98.7 |
| Greensboro | N/A | N/A | N/A | 97.9 | 98.9 | 99.3 | 94.6 | 97.4 | 98.5 |
| Mid-Carolinas | N/A | N/A | N/A | 97.7 | 98.7 | 99.2 | 93.6 | 97.0 | 98.3 |
| Northern Virginia | N/A | N/A | N/A | 97.0 | 98.4 | 98.9 | 95.2 | 97.6 | 98.6 |
| Richmond | N/A | N/A | N/A | 96.9 | 98.4 | 99.0 | 93.7 | 96.8 | 98.2 |
| **Eastern Area** | **N/A** | **N/A** | **N/A** | **97.5** | **98.6** | **99.1** | **94.2** | **97.1** | **98.3** |
| Appalachian | N/A | N/A | N/A | 98.3 | 99.1 | 99.4 | 94.5 | 97.2 | 98.4 |
| Central Pennsylvania | N/A | N/A | N/A | 97.5 | 98.6 | 99.1 | 94.0 | 97.1 | 98.4 |
| Kentuckiana | N/A | N/A | N/A | 98.1 | 98.9 | 99.3 | 94.3 | 97.1 | 98.3 |
| Northern Ohio | N/A | N/A | N/A | 96.8 | 98.3 | 98.9 | 93.6 | 96.5 | 97.9 |
| Ohio Valley | N/A | N/A | N/A | 96.9 | 98.2 | 98.9 | 94.1 | 96.9 | 98.2 |
| Philadelphia Metro | N/A | N/A | N/A | 96.6 | 98.1 | 98.8 | 93.9 | 97.0 | 98.3 |
| South Jersey | N/A | N/A | N/A | 97.0 | 98.3 | 98.9 | 94.0 | 97.1 | 98.3 |
| Tennessee | N/A | N/A | N/A | 98.0 | 98.9 | 99.2 | 94.2 | 97.0 | 98.3 |
| Western New York | N/A | N/A | N/A | 98.2 | 99.0 | 99.4 | 94.4 | 97.2 | 98.4 |
| Western Pennsylvania | N/A | N/A | N/A | 98.5 | 99.2 | 99.5 | 95.5 | 97.8 | 98.7 |
| **Great Lakes Area** | **N/A** | **N/A** | **N/A** | **96.1** | **97.9** | **98.6** | **92.5** | **96.0** | **97.6** |
| Central Illinois | N/A | N/A | N/A | 96.8 | 98.3 | 98.9 | 93.8 | 96.9 | 98.2 |
| Chicago | N/A | N/A | N/A | 95.7 | 97.6 | 98.5 | 92.5 | 96.1 | 97.7 |
| Detroit | N/A | N/A | N/A | 88.7 | 93.8 | 96.0 | 82.0 | 89.3 | 93.1 |
| Gateway | N/A | N/A | N/A | 97.2 | 98.5 | 99.0 | 94.1 | 96.9 | 98.2 |
| Greater Indiana | N/A | N/A | N/A | 97.6 | 98.7 | 99.2 | 94.5 | 97.2 | 98.4 |
| Greater Michigan | N/A | N/A | N/A | 96.9 | 98.2 | 98.9 | 93.3 | 96.6 | 98.0 |
| Lakeland | N/A | N/A | N/A | 97.7 | 98.7 | 99.2 | 94.4 | 97.3 | 98.4 |
| **Northeast Area** | **N/A** | **N/A** | **N/A** | **95.0** | **97.2** | **98.1** | **89.8** | **94.9** | **97.0** |
| Albany | N/A | N/A | N/A | 97.6 | 98.7 | 99.2 | 94.5 | 97.4 | 98.5 |
| Caribbean | N/A | N/A | N/A | 95.6 | 97.2 | 98.0 | 87.4 | 93.3 | 95.9 |
| Connecticut Valley | N/A | N/A | N/A | 95.7 | 97.7 | 98.6 | 91.9 | 96.1 | 97.8 |
| Greater Boston | N/A | N/A | N/A | 96.2 | 97.9 | 98.6 | 92.4 | 96.3 | 97.9 |
| Long Island | N/A | N/A | N/A | 94.9 | 97.2 | 98.2 | 90.1 | 95.5 | 97.5 |
| New York | N/A | N/A | N/A | 84.6 | 91.2 | 94.3 | 75.2 | 86.7 | 92.2 |
| Northern New England | N/A | N/A | N/A | 97.6 | 98.7 | 99.1 | 90.7 | 95.4 | 97.5 |
| Northern New Jersey | N/A | N/A | N/A | 94.1 | 96.4 | 97.5 | 89.3 | 94.3 | 96.4 |
| Triboro | N/A | N/A | N/A | 89.1 | 93.9 | 95.8 | 83.9 | 91.8 | 94.9 |
| Westchester | N/A | N/A | N/A | 95.0 | 97.4 | 98.3 | 90.6 | 95.8 | 97.6 |
| **Pacific Area** | **N/A** | **N/A** | **N/A** | **97.6** | **98.7** | **99.1** | **93.4** | **96.8** | **98.2** |
| Bay-Valley | N/A | N/A | N/A | 98.0 | 99.0 | 99.3 | 94.3 | 97.2 | 98.4 |
| Honolulu | N/A | N/A | N/A | 96.8 | 98.1 | 98.9 | 83.1 | 92.8 | 96.4 |
| Los Angeles | N/A | N/A | N/A | 95.9 | 97.7 | 98.3 | 91.3 | 95.5 | 97.3 |
| Sacramento | N/A | N/A | N/A | 97.8 | 98.8 | 99.2 | 93.7 | 97.1 | 98.3 |
| San Diego | N/A | N/A | N/A | 97.8 | 98.7 | 99.2 | 93.6 | 97.2 | 98.4 |
| San Francisco | N/A | N/A | N/A | 97.6 | 98.7 | 99.1 | 94.3 | 96.9 | 98.1 |
| Santa Ana | N/A | N/A | N/A | 98.1 | 98.9 | 99.3 | 94.5 | 97.4 | 98.5 |
| Sierra Coastal | N/A | N/A | N/A | 97.7 | 98.7 | 99.2 | 94.3 | 97.3 | 98.5 |

2 of 3

United States Postal Service®

**Quarterly Performance for Single-Piece First-Class Mail®**
**Service Variance**
Mailpieces Delivered Between 04/01/2020 and 06/30/2020

Quarter III
FY2020

| District | Overnight | | | Two-Day | | | Three-To-Five-Day | | |
|---|---|---|---|---|---|---|---|---|---|
| | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days | Percent Within +1-Day | Percent Within +2-Days | Percent Within +3-Days |
| **Southern Area** | **N/A** | **N/A** | **N/A** | **97.5** | **98.6** | **99.1** | **93.8** | **96.9** | **98.2** |
| Alabama | N/A | N/A | N/A | 97.4 | 98.7 | 99.2 | 93.9 | 97.0 | 98.4 |
| Arkansas | N/A | N/A | N/A | 98.3 | 99.1 | 99.4 | 94.9 | 97.5 | 98.6 |
| Dallas | N/A | N/A | N/A | 96.9 | 98.1 | 98.6 | 94.0 | 96.8 | 97.9 |
| Fort Worth | N/A | N/A | N/A | 96.7 | 98.0 | 98.6 | 93.1 | 96.4 | 97.7 |
| Gulf Atlantic | N/A | N/A | N/A | 98.0 | 98.9 | 99.3 | 93.4 | 96.8 | 98.2 |
| Houston | N/A | N/A | N/A | 96.8 | 98.2 | 98.8 | 93.1 | 96.7 | 98.1 |
| Louisiana | N/A | N/A | N/A | 97.4 | 98.5 | 98.9 | 93.1 | 96.5 | 97.9 |
| Mississippi | N/A | N/A | N/A | 97.8 | 98.7 | 99.2 | 93.2 | 96.6 | 98.0 |
| Oklahoma | N/A | N/A | N/A | 98.6 | 99.2 | 99.5 | 95.1 | 97.6 | 98.6 |
| Rio Grande | N/A | N/A | N/A | 97.8 | 98.9 | 99.2 | 93.9 | 96.9 | 98.2 |
| South Florida | N/A | N/A | N/A | 96.9 | 98.2 | 98.8 | 93.2 | 96.7 | 98.1 |
| Suncoast | N/A | N/A | N/A | 97.8 | 98.8 | 99.3 | 94.3 | 97.2 | 98.5 |
| **Western Area** | **N/A** | **N/A** | **N/A** | **98.1** | **99.0** | **99.3** | **94.3** | **97.2** | **98.4** |
| Alaska | N/A | N/A | N/A | 96.8 | 98.3 | 98.9 | 94.6 | 97.3 | 98.5 |
| Arizona | N/A | N/A | N/A | 97.8 | 98.7 | 99.1 | 94.1 | 97.1 | 98.2 |
| Central Plains | N/A | N/A | N/A | 98.5 | 99.1 | 99.5 | 94.6 | 97.4 | 98.5 |
| Colorado/Wyoming | N/A | N/A | N/A | 96.7 | 98.2 | 98.7 | 92.1 | 96.3 | 97.9 |
| Dakotas | N/A | N/A | N/A | 98.7 | 99.3 | 99.6 | 95.1 | 97.6 | 98.6 |
| Hawkeye | N/A | N/A | N/A | 98.6 | 99.3 | 99.6 | 95.7 | 97.8 | 98.7 |
| Mid-America | N/A | N/A | N/A | 98.1 | 99.0 | 99.4 | 93.5 | 96.9 | 98.3 |
| Nevada-Sierra | N/A | N/A | N/A | 98.2 | 98.9 | 99.3 | 94.7 | 97.3 | 98.4 |
| Northland | N/A | N/A | N/A | 97.9 | 99.0 | 99.4 | 94.9 | 97.6 | 98.7 |
| Portland | N/A | N/A | N/A | 98.1 | 99.0 | 99.4 | 93.7 | 97.0 | 98.3 |
| Salt Lake City | N/A | N/A | N/A | 98.7 | 99.2 | 99.5 | 94.5 | 97.4 | 98.5 |
| Seattle | N/A | N/A | N/A | 98.2 | 99.0 | 99.4 | 94.4 | 97.3 | 98.4 |
| **Nation FY2020 Q3** | **N/A** | **N/A** | **N/A** | **97.1** | **98.4** | **98.9** | **93.4** | **96.7** | **98.1** |
| | | | | | | | | | |
| **Nation FY2019 Q3 (SPLY)** | **N/A** | **N/A** | **N/A** | **97.7** | **98.7** | **99.1** | **95.6** | **97.8** | **98.7** |
| | | | | | | | | | |
| **Nation FY2009 Annual** | **99.2** | **99.6** | **99.8** | **98.5** | **99.4** | **99.7** | **97.5** | **99.1** | **99.6** |
| **Nation FY2010 Annual** | **99.2** | **99.6** | **99.8** | **98.5** | **99.4** | **99.7** | **97.9** | **99.2** | **99.6** |
| **Nation FY2011 Annual** | **99.2** | **99.6** | **99.8** | **98.4** | **99.4** | **99.7** | **97.7** | **99.1** | **99.6** |
| **Nation FY2012 Annual** | **99.2** | **99.6** | **99.8** | **98.8** | **99.5** | **99.7** | **98.0** | **99.2** | **99.7** |
| **Nation FY2013 Annual** | **99.1** | **99.6** | **99.8** | **98.7** | **99.5** | **99.7** | **97.8** | **99.1** | **99.6** |
| **Nation FY2014 Annual** | **99.1** | **99.6** | **99.7** | **98.7** | **99.4** | **99.7** | **96.4** | **98.5** | **99.3** |
| **Nation FY2015 Annual** | **99.0** | **99.5** | **99.7** | **98.3** | **99.3** | **99.6** | **93.3** | **97.4** | **98.9** |
| **Nation FY2016 Annual** | **N/A** | **N/A** | **N/A** | **98.5** | **99.3** | **99.6** | **95.5** | **98.1** | **99.1** |
| **Nation FY2017 Annual** | **N/A** | **N/A** | **N/A** | **98.5** | **99.3** | **99.6** | **96.0** | **98.4** | **99.3** |
| **Nation FY2018 Annual** | **N/A** | **N/A** | **N/A** | **98.2** | **99.2** | **99.6** | **95.0** | **97.9** | **99.0** |
| **Nation FY2019 Annual** | **N/A** | **N/A** | **N/A** | **97.1** | **98.4** | **99.0** | **93.5** | **96.9** | **98.3** |
| **Nation FY2020 Q1** | **N/A** | **N/A** | **N/A** | **97.1** | **98.5** | **99.1** | **93.0** | **96.9** | **98.3** |
| **Nation FY2020 Q2** | **N/A** | **N/A** | **N/A** | **97.3** | **98.5** | **99.0** | **94.4** | **97.2** | **98.3** |

3 of 3

# Exhibit 16

1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4  ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5  *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7  KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9  (206) 464-7744

10

11            **UNITED STATES DISTRICT COURT**
            **EASTERN DISTRICT OF WASHINGTON**
12                     **AT YAKIMA**

13  STATE OF WASHINGTON, et al.,          NO.  1:20-cv-03127-SAB

14                  Plaintiffs,           DECLARATION OF LANCE
                                          GOUGH IN SUPPORT OF
       v.                                 PLAINTIFF STATES' MOTION
15                                        FOR PRELIMINARY
    DONALD J. TRUMP, et al.,              INJUNCTION
16
                  Defendants.
17

18

19

20

21

22

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 106 of 342

I, Lance Gough, declare as follows:

1.  I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.  I make this declaration from personal knowledge and based on records from the Chicago Board of Elections, located in Chicago, Illinois, and would testify to the following facts if called as a witness at hearing or trial.

3.  I am the Executive Director at the Chicago Board of Elections, responsible for managing all voter registrations, ballot and voting-equipment preparations, recruitment and training of poll workers, assignments of polling places, and ensuring equitable and accessible programs for Early Voting, Vote By Mail and Election Day voting in keeping with all state and federal statutes and case law.

4.  The Chicago Board of Elections serves as the local election authority for Illinois voters who reside in Chicago, Illinois. There are approximately 1.5 million Chicago residents currently registered to vote in the area subject to our jurisdiction. Our office is one of 108 local election authorities in Illinois. The local election authorities handle local voter registration programs, arrange for the printing of ballots, and manage the vote count at the local level. They are additionally responsible for accepting vote by mail applications, mailing ballots to voters who have applied to vote by mail, and accepting ballots returned by mail. *See* 10 ILCS 5/2B-15; 10 ILCS 5/2B-20.

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 107 of 342

1  The local election authorities function under the supervision of the Illinois State

2  Board of Elections ("ISBE"), which oversees the administration of registration

3  and election laws throughout the State of Illinois. *See* 10 ILCS 5/1A-1.

**Illinois' Statutory Vote by Mail Procedures**

5      5.    Illinois has successfully utilized vote by mail procedures for over a

6  decade. In 2009, Illinois began allowing any qualified and registered voter in

7  the state to choose to vote by mail in accordance with deadlines and procedures

8  established in Illinois Election Code. *See* Pub. Act 96-0553 (eff. Aug. 17, 2009)

9  (amending 10 ILCS 5/19-1).

10     6.    This year, in response to the COVID-19 pandemic and to protect

11 the health of Illinois residents, Illinois enacted new legislation to further

12 enhance the availability of vote by mail for Illinois voters participating in the

13 2020 general election.  On June 16, 2020, Public Act 101-0642 became law in

14 Illinois. *See* Pub. Act 101-0642 (eff. June 16, 2020) (creating 10 ILCS 5/2B *et*

15 *seq.*).

16     7.    Public Act 101-0642 permits voters to request applications "for an

17 official ballot for the 2020 general election to be sent to the elector through

18 mail." 10 ILCS 5/2B-15(a).

19     8.    In addition, the new law requires election authorities to send

20 applications for "an official vote by mail ballot for the 2020 general election" to

21 any elector who voted, whether by mail or in person, in (1) the 2018 general

22

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 108 of 342

election; (2) the 2019 consolidated election (in which various municipal elections occur in Illinois); or (3) the 2020 general primary election. *Id* § 5/2B-15(b). Vote by mail applications must also be sent to voters who have registered to vote or changed their registration address after March 17, 2020, the date of the general primary election, and on or before July 31, 2020. *Id.* The vote by mail applications sent to voters must also include a notice stating that "upon completion of the application, the elector **will receive** an official ballot no more than 40 days and no less than 30 days before the election[.]" *Id.* §5/2B-15(c) (emphasis added). The notice also informs voters that they may return the application by mail to their election authority. *Id.* Both the application and notice are to be sent by mail "to the elector's registered address and any other mailing address the election authority may have on file, including a mailing address to which a prior vote by mail ballot was mailed." *Id.* § 5/2B-15(d).

9.    Beginning on September 24, 2020, election authorities in Illinois must mail official ballots to voters in Illinois who have requested them. *Id.* § 2B-20(a). Voters requesting a vote by mail ballot on or before October 1, 2020, must receive one "no later than October 6, 2020." *Id.* For requests received after October 1, 2020, an election authority must mail an official ballot within two business days after receiving the application. *Id.* Election authorities must continue accepting vote by mail applications received by mail or electronically through October 29, 2020—five days before election day, November 3, 2020.

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 109 of 342

1    *See* 10 ILCS 5/19-2. Voters may also submit a vote by mail application in

2    person as late as November 2, 2020, the day before election day. *Id.*

3        10.    For voters returning their completed ballots by mail, their ballots

4    must be postmarked on or before election day and received within the fourteen-

5    day period following election day during which provisional ballots are counted.

6    *See* 10 ILCS 5/19-3, 19-8(c); 10 ILCS 5/20-2.3. Illinois law also permits

7    election authorities to create "secure collection sites for the postage-free return

8    of vote by mail ballots," and specifically provides that "[e]lection authorities

9    shall accept any vote by mail ballot returned, including ballots returned with

10    insufficient or no postage[.]" 10 ILCS 5/2B-20(e). Voters who received vote by

11    mail ballots and wish to personally return them have until the close of the polls

12    on election day to submit them to collection sites for the issuing election

13    authority. 10 ILCS 5/2B-20(e). Illinois law specifically provides that "[e]lection

14    authorities shall accept any vote by mail ballot returned, including ballots

15    returned with insufficient or no postage[.]" *Id.* Critically, Illinois law permits

16    voters to select whether they will return their ballot by mail or in person using

17    the secure collection site.

18        **<u>Vote By Mail Trends in Chicago, Illinois</u>**

19        11.    In previous General Elections, Chicago voters relied upon vote by

20    mail to cast their ballots.  Approximately 4% of Chicago ballots cast were

21    received through Absentee/Vote By Mail programs in Presidential Elections

22

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 110 of 342

from 2000 to 2012. However, by 2016, election authorities and campaigns had

begun promoting the no-excuse Vote By Mail option, and approximately 10%

of ballots were cast through Vote By Mail programs.  Then, at the March 17,

2020 Primary, which occurred during the onset of the Covid-19 global

pandemic, more than 20% of all ballots were cast through Vote By Mail. The

City broke its all-time record with 117,118 applications from civilians in

Chicago, college students, military/overseas voters and nursing home residents.

12.    Following the requirements of the new Illinois statute, starting July

18, the Chicago Board of Elections mailed more than 900,000 vote by mail

applications to Chicago voters. Chicago would have sent more, but by early

July, already 130,000 voters who qualified to receive the applications had

already filed applications online to Vote By Mail.  The mailing was completed

on July 31. The Board currently has processed 233,000 applications and has

approximately 20,000 more to be scanned, meaning more than 250,000

applications are currently in the pipeline.  We have already doubled our all-time

records for applications, and we anticipate we may double this number by mid-

October. I anticipate that will significantly increase the number of voters who

will opt to vote by mail. Historically, we have seen approximately 80% or more

of the Vote By Mail ballots returned.

13.    As of August 18, the Chicago Board of Elections has received

more than 250,000 ballot applications from voters who wish to vote by mail.

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 111 of 342

1   This number is significantly higher than what we have observed in previous

2   General Elections. This is already more than two times the all-time records

3   from March 2020 and November 1944, when so many Chicago voters were

4   serving in the military around the globe during World War II.  Given the typical

5   Presidential Election turnout of 1.1 million voters in Chicago, we anticipate

6   more than 25% of all ballots will be cast through Vote By Mail.

7       14.    Based on the trends our office is observing, I believe it is highly

8   likely that the 107 other local election authorities in Illinois will witness

9   significant increases in Vote By Mail.

10          **Impacts of United States Postal Service's Recent Changes**

11      15.    I am aware and have seen the letter that the United States Postal

12  Service ("USPS") mailed to ISBE on July 30, 2020. In that letter, USPS warned

13  ISBE that that "under our reading of Illinois' election laws, certain deadlines for

14  requesting and casting mail-in ballots are incongruous with the Postal Service's

15  delivery standards. This mismatch creates a risk that ballots requested near the

16  deadline under state law will not be returned by mail in time to be counted under

17  your laws as we understand them." The letter specifically flagged that Illinois

18  permits voters intending to vote by mail to apply for a vote by mail ballot "as late

19  as 5 days before the November general election." It also asserted that "the Postal

20  Service cannot adjust its delivery standards to accommodate the requirements of

21

22

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    state election law." A copy of the July 30, 2020 letter is attached to this
2    declaration as Exhibit A.

3        16.    In addition to the July 30, 2020 letter from USPS, I am also aware
4    of recent media reports indicating that some members of the public have been
5    experiencing delays in mail delivery. I am also aware of media reports
6    indicating that operational changes have recently been occurring at USPS that
7    may have contributed to these delays.

8        17.    The Chicago Board of Elections works to ensure that elections in
9    Chicago are fair and that citizens who are eligible to vote can do so in a safe
10   and secure manner. Ensuring the safety of voters is especially critical this year,
11   given the ongoing COVID-19 pandemic. Vote by mail is a vital tool in enabling
12   Illinois voters to safely cast their ballots.

13       18.    The deadlines required by Illinois law permit voters to apply to
14   vote by mail up until very close to election day. Having an efficient mail service
15   through USPS is critical to ensuring that voters choosing to vote by mail are
16   able to receive and return their ballots by the deadlines required in Illinois law.

17       19.    The need for an efficient mail service through USPS is particularly
18   critical in the final weeks leading up to election day on November 3, 2020.
19   Voters in Illinois can mail or electronically submit applications to vote by
20   through October 29, 2020. For voters submitting their applications on October
21   29 or the few days leading up to that date, having reliable and efficient USPS

22

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 113 of 342

1    mail delivery will be essential to ensure that the voters are able to receive,

2    complete, and return their ballots in time for them to be counted.

3        20.    In addition, Illinois voters mailing their ballots need to have their

4    ballots postmarked no later than election day, November 3, 2020, in order for

5    them to be counted. Ballots submitted by mail must also be received by the

6    election authority within the fourteen days after election day in order to be

7    counted.

### Irreparable Harm

8
9        21.    An efficient and reliable mail service through USPS is critical to

10   ensuring that Chicago voters choosing to vote by mail are not disenfranchised

     because of delays in processing or delivering the mail. The anticipated increase

11   in the number of Illinois citizens voting by mail in this year's election also means

12   that an efficient and reliable mail service through USPS has never been more

13   important to ensuring that Illinois citizens can exercise their right to vote.

14
15       22.    USPS's warnings about its inability to provide reliable services in

     Illinois is occurring at a time when prompt mail delivery has never been more

16   essential for protecting the right to vote for Illinois citizens. Maintaining and

17   enhancing USPS capacity is an urgent priority for Illinois in light of the

18   expansion of vote by mail options Illinois has adopted in response to the COVID-

19   19 pandemic.

20

21

22

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

23.     However, if USPS provides inadequate postal services so close to an election, significant numbers of Chicago and Illinois voters are at risk of becoming disenfranchised in the upcoming election.

24.     If mail services are impeded or delayed, voters who utilize vote by mail risk not having their ballot counted. For example, the Chicago Board of Elections may receive vote by mail applications late due to mail delays, which will delay our ability to send voters their ballots. Even if applications are timely received, voters may still receive their ballots late or else be prevented from casting their ballots in a timely way if the mail is delayed or voters are otherwise unable to find an alternative method to deliver their ballot to a secure collection site. In fact, USPS has essentially admitted the strong probability that irreparable disruptions will occur in their July 30, 2020 letter.

25.     Further, if USPS's changes undercut public confidence in postal services, voters who otherwise would have remained safely at home to vote might opt to vote in person at a polling place instead, which heightens inherent risks of spreading COVID-19 during a dangerous pandemic. Otherwise, voters who feel that they cannot trust the postal service but have warranted concerns about congregating at a polling place simply might not vote at all.

**I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.**

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

2          DATED this 19th day of August, 2020, at Chicago, Illinois.

3

4                              */s/ Lance Gough*
                              Lance Gough
5                              Executive Director
                              Chicago Board of Election Commissioners

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF LANCE GOUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744


Page 116 of 342

**Gough Declaration**

**Exhibit A**

THOMAS J. MARSHALL
GENERAL COUNSEL
AND EXECUTIVE VICE PRESIDENT


**UNITED STATES**
**POSTAL SERVICE**

July 30, 2020

Honorable Steve Sandvoss
Executive Director
State Board of Elections
2329 S. MacArthur Boulevard
Springfield, IL 62704-4503

Dear Mr. Sandvoss:

Re: Deadlines for Mailing Ballots

With the 2020 General Election rapidly approaching, this letter follows up on my letter dated May 29, 2020, which I sent to election officials throughout the country. That letter highlighted some key aspects of the Postal Service's delivery processes. The purpose of this letter is to focus specifically on the deadlines for requesting and casting ballots by mail. In particular, we wanted to note that, under our reading of Illinois' election laws, certain deadlines for requesting and casting mail-in ballots are incongruous with the Postal Service's delivery standards. This mismatch creates a risk that ballots requested near the deadline under state law will not be returned by mail in time to be counted under your laws as we understand them.

As I stated in my May 29 letter, the two main classes of mail that are used for ballots are First-Class Mail and USPS Marketing Mail, the latter of which includes the Nonprofit postage rate. Voters must use First-Class Mail (or an expedited level of service) to mail their ballots and ballot requests, while state or local election officials may generally use either First-Class Mail or Marketing Mail to mail blank ballots to voters. While the specific transit times for either class of mail cannot be guaranteed, and depend on factors such as a given mailpiece's place of origin and destination, most domestic First-Class Mail is delivered 2-5 days after it is received by the Postal Service, and most domestic Marketing Mail is delivered 3-10 days after it is received.

To account for these delivery standards and to allow for contingencies (e.g., weather issues or unforeseen events), the Postal Service strongly recommends adhering to the following timeframe when using the mail to transmit ballots to domestic voters:

- **Ballot requests:** Where voters will both receive and send a ballot by mail, voters should submit their ballot request early enough so that it is received by their election officials at least 15 days before Election Day at a minimum, and preferably long before that time.

- **Mailing blank ballots to voters:** In responding to a ballot request, election officials should consider that the ballot needs to be in the hands of the voter so that he or she has adequate time to complete it and put it back in the mail stream so that it can be processed and delivered by the applicable deadline. Accordingly, the Postal Service recommends that election officials use First-Class Mail to transmit blank ballots and allow 1 week for delivery to voters. Using Marketing Mail will result in slower delivery times and will increase the risk that voters will not receive their ballots in time to return them by mail.

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-1100
PHONE: 202-268-5555
FAX: 202-268-6981
THOMAS.J.MARSHALL@USPS.GOV
www.usps.com

- 2 -

- **Mailing completed ballots to election officials:** To allow enough time for ballots to be returned to election officials, domestic voters should generally mail their completed ballots at least one week before the state's due date. In states that require mail-in ballots to be *both* postmarked by Election Day *and* received by election officials by a specific date that is one week or more after Election Day, voters may generally mail their ballot up until November 3. However, voters who mail in their ballots on Election Day must be aware of the posted collection times on collection boxes and at the Postal Service's retail facilities, and that ballots entered after the last posted collection time on a given day will not be postmarked until the following business day.

Under our reading of your state's election laws, as in effect on July 27, 2020, certain state-law requirements and deadlines appear to be incompatible with the Postal Service's delivery standards and the recommended timeframe noted above. As a result, to the extent that the mail is used to transmit ballots to and from voters, there is a significant risk that, at least in certain circumstances, ballots may be requested in a manner that is consistent with your election rules and returned promptly, and yet not be returned in time to be counted.

Specifically, it appears that a completed ballot must be postmarked before Election Day and received by election officials within 14 days after the election, which we understand to be the end of the period for counting provisional ballots. If that understanding is correct, voters who choose to mail their ballots may do so on or before Tuesday, November 3. However, it further appears that state law generally permits voters to apply for a ballot as late as 5 days before the November general election. If a voter submits a request at or near the ballot-request deadline, and if the ballot is transmitted to the voter by mail, there is a significant risk that the ballot will not reach the voter before Election Day, and accordingly that the voter will not be able to use the ballot to cast his or her vote. That risk is exacerbated by the fact that the law does not appear to require election officials to transmit a ballot until 2 business days after receiving a ballot application.

To be clear, the Postal Service is not purporting to definitively interpret the requirements of your state's election laws, and also is not recommending that such laws be changed to accommodate the Postal Service's delivery standards. By the same token, however, the Postal Service cannot adjust its delivery standards to accommodate the requirements of state election law. For this reason, the Postal Service asks that election officials keep the Postal Service's delivery standards and recommendations in mind when making decisions as to the appropriate means used to send a piece of Election Mail to voters, and when informing voters how to successfully participate in an election where they choose to use the mail. It is particularly important that voters be made aware of the transit times for mail (including mail-in ballots) so that they can make informed decisions about whether and when to (1) request a mail-in ballot, and (2) mail a completed ballot back to election officials.

We remain committed to sustaining the mail as a secure, efficient, and effective means to allow citizens to participate in the electoral process when election officials determine to utilize the mail as a part of their election system. Ensuring that you have an understanding of our operational capabilities and recommended timelines, and can educate voters accordingly, is important to achieving a successful election season. Please reach out to your assigned election mail coordinator to discuss the logistics of your mailings and the services that are available as well as any questions you may have. A list of election mail coordinators may be found on our website at: https://about.usps.com/election-mail/politicalelection-mail-coordinators.pdf.

We hope the information contained in this letter is helpful, and please let me know if you have any questions or concerns.

Sincerely,

Thomas J. Marshall

# Exhibit 17

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11                **UNITED STATES DISTRICT COURT**
                 **EASTERN DISTRICT OF WASHINGTON**
                          **AT YAKIMA**
12

13   STATE OF WASHINGTON, et       NO.  1:20-cv-03127-SAB
     al.,
14                                 DECLARATION OF
                        Plaintiffs, COLORADO SECRETARY OF
15        v.                       STATE JENA GRISWOLD IN
                                   IN SUPPORT OF PLAINTIFF
16   DONALD J. TRUMP, et al.,      STATES' MOTION FOR
                                   PRELIMINARY INJUNCTION
17                      Defendants.

18

19

20

21

22

DECLARATION OF COLORADO                  ATTORNEY GENERAL OF WASHINGTON
SECRETARY OF STATE JENA                        Complex Litigation Division
                                               800 5th Avenue, Suite 2000
GRISWOLD                                        Seattle, WA  98104-3188
                                                   (206) 464-7744

I, Jena Griswold, Colorado's Secretary of State, declare as follows:

1.    I am the 39th Colorado Secretary of State, elected by the people of Colorado in 2018. I am the chief election official of the state.

2.    The statements in this declaration are all based on my own personal knowledge, including information gathered by employees of the Secretary of State's office.

### Colorado's mail voting system is a national model

3.    Colorado is a national leader in mail voting. In 2013, Colorado passed the Voter Access and Modernized Elections Act, 2013 Sess. Laws 681, under which all registered voters are sent a mail ballot. The Colorado General Assembly enacted this measure because "the people's self-government through the electoral process is more legitimate and better accepted when voter participation increases" and decided that "expand[ing] the use of mail ballot elections" was an appropriate "means to increase voter participation." *Id.*

4.    Since 2014, Colorado has relied on the U.S. mail system to facilitate its elections. In the 2020 state primary, Colorado counties used the U.S. mail system to deliver ballots to 3,306,300 voters.

5.    Every active registered voter in Colorado receives a mail ballot packet delivered through the U.S. Mail to the voter's last registered mailing address. The ballots generally must be mailed between 18 and 25 days prior to

DECLARATION OF COLORADO
SECRETARY OF STATE JENA
GRISWOLD

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

an election. § 1-7.5-107(3)(a), C.R.S. (Overseas military voters receive their ballots earlier. § 1-8.3-110(2), C.R.S.)

6.      Although in-person voting remains an option, Colorado voters overwhelmingly choose to vote the ballot that is mailed to them. In the 2016 state primary, 97% of Colorado voters cast the ballot they received in the mail. In the 2016 general election, 93% of Colorado voters cast their mail ballot. And in the 2020 state primary, 99% of Colorado voters cast their mail ballot.

7.      Approximately 25% of those who vote the ballot received in the mail also return the ballot through the U.S. mail, while the rest return their ballots to their polling places or ballot drop boxes stationed throughout the state.

8.      The reliability and effectiveness of Colorado's mail voting system is an important reason why Colorado consistently has one of the highest voter turnout rates in the country.

**Colorado's voting system depends on a reliable and trustworthy U.S. Postal Service**

9.      Colorado voters, Colorado counties, and the Secretary of State's office all rely heavily on the mail to receive and return ballots. Disruptions to the mail service could have serious consequences to the state and its voters, in several ways.

10.      First, delays to the mail in returning ballots can disenfranchise voters. Based on our review of ballots submitted during the last several election

DECLARATION OF COLORADO
SECRETARY OF STATE JENA
GRISWOLD

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 123 of 342

cycles, we ordinarily expect about 40% of all votes cast in an election to be received either on election day or the day before.

11.     Even minor delays of one or two days could result in tens of thousands of votes not being counted due to no fault of the voter.

12.     Colorado builds redundancies into its system, but these redundancies only work if the U.S. mail system works in the way voters have come to expect. For example, individuals can choose to vote in person rather than cast their mail ballot. But, if a voter returns their ballot through the U.S. mail with the reasonable expectation that it will be delivered on time, and due to Postal Service delays it arrives late, that voter will have no way of knowing that their mailed ballot will not be counted until it is too late for the voter to remedy the issue. The system depends on the reliability of the mail.

13.     Second, changes to Postal Service policy concerning the treatment of election mail will undermine confidence in Colorado's elections. Colorado and its counties, who are responsible for mailing out ballots, rely on the Postal Service to prioritize election mail. The majority of Colorado's ballots are not distributed as first class mail. Instead, the ballots are distributed using the Postal Service's marketing mail rate. But there is a longstanding practice in Colorado that the Postal Service treats all election mail, such as ballots, as first class mail. My office has confirmed this practice in numerous conversations with Postal Service officials.

DECLARATION OF COLORADO
SECRETARY OF STATE JENA
GRISWOLD

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 124 of 342

14.    Reports suggest that the Postal Service will discontinue its historic practice of prioritizing election mail in 2020. Doing so will frustrate the legitimate, historically grounded expectations of state and local election officials and Colorado voters.

15.    The distribution of ballots in Colorado is heavily publicized. Once voters learn that ballots have been mailed—roughly three weeks before an election—those voters expect to receive their ballots in a timely fashion. We have previously heard complaints from voters even when ballots are mailed out on the last day of the allotted legal distribution window. Introducing any delay due to an unannounced change in Postal Service policy opens the door to serious voter confusion and frustration, and could erode confidence in Colorado's election system.

16.    Colorado's counties rely on the fact that election mail will be treated as first class mail. And if the Postal Service no longer intends to treat election mail this way, our counties may want to distribute their ballots as first class mail. But given the timing of this year's election, there is little the state can do to prioritize election mail if the Postal Service refuses to do so. The General Assembly is out of session and cannot appropriate funds to allow counties to upgrade the mail to first class mail. The counties generally do not have the funds to do so either. Accordingly, a change to Postal Service policy may have serious impacts throughout Colorado.

DECLARATION OF COLORADO
SECRETARY OF STATE JENA
GRISWOLD

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 125 of 342

17.     Third, the nationwide disruptions to the mail service will have direct impacts on Colorado's elections. Colorado relies on the nationwide mail system for its voters to cast their ballots. 73,747 ballots are mailed to voters with addresses out of state. 9,721 of these ballots are sent to military personnel stationed outside of Colorado.

18.     Postmaster General Louis DeJoy has stated that he does not intend to restore the mail sorting machines the Postal Service has removed throughout the country. We have received conflicting reports about sorting machines in Colorado, including reports that at least one sorting machine has been disassembled and not replaced. This has created uncertainty concerning the processing of election mail sent within Colorado.

19.     The machines that have been removed elsewhere, not to mention the other service changes announced by General DeJoy, will also impair the ability of servicemembers and other Colorado voters residing outside of Colorado to cast their ballots. Nationwide slowdowns in mail delivery can prevent these voters from having their votes counted.

20.     Although Colorado counties make dropboxes available for individuals to cast their mail ballots, some individuals have no choice but to rely on the mail. For one, Colorado registered voters who currently reside out of state, including members of the armed forces, cannot use the dropboxes. Individuals who are unable to leave their homes, including those who may be ill

DECLARATION OF COLORADO
SECRETARY OF STATE JENA
GRISWOLD

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 126 of 342

1    or quarantined due to COVID-19, also must rely on the U.S. mail to return their

2    ballots.

3    **The November 2020 ballot contains numerous measures of statewide**
**concern**

4

5    21.    Individual voters in Colorado receive different ballots depending on

6    the county in which they live. But the November 2020 ballots that will be

7    distributed in Colorado will include many issues of statewide concern.

8    22.    The November 2020 ballot contains eleven measures presented to

9    voters that will impact the State of Colorado moving forward. Colorado voters

10   will decide: whether to join the national popular vote compact; whether to

11   establish a paid family and medical leave program; whether to lower income

12   taxes; whether to put an abortion ban in place; whether to introduce gray wolves

13   to the state; whether to increase nicotine and tobacco taxes; whether to require

14   that all registered voters must be U.S. citizens; whether to require voter

15   approval before new state enterprises can be formed; whether to alter the state

16   constitution concerning charitable gaming; whether to allow changes to current

17   gambling restrictions in the state; and whether to change the means by which

18   property taxes are assessed in the state. Colorado voters will also be selecting

19   one of the state's two senators to the United States Congress, and casting their

20   vote for President and Vice-President of the United States.

21

22

DECLARATION OF COLORADO
SECRETARY OF STATE JENA
GRISWOLD

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

23.    Colorado is relying on an effective U.S. mail system to facilitate the election of these matters of statewide concern.

24.    Colorado's election system is a model for the rest of the country. Since 2014 it has been overseen by both Democratic and Republican Secretaries of State, and has facilitated record turnout in state, local, and federal elections.

25.    Transformative changes to the Postal Service—made months before the November 2020 election and without opportunity for public comment—have the potential to disrupt this model system on which Colorado, its counties, and its voters have come to rely.

*[Remainder of this page intentionally left blank]*

DECLARATION OF COLORADO
SECRETARY OF STATE JENA
GRISWOLD

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

2

I declare under penalty of perjury that the foregoing is true and correct.

3

4

DATED this 8th day of September, 2020, at Cortez, Colorado.

5

6

7



JENA GRISWOLD

8

Colorado Secretary of State

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF
COLORADO SECRETARY OF
STATE JENA GRISWOLD

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# Exhibit 18

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
     KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
     CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
     EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
        (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
        *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
     Seattle, WA  98104
9    (206) 464-7744

10

11                **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13   STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
     al.,
14                                    DECLARATION OF
                        Plaintiffs,   SAMANTHA HARTWIG IN
15        v.                          SUPPORT OF PLAINTIFF
                                      STATES' MOTION FOR
16   DONALD J. TRUMP, et al.,         PRELIMINARY INJUNCTION

17                       Defendants.

18

19

20

21

22

DECLARATION OF                      1          ATTORNEY GENERAL OF WASHINGTON
SAMANTHA HARTWIG                                      Complex Litigation Division
                                                    800 5th Avenue, Suite 2000
                                                     Seattle, WA  98104-3188
                                                          (206) 464-7744

I, Samantha Hartwig, declare as follows:

1.    I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.    I am a resident of Coon Rapids, Minnesota.  I am currently serving as the President of Branch 9 of the National Association of Letter Carriers.  The National Association of Letter Carriers represents letter carriers employed by the United States Postal Service (USPS).

3.    The USPS will occasionally implement "directives" that control how the business of the USPS is conducted.  These directives are issued from the highest levels of the USPS organization, including the Postmaster.

4.    Recently, the USPS has initiated a directive that requires letter carriers to leave their facility to deliver mail within an hour of their shift start time.  This limits the letter carrier's time in the post office to one hour.

5.    Each day, USPS mail clerks sort the mail that is to be delivered by the letter carriers.  It has been the practice of the USPS to deliver every piece of mail that was at the facility every day.  This would occasionally entail letter carriers waiting until the clerks finished sorting the mail before loading their trucks and leaving to deliver the mail.

DECLARATION OF                     2          ATTORNEY GENERAL OF WASHINGTON
SAMANTHA HARTWIG                                Complex Litigation Division
                                                800 5th Avenue, Suite 2000
                                                Seattle, WA  98104-3188
                                                (206) 464-7744

6.    The one-hour directive has resulted in letter carriers leaving their facility before all of the mail is sorted, resulting in mail being left to be sorted or re-sorted and delivered the following day.

7.    The primary impact of this is that priority-mail packages are being left for the next day and being delivered later than they would otherwise.

8.    Priority mail packages can include anything from medications to birthday presents.  In my experience medication delivery is time sensitive because providers will not fill prescriptions too far in advance.

9.    These delays are particularly concerning for letter carriers because they are the front-line workers interacting with the public on a regular basis.

10.    Additionally, the summer is typically the time of the year with the lowest mail volume.  The fact that priority mail is being delayed now raises significant concerns that additional delays will occur when the mail volume increases over the fall.

11.    More delays in the fall are likely to impact not just priority but also first-class mail.  First-class mail includes the general letters and correspondence that make up the bulk of what USPS delivers. First-class mail includes things such as census forms, driver's licenses, vehicle tabs, or anything else sent in normal

DECLARATION OF
SAMANTHA HARTWIG

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    letter form through the USPS. Election mail is sorted in the same manner as first-

2    class mail.

3       I declare under penalty of perjury under the laws of the States of Washington

4    and Minnesota and the United States of America that the foregoing is true and

5    correct.

6    Dated:  August 18, 2020

7                                      SAMANTHA HARTWIG

DECLARATION OF           4          ATTORNEY GENERAL OF WASHINGTON
SAMANTHA HARTWIG                   Complex Litigation Division
                                         800 5th Avenue, Suite 2000
                                         Seattle, WA  98104-3188
                                         (206) 464-7744

# Exhibit 19

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11                  **UNITED STATES DISTRICT COURT**
                    **EASTERN DISTRICT OF WASHINGTON**
12                             **AT YAKIMA**

13  STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
    al.,
14                                   DECLARATION OF STUART
                        Plaintiffs,  HARVEY IN SUPPORT OF
15        v.                         PLAINTIFF STATES' MOTION
                                     FOR PRELIMINARY
16  DONALD J. TRUMP, et al.,         INJUNCTION

17                      Defendants.

18

19

20

21

22

DECLARATION OF STUART
HARVEY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 136 of 342

I, Stuart Harvey, declare as follows:

1. I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am the Election Director of Frederick County, Maryland. I have over 30 years of experience in elections, and have been the Election Director in Frederick County since July 2002.

3. In my role as Election Director I am responsible for conducting local, state and federal elections in the county, as well as maintaining the county's voter registration file and hiring and training the county's 900 election judges.

4. I am aware that the Postmaster General of the United States has made policy changes that have affected postal service, and I am further aware that the State of Maryland and other states have filed this lawsuit challenging those policy changes.

5. Over the past month, I have received dozens of emails from voters expressing their concerns about the USPS and whether they'll be willing and able to deliver their ballots on time. Many voters who previously requested their general election ballots to be delivered by mail have now changed their minds and asked that the ballots be sent by email instead. There have also been numerous inquiries from voters about delivering ballots safely to our office, using means other than the USPS, such as a ballot drop box.

DECLARATION OF STUART HARVEY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

6.      When a voter requests a ballot by email, the voter must print out the ballot, then mark it, then mail it back to the elections office or drop it off in person or at a secure drop-box.  Because they are printed at home, those ballots cannot be read by tabulating machines; therefore, the local boards of election have to manually copy each web delivered ballot onto a blank standard ballot.  In a general election there are ballot questions and, often, write-in votes that increase the amount of time it takes to manually copy the ballots—it takes at least 5 to 10 minutes per ballot.  The increased number of email-delivered ballots due to USPS performance problems will substantially increase the amount of time needed to canvass the general election ballots.

7.      Canvassing this year's general election will be uniquely difficult.  In addition to the increased number of email-delivered ballots, there are other challenges:  the unprecedented increase in the volume of mail-in ballots, limitations on staff size due to COVID-19 distancing restrictions, and expected absences due to COVID-19.

8.      USPS delays will cause a much longer ballot canvass before and after the election, the hiring of additional temporary employees to complete the canvass in a timely manner, and possible delays in certifying the election results.  It might also cause a significant number of mail-in ballots to fail to each our office in time to be counted in the general election.

DECLARATION OF STUART
HARVEY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 138 of 342

1        9.       I declare under penalty of perjury that the foregoing is true

2    and correct.

3        DATED this 3rd day of September, 2020, at Frederick, Maryland.

4

5    STUART HARVEY
    Elections Director

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF STUART
HARVEY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 20

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
       (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
       *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11                  **UNITED STATES DISTRICT COURT**
                  **EASTERN DISTRICT OF WASHINGTON**
12                          **AT YAKIMA**

13  STATE OF WASHINGTON, et        NO.  1:20-cv-03127-SAB
    al.,
                                   DECLARATION OF TIMOTHY
14                   Plaintiffs,   HERMES IN SUPPORT OF
                                   PLAINTIFF STATES' MOTION
        v.                         FOR PRELIMINARY
15                                 INJUNCTION
    DONALD J. TRUMP, et al.,
16
                     Defendants.
17

18

19

20

21

22

DECLARATION OF                    1
TIMOTHY HERMES

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 141 of 342

I, Timothy Hermes, declare as follows:

1.     I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.     I am a resident of Minneapolis, Minnesota.  I am seventy years old and have been retired for approximately five years.

3.     I served in the United State Army in Vietnam from 1969-70.  In 1970 I was awarded the Purple Heart and honorably discharged from the Army.  During my time in Vietnam I held the rank of Specialist E4, and had served as a tank crewman as well as tank commander.  I received my purple heart from an incident where I was injured when my tank was hit by a rocket-propelled grenade.

4.     I have been receiving medical care from the Department of Veterans Affairs since February 2016.  I currently suffer from hearing problems, ischemic heart disease, anxiety, and hypertension.  I am on medications for these conditions.

5.     For nearly five years I have received my medications delivered to my home via the United States Postal Service (USPS).  My medications have always arrived on time, until August 2020.

6.     On July 29, I renewed my prescription for venlafaxine, which is used to treat my anxiety.  The VA confirmed that the medication had been filled and delivered to the USPS.  The tracking information indicates that my medication was shipped on July 30, and arrived at the Minneapolis Distribution Center on

DECLARATION OF
TIMOTHY HERMES

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    August 1.

2        7.    The tracking information shows that my venlafaxine was "out for

3    delivery" on August 2, but did not depart the Minneapolis Distribution Center until

4    August 6.  It arrived at the post office on August 7 and was delivered at 11:18 a.m.

5    on August 7.    Each day from August 2 through August 7 the status of my

6    prescription was "out for delivery" with the arrival times continually changing.

7        8.    I ran out of my venlafaxine and began to feel lethargic, slow, and

8    removed from reality.  I felt as though I were in a bubble, or there was a film

9    between me and the rest of the world.

10        9.    My wife and I are typically active.  We recently remodeled our home

11    and we enjoy travelling and bird watching.  After I ran out of my medication my

12    lethargy was so pronounced that my wife became concerned for my health.  I also

13    began having nightmares.  Because my symptoms were so uncomfortable, and I

14    did not know when my medication would be delivered, I went to the VA and

15    picked up an alternative prescription on August 5.

16        10.    Outside of this trip to the VA and other medical appointments I leave

17    my home as little as possible because of the COVID-19 pandemic.    If my

18    medication had been delivered on time I would not have had to make this

19    additional trip or experienced the adverse consequences of abruptly going off my

20    medication.

DECLARATION OF                3
TIMOTHY HERMES

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    11.    The prescription finally arrived in the mail on Friday.    Until this

2  incident my prescriptions had never been late when delivered by the USPS.

3    12.    I feel fortunate that I live close enough to a VA facility that we were

4  able to get my prescription refilled in person.  I am concerned that my medications

5  will not be delivered on time in the future.  I am also concerned for people who

6  cannot drive or who do not live near a VA facility at which they can get their

7  medications if they are not delivered on time.

8    I declare under penalty of perjury under the laws of the States of Washington

9  and Minnesota and the United States of America that the foregoing is true and

10  correct.

11  Dated:  August 18, 2020

TIMOTHY HERMES

12

13

14

15

16

17

18

19

20

**DECLARATION OF**
**TIMOTHY HERMES**

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 21

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
     KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
     CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
     EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
     Seattle, WA 98104
9    (206) 464-7744

10

11        **UNITED STATES DISTRICT COURT**
       **EASTERN DISTRICT OF WASHINGTON**
       **AT YAKIMA**

12

13    STATE OF WASHINGTON, et al.,     NO. 1:20-cv-03127-SAB

14             Plaintiffs,     DECLARATION OF DANIEL
                                   HUFF IN SUPPORT OF
15      v.                                     PLAINTIFF STATES' MOTION
     DONALD J. TRUMP, et al.,          FOR PRELIMINARY
16                                          INJUNCTION
                Defendants.
17

18

19

20

21

22

DECLARATION OF
DANIEL HUFF

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 146 of 342

I, Daniel Huff, declare as follows:

1.    I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.    I am currently the Assistant Commissioner for Health Protection at the Minnesota Department of Health (MDH).

3.    The MDH Public Health Laboratory (PHL) receives drinking water samples for various analytical testing from water treatment systems located throughout the entire state of Minnesota that supply drinking water to the public.

4.    The United States Environmental Protection Agency (US EPA) Safe Drinking Water Act (SDWA) governs many of these analyses. These samples are for regulatory compliance testing and have requirements for their acceptance upon receipt, including regulated holding times from sample collection to sample delivery and the onset of testing. Some of these samples include method-specific regulated temperature requirements from sample collection to sample receipt. Delays in delivery of samples to the PHL can affect the acceptability of the samples based on the requirements in the Public Health Laboratory's certification from the US EPA.

5.    Employees at the PHL have recently observed delays in parcels delivered to the PHL from drinking water treatment systems around the state that

DECLARATION OF
DANIEL HUFF

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  choose to use the United States Postal Service (USPS) as the primary means of

2  shipping samples.

3      6.    In some instances, where we would expect a one- to two-day delivery,

4  we are now observing three-, five- and even seven-day delivery on parcels

5  delivered to the PHL. These occurrences do not seem to be coming from any

6  particular region or any particular partner.

7      7.    Such delays have forced the samples to be invalid for analysis due to

8  exceedances of sample holding times and/or temperature requirements that are out

9  of the required range. In these cases, the PHL must notify the Minnesota

10  Department of Health, Drinking Water Protection Section (DWP), which manages

11  the states drinking water compliance programs. PHL must also cancel or qualify

12  the analysis which in some cases renders the data invalid for regulatory compliance

13  purposes.

14      8.    In cases when samples are canceled, a request for another sample

15  collection kit is issued from DWP, incurring additional costs. PHL will then

16  assemble the sample collection kit and send it to the drinking water system to re-

17  collect the sample.

18      9.    PHL is responsible for the cost and shipment of the sample collection

19  replacement kit to the drinking water system.

DECLARATION OF                    3          ATTORNEY GENERAL OF WASHINGTON
DANIEL HUFF                                      Complex Litigation Division
                                                  800 5th Avenue, Suite 2000
                                                   Seattle, WA  98104-3188
                                                      (206) 464-7744

1    10.    The drinking water system is responsible for incurring the additional

2    costs for sample collection, sample transportation and successful submission to the

3    PHL.

4    11.    From July 1, 2019 through August 31, the PHL noted 9 samples

5    canceled due to a delay of 3 days or more for samples delivered by USPS. From

6    July 1, 2020 through August 31, we saw an increased number of 36 samples

7    canceled due to a USPS delivery delay of 3 days or more.

8    I declare under penalty of perjury under the laws of the States of Washington

9    and Minnesota and the United States of America that the foregoing is true and

10    correct.

11    Dated:  September ___, 2020

**Daniel Huff** Digitally signed by Daniel Huff
Date: 2020.09.04 09:42:52 -05'00'

DANIEL HUFF

12

DECLARATION OF                              4                    ATTORNEY GENERAL OF WASHINGTON
DANIEL HUFF                                                        Complex Litigation Division
                                                                  800 5th Avenue, Suite 2000
                                                                  Seattle, WA  98104-3188
                                                                  (206) 464-7744

# Exhibit 22

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
     KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
     CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
     EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
        (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
        *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
     Seattle, WA  98104
9    (206) 464-7744

10

11                    **UNITED STATES DISTRICT COURT**
                      **EASTERN DISTRICT OF WASHINGTON**
12                             **AT YAKIMA**

13    STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
      al.,
                                       DECLARATION OF JOAN
14                  Plaintiffs,        LEVY IN SUPPORT OF
                                       PLAINTIFF STATES' MOTION
15        v.                           FOR PRELIMINARY
                                       INJUNCTION
      DONALD J. TRUMP, et al.,
16
                    Defendants.
17

18

19

20

21

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 151 of 342

## DECLARATION OF JOAN LEVY

I, Joan Levy, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the president of the Greater Connecticut Area Local No. 237 of the American Postal Workers Union (APWU).

2.      Nationwide, APWU fights for dignity and respect on the job for more than 200,000 United States Postal Service (USPS) employees and retirees. The Connecticut local has 1,200 members spread over 200 post offices statewide. Our members are clerks, maintenance staff, or work in USPS' Motor Vehicle Service (MVS) or Vehicle Maintenance Facilities.

3.      I have compiled the information in this declaration through personal knowledge and through review of documents and information provided to me by union members and officers statewide and nationally. I am in regular contact with members of my local across the state and with the presidents of Connecticut's three other APWU locals, which are based in Hartford, Stamford, and Danbury. In addition, I have personally visited 50 post offices statewide in just the last few months.

4.      I also have significant personal knowledge of the workings of the USPS in Connecticut from my 28-year career as a clerk. I retired from the USPS in 2018.

5.      From the time I began working at the USPS in 1979 and until just a few months ago, my colleagues and I were guided by a core directive: "Every piece, every day." We understood ourselves to be responsible for ensuring that all mail received in each post office, every day, was sorted and delivered. In every Connecticut post office I am familiar with this directive was taken seriously.

Declaration of Joan Levy / 1

6.      Unfortunately, since approximately July, that core directive no longer seems to govern the operations of the USPS in Connecticut. In my experience as a clerk and as local president, I have never seen the kinds of sorting and delivery delays and mail backlogs that are now routine in post offices across Connecticut. It is now no longer unusual for mail to be left, unsorted, in post offices. I am familiar with the now-routine delays in the state's post offices and processing facilities from my own observations and from reports from union members.

7.      I also have direct experience with these delays. For example, my union office, located in North Haven, Connecticut, sends out biweekly paychecks to employees and contractors. The checks travel by First-Class Mail from North Haven to a USPS processing center in Hartford. They then travel to their destination post offices, often in towns in the same small geographic region. For years, those checks used to take, at most, two days to reach their in-state recipients. Now they take a full week to travel just a few miles across one of the nation's smallest and most compact states.

8.      In June, the USPS administration began removing key mail processing and sorting equipment from facilities in Connecticut. I received a document from the APWU National Union that states that the USPS intends to remove 671 pieces of processing equipment by the end of September. A true and correct copy of the document I received is attached as Exhibit A.

9.      Last week, I visited the mail processing center in Wallingford, Connecticut. I saw two mail processing machines known as Delivery Bar Code Sorter machines taken out of service. They were disassembled but still located on the work floor. I also heard from the APWU Hartford Local President that four mail processing machines were taken

Declaration of Joan Levy / 2

out of service at the Hartford processing center. Those machines were disassembled and moved outside to a parking lot.

10.　　　Based on my experience as a clerk, some of the machines being removed from Connecticut are capable of sorting upwards of 30,000 pieces of mail every hour. When they are working, the machines do the critical work of sorting mail not just by destination post office but also by letter carrier route and by address within the route. This automation means that mail arrives at its destination post office already sorted and ready for delivery. When the machines are removed, mail arrives at its destination post office still unsorted. Postal staff must fill in the gaps by hand-sorting mail. Clerks must spend time sorting the mail by letter carrier route, and the letter carriers must then sort the mail by address within the route.

11.　　　Earlier this year, the Postmaster General issued directives to change certain mail processing policies. These new directives have caused many offices in Connecticut to dramatically curtail the use of overtime. In my experience, even in optimal circumstances – with all machines online, and at full staffing – USPS has used overtime to ensure that staff have the time to deliver every piece, every day even during periods of peak demand like the holiday season. But eliminating overtime during the COVID-19 crisis, while also removing processing machines, has increased the burden on postal workers.

12.　　　COVID-19 has increased demand for the postal service while decreasing the supply of postal workers. As president of the local, I know from reports from the labor relations manager that many APWU members in Connecticut have fallen ill with COVID-19. Many others are unable to work because of their obligations to take of out-of-school children or other relatives.  In the offices that have curtailed overtime, this means fewer

Declaration of Joan Levy / 3

staffing hours to do more work. As a result, I have seen that mail backs up and goes unsorted and undelivered.

13.     Since the Postmaster General announced that he was postponing some of the policy changes, I have heard that some offices in Connecticut continue to curtail use of overtime.

14.     Delays due to curtailed overtime are exacerbated by new service changes that require trucks carrying mail for destination post offices to leave processing facilities at strictly fixed times, even if mail for those destinations remains unsorted and not yet loaded on the trucks. That mail, left behind, piles up in processing centers. That unsorted mail, too, cannot be delivered that day. The result, predictably, are even greater backlogs and delays. I am not aware of whether these service changes have been revoked since the Postmaster General's announcement about postponing policy changes.

15.     These routine delays are deeply concerning at any time of year. Connecticut residents and businesses alike rely on USPS for medicine, checks, legal documents, and other critically important mail.

16.     For as long as I have worked at USPS and as a union official, it has been USPS practice in Connecticut to afford special priority to election mail. When I was a clerk, management made clear to postal workers that it was our responsibility to bend over backwards to timely deliver ballots. I took pride in playing an important role in ensuring the right of Connecticut residents to vote. I am not aware of any plans for election mail in place since the Postmaster General stated that election mail will be afforded priority status.

Declaration of Joan Levy / 4

17.     In the past, USPS has taken steps to prepare for predictable increases in mail volume. Around the holiday season, for instance, USPS has typically hired temporary workers and increased overtime availability to ensure that postal workers are able to deliver on time. I am not aware of any steps that USPS in Connecticut has taken to prepare for increased mail volume around the November election season.

Executed this ___8th___ day of September, 2020 at North Haven, CT.

_Joan Levy_
_____
Joan Levy
President, Greater Connecticut Area Local
American Postal Workers Union

Declaration of Joan Levy / 5

**Levy Declaration**

**Exhibit A**


**UNITED STATES**
**POSTAL SERVICE**

June 17, 2020

Mr. Mark Dimondstein                    **Certified Mail Tracking Number:**
President
American Postal Workers Union, AFL-CIO
1300 L Street, NW
Washington, DC  20005-4128

Dear Mark:

As a result in the reduction in letter and flat mail volume, the Postal Service is planning to reduce the number of Advanced Facer Canceler Systems (AFCS), Delivery Bar Code Sorters (DBCS), Automated Flat Sorting Machine 100s (AFSM100), and Flat Sequencing Systems (FSS) in its mail processing facilities.

The subject reduction is anticipated to take place over the next several months.

Enclosed on compact disc is an excel spreadsheet listing the anticipated equipment reductions and the tentative schedule.

Please identify a point of contact for your organization and the Postal Service will provide updates regarding this initiative if/when the information changes.

If there are any questions, please contact Shannon Richardson at extension 5842.

Sincerely,

Rickey R. Dean
Manager
Contract Administration (APWU)

Enclosure

(CA2020-232)

## AFCS Area Summary

| Area Name | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Capital M | 6 | 0 | 0 | 6 | 0 | 2 | 2 | 0 | 0 | 4 | 0 | 10 |
| Eastern | 4 | 1 | 1 | 6 | 3 | 2 | 2 | 3 | 0 | 10 | 0 | 16 |
| Great Lak | 5 | 2 | 1 | 8 | 0 | 0 | 1 | 1 | 0 | 2 | 0 | 10 |
| Northeast | 3 | 4 | 3 | 10 | 2 | 2 | 0 | 1 | 0 | 5 | 0 | 15 |
| Pacific | 1 | 1 | 5 | 7 | 0 | 1 | 1 | 0 | 0 | 2 | 1 | 10 |
| Southern | 7 | 6 | 4 | 17 | 0 | 3 | 1 | 0 | 0 | 4 | 0 | 21 |
| Western | 0 | 2 | 2 | 4 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 5 |
| National T | 26 | 16 | 16 | 58 | 5 | 10 | 8 | 5 | 0 | 28 | 1 | 87 |

## AFSM Area Summary

| Area Name | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Capital M | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 2 | 0 | 4 |
| Eastern | 1 | 3 | 0 | 4 | 3 | 1 | 0 | 2 | 0 | 6 | 0 | 10 |
| Great Lak | 2 | 1 | 0 | 3 | 0 | 0 | 1 | 0 | 4 | 5 | 0 | 8 |
| Northeast | 3 | 2 | 0 | 5 | 0 | 1 | 2 | 1 | 0 | 4 | 0 | 9 |
| Pacific | 0 | 2 | 2 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 8 |
| Southern | 4 | 4 | 3 | 11 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 12 |
| Western | 1 | 1 | 0 | 2 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 4 |
| **National T** | 13 | 13 | 5 | 31 | 3 | 3 | 3 | 7 | 4 | 20 | 4 | 55 |

## DBCS Area Summary

| Area Name | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Capital M | 16 | 14 | 0 | 30 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 30 |
| Eastern | 26 | 18 | 1 | 45 | 19 | 4 | 17 | 24 | 0 | 64 | 0 | 109 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Great Lak | 17 | 6 | 4 | 27 | 2 | 8 | 3 | 6 | 16 | 35 | 0 | 62 |
| Northeast | 15 | 7 | 6 | 28 | 0 | 25 | 6 | 8 | 0 | 39 | 0 | 67 |
| Pacific | 20 | 11 | 1 | 32 | 0 | 0 | 0 | 6 | 7 | 13 | 9 | 54 |
| Southern | 33 | 21 | 21 | 75 | 1 | 19 | 14 | 11 | 4 | 49 | 0 | 124 |
| Western | 7 | 7 | 23 | 37 | 2 | 4 | 5 | 8 | 0 | 19 | 0 | 56 |
| **National** | 134 | 84 | 56 | 274 | 24 | 60 | 45 | 63 | 27 | 219 | 9 | **502** |

| FSS Area Summary | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Area Name** | **6/13 - 6/19** | **6/20 - 6/26** | **6/27 - 7/3** | **Total Q3** | **7/4 - 7/10** | **7/11 - 7/17** | **7/18 - 7/24** | **7/25 - 7/31** | **8/1 - 9/30** | **Total Q4** | **FY 21 - Q1** | **Total Reduction** |
| Capital M | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 0 | 4 | 0 | 4 |
| Eastern | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lak | 2 | 1 | 0 | 3 | 0 | 0 | 0 | 0 | 2 | 2 | 0 | 5 |
| Northeast | 1 | 1 | 0 | 2 | 0 | 1 | 1 | 1 | 0 | 3 | 0 | 5 |
| Pacific | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 6 | 8 |
| Southern | 0 | 1 | 0 | 1 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 3 |
| Western | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| **National** | 5 | 3 | 0 | 8 | 0 | 8 | 1 | 2 | 2 | 13 | 6 | **27** |

*Note: The actual equipment reduction counts update weekly*

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | FY21 - Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | | |
| Capital Metro | Atlanta | North Metro GA P&DC | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Capital Metro | Baltimore | Baltimore MD P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Baltimore | Eastern Shore MD P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Capital Metro | Capital | Suburban MD P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Greater South Carolina | Charleston SC P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Greater South Carolina | Columbia SC P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Capital Metro | Greater South Carolina | Greenville SC P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Capital Metro | Greensboro | Greensboro NC P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Capital Metro | Greensboro | Raleigh NC P&DC | 1 | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 2 |
| Capital Metro | Mid-Carolinas | Charlotte NC P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Capital Metro | Northern Virginia | Merrifield VA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Richmond | Richmond VA P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Eastern | Appalachian | Charleston WV P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Eastern | Central Pennsylvania | Harrisburg PA P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Eastern | Central Pennsylvania | Lehigh Valley PA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Eastern | Kentuckiana | Evansville IN P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Kentuckiana | Lexington KY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Eastern | Kentuckiana | Louisville KY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Northern Ohio | Cleveland OH P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Eastern | Ohio Valley | Cincinnati OH P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Ohio Valley | Columbus OH P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Eastern | Philadelphia Metro | Philadelphia PA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | South Jersey | Delaware P&DC | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Eastern | South Jersey | South Jersey P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Eastern | South Jersey | Trenton NJ P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Tennessee | Chattanooga TN P&DC | 0 | 0 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 2 |
| Eastern | Tennessee | Knoxville TN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Eastern | Tennessee | Memphis TN P&DC | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Eastern | Tennessee | Nashville TN P&DC | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Eastern | Western New York | Buffalo NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Western New York | Rochester NY P&DC | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Eastern | Western Pennsylvania | Johnstown PA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Western Pennsylvania | Pittsburgh PA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Great Lakes | Central Illinois | Carol Stream IL P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Great Lakes | Central Illinois | Peoria IL P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Central Illinois | South Suburban IL P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Great Lakes | Detroit | Michigan Metroplex P&DC | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Great Lakes | Gateway | Champaign IL P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Gateway | Mid Missouri MO P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Gateway | Saint Louis MO P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Great Lakes | Gateway | Springfield IL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater indiana | Fort Wayne IN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Great Lakes | Greater indiana | Indianapolis IN P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Great Lakes | Greater Michigan | Grand Rapids MI P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater Michigan | Iron Mountain MI P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater Michigan | Traverse City MI P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Great Lakes | Lakeland | Green Bay WI P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | FY21-Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | | |
| Great Lakes | Lakeland | Milwaukee WI P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 2 |
| Northeast | Albany | Albany NY P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Albany | Syracuse NY P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Caribbean | San Juan PR P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Connecticut Valley | Hartford CT P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Greater Boston | Boston MA P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Greater Boston | Brockton MA P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Greater Boston | Providence RI P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Long Island | Mid Island NY P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Northeast | New York | Morgan NY P&DC | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 2 | 0 | 2 |
| Northeast | Northern New England | Burlington VT P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New England | Eastern Maine P&DF | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Northern New England | Manchester NH | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Northern New England | Southern Maine P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New England | White River Junction VT P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Northern New Jersey | DVD NJ P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 2 |
| Northeast | Westchester | Westchester NY P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Pacific | Bay-Valley | Oakland CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Bay-Valley | San Jose CA P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 2 |
| Pacific | Honolulu | Honolulu HI P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Pacific | Los Angeles | Los Angeles CA P&DC | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Pacific | Sacramento | Fresno CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sacramento | Sacramento CA P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Pacific | San Diego | ML Sellers CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Pacific | San Diego | San Bernardino CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | San Francisco | Eureka CA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | San Francisco | San Francisco CA P&DC | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Pacific | Santa Ana | Santa Ana CA P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Pacific | Sierra Coastal | Santa Barbara CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sierra Coastal | Santa Clarita CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Alabama | Birmingham AL P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Alabama | Mobile AL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Alabama | Montgomery AL P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Arkansas | Little Rock AR P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Southern | Arkansas | Northwest Arkansas | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Dallas | North Texas TX P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Fort Worth | Abilene TX P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Fort Worth | Amarillo TX P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Fort Worth | Lubbock TX P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Gulf Atlantic | Augusta GA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Gulf Atlantic | Jacksonville FL P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Gulf Atlantic | Macon GA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Gulf Atlantic | Pensacola FL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Gulf Atlantic | Tallahassee FL P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Houston | North Houston TX P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Louisiana | Baton Rouge LA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Louisiana | New Orleans LA P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | FY21 - Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | | |
| Southern | Louisiana | Shreveport LA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Mississippi | Gulfport MS P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Mississippi | Jackson MS P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Oklahoma | Oklahoma City OK P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Oklahoma | Tulsa OK P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Rio Grande | Austin TX P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Rio Grande | Corpus Christi TX P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Rio Grande | El Paso TX P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Rio Grande | McAllen TX | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Rio Grande | Midland TX P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Rio Grande | San Antonio TX P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | South Florida | Miami FL P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Southern | South Florida | West Palm Beach FL P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Suncoast | Fort Myers FL P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Suncoast | Orlando FL P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Suncoast | Tampa FL P&DC | 0 | 0 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 2 |
| Western | Alaska | Anchorage AK P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Arizona | Albuquerque NM P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Arizona | Phoenix AZ P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Central Plains | North Platte NE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Central Plains | Omaha NE P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Western | Central Plains | Wichita KS P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Colorado/Wyoming | Casper WY PO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Colorado/Wyoming | Cheyenne WY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Colorado/Wyoming | Denver CO P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Colorado/Wyoming | Grand Junction CO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Billings MT P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Bismarck ND | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Dakota Central SD P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Fargo ND P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Grand Forks ND | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Great Falls MT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Missoula MT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Rapid City SD P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Sioux Falls SD | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Hawkeye | Cedar Rapids IA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Hawkeye | Des Moines IA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Hawkeye | Quad Cities IL P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Hawkeye | Waterloo Plant IA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Mid-America | Kansas City MO P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Mid-America | Springfield MO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Nevada-Sierra | Las Vegas NV P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Nevada-Sierra | Reno NV P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Minneapolis MN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Saint Paul MN P&DC - New | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Portland | Eugene OR P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Portland | Medford OR | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Portland | Portland OR P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | FY21 - Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | | |
| Western | Salt Lake City | Boise ID | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Salt Lake City | Provo UT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Salt Lake City | Salt Lake City UT P&D | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Seattle | Seattle WA P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Seattle | Spokane WA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Seattle | Tacoma WA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | | | 134 | 84 | 56 | 274 | 24 | 60 | 45 | 63 | 27 | 219 | 9 | 1004 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | | Total |
| AREA NAME | DISTRICT NAME | SITE NAME | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | Total Reductio n |
| Capital Metro | Atlanta | Atlanta GA P&DC | 3 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Capital Metro | Atlanta | North Metro GA P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Capital Metro | Baltimore | Baltimore MD IMF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Baltimore | Baltimore MD P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Capital Metro | Baltimore | Eastern Shore MD P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Capital | Curseen/Morris P&DC | 0 | 2 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Capital Metro | Capital | Government Mails | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Capital | Southern MD P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Capital | Suburban MD P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Capital Metro | Greater South Carolina | Charleston SC P&DF | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Capital Metro | Greater South Carolina | Columbia SC P&DC | 1 | 1 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Capital Metro | Greater South Carolina | Greenville SC P&DC | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Capital Metro | Greensboro | Greensboro NC P&DC | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Capital Metro | Greensboro | Raleigh NC P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Capital Metro | Greensboro | Rocky Mount NC P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Mid-Carolinas | Charlotte NC P&DC | 0 | 4 | 0 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| Capital Metro | Mid-Carolinas | Fayetteville NC P&DC | 1 | 2 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Capital Metro | Northern Virginia | Dulles VA P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Capital Metro | Northern Virginia | Merrifield VA P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Capital Metro | Richmond | Norfolk VA P&DC | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Capital Metro | Richmond | Richmond VA P&DC | 0 | 2 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Eastern | Central Pennsylvania | Harrisburg PA P&DC | 1 | 0 | 0 | 1 | 2 | 0 | 0 | 0 | 0 | 2 | 0 | 3 |
| Eastern | Appalachian | Roanoke VA P&DC | 0 | 2 | 0 | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 3 |
| Eastern | Kentuckiana | Lexington KY P&DC | 1 | 0 | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Eastern | Central Pennsylvania | Lehigh Valley PA P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 2 | 0 | 0 | 2 | 0 | 3 |
| Eastern | Central Pennsylvania | Scranton PA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 2 | 0 | 3 | 0 | 3 |
| Eastern | Kentuckiana | Evansville IN P&DF | 1 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 2 |
| Eastern | Kentuckiana | Louisville KY P&DC | 1 | 3 | 0 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| Eastern | Ohio Valley | Dayton OH P&DC | 1 | 1 | 0 | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 3 |
| Eastern | Kentuckiana | Paducah KY P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | South Jersey | Delaware P&DC | 1 | 0 | 0 | 1 | 2 | 0 | 2 | 0 | 0 | 4 | 0 | 5 |
| Eastern | Northern Ohio | Toledo OH P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 0 | 3 | 0 | 3 |
| Eastern | Northern Ohio | Youngstown OH P&DF | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Eastern | Ohio Valley | Cincinnati OH P&DC | 0 | 0 | 0 | 0 | 3 | 1 | 2 | 0 | 0 | 6 | 0 | 6 |
| Eastern | Ohio Valley | Columbus OH P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8 | 0 | 8 | 0 | 8 |
| Eastern | South Jersey | Trenton NJ P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 3 | 0 | 0 | 3 | 0 | 4 |
| Eastern | Philadelphia Metro | Philadelphia PA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 5 | 0 | 8 | 0 | 8 |
| Eastern | Tennessee | Nashville TN P&DC | 1 | 4 | 0 | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| Eastern | Western Pennsylvania | Altoona PA P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Eastern | Appalachian | Charleston WV P&DC | 2 | 0 | 0 | 2 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 3 |
| Eastern | Northern Ohio | Cleveland OH P&DC | 2 | 2 | 0 | 4 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 6 |
| Eastern | Tennessee | Johnson City TN P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 0 | 2 |
| Eastern | South Jersey | South Jersey P&DC | 2 | 0 | 0 | 2 | 2 | 0 | 1 | 0 | 0 | 3 | 0 | 5 |
| Eastern | Tennessee | Knoxville TN P&DC | 2 | 0 | 0 | 2 | 1 | 0 | 0 | 1 | 0 | 2 | 0 | 4 |
| Eastern | Tennessee | Memphis TN P&DC | 2 | 2 | 0 | 4 | 2 | 0 | 0 | 0 | 0 | 2 | 0 | 6 |
| Eastern | Western New York | Buffalo NY P&DC | 0 | 2 | 0 | 2 | 2 | 1 | 0 | 0 | 0 | 3 | 0 | 5 |
| Eastern | Western New York | Rochester NY P&DC | 0 | 2 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 2 | 0 | 4 |
| Eastern | Tennessee | Chattanooga TN P&DC | 3 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | FY21 - Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | | |
| Eastern | Western Pennsylvania | Erie PA P&DC | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 2 | 0 | 2 |
| Eastern | Western Pennsylvania | Johnstown PA P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Eastern | Western Pennsylvania | Pittsburgh PA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 0 | 3 | 0 | 3 |
| Great Lakes | Central Illinois | Carol Stream IL P&DC | 0 | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 2 |
| Great Lakes | Central Illinois | Peoria IL P&DF | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 2 |
| Great Lakes | Central Illinois | South Suburban IL P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 2 | 5 | 0 | 5 |
| Great Lakes | Chicago | Cardiss Collins IL P&DC | 2 | 0 | 0 | 2 | 0 | 1 | 0 | 0 | 1 | 2 | 0 | 4 |
| Great Lakes | Chicago | Chicago International/Military Service Center | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Detroit | Detroit MI P&DC | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Great Lakes | Detroit | Michigan Metroplex P&DC | 7 | 2 | 0 | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 9 |
| Great Lakes | Gateway | Champaign IL P&DF | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Great Lakes | Gateway | Mid Missouri MO P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Great Lakes | Gateway | Saint Louis MO P&DC | 0 | 3 | 0 | 3 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 4 |
| Great Lakes | Gateway | Springfield IL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Great Lakes | Greater indiana | Fort Wayne IN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 | 0 | 2 |
| Great Lakes | Greater indiana | Gary IN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 2 | 0 | 2 |
| Great Lakes | Greater indiana | Indianapolis IN P&DC | 1 | 0 | 0 | 1 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 3 |
| Great Lakes | Greater indiana | Muncie IN P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater indiana | South Bend IN P&DF | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Great Lakes | Greater Michigan | Grand Rapids MI P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 3 | 4 | 0 | 5 |
| Great Lakes | Greater Michigan | Iron Mountain MI P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater Michigan | Lansing MI P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 1 |
| Great Lakes | Greater Michigan | Traverse City MI P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 2 |
| Great Lakes | Lakeland | Green Bay WI P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 2 | 0 | 2 |
| Great Lakes | Lakeland | Madison WI P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 2 |
| Great Lakes | Lakeland | Milwaukee WI P&DC | 1 | 0 | 1 | 2 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 4 |
| Great Lakes | Lakeland | Central WI P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 1 |
| Great Lakes | Lakeland | Palatine IL P&DC | 1 | 1 | 0 | 2 | 1 | 1 | 0 | 1 | 1 | 4 | 0 | 6 |
| Great Lakes | Lakeland | Wausau WI P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Albany | Albany NY P&DC | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 1 | 0 | 4 | 0 | 4 |
| Northeast | Albany | Syracuse NY P&DC | 2 | 1 | 1 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| Northeast | Caribbean | San Juan PR P&DC | 1 | 1 | 1 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Northeast | Connecticut Valley | Hartford CT P&DC | 1 | 1 | 1 | 3 | 0 | 0 | 0 | 3 | 0 | 3 | 0 | 6 |
| Northeast | Connecticut Valley | Southern CT P&DC | 1 | 1 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Northeast | Greater Boston | Boston MA P&DC | 1 | 1 | 2 | 4 | 0 | 2 | 1 | 0 | 0 | 3 | 0 | 7 |
| Northeast | Greater Boston | Brockton MA P&DC | 1 | 1 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Northeast | Greater Boston | Central Massachusetts P&DC | 1 | 1 | 1 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Northeast | Greater Boston | Providence RI P&DC | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Northeast | Long Island | Mid Island NY P&DC | 2 | 0 | 0 | 2 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 3 |
| Northeast | Long Island | Western Nassau NY P&DC | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 2 |
| Northeast | New York | Morgan NY P&DC | 0 | 0 | 0 | 0 | 0 | 4 | 2 | 1 | 0 | 7 | 0 | 7 |
| Northeast | New York | NY ISC - JFK | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New England | Burlington VT P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New England | Eastern Maine P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New England | Manchester NH | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 3 |
| Northeast | Northern New England | Southern Maine P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 2 |
| Northeast | Northern New England | White River Junction VT P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New Jersey | DVD NJ P&DC | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 0 | 4 | 0 | 4 |
| Northeast | Northern New Jersey | Northern NJ Metro P&DC | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 2 |
| Northeast | Triboro | Brooklyn NY P&DC | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 0 | 4 | 0 | 4 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | |
| Northeast | Westchester | Mid-Hudson NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Northeast | Westchester | Westchester NY P&DC | 0 | 0 | 0 | 0 | 0 | 4 | 2 | 0 | 0 | 6 | 0 | 6 |
| Pacific | Bay-Valley | Oakland CA P&DC | 3 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Pacific | Bay-Valley | San Jose CA P&DC | 4 | 0 | 0 | 4 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 5 |
| Pacific | Honolulu | Barrigada GU | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Honolulu | Honolulu HI P&DC | 1 | 0 | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Pacific | Los Angeles | Los Angeles CA ISC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Los Angeles | Los Angeles CA P&DC | 5 | 0 | 0 | 5 | 0 | 0 | 0 | 6 | 0 | 6 | 3 | 14 |
| Pacific | Sacramento | Fresno CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sacramento | Redding CA MPF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sacramento | Sacramento CA P&DC | 0 | 3 | 0 | 3 | 0 | 0 | 0 | 0 | 3 | 3 | 0 | 6 |
| Pacific | San Diego | ML Sellers CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 3 | 0 | 3 |
| Pacific | San Diego | Moreno Valley CA DDC | 1 | 1 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Pacific | San Diego | San Bernardino CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 1 |
| Pacific | San Francisco | Eureka CA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | San Francisco | North Bay CA P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Pacific | San Francisco | San Francisco CA P&DC | 3 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 6 |
| Pacific | Santa Ana | North Grand DDC | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 4 |
| Pacific | Santa Ana | Santa Ana CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sierra Coastal | Bakersfield CA P&DC | 0 | 2 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Pacific | Sierra Coastal | Pasadena CA MPA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sierra Coastal | Santa Barbara CA P&DC | 0 | 3 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Pacific | Sierra Coastal | Santa Clarita CA P&DC | 0 | 2 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Southern | Alabama | Birmingham AL P&DC | 2 | 1 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Southern | Alabama | Huntsville AL P&DF | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Alabama | Mobile AL P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Alabama | Montgomery AL P&DC | 1 | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 2 |
| Southern | Arkansas | Little Rock AR P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 0 | 3 | 0 | 3 |
| Southern | Arkansas | Northwest Arkansas | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Dallas | Dallas TX P&DC | 0 | 1 | 0 | 1 | 0 | 1 | 1 | 0 | 0 | 2 | 0 | 3 |
| Southern | Dallas | North Texas TX P&DC | 1 | 1 | 1 | 3 | 0 | 1 | 1 | 1 | 0 | 3 | 0 | 6 |
| Southern | Fort Worth | Abilene TX P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Fort Worth | Amarillo TX P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Fort Worth | Fort Worth TX P&DC | 2 | 0 | 1 | 3 | 0 | 1 | 1 | 1 | 1 | 4 | 0 | 7 |
| Southern | Fort Worth | Lubbock TX P&DF | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Gulf Atlantic | Augusta GA P&DF | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Gulf Atlantic | Gainesville FL P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Gulf Atlantic | Jacksonville FL P&DC | 1 | 0 | 1 | 2 | 1 | 1 | 1 | 1 | 0 | 4 | 0 | 6 |
| Southern | Gulf Atlantic | Macon GA P&DC | 1 | 1 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Southern | Gulf Atlantic | Pensacola FL P&DC | 0 | 0 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 2 |
| Southern | Gulf Atlantic | Tallahassee FL P&DF | 0 | 1 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 2 |
| Southern | Houston | Beaumont TX P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Houston | North Houston TX P&DC | 3 | 1 | 1 | 5 | 0 | 2 | 2 | 2 | 2 | 8 | 0 | 13 |
| Southern | Louisiana | Baton Rouge LA P&DC | 0 | 0 | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 2 |
| Southern | Louisiana | Lafayette LA P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Louisiana | New Orleans LA P&DC | 1 | 1 | 1 | 3 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 4 |
| Southern | Louisiana | Shreveport LA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 2 | 0 | 2 |
| Southern | Mississippi | Grenada MS CSF | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Mississippi | Gulfport MS P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Mississippi | Hattiesburg MS | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | | Total Reduction |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | |
| Southern | Mississippi | Jackson MS P&DC | 1 | 1 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Southern | Oklahoma | Oklahoma City OK P&DC | 1 | 0 | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Southern | Oklahoma | Tulsa OK P&DC | 0 | 1 | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 2 |
| Southern | Rio Grande | Austin TX P&DC | 0 | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 0 | 3 | 0 | 4 |
| Southern | Rio Grande | Corpus Christi TX P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Rio Grande | El Paso TX P&DC | 1 | 0 | 1 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Southern | Rio Grande | McAllen TX | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Rio Grande | Midland TX P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Rio Grande | San Antonio TX P&DC | 1 | 1 | 1 | 3 | 0 | 1 | 1 | 1 | 0 | 3 | 0 | 6 |
| Southern | South Florida | Miami FL P&DC | 1 | 1 | 2 | 4 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 5 |
| Southern | South Florida | West Palm Beach FL P&DC | 0 | 1 | 1 | 2 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 3 |
| Southern | Suncoast | Fort Myers FL P&DC | 1 | 2 | 0 | 3 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 5 |
| Southern | Suncoast | Manasota FL P&DC | 1 | 1 | 3 | 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| Southern | Suncoast | Mid-Florida FL P&DC | 1 | 1 | 1 | 3 | 0 | 1 | 1 | 0 | 0 | 2 | 0 | 5 |
| Southern | Suncoast | Orlando FL P&DC | 1 | 1 | 1 | 3 | 0 | 1 | 1 | 1 | 0 | 3 | 0 | 6 |
| Southern | Suncoast | Tampa FL P&DC | 1 | 1 | 1 | 3 | 0 | 0 | 1 | 1 | 0 | 2 | 0 | 5 |
| Western | Alaska | Anchorage AK P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Alaska | Juneau AK | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Arizona | Albuquerque NM P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Arizona | Phoenix AZ P&DC | 0 | 0 | 3 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Western | Arizona | Tucson AZ P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Central Plains | Grand Island NE P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Central Plains | Lincoln NE P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Central Plains | Norfolk NE P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Central Plains | North Platte NE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Central Plains | Omaha NE P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Western | Central Plains | Wichita KS P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Colorado/Wyoming | Casper WY PO | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Western | Colorado/Wyoming | Cheyenne WY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Colorado/Wyoming | Colorado Springs CO P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Colorado/Wyoming | Denver CO P&DC | 3 | 0 | 0 | 3 | 0 | 0 | 2 | 0 | 0 | 2 | 0 | 5 |
| Western | Colorado/Wyoming | Grand Junction CO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Colorado/Wyoming | Rock Springs WY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 0 | 2 |
| Western | Dakotas | Billings MT P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Dakotas | Bismarck ND | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Dakota Central SD P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Western | Dakotas | Fargo ND P&DC | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Western | Dakotas | Grand Forks ND | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Great Falls MT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Minot ND P&DF | 1 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 2 |
| Western | Dakotas | Missoula MT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Rapid City SD P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Sioux Falls SD | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Western | Hawkeye | Cedar Rapids IA P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Hawkeye | Des Moines IA P&DC | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Western | Hawkeye | Quad Cities IL P&DF | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Hawkeye | Waterloo Plant IA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Mid-America | Cape Girardeau MO P&DF | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Mid-America | Kansas City MO P&DC | 0 | 3 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Western | Mid-America | Springfield MO | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | FY21 - Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | | |
| Western | Nevada-Sierra | Las Vegas NV P&DC | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 2 |
| Western | Nevada-Sierra | Reno NV P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Western | Northland | Bemidji MN | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Duluth MN P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Eau Claire WI P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Mankato MN | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Minneapolis MN P&DC | 0 | 0 | 3 | 3 | 0 | 0 | 0 | 2 | 0 | 2 | 0 | 5 |
| Western | Northland | Saint Cloud MN | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Saint Paul MN P&DC - New | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 2 |
| Western | Portland | Bend OR P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Portland | Eugene OR P&DF | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Western | Portland | Medford OR | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Portland | Portland OR P&DC | 0 | 0 | 3 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Western | Salt Lake City | Boise ID | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Western | Salt Lake City | Pocatello ID | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Salt Lake City | Provo UT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Salt Lake City | Salt Lake City UT P&D | 1 | 1 | 1 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Western | Seattle | Seattle WA DDC-East | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Seattle | Seattle WA P&DC | 0 | 0 | 3 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| Western | Seattle | South WA DDC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Seattle | Spokane WA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 0 | 2 |
| Western | Seattle | Tacoma WA P&DC | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Western | Seattle | Wenatchee WA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Seattle | Yakima WA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | TOTAL | | | | | | | | | | | | 502 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | | | Total Reductiin |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | |
| Capital Metro | Atlanta | Atlanta GA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Atlanta | North Metro GA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Atlanta | Peachtree GA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Capital Metro | Baltimore | Baltimore MD IMF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Baltimore | Baltimore MD P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Baltimore | Eastern Shore MD P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Capital | Curseen/Morris P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Capital | Southern MD P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Capital Metro | Capital | Suburban MD P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Greater South Carolina | Charleston SC P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Greater South Carolina | Columbia SC P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Capital Metro | Greater South Carolina | Greenville SC P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Greensboro | Greensboro NC P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Greensboro | Raleigh NC P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Greensboro | Rocky Mount NC P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Mid-Carolinas | Charlotte NC P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Mid-Carolinas | Fayetteville NC Annex | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Capital Metro | Northern Virginia | Dulles VA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Northern Virginia | Merrifield VA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Richmond | Norfolk VA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Richmond | Richmond VA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Appalachian | Charleston WV P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Appalachian | Roanoke VA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Central Pennsylvania | Harrisburg PA P&DC | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Eastern | Central Pennsylvania | Lehigh Valley PA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Central Pennsylvania | Scranton PA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Kentuckiana | Evansville IN MPA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Kentuckiana | Lexington KY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Kentuckiana | Louisville KY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Northern Ohio | Akron OH P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Northern Ohio | Cleveland OH FSS Annex | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Northern Ohio | Cleveland OH P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Eastern | Northern Ohio | Toledo OH P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Northern Ohio | Youngstown OH P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Ohio Valley | Cincinnati OH P&DC | 0 | 2 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Eastern | Ohio Valley | Columbus OH FSS Annex | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Ohio Valley | Columbus OH P&DC | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Eastern | Ohio Valley | Dayton OH P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Philadelphia Metro | Philadelphia PA NDC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Philadelphia Metro | Philadelphia PA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 2 | 0 | 2 |
| Eastern | South Jersey | Delaware P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | South Jersey | South Jersey P&DC | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| Eastern | South Jersey | Trenton NJ P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Tennessee | Chattanooga TN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Tennessee | Knoxville TN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Tennessee | Memphis TN P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Eastern | Tennessee | Music City Annex | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Eastern | Western New York | Buffalo NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | | Total Reductiin |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | |
| Eastern | Western New York | Rochester NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Western Pennsylvania | Altoona PA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Western Pennsylvania | Erie PA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Western Pennsylvania | Johnstown PA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Western Pennsylvania | Pennwood Place PA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Western Pennsylvania | Pittsburgh PA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Central Illinois | Carol Stream IL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Central Illinois | Fox Valley IL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Central Illinois | Peoria IL P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Central Illinois | South Suburban IL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 1 |
| Great Lakes | Chicago | Cardiss Collins IL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Chicago | Chicago International/Military Service Cente | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Detroit | Detroit MI P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Great Lakes | Detroit | Michigan Metroplex P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Great Lakes | Gateway | Champaign IL P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Gateway | Mid Missouri MO P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Gateway | Saint Louis MO P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 1 |
| Great Lakes | Gateway | Springfield IL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater indiana | Fort Wayne IN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater indiana | Gary IN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater indiana | Indianapolis IN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Great Lakes | Greater indiana | Muncie IN P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater indiana | South Bend IN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater Michigan | Grand Rapids MI Annex | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 2 |
| Great Lakes | Greater Michigan | Iron Mountain MI P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater Michigan | Lansing MI P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater Michigan | Traverse City MI P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Lakeland | Green Bay WI P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Lakeland | Madison WI P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 1 |
| Great Lakes | Lakeland | Milwaukee WI P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Lakeland | Palatine IL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Albany | Albany NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Albany | Syracuse NY P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Caribbean | San Juan PR P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Connecticut Valley | Hartford CT P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Connecticut Valley | Springfield MA NDC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Greater Boston | Boston MA P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Greater Boston | Brockton MA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Greater Boston | Central Massachusetts P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Greater Boston | Middlesex-Essex MA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Greater Boston | Providence RI P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Long Island | Mid Island NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Long Island | Western Nassau NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | New York | Morgan NY P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Northeast | New York | NY ISC - JFK | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New England | Burlington VT P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New England | Eastern Maine P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New England | Manchester NH | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Northern New England | Southern Maine P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | | Total Reductiin |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | |
| Northeast | Northern New England | White River Junction VT P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New Jersey | DVD NJ P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Northeast | Northern New Jersey | New Jersey IMF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New Jersey | Northern NJ Metro P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Northeast | Triboro | Brooklyn NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Westchester | Westchester NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Pacific | Bay-Valley | Oakland CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| Pacific | Bay-Valley | San Jose CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| Pacific | Honolulu | Honolulu HI P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Pacific | Los Angeles | Los Angeles CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sacramento | Fresno CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sacramento | Redding CA MPF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sacramento | Sacramento CA P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Pacific | San Diego | ML Sellers CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | San Diego | Moreno Valley CA DDC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Pacific | San Francisco | North Bay CA P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Pacific | San Francisco | San Francisco CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| Pacific | Santa Ana | Anaheim CA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Santa Ana | North Grand DDC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| Pacific | Santa Ana | Santa Ana CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sierra Coastal | Bakersfield CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sierra Coastal | Pasadena CA MPA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sierra Coastal | Santa Barbara CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sierra Coastal | Santa Clarita CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Sierra Coastal | Van Nuys CA FSS Annex | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Alabama | Birmingham AL Annex | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Alabama | Mobile AL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Alabama | Montgomery AL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Arkansas | Little Rock AR P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Arkansas | Northwest Arkansas | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Dallas | Dallas TX P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Dallas | North Texas TX P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Fort Worth | Abilene TX P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Fort Worth | Amarillo TX P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Fort Worth | Fort Worth TX P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Fort Worth | Lubbock TX P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Gulf Atlantic | Augusta GA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Gulf Atlantic | Gainesville FL P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Gulf Atlantic | Jacksonville FL P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Gulf Atlantic | Pensacola FL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Gulf Atlantic | South Macon Station | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Gulf Atlantic | Tallahassee FL P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Houston | Beaumont TX P&DF | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Houston | North Houston TX P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Louisiana | Baton Rouge LA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Louisiana | Lafayette LA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Louisiana | New Orleans LA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Louisiana | Shreveport LA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Mississippi | Gulfport MS P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | | Total Reductiin |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | |
| Southern | Mississippi | Jackson MS P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Oklahoma | Oklahoma City OK P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Oklahoma | Tulsa OK P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Rio Grande | Austin TX P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Rio Grande | Corpus Christi TX P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Rio Grande | El Paso TX P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Rio Grande | McAllen TX | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Rio Grande | Midland TX P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Rio Grande | San Antonio TX P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | South Florida | Royal Palm FL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | South Florida | West Palm Beach FL P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Suncoast | Fort Myers FL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Suncoast | Manasota FL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Southern | Suncoast | Seminole FL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Suncoast | Tampa FL P&DC | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Alaska | Anchorage AK P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Arizona | Albuquerque NM P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Arizona | Tucson AZ P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Arizona | West Valley AZ P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Central Plains | Lincoln NE P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Central Plains | North Platte NE | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Central Plains | Omaha NE P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Central Plains | Wichita KS P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Colorado/Wyoming | Cheyenne WY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Colorado/Wyoming | Colorado Springs CO P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Colorado/Wyoming | Denver CO P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Billings MT P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Bismarck ND | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Fargo ND ASF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Great Falls MT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Missoula MT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Dakotas | Sioux Falls SD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Hawkeye | Cedar Rapids IA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Hawkeye | Des Moines IA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Hawkeye | Quad Cities IL P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Hawkeye | Waterloo Plant IA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Mid-America | Kansas City MO P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Mid-America | Springfield MO | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Nevada-Sierra | Las Vegas NV P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Western | Nevada-Sierra | Reno NV P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Duluth MN P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Eau Claire WI P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Mankato MN | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Minneapolis MN P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Saint Cloud MN | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Saint Paul MN P&DC - New | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Western | Portland | Eugene OR P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Portland | Medford OR | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Portland | Portland OR P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | | FY21 - Q1 | Total Reductiin |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | | |
| Western | Salt Lake City | Boise ID | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Salt Lake City | Provo UT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Salt Lake City | Salt Lake City UT ASF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Seattle | Seattle WA DDC-East | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Seattle | Seattle WA P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Seattle | South WA DDC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Seattle | Spokane WA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Seattle | Tacoma WA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Seattle | Yakima WA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| AREA NAME | DISTRICT NAME | SITE NAME | FY20 Q3 Plan | | | | FY20 Q4 Plan | | | | | | FY21 - Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | | |
| Capital Metro | Atlanta | North Metro GA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Atlanta | Peachtree GA P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Capital Metro | Baltimore | Baltimore MD IMF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Capital | Curseen/Morris P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Capital Metro | Greensboro | Greensboro NC P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Greensboro | Raleigh NC P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Mid-Carolinas | Mid-Carolina NC P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Metro | Northern Virginia | Dulles VA P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Capital Metro | Richmond | Richmond VA P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Eastern | Northern Ohio | Akron OH P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Northern Ohio | Cleveland OH FSS Annex | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Ohio Valley | Columbus OH FSS Annex | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Philadelphia Metro | Philadelphia PA NDC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Philadelphia Metro | Philadelphia PA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | South Jersey | Trenton NJ P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Western New York | Northwest Rochester NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eastern | Western Pennsylvania | Pennwood Place PA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Central Illinois | Fox Valley IL P&DC | 2 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| Great Lakes | Central Illinois | South Suburban IL P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 2 |
| Great Lakes | Detroit | Michigan Metroplex P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Greater indiana | Indianapolis IN MPA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Great Lakes | Lakeland | Palatine IL P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 1 |
| Northeast | Connecticut Valley | Springfield MA NDC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Greater Boston | Middlesex-Essex MA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 1 |
| Northeast | Greater Boston | Providence RI P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Northeast | Long Island | Mid Island NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Northern New Jersey | New Jersey IMF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northeast | Triboro | Brooklyn NY P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 1 |
| Northeast | Westchester | Westchester NY P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 1 |
| Pacific | Bay-Valley | San Jose CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| Pacific | Los Angeles | Los Angeles CA P&DC | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 2 | 0 | 2 |
| Pacific | Sacramento | Sacramento CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 |
| Pacific | San Diego | ML Sellers CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | San Diego | Moreno Valley CA DDC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 |
| Pacific | San Francisco | San Francisco CA P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Pacific | Santa Ana | Anaheim CA P&DF | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 |
| Pacific | Sierra Coastal | Van Nuys CA FSS Annex | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Dallas | Dallas TX P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | Houston | North Houston TX P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Southern | South Florida | Royal Palm FL P&DC | 0 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Southern | Suncoast | Seminole FL P&DC | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 2 | 0 | 2 |
| Western | Arizona | West Valley AZ P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| AREA NAME | DISTRICT NAME | SITE NAME | 6/13 - 6/19 | 6/20 - 6/26 | 6/27 - 7/3 | Total Q3 | 7/4 - 7/10 | 7/11 - 7/17 | 7/18 - 7/24 | 7/25 - 7/31 | 8/1 - 9/30 | Total Q4 | FY21 - Q1 | Total Reduction |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Western | Colorado/Wyoming | Denver CO P&DC | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| Western | Mid-America | Kansas City MO P&DC | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Western | Northland | Saint Paul MN P&DC - New | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

# Exhibit 23

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
     KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
     CRISTINA SEPE, WSBA #53609
5      *Assistant Attorneys General*
     EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
       (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
       *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
     Seattle, WA  98104
9    (206) 464-7744

10

11                **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13   STATE OF WASHINGTON, et          NO. 1:20-cv-03127-SAB
     al.,
14                                    DECLARATION OF HALEY
                          Plaintiffs, LIVERMORE IN SUPPORT OF
15                                    PLAINTIFF STATES' MOTION
        v.                            FOR PRELIMINARY
16                                    INJUNCTION
     DONALD J. TRUMP, et al.,
17
                          Defendants.
18

19

20

21

22

DECLARATION OF HALEY              1        ATTORNEY GENERAL OF WASHINGTON
LIVERMORE                                         Complex Litigation Division
                                                   800 5th Avenue, Suite 2000
1:20-cv-03127-SAB                                  Seattle, WA  98104-3188
                                                       (206) 464-7744

1    I, Haley Livermore, declare as follows:

2    1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4    2.    I see a psychiatrist who prescribes me Adderall to provide relief

5    from symptoms of bipolar disorder. The medication helps me focus and think

6    clearly.

7    3.    Because Adderall is a controlled substance, my psychiatrist can only

8    refill my prescriptions through written prescriptions, instead of calling my

9    pharmacy as he does for my other prescriptions.

10    4.    Due to COVID-19, I was having my psychiatry appointments over

11    the phone. When I was low on medication, my doctor would send me the Adderall

12    prescription through the mail. I typically would receive the prescription about

13    two to three days after my appointment and then have it filled at a pharmacy.

14    5.    Around mid-July 2020, I told my doctor that I had run out of

15    medication. My doctor sent me another written prescription through the United

16    States Postal Service. This prescription never arrived.

17    6.    I tried to be patient, but around July 28th, I told my doctor that it had

18    not been delivered. My doctor asked me to inform him if the prescription did not

19    arrive soon.

20

21

22

DECLARATION OF HALEY
LIVERMORE
1:20-cv-03127-SAB

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

7.    During my appointment on August 4th, I confirmed that the prescription had not arrived. While my doctor was certain that he had sent the prescription, he sent me another one.

8.    On the second attempt, I received the prescription after four days, instead of the usual two to three. I had the prescription filled at my pharmacy the next day.

9.    Overall, I was without my medication for about three weeks.

10.    Not having my medication made me experience cognitive disfunction, which means it takes me longer to work through what should be simple problems. This led to a rise in my anxiety and stress levels. This increased stress made it more difficult to accomplish household chores and restart my job search.

11.    My husband is an essential worker and could use time to relax, since he often has to work overtime in a stressful environment. But while I was without my medication, he had to help me around the house and support me through anxiety episodes.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 31st day of August, 2020, at Littleton, Colorado.

_____
HALEY LIVERMORE

DECLARATION OF HALEY
LIVERMORE
1:20-cv-03127-SAB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 24

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      *(application for admission forthcoming)*
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11                **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13   STATE OF WASHINGTON, et      | NO.  1:20-cv-03127-SAB
     al.,
14                                 | DECLARATION OF
                    Plaintiffs,    | MARKHAM MCINTYRE IN
15        v.                       | SUPPORT OF PLAINTIFF
                                   | STATES' MOTION FOR
16   DONALD J. TRUMP, et al.,      | PRELIMINARY INJUNCTION
17                  Defendants.

18

19

20

21

22

DECLARATION OF MARKHAM                1
MCINTYRE

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 182 of 342

I, Markham McIntyre, declare as follows:

1.     I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.     I have worked at the Seattle Metro Chamber for over seven years and have been serving as the interim CEO since our previous President and CEO resigned in January 2020. Previously, I also held positions in Jay Inslee's congressional office and worked on his gubernatorial campaign in 2012.

3.     As the Executive Vice President of the Seattle Metropolitan Chamber of Commerce, I oversee and lead the Chamber's work.

4.     The Seattle Metropolitan Chamber of Commerce is the largest and most diverse business association in the Puget Sound region. Founded in 1882 by local business leaders, the Chamber today is an independent organization representing 2,600 companies and a regional workforce of approximately 750,000. The Seattle Metro Chamber is a business advocacy organization that helps our members thrive in an equitable and inclusive regional economy.

5.     Approximately 75% of the Seattle Metro Chamber's businesses are small businesses. Approximately 30% of our members are microbusinesses with 10 employees or less.

6.     Many of our small business members rely on the United States Postal Service to fulfill customer orders, particularly given the Postal Service's competitive rates and ability to serve every corner of the nation. The COVID-19

DECLARATION OF MARKHAM MCINTYRE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 183 of 342

1   pandemic has been very harmful to our members and the whole Puget Sound

2   business community. Small businesses have been especially hard hit. With an

3   uncertain retail market, many of our members have moved inventory online and

4   are relying more heavily on delivery orders than ever before.

5         7.    Changes to the Postal Service causing delays and unpredictable

6   delivery times will cause strain and hardship to our small business members at a

7   time when efficient and reliable delivery service is more critical than ever. Losing

8   the ability to quickly process orders will hurt our members' bottom lines. These

9   delays impact not only whether customers receive their orders on time, but when

10   stores receive their inventory as well.

11         8.    The Postal Service is an essential part of our nation's infrastructure.

12   These delays are causing significant harm to our members and millions of other

13   small businesses that rely on the Postal Service now more than ever.

14        I declare under penalty of perjury under the laws of the State of

15   Washington and the United States that the foregoing is true and correct.

16        DATED this 20th day of August, 2020, at Seattle, Washington.

17

18        Markham McIntyre

19

20

21

22

DECLARATION OF MARKHAM
MCINTYRE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 25

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
    (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
    *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
## AT YAKIMA

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO.  1:20-cv-03127-SAB |
| Plaintiffs, | DECLARATION OF DENISE W. MERRILL IN SUPPORT OF PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| DONALD J. TRUMP, et al., | |
| Defendants. | |

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

## <u>DECLARATION OF SECRETARY OF THE STATE DENISE W. MERRILL</u>

I, Denise Merrill, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am Secretary of the State for the State of Connecticut. I was first began serving in that role on January 5, 2011, and I was elected to my third term as Connecticut's 73rd Secretary of the State on November 6, 2018. My office is in Hartford, Connecticut.

2.      As Secretary of the State, one of my most important responsibilities is administering, interpreting, and implementing election laws and ensuring fair and impartial elections for both state and national elections held in Connecticut. My office's Elections and Voting Division develops and promulgates the state's elections calendar; coordinates closely with local Town Clerks and Registrars of Voters to promote voter registration and to maintain accurate voter rolls; provides training for local election officials; and oversees and administers other election-related initiatives including, in 2020, the use of secure ballot drop-boxes and the sending of mail-in ballot applications to every eligible Connecticut voter.

3.      Connecticut expends considerable resources to promote fair and impartial elections in which every voter has a full and equal opportunity to vote safely and securely. In 2020, my office has spent at least $500,000 on voter education, and a dedicated staff of 13 has spent the past six weeks entirely focused on promoting the right to vote across Connecticut.

4.      My experience as Secretary of the State includes a term as president of the National Association of Secretaries of State (NASS). I have served as co-chair of NASS's Election Infrastructure Subsector Government Coordinating Council, and I currently serve on the Board of Advisors to the U.S. Election Assistance Commission. Prior to my election as Secretary of the State, I served as a Connecticut State Representative for 17 years, including a term from 2009-2011 as Connecticut's House Majority Leader.

Declaration of Connecticut Secretary of the State Denise W. Merrill / 1

5.      I have compiled the information in this declaration through personal knowledge and through review of documents and information provided to me by my staff.

6.      Connecticut has responded to the Covid-19 public health crisis, which has infected more than 46,000 people and killed more than 4,300 in the state, by expanding mail-in voting to help every eligible resident vote safely and securely in the 2020 primary and general elections.

7.      Connecticut law limits voting by mail to cases of absence, illness, disability, or religious objection. Because of this limitation, state officials generally, and my office specifically, usually refers to voting by mail as "absentee" voting, even though a voter need not be absent from the jurisdiction in order to vote by mail. For the purposes of this Declaration, I will use the more inclusive term "mail-in voting."

8.      Article VI, § 7 of the Connecticut Constitution provides that the General Assembly may enact laws authorizing mail-in voting by "qualified voters of the state who are unable to appear at the polling place on the day of election because of absence from the city or town of which they are inhabitants or because of sickness, or physical disability or because the tenets of their religion forbid secular activity."

9.      Following the state Constitutional grant of authority, the Connecticut General Assembly passed Conn. Gen. Stat. § 9-135, which allows mail-in voting when an elector is "unable to appear at his or her polling place during the hours of voting" because of any of a set of enumerated reasons including "his or her illness."

10.     In a special session in July of 2020, Connecticut's General Assembly passed Public Act No. 20-3, which in relevant part amends Conn. Gen. Stat. § 9-135 to provide that, for the purposes of the November 2020 election, the ongoing pandemic – and the fear of contracting

Declaration of Connecticut Secretary of the State Denise W. Merrill / 2

"the sickness of Covid-19" – is a valid reason for any eligible Connecticut resident to vote by mail.

11.     In response to the new law, my office intends to send a mail-in ballot application to every registered voter in the state – a total of more than 2.1 million people – in the runup to the November 3, 2020 election. While my office sends the applications, they must be returned – using pre-paid return envelopes, for which the state of Connecticut expects to spend approximately $1 million in the general election – to the town clerks in each of Connecticut's 169 municipalities. These clerks, in turn, are responsible – directly or through a contracted mail processing house – for processing the applications and sending mail-in ballots to eligible applicants.

12.     With the exception of blank ballots sent to voters oversees and to service members in the armed forced, those mail-in ballots cannot be sent to voters until October 2, 2020. Conn. Gen. Stat. §§ 9-135, 9-140. While absentee ballots can be requested – by mail or in person – until the day before the election, state law only allows Connecticut to count ballots that are received by 8 p.m. on election day.

13.     I expect a record-breaking volume of mail-in voting in the November, 2020 election, as state residents continue to reduce coronavirus exposure and the risk of Covid-19 sickness by avoiding the prolonged social contact that often comes with in-person voting. In the state's primary election, held on August 11, 2020 under similar rules to those that will be in place in November, mail-in voting exceeded prior-year benchmarks by a factor of 10, with nearly 57% of Connecticut voters using mail-in ballots. I anticipate that use of mail-in ballots in November's general election will meet or exceed August's historic highwater mark.

Declaration of Connecticut Secretary of the State Denise W. Merrill / 3

14.     To try and ensure that every vote will be counted, my office has coordinated the placement of at least one secure ballot drop box in each of the state's municipalities. But I anticipate that, in November as in the August primary election, the United States Postal Service (USPS) will be called upon to deliver a significant portion of election-related mail at four key points in the process: Ballot application delivery from the Secretary of State; ballot application return to town clerks; printed ballots sent by town clerks to voters; and completed ballots returned by voters to town clerks. While drop boxes are an important and completely secure alternative to submitting ballots by mail, they are not a perfect substitute: Among other reasons, they may be relatively inaccessible to elderly voters with limited mobility and voters with disabilities.

15.     On July 31, 2020, my office received a letter from Thomas Marshall, USPS' General Counsel, warning of a "mismatch" between Connecticut's mail-in voting process and USPS delivery standards. Among other things, Mr. Marshall advised that a completed mail-in ballot sent by First-Class Mail should be sent by Tuesday, October 27 in order to be received on time for a November 3 election.

16.     To my knowledge, USPS has never before warned Connecticut that USPS will take seven days to deliver in-state, First-Class, election mail. Such a delay cannot be attribute to Connecticut's size. Connecticut is the third-smallest state in the country, measured in square miles. The distance between Greenwich, on Connecticut's western border, to Stonington, on the state's eastern border, is just 106 miles – a drive of less than two hours on the interstate highway. And, as the above explanation of Connecticut's voting process indicates, completed ballots are sent by voters to local election officials within their own towns or cities – a short distance, given

Declaration of Connecticut Secretary of the State Denise W. Merrill / 4

Connecticut's compact size. Our largest municipality by geographic area, the city of Danbury, is just 41 square miles.

17.    Unfortunately, though, my office has every reason to fear that the unprecedented USPS warning reflects an unprecedented reality: I am deeply concerned that, without decisive action, mail delays may deprive some Connecticut residents of the right to vote in the 2020 General Election.

18.    My office has received numerous complaints from Connecticut residents who timely requested mail-in ballots for our August primary, but whose ballots did not arrive through USPS until Election Day had passed. The residents, in those instances, were either forced to vote in person – risking exposure to the coronavirus – or else were not able to vindicate their right to vote.

19.    It is important to stress that, in my years of experience overseeing Connecticut elections, those mailing delays are unprecedented. Until this August's primary election, it was routine for ballot applications and completed ballots to reach their intended destination in two days. But this year, mailing times were often longer – sometimes significantly longer – and those new delays cost our residents dearly.

20.    In previous years Connecticut postal workers have accorded special priority status to election mail, ensuring that the mail reaches its destination promptly. In my understanding, the USPS no longer plans to use that special priority coding for Connecticut's election mail this November. I am deeply concerned that the turn away from prioritizing election mail will exacerbate the delays that we saw in August, threatening the voting rights of even more Connecticut residents.

Executed this ____18____ day of August, 2020 at Hartford, CT.


Declaration of Connecticut Secretary of the State Denise W. Merrill / 5

Denise W. Merrill
Secretary of the State

Declaration of Connecticut Secretary of the State Denise W. Merrill / 6

# Exhibit 26

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
               **EASTERN DISTRICT OF WASHINGTON**
12                       **AT YAKIMA**

13   STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
     al.,
14                                     DECLARATION OF STEVEN
                          Plaintiffs,  MITCHELL IN SUPPORT OF
15         v.                          PLAINTIFF STATES' MOTION
                                       FOR PRELIMINARY
16   DONALD J. TRUMP, et al.,          INJUNCTION

17                         Defendants.

18

19

20

21

22

DECLARATION OF STEVEN
MITCHELL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 194 of 342

1    I, Steve Mitchell, declare as follows:

2    1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4    2.    I am the co-owner of Scuppernong Books, an independent bookstore

5    in Greensboro, North Carolina. We are a general interest/literary bookstore

6    featuring fiction and poetry along with children's books and a broad range of

7    general interest titles. We opened in 2013 and have been an essential part of the

8    rebirth of downtown Greensboro ever since. In 2018, we formed Scuppernong

9    Editions, an eclectic small press. Before the COVID-19 pandemic, we operated

10    a café in the store serving wine, beer, coffee, and food. We also hosted hundreds

11    of events a year, bringing in writers from around the world.

12    3.    With the onset of the COVID-19 pandemic, our business, like so

13    many others, has struggled. We are currently open by appointment only for

14    socially-distanced browsing, and we require customers to make an appointment

15    online or by telephone before entering the store. We are also no longer able to

16    operate our in-store café, and we have had to stop holding in-store events. These

17    events were a major driver of business; in 2019, we hosted over 250 writers in

18    our store, as well as theatre, music, dance, and community conversation. All of

19    these changes have devastated foot traffic through our store.

20    4.    With the huge drop in in-store sales of merchandise and

21    refreshments, the bookstore has now become reliant on delivery orders for a

22

DECLARATION OF STEVEN
MITCHELL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 195 of 342

1    significant portion of our business, and therefore the efficient operation of the

2    United States Postal Service, to survive. Even before the COVID-19 pandemic,

3    we used the USPS to fulfil virtually all of our product orders, because their media

4    mail rates are considerably cheaper than their competitors. As a small business

5    sending just one or two items at a time, we cannot afford to use other major

6    carriers. Further, other major carriers do not deliver everywhere, including to

7    rural locations where some of our customers are located.

8       5.     I understand through media reports and public announcements that

9    the USPS is currently making changes to the way it provides mail service.

10       6.     We saw a huge increase in delivery orders at the beginning of the

11    pandemic—an increase of approximately 400 percent in April 2020. But in the

12    last couple of weeks, we have seen those numbers fall significantly. Anecdotally,

13    customers have complained to me about orders not arriving on time, and through

14    tracking packages on the USPS website, I can see myself that delivery times have

15    increased and that packages are increasingly being routed through roundabout

16    locations before arriving at their destination. I have even received questions from

17    customers asking if they should still have things mailed to them.

18       7.     We rely significantly on delivery orders to stay in business and our

19    customers, who are fearful of, or cannot travel are worried they will be left

20    without service. If these delays continue, it will be a death blow to our bookstore

21    during a time when we are already struggling to survive. Going out of business

22

DECLARATION OF STEVEN
MITCHELL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    now will make it that much harder for us to come back after the pandemic is over.

2    We need the USPS to deliver efficient service to all areas of the country in order

3    to survive this crisis.

4        8.    I live in the same community as the Postmaster General. These

5    delays deeply affect our community, from small businesses to people in rural

6    areas who rely on the Postal Service to receive medicines and other necessary

7    items by mail that are now subject to ten-day delays. Additionally, I am deeply

8    concerned that the Postal Service will be unable to process mail-in ballots in the

9    coming election.

10       I declare under penalty of perjury under the laws of the State of

11   Washington and the United States that the foregoing is true and correct.

12       DATED this __18___ day of August, 2020, at Greensboro, NC.

13             *Steve Mitchell*

14             STEVE MITCHELL

15

16

17

18

19

20

21

22

DECLARATION OF STEVEN
MITCHELL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 197 of 342

# Exhibit 27

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
    (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
    *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9   (206) 464-7744

10

11
          **UNITED STATES DISTRICT COURT**
       **EASTERN DISTRICT OF WASHINGTON**
12                 **AT YAKIMA**

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO.  1:20-cv-03127-SAB |
| Plaintiffs, | DECLARATION OF ESTHER OKANLAWON IN SUPPORT OF PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| DONALD J. TRUMP, et al., | |
| Defendants. | |

DECLARATION OF ESTHER
OKANLAWON

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 199 of 342

I, Esther Okanlawon, declare as follows:

1.     I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.     I am a family nurse practitioner, serving patients in Colorado.

3.     As a healthcare provider, our goal is to deliver treatment in a timely manner to alleviate the patient's symptoms.

4.     While working on clinical rotations, I see patients who have been prescribed medications which are sent from Express Scripts through the mail.

5.     Before July, medications usually were delivered to patients through the mail within seven days of receiving written prescriptions. In psychiatric care, we usually schedule patients to return for follow-up appointments four to five weeks later to see whether the medication is working.

6.     Beginning around July 2020, I noticed that patients who were prescribed medication through Express Scripts experienced delays in receiving their medications through the mail.

7.     Due to late deliveries through the mail, patients were returning to their follow-up appointment having used only about seven to eight days' worth of the medication.

8.     Three to four patients experienced delivery delays of about 14 to 21 days for medication through the mail.

DECLARATION OF ESTHER
OKANLAWON

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

9.     In psychiatric care, a delay in treatment usually leads to a delay in symptom relief.

10.    Because of these mail delays, patients have had to schedule additional follow-up appointments because it typically takes about one month to determine if the psychiatric treatments are effective. Patients might need to take time off work to return for additional follow-up appointments.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 31st th day of August, 2020, at Highlands Ranch, Colorado.

ESTHER OKANLAWON
Family Nurse Practitioner

DECLARATION OF ESTHER
OKANLAWON

# Exhibit 28

1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4  ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5  *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7  KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9  (206) 464-7744

10
                **UNITED STATES DISTRICT COURT**
11              **EASTERN DISTRICT OF WASHINGTON**
                         **AT YAKIMA**
12

13 STATE OF WASHINGTON, et        NO.  1:20-cv-03127-SAB
   al.,
14                               DECLARATION OF
                    Plaintiffs,  CAROLYN OLSEN IN
15        v.                     SUPPORT OF PLAINTIFF
                                 STATES' MOTION FOR
16 DONALD J. TRUMP, et al.,      PRELIMINARY INJUNCTION

17                 Defendants.

18

19

20

21

22

DECLARATION OF                        ATTORNEY GENERAL OF WASHINGTON
CAROLYN OLSEN                               Complex Litigation Division
NO. 1:20-CV-03127-SAB                         800 5th Avenue, Suite 2000
                                            Seattle, WA  98104-3188
                                                 (206) 464-7744

1      I, Carolyn Olsen, declare as follows:

2      1.      I am over the age of 18, am competent to testify as to the matters

3   herein, and make this declaration based on my personal knowledge.

4      2.      I am a retiree and a resident of Port Townsend, Washington.

5      3.      I have relied on the U.S. Postal Service to deliver my medication by

6   mail for several years. I used Postal Prescription Services, a mail order program

7   based in Portland, Oregon, for at least eight years.

8      4.      Before August 2020, I had never received a prescription more than

9   4 days after a refill or call in by a doctor for that prescription. Generally, it takes

10  between 2 and 3 days between the order and the delivery to me in Port Townsend,

11  Washington.

12     5.      On August 10, 2020, my doctor called in two prescriptions to Postal

13  Prescription Services. One of these medications, Chlorthalidone, is used to treat

14  my high blood pressure; the second, Sertraline HCL, is an anti-depressant. Both

15  of these medications are critical to my health and well-being.

16     6.      I grew concerned when, on or around August 14, 2020, I had not

17  received my prescription delivery and had been hearing reports of postal delays.

18  So, on or around August 14, I called Postal Prescription Services to ask about the

19  status of this prescription delivery. A customer service representative informed

20  me that Postal Prescription Services had mailed out my prescriptions the same

21  day my doctor placed the order—on August 10.

22

DECLARATION OF                              2                    ATTORNEY GENERAL OF WASHINGTON
CAROLYN OLSEN                                                        Complex Litigation Division
NO. 1:20-CV-03127-SAB                                                 800 5th Avenue, Suite 2000
                                                                     Seattle, WA  98104-3188
                                                                         (206) 464-7744

7.     A few days later, I followed-up again with Postal Prescription Services and got the tracking number. I then called my local Post Office and learned that my delivery had been stuck at a facility in Federal Way since August 15, 2020. I was told that I should expect to receive my medication by August 20, 2020.

8.     My medication did not arrive by August 20, 2020.

9.     On or about August 21, 2020, I called the U.S. Postal Service to report missing mail. An employee took my information, told me she would stamp my inquiry as URGENT, and would send the inquiry to my local Post Office. My request number is 14204165.

10.     I have since received two emails from the U.S. Postal Service that have thanked me for my patience and stated that the U.S. Postal Service was looking into the matter.

11.     As of August 31, 2020 I still have not received my prescriptions.

12.     Because of my age and my high blood pressure, I am at an increased risk for severe illness from COVID-19.

13.     Due to the risk of exposure to COVID-19, it would be better and more convenient for me to receive my medication by mail. This way I can avoid waiting in line at a pharmacy and minimize my exposure by staying at home.

14.     Because of my concerns with the delayed delivery, and my worry that similar issues would come up with replacement medications sent by mail, I

DECLARATION OF
CAROLYN OLSEN
NO. 1:20-CV-03127-SAB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  went to my local pharmacy to get my medication to avoid running out of my

2  medications.

3      15.    To do so, I had to remove my prescriptions from Postal Prescription

4  Services, because I do not trust that future medications will be delivered in a

5  timely and consistent way. The retail pharmacist then had to call my doctor so I

6  could get my prescription filled at the local pharmacy.

7      16.    Postal Prescription Services has been a good service but I think other

8  people, like me, will pull their prescriptions out of concern for mail delays.

9      17.    I have experienced a lot of anxiety and stress because of the delays

10  in receiving my medication by mail and the follow-up I had to do. I think this

11  stress has increased my blood pressure.

12      I declare under penalty of perjury under the laws of the United States that

13  the foregoing is true and correct.

14

15  DATED this 31 day of August, 2020, at Port Townsend, Washington.

16                                                     _Carolyn Olsen_

17                 Carolyn Olsen

18

19

20

21

22

DECLARATION OF                 4         ATTORNEY GENERAL OF WASHINGTON
CAROLYN OLSEN                            Complex Litigation Division
NO. 1:20-CV-03127-SAB                    800 5th Avenue, Suite 2000
                                         Seattle, WA 98104-3188
                                         (206) 464-7744

# Exhibit 29

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA 98104
9   (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13   STATE OF WASHINGTON, et      NO. 1:20-cv-03127-SAB
     al.,
14                                DECLARATION OF AMY
                   Plaintiffs,    PETERSON IN SUPPORT OF
15                                PLAINTIFF STATES' MOTION
           v.                     FOR PRELIMINARY
16                                INJUNCTION
     DONALD J. TRUMP, et al.,
17
                   Defendants.
18

19

20

21

22

DECLARATION OF
AMY PETERSON

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 208 of 342

I, Amy Peterson, declare as follows:

1.  I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2.  I am currently the Human Resources Supervisor for the Minnesota Department of Administration.

3.  As part of my job duties I supervise human resource services for employees at the Department of Administration, Minnesota Management and Budget, and nearly thirty small agencies, boards, and councils.

4.  The human resources department administers Family and Medical Leave Act (FMLA) services for employees of the relevant agencies, boards, and councils.  One important part of this service is to provide FMLA paperwork to employees who request leave or who are out on continuous leave.

5.  Federal regulations require that FMLA paperwork be provided to employees within certain time deadlines.  This time frame can be as short as five days. The purpose of much of the paperwork is to provide employees timely notice of their rights and responsibilities under the FMLA.

6.  Some employees on FMLA leave no longer report to their work site and paperwork must be sent to their homes.  There have been incidents, at least

DECLARATION OF                              2
AMY PETERSON

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  two recently, where the United States Postal Service (USPS) has not delivered

2  time-sensitive FMLA paperwork in a timely manner.

3      7.    In one instance paperwork was sent via certified mail on August 18th

4  or 19th, and as of the date of this declaration, has still not been delivered.

5      8.    These delays prevent employees from completing FMLA paperwork

6  in a timely manner, limit employees' receipt of timely notice of their legal rights as

7  contemplated by federal law, place the Department at legal risk of allegations of

8  failure to comply with the FMLA notice requirements, and prevent managers from

9  planning for employees' leave while an employee's status is uncertain.

10     9.    The Department of Administration also responds to unemployment

11  claims on behalf of certain state agencies.

12     10.    When an individual separates from employment, they can apply for

13  unemployment benefits through the Minnesota Department of Employment and

14  Economic Development (DEED).  When an individual applies for unemployment

15  benefits, DEED sends a letter to the employer and typically provides ten days to

16  respond to the application to dispute the individual's entitlement to unemployment

17  benefits.  If the employer does not respond, the benefits are often approved without

18  the benefit of the employer's contrary information, and the employer is liable to

19  pay for those benefits.

DECLARATION OF                 3         ATTORNEY GENERAL OF WASHINGTON
AMY PETERSON                                    Complex Litigation Division
                                                800 5th Avenue, Suite 2000
                                                Seattle, WA  98104-3188
                                                (206) 464-7744

11.     There have been instances where unemployment letters from DEED have been delivered by the USPS after the deadline to respond to the unemployment application.  Those letters must have taken in excess of ten days to be delivered.  This effectively deprives the Department of its right to dispute the individual's entitlement to benefits.

12.     On at least two occasions, the Department would have contested an individual's entitlement to unemployment benefits but was unable to do so because the unemployment letter from DEED was delivered by the USPS after the deadline to respond.

13.     The Department is paying for unemployment benefits that would have been contested because USPS delivered those letters past the responsive deadline. Had DEED had the benefit of the Department's information, DEED may have determined the individual was in fact ineligible for benefits.

14.     These mail delays are impairing the ability of the Department to effectively and efficiently administer human resource services to the state agencies it serves.

DECLARATION OF
AMY PETERSON

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    I declare under penalty of perjury under the laws of the States of Washington

2    and Minnesota and the United States of America that the foregoing is true and

3    correct.

4    Dated:  September <u>4</u>, 2020          <u>*Amy Peterson*</u>
                                              AMY PETERSON

5

DECLARATION OF                     5          ATTORNEY GENERAL OF WASHINGTON
AMY PETERSON                                        Complex Litigation Division
                                                    800 5th Avenue, Suite 2000
                                                    Seattle, WA  98104-3188
                                                        (206) 464-7744

Exhibit 30

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5       (*application for admission forthcoming*)
    *Assistant Attorneys General*
6   EMMA GRUNBERG, WSBA #54659
    TERA M. HEINTZ, WSBA #54921
7       (*application for admission forthcoming*)
    KARL D. SMITH, WSBA #41988
8       (*application for admission forthcoming*)
    *Deputy Solicitors General*
9   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
10  (206) 464-7744

11

12              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF WASHINGTON**
13                         **AT YAKIMA**

14  STATE OF WASHINGTON, et al.,          NO. 1:20-cv-03127-SAB

15                      Plaintiffs,       DECLARATION OF CHRISTOPHER
                                          E. PIPER IN SUPPORT OF
        v.                                PLAINTIFF STATES' MOTION FOR
16                                        PRELIMINARY INJUNCTION
    DONALD J. TRUMP, et al.,
17
                        Defendants.
18

19

20

21

22

DECLARATION OF
CHRISTOPHER E. PIPER

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

1    I, Christopher E. Piper, declare as follows:

2    1.    I am over the age of 18, am competent to testify as to the matters herein, and

3    make this declaration based on my personal knowledge.

4    2.    I am the Commissioner of the Virginia Department of Elections.

5    3.    I was appointed to and have served in this position since February 2018.

6    4.    As Commissioner, I am also the Chief Election Officer in the Commonwealth.

7    5.    Over the subsequent two years, I have overseen six statewide elections, as

8    well as a number of special and local elections.

9    6.    The Virginia Department of Elections is charged with overseeing the work of

10    the county and city electoral boards and of the registrars of 133 localities to obtain uniformity

11    in their practices and proceedings and legality and purity in all elections. Va. Code § 24.2-

12    103(A).

13    7.    Under the Virginia Code, any individual may vote absentee without providing

14    an excuse to do so. *See* Va. Code § 24.2-700.

15    8.    Virginia permits any qualified voter to vote absentee after completing and

16    returning a valid absentee ballot application. Va. Code §§ 24.2-700 and 24.2-701.

17    9.    After receiving a valid application for an absentee ballot, the general registrar

18    enrolls the name and address of the applicant on the absentee voter applicant list. Va. Code

19    § 24.2-706. The voter then has the ability to vote either in-person absentee, Va. Code §§

20    24.2-701.1 and 24.2-701.2, or by mail, Va. Code § 24.2-707.

21

22

DECLARATION OF
CHRISTOPHER E. PIPER

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

10.     Requests to have an absentee voter ballot mailed must be received by the general registrar no later than 5:00 p.m. 11 days before the November election. Va. Code § 24.2-701(B)(2).

11.     Absentee ballots must be returned to the general registrar no later than noon on the third day after the election in order to be counted. Va. Code § 24.2-709(B).

12.     General registrars use First Class mail to mail ballots.

13.     Absentee voting in Virginia has seen a marked increase since the beginning of the COVID-19 pandemic. In the 2020 June primary elections, 542,318 total ballots were cast, and, of those ballots, 105,832 were absentee.

14.     In order to meet the increased need for absentee voting during the COVID-19 pandemic, the Virginia Department of Elections has distributed funds provided under the Coronavirus Aid, Relief, and Economic Security (CARES) Act. Many localities have already expended those funds for the purpose of preparing and sending a large influx of absentee ballots.

15.     In the 2020 May town and city general and special elections, 139,454 total ballots were cast, and, of those ballots, 66,333 were absentee.

16.     In comparison, for the 2018 May town and city general and special elections, during which the number of total ballots cast was 130,829, there were only 4,466 absentee ballots cast.

17.     On July 30, Mr. Thomas Marshall, General Counsel for the USPS, sent a letter to notify me that "certain deadlines for requesting and casting mail-in ballots [in Virginia] are incongruous with the Postal Service's delivery standards." Accordingly, Mr. Marshall

DECLARATION OF
CHRISTOPHER E. PIPER

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

1    explained that "this mismatch creates a risk that ballots requested near the deadline under

2    state law will not be returned by mail in time to be counted under your laws as we understand

3    them." *See* Ex. A, July 30, 2020 Marshall Letter.

4        18.    Mr. Marshall also advised me that, as a result of the Postal Service's delivery

5    standards, to the extent the mail is used to transmit ballots to and from voters, "there is

6    significant risk that, at least in certain circumstances, ballots may be requested in a manner

7    that is consistent with [Virginia's] election rules and returned promptly, and yet not be

8    returned in time to be counted."

9        19.    It remains to be seen what any changes to the USPS system will have on the

10    absentee voting system in Virginia. Since these changes have been proposed, localities in the

11    Commonwealth have not had to mail out ballots. The last absentee ballots mailed to voters

12    were for the July 7 and 14 special elections in Arlington and Smyth Counties, prior to any

13    proposed postal changes.

14        20.    Ballot proofs will begin being reviewed on August 22 and must be mailed out

15    no later than September 19.

16

17

18

19

20

21

22

DECLARATION OF
CHRISTOPHER E. PIPER

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

1       I declare under penalty of perjury under the laws of the United States that the

2  foregoing is true and correct.

3

       DATED this 4th day of September, 2020, at Richmond, Virginia.

4

5                        _____

                        Christopher E. Piper

6                    Commissioner, Virginia Department of Elections

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF
CHRISTOPHER E. PIPER

ATTORNEY GENERAL OF VIRGINIA
202 North Ninth Street
Richmond, Virginia 23219
804-692-0558 (telephone)
804-692-1647 (facsimile)
clewis@oag.state.va.us

**Piper Declaration**

**Exhibit A**

THOMAS J. MARSHALL
GENERAL COUNSEL
AND EXECUTIVE VICE PRESIDENT


UNITED STATES
POSTAL SERVICE

July 30, 2020


Honorable Christopher Piper
Commissioner, Department of Elections
Washington Building
1100 Bank Street, Floor 1
Richmond, VA 23219-3642

Dear Commissioner Piper:

Re:  Deadlines for Mailing Ballots

With the 2020 General Election rapidly approaching, this letter follows up on my letter dated May 29, 2020, which I sent to election officials throughout the country.  That letter highlighted some key aspects of the Postal Service's delivery processes.  The purpose of this letter is to focus specifically on the deadlines for requesting and casting ballots by mail.  In particular, we wanted to note that, under our reading of Virginia's election laws, certain deadlines for requesting and casting mail-in ballots may be incongruous with the Postal Service's delivery standards.  This mismatch creates a risk that ballots requested near the deadline under state law will not be returned by mail in time to be counted under your laws as we understand them.

As I stated in my May 29 letter, the two main classes of mail that are used for ballots are First-Class Mail and USPS Marketing Mail, the latter of which includes the Nonprofit postage rate.  Voters must use First-Class Mail (or an expedited level of service) to mail their ballots and ballot requests, while state or local election officials may generally use either First-Class Mail or Marketing Mail to mail blank ballots to voters.  While the specific transit times for either class of mail cannot be guaranteed, and depend on factors such as a given mailpiece's place of origin and destination, most domestic First-Class Mail is delivered 2-5 days after it is received by the Postal Service, and most domestic Marketing Mail is delivered 3-10 days after it is received.

To account for these delivery standards and to allow for contingencies (e.g., weather issues or unforeseen events), the Postal Service strongly recommends adhering to the following timeframe when using the mail to transmit ballots to domestic voters:

- **Ballot requests:**  Where voters will both receive and send a ballot by mail, voters should submit their ballot request early enough so that it is received by their election officials at least 15 days before Election Day at a minimum, and preferably long before that time.

- **Mailing blank ballots to voters:**  In responding to a ballot request, election officials should consider that the ballot needs to be in the hands of the voter so that he or she has adequate time to complete it and put it back in the mail stream so that it can be processed and delivered by the applicable deadline.  Accordingly, the Postal Service recommends that election officials use First-Class Mail to transmit blank ballots and allow 1 week for delivery to voters.  Using Marketing Mail will result in slower delivery times and will increase the risk that voters will not receive their ballots in time to return them by mail.

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-1100
PHONE: 202-268-5555
FAX: 202-268-6981
THOMAS.J.MARSHALL@USPS.GOV
www.usps.com

- 2 -

- **Mailing completed ballots to election officials:**  To allow enough time for ballots to be returned to election officials, domestic voters should generally mail their completed ballots at least one week before the state's due date.  In states that allow mail-in ballots to be counted if they are *both* postmarked by Election Day *and* received by election officials by a specific date that is less than a week after Election Day, voters should mail their ballots at least one week before they must be received by election officials.  So, for example, if state law requires a mail-in ballot to be postmarked by Tuesday, November 3, and received by Friday, November 6, voters should mail their ballot by Friday, October 30, to allow enough time for the ballots to be delivered by November 6.  Voters must also be aware of the posted collection times on collection boxes and at the Postal Service's retail facilities and that ballots entered after the last posted collection time on a given day will not be postmarked until the following business day.

Under our reading of your state's election laws, as in effect on July 27, 2020, certain state-law requirements and deadlines appear to be incompatible with the Postal Service's delivery standards and the recommended timeframe noted above.  As a result, to the extent that the mail is used to transmit ballots to and from voters, there is a significant risk that, at least in certain circumstances, ballots may be requested in a manner that is consistent with your election rules and returned promptly, and yet not be returned in time to be counted.

Specifically, it appears that a voter may generally request a ballot as late as 11 days before the election, and that a completed ballot must be postmarked by Election Day and received by election officials no later than 3 days after the election.  It also appears that election officials have 3 business days to transmit a ballot to the voter in response to a request.  If a voter submits a request at or near the ballot-request deadline, and if the election official transmits the ballot to the voter by mail 3 business days later, there is a risk that the voter will not receive the ballot before the postmarking deadline or have sufficient time to complete and mail the completed ballot back to election officials in time for it to arrive by the state's receipt deadline.  Also, please note that, given the delivery standards for First-Class Mail, there is a risk that completed ballots postmarked on Election Day itself will not be delivered in time to meet the state's receipt deadline of November 6.  As noted above, voters who choose to mail their ballots should do so no later than Friday, October 30.

To be clear, the Postal Service is not purporting to definitively interpret the requirements of your state's election laws, and also is not recommending that such laws be changed to accommodate the Postal Service's delivery standards.  By the same token, however, the Postal Service cannot adjust its delivery standards to accommodate the requirements of state election law.  For this reason, the Postal Service asks that election officials keep the Postal Service's delivery standards and recommendations in mind when making decisions as to the appropriate means used to send a piece of Election Mail to voters, and when informing voters how to successfully participate in an election where they choose to use the mail.  It is particularly important that voters be made aware of the transit times for mail (including mail-in ballots) so that they can make informed decisions about whether and when to (1) request a mail-in ballot, and (2) mail a completed ballot back to election officials.

We remain committed to sustaining the mail as a secure, efficient, and effective means to allow citizens to participate in the electoral process when election officials determine to utilize the mail as a part of their election system.  Ensuring that you have an understanding of our operational capabilities and recommended timelines, and can educate voters accordingly, is important to achieving a successful election season.  Please reach out to your assigned election mail coordinator to discuss the logistics of your mailings and the services that are available as well as any questions you may have.  A list of election mail coordinators may be found on our website at: https://about.usps.com/election-mail/politicalelection-mail-coordinators.pdf.

- 3 -

We hope the information contained in this letter is helpful, and please let me know if you have any questions or concerns.

Sincerely,

Thomas J. Marshall

# Exhibit 31

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF WASHINGTON**
12                      **AT YAKIMA**

13   STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
     al.,
14                                    DECLARATION OF AMY
                         Plaintiffs,  PUHALSKI IN SUPPORT OF
15        v.                          PLAINTIFF STATES' MOTION
                                      FOR PRELIMINARY
16   DONALD J. TRUMP, et al.,         INJUNCTION

17                       Defendants.

18

19

20

21

22

DECLARATION OF PUHALSKI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 224 of 342

1        I, Amy Puhalski, declare as follows:

2        1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4        2.    I am the local president for the Western Michigan Area Local

5    American Postal Workers Union and my office is inside the United States Post

6    Office in Grand Rapids, MI at 225 Michigan St NW.

7        3.    Among other duties, I supervise the officers and stewards of our

8    local union.

9        4.    I have personally observed that two Delivery Bar Code Sorter

10   machines have been removed from the United States Post Office in Grand

11   Rapids, MI at 225 Michigan St NW.  Two more machines were slated to be

12   removed and are currently not being used.  A fifth Delivery Bar Code Sorter was

13   going to be moved at the facility, power has been cut from this Delivery Bar Code

14   Sorter, but it has not been moved and it is not in use.

15       5.    I have personally observed that an automated flat sorter machine

16   was removed from the United States Post Office in Kentwood, MI.    The

17   automated flat sorter machine has been physically removed and the parts have

18   been or are in the process of being scrapped.

19       6.    The automated flat sorter machine sorts flats, mail that cannot go

20   thought Delivery Bar Code Sorter, and can process approximately 16,000 pieces

21   of mail per hour.

22

DECLARATION OF PUHALSKI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    7.    The Delivery Bar Code Sorter puts the mail in a walking route for

2    postal workers so they can deliver the mail and the machine can process

3    approximately 36,000 letters per hour for delivery by mail carriers.

4    8.    I personally spoke with the maintenance staff that was removing

5    these sorting machines and they explained that removal and disassembly actions

6    were taking place through 4:00 pm on August 18, 2020.

7    9.    I am aware that the Western Michigan Post Offices have been

8    operating under a new policy that no postal trucks are to leave late. Prior to this

9    policy, if postal employees were in the midst of sorting mail, they would finish

10   sorting and that mail would be placed on the truck for that day's delivery. Now,

11   under the new policy, a considerable amount of mail does not get placed on the

12   truck and must await the next day's delivery.

13   10.   On the morning of August 19, 2020, I witnessed that a considerable

14   amount of mail from the Kalamazoo and Holland jurisdictions did not make that

15   day's truck and had to wait for delivery the following day.

16   11.   I am also aware that within the Western Michigan Post Offices a

17   policy of no early overtime has been implemented. This makes it more likely

18   that mail will not be sorted in time to be timely delivered.

19   12.   Prior to this no-early-overtime policy, employees could take

20   overtime prior to their normal "tour" (shift), which was helpful for same-day

21   processing. Although under the new policy employees can take overtime at the

22

DECLARATION OF PUHALSKI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   end of the day, the mail that is processed during this overtime will not go out for

2   delivery until the following day.

3        I declare under penalty of perjury under the laws of the State of Michigan

4   and the United States that the foregoing is true and correct.

5        DATED this _20_ day of August, 2020, at Grand Rapids, Michigan.

6

7        Amy Puhalski
         Local President, Western Michigan Area Local
8        American Postal Workers Union

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF PUHALSKI

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# Exhibit 32

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
     KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
     CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
     EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
       (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
       *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
     Seattle, WA  98104
9    (206) 464-7744

10

11                **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13   STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
     al.,
14                                    DECLARATION OF KRISTIN
                         Plaintiffs,  A. RICHARDS IN SUPPORT
15        v.                          OF PLAINTIFF STATES'
                                      MOTION FOR PRELIMINARY
16   DONALD J. TRUMP, et al.,         INJUNCTION

17                       Defendants.

18

19

20

21

22

DECLARATION OF                          ATTORNEY GENERAL OF WASHINGTON
KRISTIN A. RICHARDS                          Complex Litigation Division
                                              800 5th Avenue, Suite 2000
                                              Seattle, WA  98104-3188
                                                  (206) 464-7744

I, KRISTIN A. RICHARDS, declare:

1.   I am a resident of the State of Illinois. I am over the age of 18 and make this declaration from personal knowledge and based on records from the Illinois Department of Employment Security ("IDES"). If called as a witness, I could and would testify competently to all the matters set forth below.

2.   I am the Acting Director of IDES. I am responsible for overseeing the day to day operations of IDES. I coordinate with IDES staff to develop policies, objectives, and initiatives to further IDES' mission to serve its community. I have held this position since August 10, 2020.

3.   Our mission is to serve Illinois workers and employers by administering unemployment insurance, programs created in Illinois under the Workforce Innovation and Opportunity Act, and other federal programs to the best of our ability and to use our knowledge of the Illinois workforce to inform sound policy decision making for Illinois residents and employers.

4.   Between March 1, 2020 and August 29, 2020, IDES administered regular unemployment insurance under the Illinois Unemployment Insurance Act, 820 ILCS 405/100 *et seq.*, as well as benefits pursuant to the Pandemic Unemployment Assistance ("PUA") and Pandemic Emergency Unemployment Compensation ("PEUC") programs created by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, PL 116-136, for approximately 2,436,853 initial unemployment claims. This amounts to an increase of over 860% of the initial unemployment claims for the same period one year ago. Since the COVID-

DECLARATION OF
KRISTIN A. RICHARDS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 230 of 342

19 pandemic began in March 2020, IDES has seen a significant surge in applications for unemployment, and we anticipate that number to continue to increase.

5.    Prompt mail service is necessary for the effective and efficient administration of unemployment benefits. Otherwise, our recipients will experience significant delays to their detriment. For example, the notices we mail trigger a number of rights for both claimants and employers that run on a tight timeline for receiving and appealing services that are awarded or denied. Employers have 10 days from the date a Notice to Chargeable Employer is mailed out by IDES to protest a claim. 56 Ill. Admin. Code 2720.130(a). Following a determination or decision granting or denying benefits, the right to appeal is lost after 30 days once the determination or decision is mailed by the agency. 820 ILCS 405/800.

6.    Furthermore, parties have 35 days from the mailing of a final administrative decision to file a complaint in circuit court or lose their right to judicial review. 735 ILCS 5/3-103. If mail service is delayed, the recipient has a shorter amount of time to invoke their rights; no time at all if the delay is long enough. This could result in claimants losing their rightful benefits or employers losing the right to appeal. The law is clear that once the deadlines have passed, IDES loses jurisdiction: Illinois courts reviewing these statutory time limits have consistently declined to insert jurisdictional exemptions into the Act. *See Thompson v IDES*, 399 Ill. App. 3d 393, 928 N.E.2d 528 (1st Dist. 2010).

7.    Even when the COVID-19 pandemic eventually subsides, IDES will still be required to serve a significant population. In the years immediately prior to the pandemic, IDES received an average of 490,000 initial unemployment claims per year. Any purported

DECLARATION OF
KRISTIN A. RICHARDS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 231 of 342

1    future changes to USPS operations would still cause significant disruptions to benefit

2    recipients and employers.

3        8.    While direct deposit is available, a significant number of claimants voluntarily

4    choose to rely on a debit card to collect their benefits, which is an option that they are permitted

5    to do. 56 Ill. Admin. Code 2720.11. This debit card is mailed to the claimant. Aside from the

6    postal service, no other viable method exists to send debit cards to these particular constituents.

7    Private delivery or courier services are simply cost-prohibitive. As a result, IDES (working

8    through its subcontractor) relies heavily upon USPS to ensure the timely and efficient delivery

9    of debit benefit cards to qualified recipients.

10        9.    Fundamentally, delays in mail service can impact the ability of individuals and

11    households who are suffering from unemployment to meet their basic needs. Delays could

12    cause significant and unavoidable suffering and financial insecurity for both individuals and

13    employers. Individuals may be forced to make impossible decisions, like accruing debt they

14    cannot afford, or forfeiting basic necessities like housing, food, and medication simply because

15    they have not received their benefits on time.

16        **I declare under penalty of perjury under the laws of the State of Washington and**

17    **Illinois and the United States that the foregoing is true and correct.**

18    DATED this 4th day of September 2020, at Chicago, Illinois.

19

20    _____
     KRISTIN A. RICHARDS

21    Acting Director
     Illinois Department of Employment Security

22

DECLARATION OF
KRISTIN A. RICHARDS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 232 of 342

Exhibit 33

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
     KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
     CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
     EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
       (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
       *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
     Seattle, WA  98104
9    (206) 464-7744

10                   **UNITED STATES DISTRICT COURT**
11                  **EASTERN DISTRICT OF WASHINGTON**
                             **AT YAKIMA**
12

13   STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
     al.,

14                                    DECLARATION OF ROBERT
                          Plaintiffs, ROCK IN SUPPORT OF
                                      PLAINTIFF STATES' MOTION
         v.                           FOR PRELIMINARY
15                                    INJUNCTION
     DONALD J. TRUMP, et al.,
16
17                       Defendants.

18

19

20

21

22

DECLARATION OF ROBERT
ROCK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 234 of 342

1    I, Robert Rock, declare as follows:

2    1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4    2.    I am the Director of Elections for the Rhode Island Department of

5    State.

6    3.    In this role, my responsibilities include overseeing the mail ballot

7    process including ensuring all mail ballot voters receive their mail ballots so they

8    can vote and send their ballot back in time to be counted.

9    4.    The Rhode Island Department of State, together with the Rhode

10    Island Board of Elections, has broad responsibility over the administration of

11    elections in the State.

12    5.    Rhode Island voters can vote by mail for any of the reasons

13    enumerated in R.I. Gen. Laws § 17-20-2, including when any voter "may not be

14    able to vote at his or her polling place in his or her city or town on the day of the

15    election." Thus, after completing a mail ballot application, any registered Rhode

16    Island voter may vote by mail during the COVID-19 pandemic.

17    6.    Due to the impact of the COVID-19 pandemic on voting in Rhode

18    Island, I anticipate that a significant number of ballots cast in the 2020 September

19    primary and November general election will be mail ballots.

20

21

22

DECLARATION OF ROBERT
ROCK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 235 of 342

7.    Due to the impact of the COVID-19 pandemic on voting in Rhode Island, the majority of ballots cast in the June 2020 Presidential Preference Primary were mail ballots.

8.    An analysis by the Rhode Island Department of State of voters who submitted mail ballots in Rhode Island's June 2020 Presidential Preference Primary, conducted in the midst of the COVID-19 pandemic, concluded that many Rhode Islanders who voted by mail were senior citizens.

9.    In order to receive a mail ballot, a Rhode Island voter must fill out a mail ballot application and send or deliver it to the appropriate state or local official; depending on the election, Boards of Canvassers of Rhode Island's thirty-nine cities and towns, or the state, will receive mail ballot applications.

10.    Beginning the week of September 7, 2020, the Rhode Island Department of State intends to send each active, eligible voter in Rhode Island a mail ballot application for the November 2020 general election.

11.    For the September 2020 primary election, mail ballot applications must be received by the Boards of Canvassers by Tuesday, August 18, 2020, at 4:00 PM EST in order for the voter to be eligible to receive a mail ballot.

12.    For the November 2020 general election, mail ballot applications must be received by the Local Boards of Canvassers or the state no later than Tuesday, October 13, 2020, at 4:00 PM EST in order for the voter to be eligible to receive a mail ballot.

DECLARATION OF ROBERT ROCK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1       13.    Upon receipt by a Board of Canvassers or the state, mail ballot

2   application authentication is undertaken by the Board of Canvassers. Not later

3   than 4:00 p.m. EST on the eighteenth (18th) day before the date of any election,

4   or within seven (7) days of receipt by the local board, whichever occurs first, the

5   Board of Canvassers must either certify or reject a mail ballot application. *See*

6   R.I. Gen. Laws § 17-20-10(c). At the culmination of the authentication process,

7   which includes an analysis to verify the authenticity of the voter's signature on

8   the mail ballot application, the mail ballot may be rejected or approved. If there

9   is a ballot application deficiency, the Board of Canvassers should mail a notice

10  of deficiency to the applicant (or otherwise contact the applicant) and provide the

11  applicant an opportunity to cure the deficiency. If the mail ballot application is

12  approved, a Board of Canvassers should certify the mail ballot application and

13  input the voter's information into Rhode Island's Central Voter Registration

14  System. Inputting the voter's mail ballot information into the Central Voter

15  Registration System triggers the Rhode Island Department of State's mail ballot

16  vendor ("the vendor") to send a mail ballot to the voter.

17      14.    The Department of State's mail ballot vendor is located in Everett,

18  Washington.

19      15.    Each day that the Boards of Canvassers certify mail ballot

20  applications, the vendor receives a list of all voters whose mail ballot applications

21  have been approved that day. The vendor mails via First-Class Mail, mail ballots

22

DECLARATION OF ROBERT
ROCK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    to these voters on a rolling basis no later than two days after receipt of the list of

2    approved mail ballot applications.

3        16.    The vendor prints all mail ballots for Rhode Island voters at its

4    headquarters in Everett, Washington. The vendor then sends the mail ballots to

5    all Rhode Island voters using the Seattle, Washington mail processing facility.

6    The mail ballots are then typically delivered to Boston, Massachusetts and then

7    trucked to a Rhode Island mail processing facility.

8        17.    While a large majority of Rhode Island mail ballots will be sent by

9    the vendor to Rhode Islanders at their homes in Rhode Island, some Rhode

10    Islanders are expected to request that mail ballots be sent to temporary addresses

11    outside of Rhode Island due to temporarily residing in such a state. For example,

12    certain out-of-state college students and members of the Armed Forces may

13    request their mail ballots be sent to temporary addresses outside of Rhode Island.

14        18.    Upon receipt of a mail ballot, a Rhode Island voter fills out the mail

15    ballot, places the mail ballot in an oath envelope, signs the oath envelope to

16    authenticate the ballot, and places the signed oath envelope in a pre-paid postage

17    envelope.

18        19.    The pre-paid postage on the mail ballot envelopes is United States

19    Postal Service First-Class Mail.

20        20.    The voter may then deposit the mail ballot envelope in one of a

21    limited number of secure ballot drop boxes in Rhode Island, or in a mail box

22

DECLARATION OF ROBERT
ROCK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 238 of 342

1    either in Rhode Island or outside the State if the voter is temporarily residing

2    outside of Rhode Island.

3        21.    According to Rhode Island law, mail ballots must be *received* by the

4    Rhode Island Board of Elections by 8:00 PM EST on Election Day in order to be

5    counted.  R.I. Gen. Laws § 17-20-8.

6        22.    In order for a person's mail ballot to count, therefore, Rhode Island's

7    mail balloting process is statutorily dependent upon the timely processing and

8    receipt of mail ballots by the United States Postal Service.

9        23.    In Rhode Island's 2020 Presidential Preference Primary election,

10   many postal workers in Rhode Island went above and beyond their job duties to

11   ensure that all timely posted ballots were delivered to the Rhode Island Board of

12   Elections on time, which was a challenge given the much higher than usual

13   volume of mailed ballots.  For example, 38,662 people voted in the 2004

14   Presidential Preference Primary, and 23,200 people voted in the 2012

15   Presidential Preference Primary – the two most recent Rhode Island Presidential

16   Preference Primaries that also featured an incumbent president of one major party

17   and    an    ongoing    primary    for    the    other    party.    *See*

18   https://elections.ri.gov/publications/Election_Publications/Countbooks/2004%2

19   0Count%20Book.pdf                                                        and

20   https://elections.ri.gov/publications/Election_Publications/Countbooks/2012%2

21   0Countbook%20Official.pdf.  By comparison, 125,991 voted in the 2020

22

DECLARATION OF ROBERT
ROCK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   Presidential Preference Primary, with 104,542 of those voters voting by mail

2   ballots.                                                                *See*

3   https://www.ri.gov/election/results/2020/presidential_preference_primary.

4       24.    Considering the volume of expected mail ballots for the September

5   primary and the November general election, any changes instituted by the USPS

6   that slow the delivery of mail may threaten to  delay the delivery of mail ballot

7   applications and mail ballots in a timely manner.

8       25.    I also expect, with the likelihood of a high turnout and heavy

9   reliance on voting by mail for this impending election, that any United States

10  Postal Service disruptions could threaten to disenfranchise voters and

11  additionally could compromise the integrity of election results if the delivery of

12  ballots are delayed such that they will not be counted.

13      26.    Finally, because Rhode Island voters are expected to vote by mail

14  from outside of Rhode Island, any United States Postal Service delays in

15  jurisdictions outside of Rhode Island may disenfranchise Rhode Islanders

16  temporarily living out of the state and threaten to impede Rhode Island's efforts

17  to timely and efficiently count mail ballots.

18      27.    Thus any changes instituted by United States Postal Service that

19  slow mail delivery could have the potential to negatively impact Rhode Island's

20  upcoming 2020 primary and general elections by making voting by mail less

21  timely and reliable.

22

DECLARATION OF ROBERT
ROCK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1      28.    I declare under penalty of perjury under the laws of the State of

2  Washington and the United States that the foregoing is true and correct.

3      DATED this 5th day of September, 2020, at Providence, Rhode Island.

4

5                      Robert Rock
                          Director of Elections

6                      Rhode Island Department of State

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF ROBERT
ROCK

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# Exhibit 34

1   ROBERT W. FERGUSON
   *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
    (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
    *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9   (206) 464-7744

10

11       **UNITED STATES DISTRICT COURT**
       **EASTERN DISTRICT OF WASHINGTON**
           **AT YAKIMA**

12

13   STATE OF WASHINGTON, et al.,

14              Plaintiffs,

15      v.

   DONALD J. TRUMP, et al.,

16

17             Defendants.

NO.  1:20-cv-03127-SAB

DECLARATION OF RANDALL ROSENBAUM IN SUPPORT OF PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION

18

19

20

21

22

DECLARATION OF RANDALL ROSENBAUM

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 243 of 342

1    I, Randall Rosenbaum, declare as follows:

2    1. I am over the age of 18, am competent to testify as to the matters herein,
3        and make this declaration based on my personal knowledge.

4    2. I am a resident of Rhode Island, residing at 108 Boyce Avenue, Pawtucket,
5        Rhode Island, 02861-2818.

6    3. I am a subscriber to the United States Postal Service ("USPS") Informed
7        Delivery program.

8    4. USPS Informed Delivery scans the exterior of mail that is going to be
9        delivered to me soon and emails me a digital preview.

10   5. Since I began to subscribe to Informed Delivery approximately one year
11       ago, the emails regularly displayed images of mail that would be delivered
12       later on the same day I received the email.

13   6. For example, at approximately 7:30 AM I would typically receive an email
14       displaying images of one to eight pieces of mail, and USPS would typically
15       deliver all of those items of mail on the same day.

16   7. Sometime between the beginning and middle of July 2020, I noticed that
17       items appearing in my daily email would frequently not be delivered on
18       that day. Instead, some items of mail would frequently arrive one or two
19       days after they appeared in my email through the Informed Delivery
20       service.

21   8. I began to notice that one or several items from the daily emails would not
22       appear in my mailbox that day, but appear the next day, or even two days
23       later.

24   9. On rare occasions, an item would not be delivered until three days later.

DECLARATION OF RANDALL
ROSENBAUM

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

10. I began to document the decline in this service, and ran two tests during "control periods," where I compared the percentage of items carried over from one day to the next.

11. The first control period is the period of June 8, 2020 through June 20, 2020. The second is from August 10, 2020 through August 20, 2020.

12. From June 8, 2020 through June 20, 2020, I was scheduled to receive 34 pieces of mail in total, and 3 pieces did not arrive until the following day. Thus 9% of my mail was not delivered on the day that it was scanned and emailed to me.

13. From August 10, 2020 through August 20, 2020, I was scheduled to receive 55 pieces of mail. 16 pieces did not arrive until the following day or later. Thus 29% of my mail was not delivered on the day that it was scanned and emailed to me.

14. Based upon my experience with the Informed Delivery program, I believe that USPS service has substantially declined since approximately July 2020 and resulted in slowed delivery of mail.

15. I declare under penalty of perjury under the laws of the State of Rhode Island and the United States that the foregoing is true and correct.

DATED this _7th_ day of September. 2020, at Pawtucket, Rhode Island.

_____

Randall Rosenbaum

DECLARATION OF RANDALL
ROSENBAUM

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 35

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
       (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
       *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
               **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13   STATE OF WASHINGTON, et        NO.  1:20-cv-03127-SAB
     al.,
14                                  DECLARATION OF KATHIE
                      Plaintiffs,   RUMBLEY IN SUPPORT OF
15        v.                        PLAINTIFF STATES' MOTION
                                    FOR PRELIMINARY
16   DONALD J. TRUMP, et al.,       INJUNCTION

17                     Defendants.

18

19

20

21

22

DECLARATION OF KATHIE
RUMBLEY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 247 of 342

1    I, Kathie Rumbley, declare as follows:

2    1.    I am a resident of Parkville, Maryland and have lived in the same

3    location for 41 years.  I worked 30 years and retired from Maryland Public

4    Television as Special Events Manager, worked as an Administrator for Johns

5    Hopkins School for Public Health and as Executive Secretary at CareFirst Blue

6    Cross/Blue Shield.

7    2.    I am aware that the Postmaster General of the United States has

8    made policy changes that have affected postal service, and I am further aware

9    that the State of Maryland and other states have filed this lawsuit challenging

10    those policy changes.

11    3.    We live in Parkville and are experiencing postal service issues. I

12    come from a background of postal letter carriers.  My husband retired from the

13    Towson Branch, as did his father.  We know how the mail should be delivered

14    and how it's managed.  What we're experiencing is out of the ordinary.

15    4.    Our family has been enrolled in Informed Delivery from the USPS

16    for many years.  We are able to view what mail is scheduled to be delivered each

17    day.  Many days we have not received the mail we should until at least three days

18    later or in some instances, never.  Some of this mail was important like bills,

19    which I had to call and get re-sent.  Since June, we have regularly not received

20    any mail for three days or more.  Recently, I was to receive a package that was

21    sent on July 9 from New York.  The tracking info showed that it was sitting in

22

DECLARATION OF KATHIE
RUMBLEY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   the Parkville Post Office for over three weeks Office until it was finally delivered

2   on July 31.

3        5.     Most disturbingly, on August 5 I received an Informed Delivery

4   Notice indicating that I was going to be delivered Official Election Mail, marked

5   First Class. I did not receive it until August 14.

6        I declare under penalty of perjury under the laws of the State of

7   Washington and the United States that the foregoing is true and correct.

8        DATED this 4th day of September, 2020, at Ocean City, Maryland.

9

10   *Kathie Rumbley*

KATHIE RUMBLEY

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF KATHIE
RUMBLEY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 36

1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4  ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5  *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7  KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9  (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13  STATE OF WASHINGTON, et al.,                    NO.  1:20-cv-03127-SAB

14                              Plaintiffs,         DECLARATION OF STEVE
                                                    SIMON IN SUPPORT OF
15          v.                                      PLAINTIFF STATES' MOTION
                                                    FOR PRELIMINARY
16  DONALD J. TRUMP, et al.,                        INJUNCTION

17                              Defendants.

18

19  I, Steve Simon, declare as follows:

20          1.     I am over the age of 18, am competent to testify as to the matters

21  herein, and make this declaration based on my personal knowledge and on my

22

DECLARATION OF                            1            ATTORNEY GENERAL OF WASHINGTON
STEVE SIMON                                                  Complex Litigation Division
                                                             800 5th Avenue, Suite 2000
                                                              Seattle, WA  98104-3188
                                                                  (206) 464-7744

1  review of data and documents maintained by the Minnesota Office of Secretary of

2  State during the course of everyday business.

3      2.      I am the twenty-second and current Secretary of State of the Plaintiff

4  State of Minnesota. I was elected to this office in 2014 and began my term in office

5  in January 2015.

6      3.      Prior to my election as Secretary of State, I was a member of the

7  Minnesota House of Representatives for ten years, and I chaired the Elections

8  Committee in that body for part of my tenure.

9      4.      Based on my experience as Secretary of State and as a legislator, I am

10  familiar with all of the details of elections, including the mechanics of both

11  absentee and mail balloting as practiced in Minnesota, and have sponsored and

12  successfully enacted legislation regarding these matters, including a statutory

13  change that expanded Minnesotans' opportunities to use absentee balloting by

14  eliminating the requirement that voters may request an absentee ballot only if they

15  cannot vote in person for one of a specified list of reasons.

16      5.      Minnesota law provides for both absentee balloting and mail

17  balloting. Absentee balloting provides a mechanism for voting without traveling to

18  a polling place on election day. Mail balloting is a separate system that is available

19  as an option to municipalities in particular rural areas as specified by state law.

DECLARATION OF
STEVE SIMON

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Elections in municipalities choosing the mail balloting option are conducted entirely by mail, with no local polling places available for voters to cast ballots.

6.      Absentee and mail voting have always been safe, secure, and efficient processes that have reliably worked in this state. Minnesota is one of the states that instituted absentee balloting for the benefit of soldiers who were away from their state during the Civil War. Absentee balloting has been used in every election conducted in Minnesota since 1862. The separate mail balloting system has been in place since 1987.

7.      Minnesota voters use absentee and mail balloting at every election. According to documents that the Secretary of State's Office maintains in the usual course of business, the usage levels of these procedures in recent Minnesota elections have included the following:

| Election | Absentee Ballots Accepted | Mail Ballots Accepted |
|---|---|---|
| August 2014 statewide primary | 27,209 | 18,158 |
| November 2014 statewide general | 196,266 | 37,366 |
| August 2016 statewide primary | 23,050 | 18,435 |
| November 2016 statewide general | 616,309 | 60,160 |
| August 2018 statewide primary | 103,023 | 40,952 |

DECLARATION OF STEVE SIMON

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

| Election | Absentee Ballots Accepted | Mail Ballots Accepted |
|---|---|---|
| November 2018 statewide general | 561,385 | 77,196 |
| March 2020 presidential nominating primary | 98,952 | 46,871 |
| August 2020 statewide primary | 462,903 | 80,244 |

8.    In addition to Minnesotans' long history of using absentee and mail ballots to exercise their right to vote, the current COVID-19 health pandemic presents further challenges that may make voting in person more difficult for many voters, particularly those who are at a higher risk of contracting the virus. It is my considered expectation that, in large part as a result, a total of between 1.4 million and 1.5 million absentee and mail ballots will be cast in Minnesota's November 2020 general election. This estimate is based on the number of persons who, by the time of the August 11, 2020 primary, had already requested absentee ballots for both the primary and the general election or will be voting with mail ballots. Moreover, turnout increases substantially in Minnesota in presidential elections, and Minnesota frequently leads the nation in the percentage of voters participating in the presidential election. For example, 74.72 percent of the state's voting-age population participated in the 2016 presidential election.

9.    1,340 of Minnesota's 4,110 precincts will use mail balloting in the 2020 statewide general election. These precincts currently have a total of 217,056

DECLARATION OF STEVE SIMON

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    registered voters. There were 80,244 votes cast in these precincts in the August

2    primary, all of them by mail. It is likely that there will be substantially more votes

3    cast in the same precincts this November for the reasons discussed above.

4        10.    In addition to mail and standard absentee ballots, in each general

5    election thousands of Minnesota voters use overseas and military absentee

6    balloting, which follows a slightly different process but still relies on the United

7    States Mail for delivery to election officials. For example, in the November 2016

8    general election, 11,594 of the 616,309 absentee ballots that Minnesota election

9    officials accepted and counted were submitted via the overseas and military

10   absentee balloting process.

11       11.    For the vast majority of Minnesotans casting a ballot via either

12   absentee balloting or mail balloting, using these procedures requires relying on the

13   United States Postal Service to transmit a ballot. Unlike other states, Minnesota has

14   no statutory infrastructure regarding drop boxes, which reduces options for

15   mitigating postal delays for state residents seeking to return completed absentee

16   ballots.

17       12.    Within Minnesota's borders are eleven federally recognized Native

18   American tribal communities, many of whose members reside on reservations

19   where reliable mail service has long been a challenge. On those reservations, more

DECLARATION OF                        5        ATTORNEY GENERAL OF WASHINGTON
STEVE SIMON                                        Complex Litigation Division
                                                     800 5th Avenue, Suite 2000
                                                     Seattle, WA  98104-3188
                                                        (206) 464-7744

than 30 percent of Native people live in poverty, a problem that has only been exacerbated by the COVID-19 pandemic. This poverty is frequently accompanied by health problems that increase the risk of death or severe illness from exposure to the coronavirus. Registered voters on reservations are fewer, with greater distances between them, and voters often lack access to transportation and the internet. All of these facts make Native American voters who live on reservations even more dependent on reliable mail service to submit ballots than are voters in other areas.

13.    For all of these reasons, changes to USPS procedure and machinery that result in delays to the delivery of U.S. Mail risk broad and serious injury to the voting rights of more than a million Minnesota voters. A large portion of the Minnesota electorate could be disenfranchised by a substantial slow-down in mail delivery during the fall of 2020.

I declare under penalty of perjury under the laws of the States of Washington and Minnesota and the United Sates that the foregoing is true and correct.

Dated:  August 18, 2020

STEVE SIMON

DECLARATION OF
STEVE SIMON

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 37

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5     *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11                **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13  STATE OF WASHINGTON, et          NO. 1:20-cv-03127-SAB
    al.,
14                                   DECLARATION OF WADE
                    Plaintiffs,      STEMBRIDGE IN SUPPORT
15                                   OF PLAINTIFF STATES'
         v.                          MOTION FOR PRELIMINARY
16                                   INJUNCTION
    DONALD J. TRUMP, et al.,
17
                    Defendants.
18

19

20

21

22

DECLARATION OF WADE              1
STEMBRIDGE

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 258 of 342

1        I, Wade Stembridge, declare as follows:

2        1.      I am over the age of 18, am competent to testify as to the matters

3    described, and make this declaration based on my personal knowledge.

4        2.      I have run a small gourmet chocolate business, Coco Gusto

5    Chocolates, in Denver, Colorado, for the last three years. Coco Gusto specializes

6    in high-quality, hand-painted chocolates. More information about the chocolates

7    and the business can be seen at coco-gusto.com.

8        3.      About 80 percent of my orders are sent out-of-state.

9        4.      I usually use the United States Postal Service to ship my orders

10    because it is the most economical option.

11        5.      I began noticing delays to my shipments beginning in mid-May.

12        6.      Before these delays, I typically did not have any problems shipping

13    chocolate in the summer.

14        7.      My shipments to out-of-state customers generally used to arrive in

15    1-3 days when sent by Regular Priority Mail.

16        8.      Recently, shipments to out-of-state customers generally take 3-6

17    days when sent by Regular Priority Mail.

18        9.      As a result of this delay, my chocolates often arrive melted, ruining

19    my chocolates.

20        10.     To keep my customers satisfied and ensure that my chocolates meet

21    the standards of my business, I have had to resend orders using Priority Express

22

DECLARATION OF WADE                    2          ATTORNEY GENERAL OF WASHINGTON
STEMBRIDGE                                            Complex Litigation Division
                                                     800 5th Avenue, Suite 2000
                                                     Seattle, WA  98104-3188
                                                     (206) 464-7744

1  Mail. Resending orders requires me to remake the chocolates and pay a $40-$50

2  fee for Priority Express Mail.

3      11.    One replacement order that I sent to San Francisco via Priority

4  Express Mail took 6 days to arrive.

5      12.    These delays have changed how I conduct my business. I have

6  stopped advertising for out-of-state orders on social media because I am

7  concerned that these orders will arrive melted. I believe I have lost sales because

8  of this reduction in advertising. I have had to purchase bigger icepacks to keep

9  the chocolates from melting when I ship them in the mail. I used to ship orders

10  every day of the week but now I only ship orders on Monday to give them the

11  best chance of arriving by Friday or Saturday.

12      I declare under penalty of perjury that the foregoing is true and correct.

13      DATED this 30th day of August, 2020, at Denver, Colorado.

14

15

16  _____
    WADE STEMBRIDGE

17

18

19

20

21

22

DECLARATION OF WADE
STEMBRIDGE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 38

1  ROBERT W. FERGUSON
    *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4  ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5  *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6  TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7  KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8  800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9  (206) 464-7744

10

11

12

               **UNITED STATES DISTRICT COURT**
               **EASTERN DISTRICT OF WASHINGTON**
                           **AT YAKIMA**

13

14

15

16

17

| STATE OF WASHINGTON, et al., | NO.  1:20-cv-03127-SAB |
|---|---|
|                      Plaintiffs, | DECLARATION OF ELICE STURDIVANT IN SUPPORT OF PLAINTIFF STATES' MOTION FOR PRELIMINARY INJUNCTION |
|       v. | |
| DONALD J. TRUMP, et al., | |
|                       Defendants. | |

18

19

20

21

22

DECLARATION OF ELICE
STURDIVANT

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 262 of 342

1       I, Elice Sturdivant, declare as follows:

2       1.      I am over the age of 18, am competent to testify as to the matters

3       herein, and make this declaration based on my personal knowledge.

4       2.      I am a resident of the state of Maryland, having lived in Baltimore

5       City for sixteen years.  I am employed as an attorney at a law firm in Baltimore

6       County.

7       3.      I am aware that the Postmaster General of the United States has

8       made policy changes that have affected postal service, and I am further aware

9       that the State of Maryland and other states have filed this lawsuit challenging

10      those policy changes.

11      4.      I take a medication daily for a thyroid disease, and I rely on the

12      USPS to deliver that medication to me through the mail.  Normally it takes 2 to

13      3 days to get my medications.  My last refill took over 30 days to get to me,

14      meaning that I was out of my needed medication for several weeks. I also had to

15      go back to my doctor and ask for a new prescription, which my insurance would

16      not pay for since they had already paid for the medication the first time.  This

17      delay has caused me to experience illness and fatigue, which I am still fighting

18      as I build up the medication in my system.  Without my medication, it is difficult

19      to work and complete the daily tasks needed to function.   As an essential

20      employee, it is not acceptable to call out or have a bad day.  If I don't have

21      dependable access to the mail, I will have to expose myself and my family to an

22

DECLARATION OF ELICE
STURDIVANT

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 263 of 342

1    unnecessary risk of infection to pick up my medication in person or wait and hope

2    for the best with the mail.

3          I declare under penalty of perjury that the foregoing is true and correct.

4          DATED this 20 day of August, 2020, at Baltimore, Maryland.

5    _____

6                    ELICE STURDIVANT, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF ELICE
STURDIVANT

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 39

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13   STATE OF WASHINGTON, et        NO.  1:20-cv-03127-SAB
     al.,
14                                   DECLARATION OF LYNNE
                        Plaintiffs,  THOMAS IN SUPPORT OF
15        v.                         PLAINTIFF STATES' MOTION
                                     FOR PRELIMINARY
16   DONALD J. TRUMP, et al.,        INJUNCTION

17                       Defendants.

18

19

20

21

22

DECLARATION OF                          ATTORNEY GENERAL OF WASHINGTON
LYNNE THOMAS                                    Complex Litigation Division
                                                 800 5th Avenue, Suite 2000
                                                  Seattle, WA  98104-3188
                                                       (206) 464-7744

1    I, LYNNE THOMAS, declare:

2        1.   I am a resident of the State of Illinois.  I am over the age of 18 and

3    make this declaration from personal knowledge and based on records from the

4    Illinois Department of Healthcare and Family Services.  If called as a witness, I

5    could and would testify competently to all the matters set forth below.

6        2.   I am the Deputy Administrator for Eligibility Policy of the Division

7    of Medical Programs within the Illinois Department of Healthcare and Family

8    Services. I oversee the areas of the agency that develop, revise, and review

9    medical eligibility policy, process applications, and maintain medical eligibility

10   and test for medical eligibility integrity. I have held this position since

11   December 1, 2017.

12       3.   The Division of Medical Programs (the "Division") administers the

13   Illinois Medical Assistance program and, in conjunction with the federal

14   government, funds medical services provided to approximately 25% of the

15   state's population through Medicaid, Children's Health Insurance Program

16   ("CHIP"), and other associated medical programs covering children, parents,

17   pregnant women, veterans, seniors, adults and persons who are blind or have

18   disabilities.

19       4.   As of August 1, 2020, the Division was administering benefits for

20   approximately 3 million beneficiaries through these programs.

21

22

DECLARATION OF
LYNNE THOMAS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 267 of 342

1          5.   The Division's primary method of communication with these

2    individuals and households is through mail delivered by the United States

3    Postal Service ("USPS").

4          6.   Applicants have reported that they have not received requests for

5    additional information on pending applications until after the due date has

6    passed. Late delivery could result in the denial of an application.

7          7.   Prompt mail service is necessary for the administration of programs

8    because the Division and benefit recipients must comply with specific statutory

9    and regulatory deadlines and requirements that are not negotiable. For example,

10    individuals may be eligible for up to three months of backdating prior to the

11    month of application for Medicaid services.  That means an application

12    received by mail on July 31 could result in coverage beginning on April 1.

13    However, if the postal service delays the delivery of an application and it is

14    received on August 1, the beneficiary could only receive coverage beginning

15    May 1. In addition, an active medical case, including Medicaid and CHIP,

16    could be canceled if an annual renewal form or request for information is

17    received by mail after the due date.

18          8.   While the coverage can be reinstated, there could be a disruption to

19    necessary medical services.  The state is not currently canceling coverage due to

20    the provision of the federal Families First Corona Virus Response Act, but

21    future disruptions will occur once the public health emergency has ended.

22

DECLARATION OF
LYNNE THOMAS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

9.    Accordingly, delays in mail may include, but are not limited to the following repercussions to Illinois residents served by Medicaid, CHIP, and related medical programs which would include children, seniors, disabled individuals, families, pregnant women, and other eligible adults:

    a.  A delay in a customer's receipt of a request for information or notice of redetermination, possibly past the due date, could cause a delay or break in medical coverage.

    b.  A delay in the agency's receipt of information needed to make an eligibility determination could result in a delay or break in coverage.

    c.  A delay in a customer's receipt of the notice of decision on an application which could lead to a delay of necessary medical services.

    d.  A delay in the agency's receipt of an application could result in a loss of a month's medical coverage for the customer.

10. Aside from the postal service, no other viable form of communication exists to contact the Division's benefit recipients. For example, electronic mail or use of a website is available but not feasible for many of our constituents who do not have regular or reliable access to the Internet. In addition, private delivery or courier services are cost-prohibitive. As a result, the Division relies

DECLARATION OF
LYNNE THOMAS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    heavily upon USPS and developed its method to distribute benefits in reliance

2    on timely, efficient mail delivery.

3        11. Moreover, these delays may impact the ability of low income

4    households to meet their basic medical needs if they need to use their own

5    funds to pay for necessary medical care. Delays could also cause individuals to

6    incur significant amounts of private debt if they are disqualified from receiving

7    government funded healthcare benefits due to a delay in receipt of documents in

8    the mail.  Individuals disqualified from receiving Medicaid due to the delays in

9    postal service would likely forgo seeking necessary medical treatments.

10      **I declare under penalty of perjury under the laws of the State of**

11   **Washington and Illinois and the United States that the foregoing is true**

12   **and correct.**

13

14      DATED this 3rd day of September, 2020, at Springfield, Illinois.

15

16                        LYNNE THOMAS
17                        Deputy Administrator for Eligibility Policy
                          Illinois Department of Healthcare and
18                        Family Services

19

20

21

22

DECLARATION OF
LYNNE THOMAS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Exhibit 40

1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4  ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5  *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7  KARL D. SMITH, WSBA #41988
   *Deputy Solicitors General*
8  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9  (206) 464-7744

10

11                UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF WASHINGTON
12                      AT YAKIMA

13  STATE OF WASHINGTON, et al.,        NO. 1:20-cv-03127-SAB

14                 Plaintiffs,          DECLARATION OF ROBIN
                                        THOMAS IN SUPPORT OF
          v.                            PLAINTIFF STATES' MOTION
15                                      FOR PRELIMINARY INJUNCTION
    DONALD J. TRUMP, et al.,
16
                 Defendants.
17

18

19

20

21

22

DECLARATION OF                    1        ATTORNEY GENERAL OF WASHINGTON
ROBIN THOMAS                                     Complex Litigation Division
NO. 1:20-CV-03127-SAB                               800 5th Avenue, Suite 2000
                                                    Seattle, WA  98104-3188
                                                        (206) 464-7744

I, Robin Thomas, declare as follows:

1. I am over the age of 18, am competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am a long-time resident of Bellingham, Washington, and a long-time voter. I have voted in various elections for over thirty-five years.

3. I am currently in Maine and received my ballot on or around August 1, 2020. I mailed back my completed ballot on August 3rd with the understanding that my vote would still count because, in Washington, ballots that are postmarked on or before election day and received before certification are counted.

4. Because I am currently in Maine, I was not able to drop off my ballot at a ballot drop-off box. But I trusted that the Postal Service would postmark and deliver my ballot in a timely and consistent way.

5. I was very disheartened to learn that my ballot for Washington's August 4, 2020 primary was rejected because it was incorrectly postmarked. It also reached my County Auditor well outside of the service standard set for First Class Mail.

6. After mailing my ballot, I read news reports that more than 1,000 ballots in the August 4 primary were rejected by Whatcom County elections officials because they were postmarked too late or the signature on the ballot did not match the signature on voter registration forms.

DECLARATION OF
ROBIN THOMAS
NO. 1:20-CV-03127-SAB

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 273 of 342

7.     These news reports prompted me to look up and track my ballot. I saw, through the ballot tracking option on the Secretary of State's website, that the status of my ballot was "TOO LATE." The website further listed August 12 as the ballot returned date. This means it took nine days for my ballot to arrive.

8.     On August 20, I sent an email to my County Auditor, Diana Bradrick, to express my deep disappointment in my vote not being counted and my concern about mail delays that would affect the times of how ballots are processed and delivered.

9.     The County Auditor responded by email and attached a scanned copy of my ballot envelope. The scan showed that my ballot was not postmarked in Maine; it was not postmarked until it reached Bellingham, WA on August 10, 2020. Attached as **Exhibit A** is a copy of the scanned ballot envelope.

10.     The County Auditor also confirmed that if my ballot was postmarked on or before August 4 and received the day before county canvassing boards certify and transmit results of the August Primary, then my ballot would have been processed.

11.     My ballot should have been, but was not, postmarked when I mailed it on August 3rd.

12.     I am also concerned that the service was exceptionally slow. It took nine days for the Postal Service to deliver my ballot to the County Auditor. I understand that the delivery standard for First Class Mail is 1-3 business days,

DECLARATION OF
ROBIN THOMAS
NO. 1:20-CV-03127-SAB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    and my experience for mail between Washington State and Maine been about

2    four days.

3          I declare under penalty of perjury under the laws of the United States that

4    the foregoing is true and correct.

5

6          DATED this 3 day of September, 2020, at Harrison, Maine.

7

8          _____
           Robin Thomas

DECLARATION OF                          4                    ATTORNEY GENERAL OF WASHINGTON
ROBIN THOMAS                                                    Complex Litigation Division
NO. 1:20-CV-03127-SAB                                            800 5th Avenue, Suite 2000
                                                                 Seattle, WA  98104-3188
                                                                     (206) 464-7744

**R. Thomas Declaration**

**Exhibit A**



# Exhibit 41

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
             **EASTERN DISTRICT OF WASHINGTON**
12                      **AT YAKIMA**

13  STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
    al.,
                                     DECLARATION OF NICOLE
14              Plaintiffs,          TOUSIGNANT IN SUPPORT
                                     OF PLAINTIFF STATES'
15      v.                           MOTION FOR PRELIMINARY
                                     INJUNCTION
    DONALD J. TRUMP, et al.,
16
                Defendants.
17

18

19

20

21

22

DECLARATION OF NICOLE                    ATTORNEY GENERAL OF WASHINGTON
TOUSIGNANT                                      Complex Litigation Division
NO. 1:20-CV-03127-SAB                             800 5th Avenue, Suite 2000
                                                 Seattle, WA  98104-3188
                                                      (206) 464-7744

I, Nicole Tousignant, declare:

1.  I am a resident of the State of Vermont.  I am over the age of 18 and have personal knowledge of all the facts stated herein.  If called as a witness, I could and would testify competently to all the matters set forth below.

2.  I am the Senior Policy and Operations Manager of the Vermont Department for Children and Families, Economic Services Division (ESD). I have held this position since March 2018.  Prior to this position, I worked at the Vermont Agency of Education as the Medicaid Coordinator for 11 years, and as the Special Education Finance Manager for four years.

3.  I have a B.A. from Castleton State University.

4.  ESD administers the following federal and state benefit programs for low income households: Supplemental Nutrition Assistance Program ("SNAP"), Temporary Assistance for Needy Families ("TANF") and separately and solely state-funded cash assistance programs for families with children, the Low Income Home Energy Assistance Program ("LIHEAP"), General/Emergency Assistance, Essential Person, Vermont Rental Subsidy (VRS), and Vermont Spay and Neuter Incentive Program (VSNIP), for the state of Vermont.

5.  As of August 18, 2020, ESD was administering benefits for a total of 66,572 SNAP, TANF (including state-funded programs), LIHEAP, General/Emergency Assistance, and Essential Person households and 116 VRS households.

6.  ESD's primary method of communication with these households is through mail delivered by the United States Postal Service (USPS).  In July 2020, ESD's Application and Document Processing Center (ADPC), received approximately 9,000 items of mail from ESD and health care applicants and recipients. To date, the ADPC has received approximately 85,000 items of mail. In 2019, the ADPC received approximately 200,000 items of mail.

7.  Federal and state laws governing the programs administered by ESD impose strict timelines on the processing and delivery of benefits, notification to applicants and recipients, and appeals associated with public benefits. For example, ESD must provide at least 10 days advance

1

Decl. of Nicole Tousignant

notice before reducing or terminating benefits. ESD depends upon the USPS to ensure timely communication with the more than 60,000 households it serves.

8.    Mail delays resulting from the proposed cuts to the postal service will impede ESD's ability to timely communicate with households in need of assistance.

9.    Mail delays resulting from the proposed cuts to the postal service will slow the delivery of approximately $12.5 million in monthly SNAP benefits, $1.8 million in monthly TANF and related state-funded program benefits, $18 million in yearly LIHEAP benefits, $14 million in monthly General/Emergency benefits, and $77 thousand in monthly Essential Person benefits, potentially impacting the ability of low income households to meet their basic needs.

10.    Mail delays resulting from the proposed cuts to the postal service will slow the delivery of more than one million dollars in rental assistance made on behalf of low income Vermonters to their landlords by ESD, thus potentially impacting the stability of living arrangements for more than 116 households and the ability of landlords to pay their bills.

11.    Mail delays resulting from the proposed cuts to the postal service will slow the delivery of more than $360,000 to local veterinarians for the spaying and neutering of companion animals for low income Vermonters. Delay of these payments may result in a financial hardship for local veterinarians, especially those who manage small businesses.

I declare under penalty of perjury under the laws of the United States and the State of Vermont that the foregoing is true and correct to the best of my knowledge.

Executed on August 20, 2020 in Waterbury, Vermont.

Nicole Tousignant
ESD Senior Policy and Operations Manager
Department for Children and Families

Decl. of Nicole Tousignant

2

# Exhibit 42

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
    *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9    (206) 464-7744

10

11

12

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON
# AT YAKIMA

| | |
|---|---|
| STATE OF WASHINGTON, et al., | NO. 1:20-cv-03127-SAB |
| Plaintiffs, | DECLARATION OF MYNOR |
| v. | URIZAR-HUNTER IN SUPPORT OF PLAINTIFF STATES' MOTION |
| DONALD J. TRUMP, et al., | FOR PRELIMINARY INJUNCTION |
| Defendants. | |

DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 283 of 342

1    I, Mynor Urizar-Hunter, declare as follows:

2    1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4    2.    I am an Information Technology Consultant. I have a degree in

5    Economics from UC Berkeley.

6    3.    I am one of the co-creators of https://uspsimpact2020.com/, a

7    website that presents visual data on sorting machines slated for removal by the

8    Postal Service. The website shows visual data and charts of sorting machine

9    removal by state and county and includes the political preferences of voters by

10    state and county.

11    4.    We created this website on or around August 24, 2020, following

12    news reports of postal delays and operational changes at the Postal Service. We

13    wanted to provide the data visualization so that voters could see trends and

14    patterns within their communities. The website also directs people to other

15    resources on voting, such as information on voting prepared by the National

16    Association of Secretaries of State and mail-in voting deadlines compiled by

17    Vote.org.

18    5.    We used sorting machine data that was created by the Postal Service

19    and obtained by *The Washington Post*. This sorting machine data was attached as

20    spreadsheets to a June 17, 2020 letter from the Postal Service to American Postal

21    Workers Union. The data identifies over 600 sorting machines—including

22

DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    Advanced Facer Canceler Systems, Delivery Bar Code Sorters, and Automated

2    Flat Sorting Machine 100s, and Flat Sequencing Systems—scheduled for

3    removal between June 13 and September 30. The spreadsheets also identify the

4    region, area, and processing & distribution center for each sorting machine

5    scheduled for removal. A copy of the spreadsheets can be found at:

6    https://www.21cpw.com/wp-content/uploads/2020/06/mail-processing-

7    equipment-reduction_6-17-2020.pdf.

8        6.    The sorting machines identified for removal are scattered across 49

9    states, the District of Columbia, and Puerto Rico. Alaska is the only state with no

10   machines slated for removal. According to this sorting machine data, over 90%

11   of the machines were to be disconnected by August 1.

12       7.    My co-creators and I used the sorting machine data to map where

13   sorting machines were removed or are scheduled for removal across the country

14   by state and county.

15       8.    We then added information regarding major party preferences (i.e.,

16   Democrat or Republican) to see if there was a partisan difference in where sorting

17   machines were removed. We used data gathered by the *N.Y. Times* in reporting

18   the 2016 election results. This information can be accessed at:

19   https://www.nytimes.com/elections/2016/results/president.

20       9.    Using a data visualization tool, we are able to depict where sorting

21   machines have been or are slated for removal.

22

DECLARATION OF                                    3            ATTORNEY GENERAL OF WASHINGTON
MYNOR URIZAR-HUNTER                                                   Complex Litigation Division
                                                                      800 5th Avenue, Suite 2000
NO. 1:20-CV-03127-SAB                                                  Seattle, WA  98104-3188
                                                                         (206) 464-7744



10.    Based on the USPS data, 184 counties have had or will have sorting machines removed. Hillary Clinton won the majority vote in 124 (67%) of these counties. Donald Trump won the majority vote in 60 (33%) of these counties.

11.    We identified 662 sorting machines slated for removal in the USPS data, with 516 (78%) located in counties where Clinton won the majority vote and 146 (22%) located in counties where Trump won the majority vote.

| | Number of Counties | Percentage of Counties | Number of Sorting Machines Removed | Percentage of Sorting Machines Removed |
|---|---|---|---|---|
| Clinton 2016 | 124 | 67% | 516 | 78% |
| Trump 2016 | 60 | 33% | 146 | 22% |
| Total | 184 | | 662 | |

DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1      12.   The following chart lists the state breakdown of sorting machine

2  removals based on the results of the 2016 presidential election:

**State Breakdown based on 2016 Presidential Election Results**

| State | Machines Scheduled for Removal | % Removed from Democratic Counties | % Removed from Republican Counties |
|---|---|---|---|
| Alabama | 10 | 80% | 20% |
| Arkansas | 5 | 80% | 20% |
| Arizona | 4 | 25% | 75% |
| California | 76 | 97% | 3% |
| Colorado | 6 | 100% | 0% |
| Connecticut | 9 | 100% | 0% |
| Washington DC | 3 | 100% | 0% |
| Delaware | 6 | 100% | 0% |
| Florida | 59 | 51% | 49% |
| Georgia | 11 | 82% | 18% |
| Hawaii | 4 | 100% | 0% |
| Iowa | 3 | 100% | 0% |
| Idaho | 1 | 0% | 100% |
| Illinois | 30 | 97% | 3% |
| Indiana | 13 | 62% | 38% |
| Kansas | 1 | 0% | 100% |
| Kentucky | 7 | 100% | 0% |
| Louisiana | 10 | 90% | 10% |
| Massachusetts | 18 | 89% | 11% |
| Maryland | 4 | 75% | 25% |
| Maine | 3 | 100% | 0% |
| Michigan | 26 | 62% | 38% |
| Minnesota | 8 | 100% | 0% |
| Missouri | 14 | 79% | 21% |
| Mississippi | 7 | 43% | 57% |
| Montana | 1 | 0% | 100% |
| North Carolina | 15 | 100% | 0% |
| North Dakota | 3 | 0% | 100% |
| Nebraska | 2 | 100% | 0% |
| New Hampshire | 5 | 0% | 100% |
| New Jersey | 21 | 100% | 0% |
| New Mexico | 1 | 100% | 0% |
| Nevada | 4 | 100% | 0% |
| New York | 52 | 90% | 10% |
| Ohio | 34 | 91% | 9% |
| Oklahoma | 4 | 0% | 100% |
| Oregon | 6 | 100% | 0% |
| Pennsylvania | 30 | 87% | 13% |
| Rhode Island | 4 | 100% | 0% |
| South Carolina | 9 | 67% | 33% |
| South Dakota | 4 | 0% | 100% |
| Tennessee | 28 | 57% | 43% |
| Texas | 58 | 74% | 26% |
| Utah | 3 | 100% | 0% |
| Virginia | 12 | 42% | 58% |
| Vermont | 1 | 100% | 0% |
| Washington | 8 | 75% | 25% |
| Wisconsin | 12 | 75% | 25% |
| West Virginia | 4 | 0% | 100% |
| Wyoming | 3 | 0% | 100% |

DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    13.    The following maps and charts provide the state and county

2  breakdown of sorting machine removals for the Plaintiff States in this lawsuit



DECLARATION OF                    6          ATTORNEY GENERAL OF WASHINGTON
MYNOR URIZAR-HUNTER                             Complex Litigation Division
NO. 1:20-CV-03127-SAB                              800 5th Avenue, Suite 2000
                                                   Seattle, WA  98104-3188
                                                       (206) 464-7744


Page 288 of 342

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22



### Illinois

| County | Machines Schedule for Removal | 2016 Political Preference |
|---|---|---|
| Champaign | 1 | Democrat |
| Cook | 20 | Democrat |
| DuPage | 5 | Democrat |
| Peoria | 2 | Democrat |
| Rock Island | 1 | Democrat |
| Sangamon | 1 | Republican |

### Maryland

| County | Machines Schedule for Removal | 2016 Political Preference |
|---|---|---|
| Baltimore | 1 | Democrat |
| Montgomery | 1 | Democrat |
| Prince George's | 1 | Democrat |
| Talbot | 1 | Republican |

DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744



### Michigan

| County | Machines Schedule for Removal | 2016 Political Preference |
|---|---|---|
| Grand Traverse | 3 | Republican |
| Ingham | 1 | Democrat |
| Kent | 7 | Republican |
| Oakland | 12 | Democrat |
| Wayne | 3 | Democrat |

*Note: The blue-striped shaded county (Kent County) flipped blue for the 2018 gubernatorial race.

### Minnesota

| County | Machines Schedule for Removal | 2016 Political Preference |
|---|---|---|
| Hennepin | 5 | Democrat |
| Ramsey | 3 | Democrat |

DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744



**Nevada**

| County | Machines Schedule for Removal | 2016 Political Preference |
|---|---|---|
| Clark | 3 | Democrat |
| Washoe | 1 | Democrat |

**New Mexico**

| County | Machines Schedule for Removal | 2016 Political Preference |
|---|---|---|
| Bernalillo | 1 | Democrat |

DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22



**Oregon**

| County | Machines Schedule for Removal | 2016 Political Preference |
|---|---|---|
| Lane | 2 | Democrat |
| Multnomah | 4 | Democrat |

**Rhode Island**

| County | Machines Schedule for Removal | 2016 Political Preference |
|---|---|---|
| Providence | 4 | Democrat |

DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1



DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 293 of 342

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

14. The visuals and information provided in this declaration can also be accessed at: https://uspsimpact2020.com/.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this _____ day of September, 2020, at _____.
         8th *date*           Los Angeles, Ca *City, State*

_____
Mynor Urizar-Hunter

DECLARATION OF
MYNOR URIZAR-HUNTER
NO. 1:20-CV-03127-SAB

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Exhibit 43

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
     KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
     CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
     EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
       (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
       *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
     Seattle, WA  98104
9    (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
             **EASTERN DISTRICT OF WASHINGTON**
12                      **AT YAKIMA**

13   STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
     al.,
14                                    DECLARATION OF AMANDA
                     Plaintiffs,      WHITE IN  IN SUPPORT OF
15        v.                          PLAINTIFF STATES' MOTION
                                      FOR PRELIMINARY
16   DONALD J. TRUMP, et al.,         INJUNCTION

17                   Defendants.

18

19

20

21

22

DECLARATION OF AMANDA
WHITE

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 297 of 342

1    I, Amanda White, declare as follows:

2    1.    I am over the age of 18, am competent to testify as to the matters

3    described, and make this declaration based on my personal knowledge.

4    2.    I suffer from Lyme disease and receive medication by mail to treat

5    it.

6    3.    Living in a rural area, I have to allow extra time for packages to

7    arrive. But in the past, I have found that if my medication is shipped on a

8    Monday, it will arrive by Friday the same week.

9    4.    The week of August 10th, my medicine was shipped on a Monday

10    and was supposed to arrive on a Friday, but I did not receive it until the

11    following Monday.

12    5.    As a result of this delay, I was forced to go three days without

13    medication, which delayed my treatment plan and caused me concern.

14    I declare under penalty of perjury that the foregoing is true and correct.

15

16    DATED this  8th    day of September, 2020, at Telluride, Colorado.

17    *Amanda White*
      Amanda White
18

19

20

21

22

DECLARATION OF AMANDA
WHITE

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 44

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
       (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
       *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11          **UNITED STATES DISTRICT COURT**
         **EASTERN DISTRICT OF WASHINGTON**
12                    **AT YAKIMA**

13   STATE OF WASHINGTON, et         NO.  1:20-cv-03127-SAB
     al.,
14                                   DECLARATION OF
                      Plaintiffs,    MARGARET WHITNEY IN
15          v.                       SUPPORT OF PLAINTIFF
                                     STATES' MOTION FOR
16   DONALD J. TRUMP, et al.,        PRELIMINARY INJUNCTION

17                    Defendants.

18

19

20

21

22

DECLARATION OF                        ATTORNEY GENERAL OF WASHINGTON
MARGARET WHITNEY                            Complex Litigation Division
                                            800 5th Avenue, Suite 2000
                                            Seattle, WA  98104-3188
                                                (206) 464-7744

1    I, Margaret Whitney, declare as follows:

2        1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4        2.    I am a resident of Columbia Heights, Minnesota.  I am currently the

5    Business Agent of the Minneapolis Area Local American Postal Workers Union

6    (APWU).  The Business Agent serves as the second in command for the local

7    union.  I have been a postal worker for thirty-five years.  I have served as a union

8    representative or official for thirty-two years.

9        3.    The Minneapolis Area APWU represents workers at the Minneapolis

10    Post Office, which is one of the two largest mail-processing facilities in Minnesota.

11    The union represents three main classes of postal employees: (1) transportation–

12    service workers; maintenance-service workers; and (3) clerks.    Transportation

13    service workers repair and maintain the vehicles used by the U.S. Postal Service

14    (USPS).  Maintenance service workers include everything from janitorial staff to

15    electricians who maintain the mail-sorting equipment.  Clerks are responsible for

16    sorting the mail at the facilities.

17        4.    Several directives have come down from top management at the

18    USPS that are beginning to impact postal operations.  The detrimental impact of

19    these directives will only increase in the future.

DECLARATION OF                    2            ATTORNEY GENERAL OF WASHINGTON
MARGARET WHITNEY                                    Complex Litigation Division
                                                    800 5th Avenue, Suite 2000
                                                    Seattle, WA  98104-3188
                                                    (206) 464-7744

1    5.    USPS management instructed union maintenance workers to

2    decommission and remove mail-processing machines from the Minneapolis Post

3    Office. In the last two to three months, three letter-sorting machines have been

4    taken out of service. One has been removed and designated for assignment to

5    Sioux Falls, South Dakota. Two others are in the process of disassembly. There

6    are at least four other more mail-processing machines scheduled to be removed in

7    the next two to three months. A flat-sorting machine is in the process of

8    disassembly and scheduled for removal. Two delivery barcode sorters are

9    scheduled for disassembly, and to be used for parts.

10    6.    The process of decommissioning a mail-sorting machine is costly and

11    time consuming. It requires the disassembly and transport of a large machine.

12    7.    If a machine is not in use it is generally not necessary to disassemble

13    and remove the machine. In the past machines that were not needed at any given

14    time were "idled" meaning they were essentially unplugged and not used. When

15    those machines are needed again they can be reactivated with minimal time and

16    resources. In fact an automated facer canceller in Minneapolis has been idled and

17    tarped. That sorter remains on site.

18

19

DECLARATION OF                      3              ATTORNEY GENERAL OF WASHINGTON
MARGARET WHITNEY                                          Complex Litigation Division
                                                           800 5th Avenue, Suite 2000
                                                            Seattle, WA 98104-3188
                                                               (206) 464-7744

1    8.    The mail sorting machines are a large capital investment for each

2    facility and are not easy to replace if they are removed but become needed in the

3    future.

4    9.    As a result of the removal of the mail-sorting machines, additional

5    mail sorting bins will be added to the sorting machines that remain.  The addition

6    of these bins will exceed the electrical capacity of the Minneapolis Post Office

7    building and now requires an increase in electrical capacity to run the expanded

8    mail processing equipment.

9    10.    USPS management has also curtailed overtime and the ability of letter

10    carriers to make second trips back their facility to retrieve additional mail to be

11    delivered that day.   In addition, mail transport vehicles have been instructed to

12    leave the sorting facility at their appointed time, regardless of whether the truck

13    has been fully loaded with its designated load.  This causes some mail to remain at

14    the facility to be sent out the following day.  This holdover of mail causes several

15    logistical problems.

16    11.    When mail is sorted at the sorting facility it is placed in what is known

17    as a "walk sequence."  This means that the mail is organized in the order of the

18    customer addresses on the mail carrier's route.  This allows the mail carrier to load

19    and deliver the mail in a logical and efficient sequence.  Mail that is left over from

DECLARATION OF
MARGARET WHITNEY

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   one day to the next must be put back through the sorting machines so that it can be

2   sequenced with the mail for the next day.  This additional sorting is inefficient and

3   can cause further backlogs.

4       12.   The reduction in sorting machines, combined with the additional

5   directives noted above has the potential to impact mail service.  The impact of

6   these policies is not fully felt at this time because the summer months are

7   historically the slowest mail season.  Mail volumes typically pick up in the fall,

8   with peak season being from the end of November through the end of the year.

9       13.   Last year, during peak season, the Minneapolis Post Office was

10   operating at capacity and was also operating a satellite sorting facility to handle the

11   additional volume over the holidays.

12       14.   If these current policies are continued they may impact not only

13   priority mail packages, but also first-class mail, causing delays.

14       I declare under penalty of perjury under the laws of the States of Washington

15   and Minnesota and the United States of America that the foregoing is true and

16   correct.

17   Dated:  August 18, 2020

18

19

DECLARATION OF           5
MARGARET WHITNEY

MARGARET WHITNEY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

# Exhibit 45

1    ROBERT W. FERGUSON
     *Attorney General*
2    NOAH GUZZO PURCELL, WSBA #43492
     *Solicitor General*
3    NATHAN K. BAYS, WSBA #43025
     KRISTIN BENESKI, WSBA #45478
4    ANDREW R.W. HUGHES, WSBA #49515
     CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
     EMMA GRUNBERG, WSBA #54659
6    TERA M. HEINTZ, WSBA #54921
       (*application for admission forthcoming*)
7    KARL D. SMITH, WSBA #41988
       *Deputy Solicitors General*
8    800 Fifth Avenue, Suite 2000
     Seattle, WA  98104
9    (206) 464-7744

10

11

12                    **UNITED STATES DISTRICT COURT**
                    **EASTERN DISTRICT OF WASHINGTON**
                               **AT YAKIMA**

13   STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
     al.,
14                                    SECOND DECLARATION OF
                         Plaintiffs,  MARGARET WHITNEY IN
15          v.                        SUPPORT OF PLAINTIFF
                                      STATES' MOTION FOR
16   DONALD J. TRUMP, et al.,         PRELIMINARY INJUNCTION

17                      Defendants.

18

19

20

21

22

SECOND DECLARATION OF
MARGARET WHITNEY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 306 of 342

1    I, Margaret Whitney, declare as follows:

2        1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4        2.    I am a resident of Columbia Heights, Minnesota.  I am currently the

5    Business Agent of the Minneapolis Area Local American Postal Workers Union

6    (APWU).  The Business Agent serves as the second in command for the local

7    union.  I have been a postal worker for thirty-five years.  I have served as a union

8    representative or official for thirty-two years.

9        3.    I previously signed a declaration explaining directives the United

10   States Postal Service (USPS) has recently implemented.  That declaration detailed

11   pieces of equipment at the Minneapolis Processing Plant that have been

12   decommissioned, are in the process of being decommissioned, or were scheduled

13   for decommissioning.

14       4.    That declaration was signed before Postmaster General DeJoy issued

15   a statement on August 18 indicating that the changes being implemented would be

16   delayed until after the election.

17       5.    On August 19, plant management held a meeting with maintenance

18   craft workers at the Minneapolis Processing Plant and provided an update on plans

19   for the plant.

SECOND DECLARATION OF                    2            ATTORNEY GENERAL OF WASHINGTON
MARGARET WHITNEY                                              Complex Litigation Division
                                                              800 5th Avenue, Suite 2000
                                                              Seattle, WA  98104-3188
                                                                 (206) 464-7744

6.    Before the Postmaster General's August 18 announcement a flat-sorting machine and an automatic facer canceller had been disconnected and scheduled to be removed. Three letter-sorting (DIOSS) machines were also scheduled for removal. Those plans are still in place and have not changed. One DIOSS is designated for assignment in South Dakota and is scheduled to be removed on September 1, the future location of the other two machines has not been determined.

7.    Prior to the August 18 announcement two delivery barcode sorters (DBCS) had been scheduled to be disassembled and used for parts. One is still scheduled for disassembly. One DBCS that was scheduled for disassembly is currently in service has been designated as "on hold" until after election.

I declare under penalty of perjury under the laws of the States of Washington and Minnesota and the United States of America that the foregoing is true and correct.

Dated: August 20, 2020

MARGARET WHITNEY

SECOND DECLARATION OF       3
MARGARET WHITNEY

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# Exhibit 46

1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
   KRISTIN BENESKI, WSBA #45478
4  ANDREW R.W. HUGHES, WSBA #49515
   CRISTINA SEPE, WSBA #53609
5    *Assistant Attorneys General*
   EMMA GRUNBERG, WSBA #54659
6  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
7  KARL D. SMITH, WSBA #41988
     *Deputy Solicitors General*
8  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
9  (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF WASHINGTON**
12                     **AT YAKIMA**

13  STATE OF WASHINGTON, et            NO. 1:20-cv-03127-SAB
    al.,
14                                     DECLARATION OF ZOË
                         Plaintiffs,   WILLIAMS IN SUPPORT OF
15         v.                          PLAINTIFF STATES' MOTION
                                       FOR TEMPORARY
16  DONALD J. TRUMP, et al.,           RESTRAINING ORDER

17                       Defendants.

18

19

20

21

22

DECLARATION OF ZOË              1
WILLIAMS

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 310 of 342

1          I, Zoë Williams, declare as follows:

2          1.      I am over the age of 18, am competent to testify as to the matters

3    described, and make this declaration based on my personal knowledge.

4          2.      I am a nonprofit consultant in Denver, Colorado.

5          3.      I am an independent contractor.

6          4.      My clients pay me by check.

7          5.      Recently, a client recently mailed me a check for three months of

8    work. Despite being mailed from a Denver address, the check took about two

9    weeks to arrive.

10         6.      I had not previously experienced such delays.

11         7.      I followed up with the client, and they confirmed that they had

12   mailed the check on time.

13         8.      Because of the delay in receiving the check, I was not able to pay a

14   bill that was due.

15         9.      The bill was sent to collections, and I received a notice that my credit

16   score had changed.

17         10.     Because the check was delayed, I was worried about being able to

18   purchase groceries for my four children.

19         11.     I ran out of money before the check arrived and was required to pay

20   an overdraft fee to buy groceries.

21         I declare under penalty of perjury that the foregoing is true and correct.

22

DECLARATION OF ZOË
WILLIAMS

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1      DATED this 2nd day of September, 2020, at Denver, Colorado.

2                              S/Zoë Williams

3                              _____
                               Zoë Williams

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF ZOË                    3          ATTORNEY GENERAL OF WASHINGTON
WILLIAMS                                              Complex Litigation Division
                                                      800 5th Avenue, Suite 2000
                                                      Seattle, WA  98104-3188
                                                         (206) 464-7744

# Exhibit 47

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11                **UNITED STATES DISTRICT COURT**
              **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13  STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
    al.,
14                                   DECLARATION OF
                         Plaintiffs, CHRISTOPHER WINTERS
15        v.                         IN SUPPORT OF PLAINTIFF
                                     STATES' MOTION FOR
16  DONALD J. TRUMP, et al.,         PRELIMINARY INJUNCTION

17                       Defendants.

18

19

20

21

22

DECLARATION OF                          ATTORNEY GENERAL OF WASHINGTON
CHRISTOPHER WINTERS                           Complex Litigation Division
NO.  1:20-cv-03127-SAB                          800 5th Avenue, Suite 2000
                                               Seattle, WA  98104-3188
                                                   (206) 464-7744

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON AT YAKIMA**

STATE OF WASHINGTON, et al.,       ) No. 20-03127-SAB
Plaintiffs                         )
                                   )
v.                                 )
DONALD J. TRUMP, et al.,           )
Defendants                         )
_____ )

**Declaration of Christopher Winters**
**Vermont Deputy Secretary of State**

I, Christopher Winters, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1.     I am the Deputy Secretary of State for the State of Vermont. I have been employed by the Secretary of State's Office for more than 23 years, the last five as Deputy Secretary, appointed by Secretary of State Jim Condos.

2.     As Deputy Secretary of State,  I oversee and have responsibility for the operations of the four divisions of the Secretary of State's Office.  This includes the Elections Division, and I have direct knowledge of its functions and operations.  The Elections Division of the Vermont Secretary of State's Office has responsibility for guiding and administering Vermont's local, state, and federal elections.   The Elections Division provides oversight and guidance on election law, provides supplies that are fundamental to carrying out elections, and is a resource before and on election day to help election officials with any emergencies or routine questions that may arise.

3.      In Vermont, voters have been able to vote by mail (no-excuse absentee voting) since 2001.  Vermonters also have the ability to vote early at their town clerk's office during regular hours for 45 days prior to the election.  Ballots must be received in the town clerk's office before the close of business on the Monday before Election Day, or ballots may be delivered to the polls on Election Day before the polls close at 7:00 p.m.[1]

4.      On July 2, 2020, Act 135 became law.   This legislation, along with previously enacted Act 92, authorized the Vermont Secretary of State to order or permit, as applicable, appropriate elections procedures for the purpose of protecting the health, safety, and welfare of voters, elections workers, and candidates in carrying out elections, including expanding mail voting by sending ballots by mail to all registered voters.

5.      The Vermont Secretary of State has exercised his authority under Act 135.   In a directive issued by the Secretary of State on July 20, 2020, it was announced that the Vermont Secretary of State will send ballots to all registered voters via first-class mail (paid at the first-class rate) for the General Election in 2020.   The State of Vermont will also include prepaid envelopes, postage first class for the return ballots.

6.      Under Vermont's current election law, ballots returned by mail must be received by the clerk no later than 7:00 p.m. on Election Day, regardless of when the ballot is postmarked.[2]

7.      Voting by mail is especially beneficial for Vermonters who are homebound, such as the elderly and members of the disabled community; those who are economically disadvantaged and have limited access to transportation and childcare that would enable them to vote in person during a set timeframe; overseas and military voters; those who

---

[1] .  There is an exception for ballots that have been mailed to the town clerk.   To be counted, they must arrive before 7:00 p.m. on election day.   17 V.S.A. § 2453(d)(1)(B).

[2] .  17 V.S.A. § 2453(d)((1)(B).

1  are temporarily away from home for work or family reasons; and those who may not have

2  time to get to the polls during set hours, such as shift workers, caregivers, single parents,

3  and those without childcare or time off from work.

4  8.    In the 2020 election, there is another category of Vermonters who would be

5  disproportionately affected by the need to vote in person: older voters and those with

6  compromised immune systems who are particularly susceptible to harm from COVID-19.

7  This category also includes voters who live with or care for a vulnerable household

8  member or relative, and who fear that voting in person may expose them to the virus,

9  which they may then spread to more vulnerable individuals.

10  9.    The COVID-19 pandemic has led to a massive increase in voting by mail. More

11  voters requested absentee ballots for the 2020 primary election than the number of

12  Vermonters who actually voted in the last two primaries, as reflected in the following

13  chart:

14

| Statewide Primary Year | Total Ballots Voted | Early/Absentee Ballots Voted (% of total) |
|---|---|---|
| 2016 | 107,000 | 17,000 (16%) |
| 2018 | 120,000 | 22,000 (18%) |
| 2020 | 168,000 | 150,000 requested (89%) *(Voted data is not available)* |

15  *Voted totals are rounded down to the nearest 1,000.*

16  10.    Delays in mail delivery by the USPS could adversely impact the timely receipt of

17  ballots, thereby, jeopardizing the ability of such voters to have their ballots counted.

18  11.    In the 2020 primary election, many postal workers in Vermont went above and

19  beyond their job duties to ensure that all timely posted ballots were delivered to polling

20  places on time, which was a challenge given the much higher volume of mailed ballots

21  than in previous years. Vermont is concerned that, with the elimination of overtime and

other recent USPS operational changes, postal workers will be unable to fulfill these functions for the 2020 general election.

13.    Vermont is concerned that, with the certainty of a high turnout and heavy reliance on absentee voting or voting by mail for this impending election, postal service disruptions will disenfranchise voters, make receipt and processing more difficult for election workers and will undermine the integrity of election results if large numbers of ballots are not returned in time.


    I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.


    Executed at __Montpelier__, Vermont, on this _4th_ day of September, 2020.

_____
Christopher Winters
Deputy Secretary of State

# Exhibit 48

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11                  **UNITED STATES DISTRICT COURT**
                 **EASTERN DISTRICT OF WASHINGTON**
12                        **AT YAKIMA**

13  STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
    al.,
14                                   DECLARATION OF
                      Plaintiffs,    MARIBETH WITZEL-BEHL IN
15                                   SUPPORT OF PLAINTIFF
         v.                          STATES' MOTION FOR
16                                   PRELIMINARY INJUNCTION
    DONALD J. TRUMP, et al.,
17
                      Defendants.
18

19

20

21

22

DECLARATION OF MARIBETH                    ATTORNEY GENERAL OF WASHINGTON
WITZEL-BEHL                      1              Complex Litigation Division
                                                 800 5th Avenue, Suite 2000
                                                  Seattle, WA  98104-3188
                                                      (206) 464-7744

1    I, **MARIBETH WITZEL-BEHL**, declare as follows:

2    1.    I am over the age of 18, am competent to testify as to the matters

3    herein, and make this declaration based on my personal knowledge.

4    2.    From 2004 to 2006, I was the Licensing Clerk in the City of

5    Madison's City Clerk's Office. I have been the City Clerk of the City of Madison

6    since 2006. I am the elections administrator for the City and am responsible for

7    about 180,000 voters. I oversee the processing of absentee requests and issuance

8    of absentee ballots, work that is done by ten full-time Clerk's Office employees

9    and 53 hourly absentee clerks. Voters contact me with their concerns via e-mail,

10    via phone, and in person.

11    3.    Based on my experience working with absentee voting, I know that

12    many Madison voters rely on the Postal Service for timely mail delivery in order

13    to meet Wisconsin's statutory deadlines for absentee voting.

14    4.    When the Clerk's Office receives a voter's request for an absentee

15    ballot, it prepares the ballot and places it in the mail for delivery by the Postal

16    Service to the voter's residence.

17    5.    Due to shutdowns in Wisconsin mail processing facilities over the

18    past several years, mail sent from the City Clerk's Office to Madison residents is

19    routed through a processing facility in Milwaukee, Wisconsin. My understanding

20    is that this shipping process adds a day or two to mail delivery times.

21

22

DECLARATION OF MARIBETH          2
WITZEL-BEHL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1      6.    Postal Service officials have informed me that ballots should arrive

2   at voters' residence in two to five days. However, many voters have contacted

3   the City Clerk's Office to report that they have waited around five to seven days

4   for ballots to arrive at their residence.

5      7.    If a voter chooses to return an absentee ballot by mail, they must

6   place it back in the mail for Postal Service delivery back to the City Clerk's

7   Office. Voters have reported that this return delivery can take up to a week.

8      8.    I am familiar with reports regarding operational changes at the

9   Postal Service related to mail processing and delivery, including that the Postal

10   Service has reduced overtime for employees, instructed mail carriers to leave

11   behind excess mail that cannot be delivered during standard hours, and removing

12   mail sorting machines.

13      9.    In recent weeks, municipal clerks in Wisconsin have regular contact

14   with Postal Service officials via Zoom videoconference calls to discuss issue

15   related to election mailings. Through these calls, I have learned that the Postal

16   Service has removed mail processing machines that served the City of Madison.

17      10.   Additional delays in mail processing and delivery caused by the

18   Postal Service's recent operational changes create a substantial risk that many

19   voters will not have time to receive and submit their absentee ballots by mail

20   before Wisconsin's statutory deadline of 8 p.m. on election day. That risk is

21

22

DECLARATION OF MARIBETH
WITZEL-BEHL

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  especially acute for voters who wait until the deadline of five days before election

2  day to request an absentee ballot by mail.

3       11.    In Wisconsin's most recent primary election in August 2020, around

4  270 absentee ballots arrived at the City Clerk's office by mail after the statutory

5  deadline and were not counted. In the comparable primary election during August

6  2018, the City Clerk's office received only around 160 late absentee ballots.

7       12.    Madison voters have expressed to me their concerns with Postal

8  Service mail delivery in connection with the November 2020 general election,

9  and specifically their worries that the Postal Service will not deliver their

10  completed absentee ballots in a timely and reliable fashion.

11

12       I declare under penalty of perjury under the laws of the State of Wisconsin

13  and the United States that the foregoing is true and correct.

14       DATED this 18th day of August, 2020, at Madison, Wisconsin.

15

16  Maribeth Witzel-Behl
    Maribeth Witzel-Behl

17      City Clerk of the City of Madison, Wisconsin

18

19

20

21

22

DECLARATION OF MARIBETH     4
WITZEL-BEHL

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# Exhibit 49

1  ROBERT W. FERGUSON
   *Attorney General*
2

3

4

5              **UNITED STATES DISTRICT COURT**
               **EASTERN DISTRICT OF WASHINGTON**
6                        **AT YAKIMA**

7

   STATE OF WASHINGTON, et al.,          NO. 1:20-CV-03127
8
                        Plaintiff,       DECLARATION OF DAVID YAO
9
        v.
10
   DONALD J. TRUMP, et al.,
11
                        Defendants.
12

13

14      I, David Yao, declare as follows:

15      1.    I am over the age of 18, am competent to testify as to the matters

16  herein, and make this declaration based on my personal knowledge.

17      2.    I have been a United States Postal Service (USPS) employee for

18  over 30 years.  In addition to my role as a postal clerk for the USPS, I currently

19  serve as Vice President of the Greater Seattle Area Local of the American Postal

20  Workers Union.  I make this declaration in my personal capacity and not on

21  behalf of any organization or entity.

22

DECLARATION OF DAVID YAO          1          ATTORNEY GENERAL OF WASHINGTON
                                              Complex Litigation Division
                                              800 5th Avenue, Suite 2000
                                              Seattle, WA  98104-3188
                                              (206) 464-7744

3.      The USPS has recently made several significant changes to the way it processes and delivers mail in the State of Washington.

4.      In general, when a mail carrier is out on their daily route, they will pick up outgoing mail from various sources, including private mailboxes and public blue boxes. When the mail carrier finishes their route, they will bring that outgoing mail back to the station, where it will be put on a truck that will take it to a regional processing center that evening. At the processing center, the mail will be postmarked and sorted depending on its destination.

5.      One of the more significant recent changes to the way mail is being processed in Washington State is that trucks traveling between stations and processing centers must now leave each facility by a firm deadline each day, and there cannot be any exceptions to this deadline. I learned about this change from the truck drivers. They have told me that this requirement applies both to trucks leaving stations at the end of the day to take outgoing mail to a processing center, and to trucks leaving processing centers in the morning to take mail that has been postmarked and sorted to a station for delivery.

6.      In normal circumstances, if the last truck of the day were about to leave a station to take outgoing mail to a processing center, the truck would have discretion to wait if there was for example a letter carrier who was about to return with a large bundle of outgoing mail collected during the day. In that situation, waiting a short amount of time makes it possible to ensure that all of the outgoing

DECLARATION OF DAVID YAO          2          ATTORNEY GENERAL OF WASHINGTON
                                               Complex Litigation Division
                                               800 5th Avenue, Suite 2000
                                               Seattle, WA  98104-3188
                                               (206) 464-7744

1    mail that was collected during the day would be sent to the processing center that

2    evening to be sorted and postmarked.

3        7.    These recent changes, however, represent a significant departure

4    from our prior practices. Truck drivers have told me they are required to leave

5    the station for the processing center by a firm deadline without any exceptions.

6    As a result, even if a carrier is about to return to the station with a large bundle

7    of outgoing mail collected during the day, the truck leaving for the processing

8    center is not permitted to wait for the carrier to arrive. Instead, the truck will leave

9    before the carrier arrives, and that outgoing mail will get left behind to sit at the

10   station for at least another day unless a supervisor can drive it to the processing

11   center to be sorted and postmarked.

12       8.    I have heard from other Union officers and postal employees that

13   these changes also apply to trucks leaving a processing center in the morning to

14   take postmarked and sorted mail to stations for distribution and delivery.

15   Previously, if there was still a large volume of mail that was nearly done being

16   processed in the morning, the trucks could wait to make sure they got all the mail

17   that should go to the station that day. Under the recent changes, however, those

18   trucks also leave by a firm deadline without any exception. As a result, any mail

19   that was nearly done being processed will miss the truck entirely and could

20   instead sit at the facility for at least another day until it can be driven to the station

21   for delivery.

22

DECLARATION OF DAVID YAO          3          ATTORNEY GENERAL OF WASHINGTON
                                              Complex Litigation Division
                                              800 5th Avenue, Suite 2000
                                              Seattle, WA  98104-3188
                                              (206) 464-7744

1    9.    In my experience as a postal employee, election mail is usually

2  treated as First Class Mail, regardless of the postage on the envelope. This

3  includes absentee or mail-in ballots that are sent to voters and the completed

4  ballots that are sent back to election officials.

5    I declare under penalty of perjury under the laws of the State of

6  Washington and the United States that the foregoing is true and correct.

7

8    DATED this ___3rd___ day of September, 2020, at Seattle, Washington.

9

10

11    *David C. Yao*
        DAVID YAO

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF DAVID YAO             4              ATTORNEY GENERAL OF WASHINGTON
                                                    Complex Litigation Division
                                                    800 5th Avenue, Suite 2000
                                                    Seattle, WA  98104-3188
                                                    (206) 464-7744

# Exhibit 50

1   ROBERT W. FERGUSON
    *Attorney General*
2   NOAH GUZZO PURCELL, WSBA #43492
    *Solicitor General*
3   NATHAN K. BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
4   ANDREW R.W. HUGHES, WSBA #49515
    CRISTINA SEPE, WSBA #53609
5   *Assistant Attorneys General*
    EMMA GRUNBERG, WSBA #54659
6   TERA M. HEINTZ, WSBA #54921
      (*application for admission forthcoming*)
7   KARL D. SMITH, WSBA #41988
      *Deputy Solicitors General*
8   800 Fifth Avenue, Suite 2000
    Seattle, WA  98104
9   (206) 464-7744

10

11              **UNITED STATES DISTRICT COURT**
                **EASTERN DISTRICT OF WASHINGTON**
12                          **AT YAKIMA**

13   STATE OF WASHINGTON, et          NO.  1:20-cv-03127-SAB
     al.,
                                      DECLARATION OF KAREN
14                  Plaintiffs,       YARBROUGH IN SUPPORT
                                      OF PLAINTIFF STATES'
15        v.                          MOTION FOR PRELIMINARY
                                      INJUNCTION
     DONALD J. TRUMP, et al.,
16
                    Defendants.
17

18

19

20

21

22

DECLARATION OF KAREN A.
YARBROUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

Page 330 of 342

1     I, Karen A. Yarbrough, declare as follows:

2          1.     I am over the age of 18, am competent to testify as to the matters

3     herein, and make this declaration based on my personal knowledge.

4          2.     I make this declaration from personal knowledge and based on

5     records from the Cook County Clerk's Office, located in Cook County, Illinois,

6     and would testify to the following facts if called as a witness at hearing or trial.

7          3.     I am the Cook County Clerk, responsible for administration of

8     elections in suburban Cook County, Illinois (excluding the City of Chicago).

9          4.     The Cook County Clerk's Office serves as the local election

10     authority for Illinois voters who reside in suburban Cook County. There are

11     approximately 1,570,127 Cook County residents currently registered to vote in

12     the area subject to our jurisdiction. Our office is one of 108 local election

13     authorities in Illinois. The local election authorities handle local voter

14     registration programs, arrange for the printing of ballots, and manage the vote

15     count at the local level. They are additionally responsible for accepting vote by

16     mail applications, mailing ballots to voters who have applied to vote by mail,

17     and accepting ballots returned by mail. *See* 10 ILCS 5/2B-15; 10 ILCS 5/2B-20.

18     The local election authorities function under the supervision of the Illinois State

19     Board of Elections ("ISBE"), which oversees the administration of registration

20     and election laws throughout the State of Illinois. *See* 10 ILCS 5/1A-1.

21

22

DECLARATION OF KAREN A.
YARBROUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1
2                    **Illinois' Statutory Vote by Mail Procedures**

3        5.      Illinois has successfully utilized vote by mail procedures for over a

4   decade. In 2009, Illinois began allowing any qualified and registered voter in

5   the state to choose to vote by mail in accordance with deadlines and procedures

6   established in Illinois Election Code. *See* Pub. Act 96-0553 (eff. Aug. 17, 2009)

7   (amending 10 ILCS 5/19-1).

8        6.      This year, in response to the Covid-19 pandemic and to protect the

9   health of Illinois residents, Illinois enacted new legislation to further enhance

10  the availability of vote by mail for Illinois voters participating in the 2020

11  general election.  On June 16, 2020, Public Act 101-0642 became law in

12  Illinois. *See* Pub. Act 101-0642 (eff. June 16, 2020) (creating 10 ILCS 5/2B *et*

13  *seq.*).

14       7.      Public Act 101-0642 permits voters to request applications "for an

15  official ballot for the 2020 general election to be sent to the elector through

16  mail." 10 ILCS 5/2B-15(a).

17       8.      In addition, the new law requires election authorities to send

18  applications for "an official vote by mail ballot for the 2020 general election" to

19  any elector who voted, whether by mail or in person, in (1) the 2018 general

20  election; (2) the 2019 consolidated election (in which various municipal

21  elections occur in Illinois); or (3) the 2020 general primary election. *Id* § 5/2B-

22

DECLARATION OF KAREN A.
YARBROUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   15(b). Vote by mail applications must also be sent to voters who have registered

2   to vote or changed their registration address after March 17, 2020, the date of

3   the general primary election, and on or before July 31, 2020. *Id.* The vote by

4   mail applications sent to voters must also include a notice stating that "upon

5   completion of the application, the elector *will receive* an official ballot no more

6   than 40 days and no less than 30 days before the election[.]" *Id.* §5/2B-15(c)

7   (emphasis added). The notice also informs voters that they may return the

8   application by mail to their election authority. *Id.* Both the application and

9   notice are to be sent by mail "to the elector's registered address and any other

10  mailing address the election authority may have on file, including a mailing

11  address to which a prior vote by mail ballot was mailed." *Id.* § 5/2B-15(d).

12      9.      Beginning on September 24, 2020, election authorities in Illinois

13  must mail official ballots to voters in Illinois who have requested them. *Id.* §

14  2B-20(a). Voters requesting a vote by mail ballot on or before October 1, 2020,

15  must receive one "no later than October 6, 2020." *Id.* For requests received after

16  October 1, 2020, an election authority must mail an official ballot within two

17  business days after receiving the application. *Id.* Election authorities must

18  continue accepting vote by mail applications received by mail or electronically

19  through October 29, 2020—five days before election day, November 3, 2020.

20  *See* 10 ILCS 5/19-2. Voters may also submit a vote by mail application in

21  person as late as November 2, 2020, the day before election day. *Id.*

22

DECLARATION OF KAREN A.
YARBROUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    10.    For voters returning their completed ballots by mail, their ballots

2    must be postmarked on or before election day and received within the fourteen-

3    day period following election day during which provisional ballots are counted.

4    *See* 10 ILCS 5/19-3, 19-8(c); 10 ILCS 5/20-2.3. Illinois law also permits

5    election authorities to create "secure collection sites for the postage-free return

6    of vote by mail ballots," and specifically provides that "[e]lection authorities

7    shall accept any vote by mail ballot returned, including ballots returned with

8    insufficient or no postage[.]" 10 ILCS 5/2B-20(e). Voters who received vote by

9    mail ballots and wish to personally return them have until the close of the polls

10   on election day to submit them to collection sites for the issuing election

11   authority. 10 ILCS 5/2B-20(e). Illinois law specifically provides that "[e]lection

12   authorities shall accept any vote by mail ballot returned, including ballots

13   returned with insufficient or no postage[.]" *Id.* Critically, Illinois law permits

14   voters to select whether they will return their ballot by mail or in person using

15   the secure collection site.

16               **Vote By Mail Trends in Cook County, Illinois**

17   11.    In previous General Elections, suburban Cook County voters relied

18   upon vote by mail to cast their ballots. In the 2016 General Election, 87,987

19   voters cast ballots by mail. In the 2018 General Election, 95,105 voters cast

20   ballots by mail.

21

22

DECLARATION OF KAREN A.
YARBROUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1      12.    Following the requirements of the new Illinois statute, on or about

2    August 1, 2020, the Cook County Clerk's Office mailed approximately 1.6

3    million vote by mail applications to suburban Cook County voters. I anticipate

4    that providing these applications will significantly increase the number of

5    voters who will opt to vote by mail.

6      13.    In light of the recent change of laws in Illinois and the COVID-19

7    pandemic, I believe a larger number of people will opt to vote by mail. In fact,

8    as of August 18, 2020, the Cook County Clerk's Office has received 176,843

9    ballot applications from voters who wish to vote by mail. This number is

10    significantly higher than what we have observed in previous General Elections.

11    Already, the total number of mail ballot applications is more than double the

12    total number of mail ballots cast in the last Presidential General Election in

13    2016.

14      14.    Based on the trends our office is observing, I believe it is highly

15    likely that the 107 other local election authorities in Illinois will witness similar

16    trends.

17           **Impacts of United States Postal Service's Recent Changes**

18      15.    I am aware and have seen the letter that the United States Postal

19    Service ("USPS") mailed to ISBE on July 30, 2020. In that letter, USPS warned

20    ISBE that that "under our reading of Illinois' election laws, certain deadlines for

21    requesting and casting mail-in ballots are incongruous with the Postal Service's

22

DECLARATION OF KAREN A.
YARBROUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Page 335 of 342

1   delivery standards. This mismatch creates a risk that ballots requested near the

2   deadline under state law will not be returned by mail in time to be counted under

3   your laws as we understand them." The letter specifically flagged that Illinois

4   permits voters intending to vote by mail to apply for a vote by mail ballot "as late

5   as 5 days before the November general election." It also asserted that "the Postal

6   Service cannot adjust its delivery standards to accommodate the requirements of

7   state election law." A copy of the July 30, 2020 letter is attached to this

8   declaration as Exhibit A.

9       16.    In addition to the July 30, 2020 letter from USPS, I am also aware

10  of recent media reports indicating that some members of the public have been

11  experiencing delays in mail delivery. I am also aware of media reports

12  indicating that operational changes have recently been occurring at USPS that

13  may have contributed to these delays.

14      17.    The Cook County Clerk's Office works to ensure that elections in

15  suburban Cook County are fair and that residents who are eligible to vote can

16  do so in a safe and secure manner. Ensuring the safety of voters is especially

17  critical this year, given the ongoing Covid-19 pandemic. Vote by mail is a vital

18  tool in enabling Illinois voters to safely cast their ballots.

19      18.    The deadlines required by Illinois law permit voters to apply to

20  vote by mail up until very close to election day. Having an efficient mail service

21

22

DECLARATION OF KAREN A.
YARBROUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    through USPS is critical to ensuring that voters choosing to vote by mail are

2    able to receive and return their ballots by the deadlines required in Illinois law.

3        19.    The need for an efficient mail service through USPS is particularly

4    critical in the final weeks leading up to election day on November 3, 2020.

5    Voters in Illinois can mail or electronically submit applications to vote by

6    through October 29, 2020. For voters submitting their applications on October

7    29 or the few days leading up to that date, having reliable and efficient USPS

8    mail delivery will be essential to ensure that the voters are able to receive,

9    complete, and return their ballots in time for them to be counted.

10        20.    In addition, Illinois voters mailing their ballots need to have their

11    ballots postmarked no later than election day, November 3, 2020, in order for

12    them to be counted. Ballots submitted by mail must also be received by the

13    election authority within the fourteen days after election day in order to be

14    counted.

15    **Irreparable Harm**

16        21.    An efficient and reliable mail service through USPS is critical to

17    ensuring that Cook County voters choosing to vote by mail are not

18    disenfranchised because of delays in processing or delivering the mail. The

19    anticipated increase in the number of Illinois citizens voting by mail in this year's

20    election also means that an efficient and reliable mail service through USPS has

21    never been more important to ensuring that Illinois citizens can exercise their

22    right to vote.

DECLARATION OF KAREN A.
YARBROUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1     22.    USPS's warnings about its inability to provide reliable services in

2     Illinois is occurring at a time when prompt mail delivery has never been more

3     essential for protecting the right to vote for Illinois citizens. Maintaining and

4     enhancing USPS capacity is an urgent priority for the Cook County Clerk's

5     Office in light of the expansion of vote by mail options Illinois has adopted in

6     response to the COVID-19 pandemic.

7     23.    However, if USPS provides inadequate postal services so close to

8     an election, significant numbers of Cook County and Illinois voters would be at

9     risk of becoming disenfranchised in the upcoming election.

10    24.    If mail services are impeded or delayed, voters who utilize vote by

11    mail risk not having their ballot counted. For example, the Cook County Clerk's

12    Office may receive vote by mail applications late due to mail delays, which will

13    delay our ability to send voters their ballots. Even if applications are timely

14    received, voters may still receive their ballots late or else be prevented from

15    casting their ballots in a timely way if the mail is delayed or voters are otherwise

16    unable to find an alternative method to deliver their ballot to a secure collection

17    site. In fact, USPS has essentially admitted the strong probability that irreparable

18    disruptions will occur in their July 30, 2020 letter.

19    25.    Further, if USPS's changes undercut public confidence in postal

20    services, voters who otherwise would have remained safely at home to vote might

21    opt to vote in person at a polling place instead, which heightens inherent risks of

22

DECLARATION OF KAREN A.
YARBROUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  spreading COVID-19 during a dangerous pandemic. Otherwise, voters who feel

2  that they cannot trust the postal service but have warranted concerns about

3  congregating at a polling place simply might not vote at all.

4      **I declare under penalty of perjury under the laws of the United States**

5  **that the foregoing is true and correct.**

6

7      DATED this 19th day of August 2020, at Chicago, Illinois.

8

9  Karen A. Yarbrough
   Cook County Clerk

10

11

12

13

14

15

16

17

18

19

20

21

22

DECLARATION OF KAREN A.
YARBROUGH

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**Yarbrough Declaration**

**Exhibit A**

THOMAS J. MARSHALL
GENERAL COUNSEL
AND EXECUTIVE VICE PRESIDENT



**UNITED STATES**
**POSTAL SERVICE**

July 30, 2020

Honorable Steve Sandvoss
Executive Director
State Board of Elections
2329 S. MacArthur Boulevard
Springfield, IL 62704-4503

Dear Mr. Sandvoss:

Re: Deadlines for Mailing Ballots

With the 2020 General Election rapidly approaching, this letter follows up on my letter dated May 29, 2020, which I sent to election officials throughout the country. That letter highlighted some key aspects of the Postal Service's delivery processes. The purpose of this letter is to focus specifically on the deadlines for requesting and casting ballots by mail. In particular, we wanted to note that, under our reading of Illinois' election laws, certain deadlines for requesting and casting mail-in ballots are incongruous with the Postal Service's delivery standards. This mismatch creates a risk that ballots requested near the deadline under state law will not be returned by mail in time to be counted under your laws as we understand them.

As I stated in my May 29 letter, the two main classes of mail that are used for ballots are First-Class Mail and USPS Marketing Mail, the latter of which includes the Nonprofit postage rate. Voters must use First-Class Mail (or an expedited level of service) to mail their ballots and ballot requests, while state or local election officials may generally use either First-Class Mail or Marketing Mail to mail blank ballots to voters. While the specific transit times for either class of mail cannot be guaranteed, and depend on factors such as a given mailpiece's place of origin and destination, most domestic First-Class Mail is delivered 2-5 days after it is received by the Postal Service, and most domestic Marketing Mail is delivered 3-10 days after it is received.

To account for these delivery standards and to allow for contingencies (e.g., weather issues or unforeseen events), the Postal Service strongly recommends adhering to the following timeframe when using the mail to transmit ballots to domestic voters:

- **Ballot requests:** Where voters will both receive and send a ballot by mail, voters should submit their ballot request early enough so that it is received by their election officials at least 15 days before Election Day at a minimum, and preferably long before that time.

- **Mailing blank ballots to voters:** In responding to a ballot request, election officials should consider that the ballot needs to be in the hands of the voter so that he or she has adequate time to complete it and put it back in the mail stream so that it can be processed and delivered by the applicable deadline. Accordingly, the Postal Service recommends that election officials use First-Class Mail to transmit blank ballots and allow 1 week for delivery to voters. Using Marketing Mail will result in slower delivery times and will increase the risk that voters will not receive their ballots in time to return them by mail.

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-1100
PHONE: 202-268-5555
FAX: 202-268-6981
THOMAS.J.MARSHALL@USPS.GOV
www.usps.com

- 2 -

- **Mailing completed ballots to election officials:** To allow enough time for ballots to be returned to election officials, domestic voters should generally mail their completed ballots at least one week before the state's due date. In states that require mail-in ballots to be *both* postmarked by Election Day *and* received by election officials by a specific date that is one week or more after Election Day, voters may generally mail their ballot up until November 3. However, voters who mail in their ballots on Election Day must be aware of the posted collection times on collection boxes and at the Postal Service's retail facilities, and that ballots entered after the last posted collection time on a given day will not be postmarked until the following business day.

Under our reading of your state's election laws, as in effect on July 27, 2020, certain state-law requirements and deadlines appear to be incompatible with the Postal Service's delivery standards and the recommended timeframe noted above. As a result, to the extent that the mail is used to transmit ballots to and from voters, there is a significant risk that, at least in certain circumstances, ballots may be requested in a manner that is consistent with your election rules and returned promptly, and yet not be returned in time to be counted.

Specifically, it appears that a completed ballot must be postmarked before Election Day and received by election officials within 14 days after the election, which we understand to be the end of the period for counting provisional ballots. If that understanding is correct, voters who choose to mail their ballots may do so on or before Tuesday, November 3. However, it further appears that state law generally permits voters to apply for a ballot as late as 5 days before the November general election. If a voter submits a request at or near the ballot-request deadline, and if the ballot is transmitted to the voter by mail, there is a significant risk that the ballot will not reach the voter before Election Day, and accordingly that the voter will not be able to use the ballot to cast his or her vote. That risk is exacerbated by the fact that the law does not appear to require election officials to transmit a ballot until 2 business days after receiving a ballot application.

To be clear, the Postal Service is not purporting to definitively interpret the requirements of your state's election laws, and also is not recommending that such laws be changed to accommodate the Postal Service's delivery standards. By the same token, however, the Postal Service cannot adjust its delivery standards to accommodate the requirements of state election law. For this reason, the Postal Service asks that election officials keep the Postal Service's delivery standards and recommendations in mind when making decisions as to the appropriate means used to send a piece of Election Mail to voters, and when informing voters how to successfully participate in an election where they choose to use the mail. It is particularly important that voters be made aware of the transit times for mail (including mail-in ballots) so that they can make informed decisions about whether and when to (1) request a mail-in ballot, and (2) mail a completed ballot back to election officials.

We remain committed to sustaining the mail as a secure, efficient, and effective means to allow citizens to participate in the electoral process when election officials determine to utilize the mail as a part of their election system. Ensuring that you have an understanding of our operational capabilities and recommended timelines, and can educate voters accordingly, is important to achieving a successful election season. Please reach out to your assigned election mail coordinator to discuss the logistics of your mailings and the services that are available as well as any questions you may have. A list of election mail coordinators may be found on our website at: https://about.usps.com/election-mail/politicalelection-mail-coordinators.pdf.

We hope the information contained in this letter is helpful, and please let me know if you have any questions or concerns.

Sincerely,

Thomas J. Marshall

Page 342 of 342