DOUGLAS N. LETTER
  *General Counsel*
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

*Counsel for Amicus Curiae*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
## AT YAKIMA

STATE OF WASHINGTON, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, and STATE OF WISCONSIN,

                Plaintiffs,

      v.

DONALD J. TRUMP, in his official capacity as President of the United States of America; UNITED STATES OF AMERICA; LOUIS DEJOY, in his official capacity as Postmaster General; UNITED STATES POSTAL SERVICE,

                Defendants.

Case No. 1:20-cv-03127

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS AMICUS CURIAE IN SUPPORT OF THE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION AND STATEMENT OF INTEREST ........................................ 1

ARGUMENT ................................................................................................ 2

I.    CONGRESS ESTABLISHED AND REFORMED THE UNITED STATES POSTAL SERVICE TO ENSURE A CONNECTED, INFORMED NATION ............................................. 2

        A.    Congress Created the United States Post Office, the Forerunner to the Modern-Day Postal Service, in Part to Provide Critical Infrastructure for Connecting and Informing the Electorate ................................................. 2

        B.    The Postmaster General's Service Rollbacks Undermine the Postal Service's Operations and Contravene Congressional Intent ............................................................ 6

II.   CONGRESS HAS LONG RECOGNIZED THAT FREE AND FAIR ELECTIONS DEPEND UPON RELIABLE MAIL SERVICE ................................................................................. 9

        A.    Congress Has Repeatedly Legislated to Secure and Enhance the Fundamental Right to Vote Through the Use of the Mail ..................................................................... 9

        B.    A Reliable Postal Service Is Essential to a Free and Fair Electoral Process ................................................................ 14

        C.    The Postal Service's Recent Changes Threaten Participation in, and the Integrity of, the Upcoming Election .................................................................................. 16

CONCLUSION ............................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*MacDougall v. Green*,
335 U.S. 281 (1948) ...........................................................................16

*McConnell v. Federal Election Comm'n*,
540 U.S. 93 (2003) ..............................................................................9

*Rowan v. U.S. Post Office Dep't*,
397 U.S. 728 (1970) .............................................................................5

*United States v. Slone*,
411 F.3d 643 (6th Cir. 2005) ...............................................................9

**Constitution, Statutes, and Legislative Materials**

U.S. Const.
    Amend. XIV ...................................................................................10
    Amend. XV ....................................................................................10
    Amend. XIX ...................................................................................10
    Amend. XXIV .................................................................................10
    Amend. XXVI .................................................................................10
    Art. I, § 4, cl. 1 ...............................................................................9
    Art. I, § 8, cl. 7 ...............................................................................2

39 U.S.C.
    § 101(a) ...........................................................................................5
    § 3406(a) ........................................................................................12
    § 3661(b) ..........................................................................................6
    § 3661(c) ..........................................................................................6

52 U.S.C.
    § 10502(a) ......................................................................................13
    § 10502(d) ......................................................................................13
    § 20302(a)(1) ..................................................................................12
    § 20501(b)(1) ..................................................................................13
    § 20505 ...........................................................................................13

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES
AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

Act of Feb. 20, 1792 (Postal Service Act),
    ch. 7, 1 Stat. 232 § 1 .................................................................4

Postal Reorganization Act of 1970,
    Pub. L. No. 91-375, 84 Stat. 719 ..............................................5

H. Rep. No. 9, 103d Cong. (1st Sess. 1993) ................................13

H. Rep. No. 765, 99th Cong. (2d Sess. 1986)..............................11

H. Rep. No. 1104, 91st Cong. (2d Sess. 1970) ..........................5, 6

Rules of the U.S. House of Representatives (116th Cong.),
    Rule II.8(b), https://perma.cc/M25F-496H..................................1

**Other Authorities**

Boyd A. Martin, *The Service Vote in the Elections of 1944*,
    39 Am. Pol. Sci. Rev. 720 (1945)........................................10, 11

Department of Justice Archives, The MOVE Act (Oct. 21, 2010),
    https://perma.cc/9NNU-VHNB ................................................12

Erin Cox et al., *Postal Service Warns 46 States Their Voters Could Be
    Disenfranchised by Delayed Mail-In Ballots*,
    Washington Post (Aug. 14, 2020), https://perma.cc/5WEL-692T ....................2

George Washington, Third Annual Message to Congress (Oct. 25,
    1791), https://perma.cc/4FV4-2E5E ........................................3

House Committee on Oversight and Reform, DeJoy Admits that Mail
    Delays Are Far Worse than Expected, But Fails to Take
    Responsibility (Aug. 24, 2020), https://perma.cc/XQ73-Q7SZ ........................6

House Committee on Oversight and Reform, Oversight Committee to
    Issue Subpoena to DeJoy (Aug. 31, 2020),
    https://perma.cc/M62Y-3XBA ................................................6

James Madison, *Notes on Debates, 6 December 1782*,
    Founders Online, National Archives,
    https://perma.cc/8P7H-BSWS .................................................3

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES
AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

iii

Juliette Love et al., *Where Americans Can Vote by Mail in the 2020 Elections*, New York Times (Aug. 14, 2020), https://perma.cc/T67Z-MS6M ...................................................................16

Louis DeJoy, Letter to Committee on Homeland Security and Governmental Affairs and Committee on Oversight and Reform, dated August 31, 2020, https://perma.cc/VDR9-6P43 .........................................7

Miles Parks, *Why Is Voting By Mail (Suddenly) Controversial?*, NPR (June 4, 2020), https://perma.cc/TT44-AYG7....................................14

National Association of Secretaries of States, Letter to Postmaster General DeJoy, dated August 7, 2020, https://perma.cc/5YH8-8BQQ ...........................................................................................16

National Conference of State Legislatures, *Receipt and Postmark Deadlines for Absentee Ballots* (Aug. 17, 2020), https://perma.cc/L9VV-EHVA ..................................................................9

Postal Times, *PMG Addresses Restructuring* (Aug. 13, 2020), https://perma.cc/LUC2-FUGN ....................................................1

Richard B. Kielbowicz, *Preserving Universal Postal Service As A Communication Safety Net: A Policy History and Proposal*, 30 Seton Hall Legis. J. 383 (2006) ...............................................4

*Remarks in the Capitol Rotunda at the Signing of the Voting Rights Act*, 2 Pub. Papers 841 (Aug. 6, 1965)...............................................13

Royce Crocker, *The National Voter Registration Act of 1993: History, Implementation, and Effects*, CRS Report For Congress R40609 (Sept. 18, 2013), https://perma.cc/GB77-XFF6 ...................................14

The Federalist No. 84 (Alexander Hamilton), https://perma.cc/6UHW-QG6A ....................................................3

U.S. Election Assistance Commission, *2016 Comprehensive Report* (June 2017), https://perma.cc/L3KZ-HS75 ...................................12

U.S. Election Assistance Commission, *2018 Comprehensive Report* (June 2019), https://perma.cc/G66L-W2K2 ..............................14, 15

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

iv

U.S. Election Assistance Commission, *Post Office and Election Office, Critical Partners in Democracy* (May 9, 2019), https://perma.cc/2MQJ-3XDD...............................................................15

United States Postal Service, *Congressional Briefing: Transportation & Service Performance Updates* (Aug. 31, 2020), https://perma.cc/2VD4-6AHX..............................................................7

USPS OIG, *20-225-R20, Audit Report: Processing Readiness of Election and Political Mail During the 2020 General Elections* (Aug. 31, 2020), https://perma.cc/Z2Q9-TYU6 ...............................7, 8

USPS OIG, *MS-AR-13-008, Audit Report: Political & Election Mail Sales, Audit Report* (June 19, 2013), https://perma.cc/D78Z-6YNL ................15

USPS OIG, *19XG010NO000-R20, Audit Report: Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections* (Nov. 4, 2019), https://perma.cc/FQR8-L5AE .....................15

USPS Postal Bulletin 22342, https://perma.cc/2WTH-3P5S ..................................15

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## INTRODUCTION AND STATEMENT OF INTEREST

*Amicus curiae*, the United States House of Representatives, has a special interest in this case, which challenges service rollbacks by the United States Postal Service in advance of the upcoming national election.[1]  Since June 2020, the Postal Service has abruptly eliminated or substantially altered multiple operational policies and practices essential to the timely delivery of mail.  The Postmaster General has described these changes as "transformative."  Postal Times, *PMG Addresses Restructuring* (Aug. 13, 2020).[2]  Key rollbacks include removing hundreds of collection boxes and high-speed sorting machines, cutting or curtailing overtime for postal workers, and prohibiting postal workers from making extra or late trips to complete deliveries.  These changes have created dramatic delays in mail delivery.

---

[1] The Bipartisan Legal Advisory Group (BLAG) of the U.S. House of Representatives, which "speaks for, and articulates the institutional position of, the House in all litigation matters," has authorized the filing of an amicus brief in this matter.  Rules of the U.S. House of Representatives (116th Cong.), Rule II.8(b), https://perma.cc/M25F-496H.  The BLAG comprises the Honorable Nancy Pelosi, Speaker of the House, the Honorable Steny H. Hoyer, Majority Leader, the Honorable James E. Clyburn, Majority Whip, the Honorable Kevin McCarthy, Republican Leader, and the Honorable Steve Scalise, Republican Whip. Representative McCarthy and Representative Scalise dissented.

[2] https://perma.cc/LUC2-FUGN.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES**
**AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

*See* Erin Cox et al., *Postal Service Warns 46 States Their Voters Could Be Disenfranchised by Delayed Mail-In Ballots*, Washington Post (Aug. 14, 2020).[3]

Congress established and oversees the Postal Service, and has enacted various statutes to, among other benefits, secure and protect the right to vote, which in today's world depends upon a properly functioning postal system. The House is well-suited to describe how the Postmaster General's recent changes run contrary to centuries-old principles underlying the Postal Service's operation, and how those changes undermine Congressional efforts to secure fair and accurate elections.

## ARGUMENT

**I.    CONGRESS ESTABLISHED AND REFORMED THE UNITED STATES POSTAL SERVICE TO ENSURE A CONNECTED, INFORMED NATION.**

**A.    Congress Created the United States Post Office, the Forerunner to the Modern-Day Postal Service, in Part to Provide Critical Infrastructure for Connecting and Informing the Electorate.**

Article I of the Constitution entrusts to Congress, as one of its enumerated powers, the authority "[t]o establish Post Offices and post Roads." U.S. Const., art. I, § 8, cl. 7 (the "Postal Power"). The Founders provided the Postal Power to Congress cognizant that, in the words of Alexander Hamilton, "citizens who inhabit

---

[3] https://perma.cc/5WEL-692T.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

2

the country at and near the seat of government will, in all questions that affect the general liberty and prosperity, have the same interest with those who are at a distance." The Federalist No. 84 (Alexander Hamilton).[4] This shared interest operates with particular force in the context of the upcoming election, which is expected to depend on the mail to an unprecedented extent to determine the outcomes of local and national contests.

As Hamilton stated, a well-functioning "expeditious" post office is essential to ensure that informed citizens can "sound the alarm when necessary" and "point out the actors in any pernicious project." *Id.* James Madison likewise recognized that a national postal service would be the "principal channel through which a general knowledge of public affairs[] was diffused." James Madison, *Notes on Debates, 6 December 1782*, Founders Online, National Archives.[5] And George Washington urged Congress to establish a postal service because, as he explained, it would be an "instrumentality in diffusing a knowledge of the laws and proceedings of the government [among citizens], which … serves also to guard them against the effects of misrepresentation and misconception." George Washington, Third Annual Message to Congress (Oct. 25, 1791).[6] Recent USPS actions endanger

---

[4] https://perma.cc/6UHW-QG6A.
[5] https://perma.cc/8P7H-BSWS.
[6] https://perma.cc/4FV4-2E5E.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES
AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

citizens' ability to participate in those "public affairs" and "proceedings of the Government" by threatening to impede their fundamental right to vote.

These developments contravene and undermine one of the very purposes for which Congress created the postal system. Congress exercised the Postal Power when it adopted the Postal Service Act of 1792, which created the United States Post Office Department. The Act outlined in extensive detail the "roads [to] be established as post roads," stretching from Maine to Georgia in a network of arteries and veins that would connect the nation. Act of Feb. 20, 1792 (Postal Service Act), ch. 7, 1 Stat. 232 § 1.

As the nation expanded, Congress continued to play a significant role with detailed legislation that shaped the corresponding growth of the postal service. *See, e.g.*, Richard B. Kielbowicz, *Preserving Universal Postal Service As A Communication Safety Net: A Policy History and Proposal*, 30 Seton Hall Legis. J. 383, 394 (2006) (noting that from 1792 "until the closing of the frontier in the late 1800s, Congress required the Post Office to inaugurate service on new routes that lawmakers delineated in excruciatingly detailed postal acts").

In modern times, through World Wars and great social and economic change, the Post Office has remained an "indispensable adjunct of … civilized society" facilitating the interpersonal "communication … imperative to a healthy social

order." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 736 (1970).  In the latter half of the twentieth century, to continue fulfilling this essential mission, the Post Office needed systemic modernization.  Accordingly, in 1970, Congress passed the Postal Reorganization Act ("PRA"), converting the Cabinet-agency Post Office into an independent agency within the Executive Branch—the present-day Postal Service—which was intended to "free[]" postal operations "from direct political pressures," H. Rep. No. 1104, 91st Cong. (2d Sess. 1970); *see* Pub. L. No. 91-375, 84 Stat. 719.

In effectuating this transformation, the PRA reaffirmed the Postal Service's "basic function" of "provid[ing] postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people." 39 U.S.C. § 101(a).  Far from condoning service *rollbacks* in the name of purported modernization, the PRA provided that the Postal Service would ensure "prompt, reliable, and efficient services to patrons in all areas … [and] all communities." *Id*. To accomplish these goals, the PRA placed substantive limits on the Postal Service's authority to implement unilateral transformative changes by requiring the Postal Service to request "an advisory opinion" from the Postal Regulatory Commission— also established by the PRA as an independent agency in the Executive Branch—on any changes "which will generally affect service on a nationwide or substantially

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES**
**AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

5

nationwide basis."  39 U.S.C. § 3661(b).  The Commission may not issue such an opinion until users of the mail have been afforded an opportunity to present their views at a hearing.  *Id.* § 3661(c).

### B.    The Postmaster General's Service Rollbacks Undermine the Postal Service's Operations and Contravene Congressional Intent.

As part of its constitutional prerogative and to inform potential legislation, Congress actively monitors and investigates the Postal Service.  This is essential for Congress to remain "fully informed on postal affairs so that it may discharge its responsibilities to see to it that the Postal Service is conducted consistently with" Congressional intent.  H. Rep. No. 1104, 91st Cong. (2d Sess. 1970) (noting that Congress must set the "policy guidelines for the operations of the Postal Service").

Pursuant to Congress's oversight authority, the House Committee on Oversight and Reform recently issued a subpoena for documents related to, and held a hearing about, Postmaster General Louis DeJoy's service rollbacks.[7]  The House's investigation has uncovered disturbing evidence that Mr. DeJoy's recent maneuvers are causing substantial systemic mail delivery delays.

---

[7] *See, e.g.*, House Committee on Oversight and Reform, DeJoy Admits that Mail Delays Are Far Worse than Expected, But Fails to Take Responsibility (Aug. 24, 2020), https://perma.cc/XQ73-Q7SZ; House Committee on Oversight and Reform, Oversight Committee to Issue Subpoena to DeJoy (Aug. 31, 2020), https://perma.cc/M62Y-3XBA.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES**
**AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

For example, on August 31, 2020, in response to inquiries from the House Committee on Oversight and Reform, the Postal Service released jarring statistics revealing that delivery metrics have, in the weeks since Mr. DeJoy's "transformative" changes, fallen substantially for First-Class and Marketing Mail—the classes that include election ballots and other election-related mail.  United States Postal Service, *Congressional Briefing: Transportation & Service Performance Updates* (Aug. 31, 2020) ("August 31 Congressional Briefing").[8]  For example, overall service performance for presorted First-Class Mail dropped nearly ten percent following Mr. DeJoy's changes—in just a matter of weeks—and even after his purported delay of further rollbacks, performance for presorted First-Class Mail remains over five percent lower than prior to his actions.  *Id.* at 9.

Also on August 31, 2020, the Postal Service's Office of Inspector General ("OIG") released an audit report demonstrating the challenges already faced by the Postal Service with respect to election-related mail even prior to Mr. DeJoy's rollbacks.  USPS OIG, *20-225-R20, Audit Report: Processing Readiness of Election and Political Mail During the 2020 General Elections* (Aug. 31, 2020) ("August

---

[8] https://perma.cc/2VD4-6AHX; *see* Louis DeJoy, Letter to Committee on Homeland Security and Governmental Affairs and Committee on Oversight and Reform, dated August 31, 2020, at 1 (First-Class and Marketing Mail includes ballots and election-related mail), https://perma.cc/VDR9-6P43.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES**
**AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

7

2020 OIG Report").[9]  Given these extant challenges, Mr. DeJoy's rollbacks are all the more dangerous.

The Postal Service's experience handling ballots for state and local elections and primaries earlier this year specifically demonstrates these preexisting challenges.  *See* August 2020 OIG Report at 3 (reporting that the amount of election and political mail delivered on time decreased nearly two percent compared to 2018).  Against this backdrop, Mr. DeJoy's rollbacks are particularly perilous, as the existing challenges with the distribution of election-related mail are likely only to multiply in November because the general and Presidential elections historically generate far larger turnout than these earlier contests.  This November, with the nation in the grips of a pandemic and many Americans fearful of gathering with strangers in indoor polling places, much of that increased turnout will depend on the success of the postal system.

As the August 2020 OIG Report recognizes, "[t]he Postal Service plays a vital role in the American democratic process and this role continues to grow as the volume of Election and Political Mail increases."  *Id.* at 1.  The August 2020 OIG Report revealed that, in the seven Postal Service facilities audited by OIG, approximately eight percent of "identifiable Election and Political Mail mailpieces

---

[9] https://perma.cc/Z2Q9-TYU6.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES
AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

[were] not delivered on time from April 2020 through June 2020," amounting to *1.6 million total untimely deliveries of election-related mail* in that three-month period. *Id.* at 3. The facilities' overall performance score decreased markedly from prior years, *id.*, a downward trend that has only worsened since Mr. DeJoy assumed his position. *See, e.g.*, August 31 Congressional Briefing. Such delays in delivery pose an unacceptable and unmitigated risk for the upcoming election, particularly because 29 states count only those ballots *received* by Election Day, regardless of when they are postmarked. *See, e.g.*, National Conference of State Legislatures, Receipt and Postmark Deadlines for Absentee Ballots (Aug. 17, 2020).[10] Given the rapidly approaching November election, now is the time to, in Hamilton's words, "sound the alarm."

## II. CONGRESS HAS LONG RECOGNIZED THAT FREE AND FAIR ELECTIONS DEPEND UPON RELIABLE MAIL SERVICE.

### A. Congress Has Repeatedly Legislated to Secure and Enhance the Fundamental Right to Vote Through the Use of the Mail.

The Elections Clause, U.S. Const., art. I, § 4, cl. 1, empowers Congress "to protect the integrity of federal elections." *United States v. Slone*, 411 F.3d 643, 649 (6th Cir. 2005) (citing *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 187 (2003)). The Constitution also grants Congress broad authority to enact legislation

---

[10] https://perma.cc/L9VV-EHVA.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

to ensure that all citizens enjoy the right to vote equally and free from discrimination. *See* U.S. Const. amends. XIV, XV, XIX, XXIV, XXVI.

Pursuant to these constitutional powers, Congress has enacted numerous laws that promote and protect the right to vote through use of the mail, including laws that provide absentee ballots to military and civilian service members stationed overseas; provisions of the Voting Rights Act ("VRA"); and the National Voter Registration Act of 1993 ("NVRA"). Through each of these Acts, Congress has increased access to absentee ballots and mail-in voter registration. As reflected by these enactments, Congress views a well-functioning Postal Service as essential to securing Americans' fundamental right to vote.

*Soldier Voting Acts.* Legislatures have long recognized the importance of preserving service members' right to vote: during the Civil War, some states coordinated commissions to "record votes [of soldiers] in the field or for absentee voting." Boyd A. Martin, *The Service Vote in the Elections of 1944*, 39 Am. Pol. Sci. Rev. 720, 720 (1945). Still, prior to World War II, service members stationed overseas who sought to vote were required to do so pursuant to the myriad requirements of state laws, which were not designed to facilitate overseas voting. *Id.* at 724. Some states prohibited absentee voting altogether, and others imposed onerous requirements, such as requiring that ballots be mailed within the boundaries

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES
AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

10

of the state.  *Id.*  Such state laws had, for example, disenfranchised millions of Americans serving in World War I.  *Id.*

Two decades later, with 5.5 million Americans mobilized for World War II, the public demanded that Congress take action for "service personnel to be given the privilege of voting."  *Id.* at 724.  Congress thus adopted the 1942 Soldier Voting Act "to overcome the[] difficulties, differences, and the inevitable inequities arising" from varying state laws and other obstacles.  *Id.* at 724–25.  Two years later, Congress amended the 1942 Soldier Voting Act to expand the franchise further; that year, "approximately 4,400,000 federal and state absentee ballots were cast by service personnel."  *Id.* at 730, 732.  The difficulties, differences, and inequities caused by Mr. DeJoy's service cutbacks contradict longstanding Congressional intent to rely on the mail to protect voters' rights.

Congress repeatedly demonstrated, and acted upon, that intent in the decades that followed.  For example, Congress responded when new problems arose for military and overseas voters attempting to vote in the 1984 election.  Thousands had been disenfranchised "simply because their ballots arrived either too late or not at all."  H. Rep. No. 765, 99th Cong. at 10–13 (2d Sess. 1986).  Shortly thereafter, in 1986, Congress responded by passing the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA").  Through that enactment, Congress guaranteed

that active duty service members, their dependents, and other United States citizens residing overseas have the right "to vote by absentee ballot in general, special, primary, and runoff elections for Federal office."    52 U.S.C. § 20302(a)(1). Congress further strengthened UOCAVA's guarantees in 2009 by passing the Military and Overseas Voter Empowerment Act, which "expanded [UOCAVA] significantly … to provide greater protections for servicemembers, their families and other overseas citizens."    Department of Justice Archives, The MOVE Act (Oct. 21, 2010).[11]

UOCAVA requires states to use the Postal Service to transmit validly requested ballots to eligible voters at least 45 days before a federal election, and mandates that balloting materials be "carried expeditiously and free of postage."    39 U.S.C. § 3406(a).    In the last Presidential election, voters returned over 630,000 ballots pursuant to this statute.    U.S. Election Assistance Commission (EAC), *2016 Comprehensive Report*, at 12 (June 2017) ("2016 EAC Report").[12]

*Voting Rights Act*.    Congress passed the VRA—hailed by President Lyndon Johnson as "one of the most monumental laws in the entire history of America"—to enshrine every citizen's right to an equal opportunity to participate in our

---

[11] https://perma.cc/9NNU-VHNB.

[12] https://perma.cc/L3KZ-HS75.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES**
**AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

democracy. *Remarks in the Capitol Rotunda at the Signing of the Voting Rights Act*, 2 Pub. Papers 841 (Aug. 6, 1965).  Recognizing that "the lack of sufficient opportunities" for absentee registration and balloting abridged "the inherent constitutional right" to vote, Congress amended the VRA in 1970 to ensure that all qualified voters, regardless of where they might be on election day, have the opportunity to vote in Presidential elections.  52 U.S.C. § 10502(a) (Congressional findings).  The 1970 VRA amendments ordered states to provide absentee ballots in Presidential elections to all qualified residents who expect to be absent from their districts on Election Day and who apply for a ballot at least seven days before the election.  52 U.S.C. § 10502(d).  In the last Presidential election, twenty-three percent of all ballots cast were through the mail. 2016 EAC Report at 10.

*National Voter Registration Act.*  In 1993, Congress passed the NVRA to "increase the number of eligible citizens who register to vote in elections for Federal office." 52 U.S.C. § 20501(b)(1). The NVRA reflects Congress's view that the mail is a "key element" essential to increasing voter registration.  H. Rep. No. 9, 103d Cong. at 3 (1st Sess. 1993).  The Act requires states to provide for registration by mail and to set a voter registration cutoff for federal elections of no more than 30 days before the election.  52 U.S.C. § 20505.  By 2013, twenty years after the NVRA's enactment, voter registration had increased nationally by seven percent.

Royce Crocker, *The National Voter Registration Act of 1993: History, Implementation, and Effects*, CRS Report For Congress R40609 (Sept. 18, 2013).[13] Mail-in registration continues to play a vital role. EAC, *2018 Comprehensive Report,* at 35 (June 2019) ("2018 EAC Report") (noting by-mail applications account for eleven percent of registration applications).[14]

The Postal Service rollbacks challenged in this litigation cause delays—and thus exacerbate the likelihood of potential disenfranchisement—at every stage in the process, from application, to registration, to the citizen's ultimate vote. Such measures impede Congress's goal of securing each citizen's right to vote as reflected in the legislation described above.

**B.    A Reliable Postal Service Is Essential to a Free and Fair Electoral Process.**

Registering to vote and voting by mail—including as contemplated by these various Congressional enactments—depend on a properly functioning and apolitical Postal Service. All 50 states and the District of Columbia have some form of vote-by-mail procedure. Miles Parks, *Why Is Voting By Mail (Suddenly) Controversial?*, NPR (June 4, 2020).[15] Over the past 20 years, Americans nationwide have cast more than 250 million ballots by mail. *Id.* In the last federal election, more than 31 million

---

[13] https://perma.cc/GB77-XFF6.
[14] https://perma.cc/G66L-W2K2.
[15] https://perma.cc/TT44-AYG7.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES
AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

14

Americans voted by mail, over a quarter of all voters.  2018 EAC Report at 12. Because these ballots are delivered by the Postal Service, the agency is charged with a critical role in the electoral process—ensuring that "every eligible voter is able to cast their ballot."  EAC, *Post Office and Election Office, Critical Partners in Democracy* (May 9, 2019).[16]

In recognition of its "vital role in the American democratic process," the Postal Service has long embraced policies and procedures to facilitate the prompt and reliable delivery of election mail.  USPS OIG, *MS-AR-13-008, Audit Report Political & Election Mail Sales* (June 19, 2013).[17]  For example, in the 2018 Midterm and Special Elections, the Postal Service committed to treating all election mail as First-Class mail or better, developed an official election mail logo to help distinguish it from other types of mail, and trained employees on the proper handling of election mail.  USPS OIG, *19XG010NO000-R20, Audit Report: Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections*, at 7 (Nov. 4, 2019);[18] USPS Postal Bulletin 22342.[19]

---

[16] https://perma.cc/2MQJ-3XDD.
[17] https://perma.cc/D78Z-6YNL.
[18] https://perma.cc/FQR8-L5AE.
[19] https://perma.cc/2WTH-3P5S.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES**
**AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**C.      The Postal Service's Recent Changes Threaten Participation in, and the Integrity of, the Upcoming Election.**

Due to the COVID-19 pandemic, the Postal Service will play an even greater role in the election process.  So far, 27 states and the District of Columbia have expanded voter access to mail ballots.  Juliette Love et al., *Where Americans Can Vote by Mail in the 2020 Elections*, New York Times (Aug. 14, 2020).[20]  All told, an unprecedented seventy-five percent of Americans are now eligible to vote by mail.  *Id.*  Those jurisdictions—and the voters within those jurisdictions—rely on the Postal Service as a "partner in administering" successful elections.  National Association of Secretaries of States, Letter to Postmaster General DeJoy, dated August 7, 2020.[21]  To the extent the Postal Service cannot fully serve as that partner because of Mr. DeJoy's destructive and transformative operational changes, the integrity of the November election is imperiled.

"Free and honest elections are the very foundation of our republican form of government."  *MacDougall v. Green*, 335 U.S. 281, 288 (1948) (Douglas, J., dissenting).  Today, as during the Civil War and World War II, America faces a sudden surge of citizens who will rely on absentee ballots.  Congress has already provided for mechanisms to protect the right to vote in such extreme circumstances,

---

[20] https://perma.cc/T67Z-MS6M.
[21] https://perma.cc/5YH8-8BQQ.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES
AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

16

including by establishing and maintaining the Postal Service, adopting laws that endorse and facilitate voting by mail, and overseeing the Postal Service's operations. Mr. DeJoy's changes undermine these enactments and threaten the integrity of the upcoming election.  They should be enjoined.

## <u>CONCLUSION</u>

For the reasons stated above, the House submits this brief in support of the Plaintiffs.

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES**
**AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Respectfully Submitted,

*/s/ Douglas N. Letter*

KATHLEEN HARTNETT
COOLEY LLP
101 California Street
San Francisco, CA 94111
(415) 693-2000
khartnett@cooley.com

ELIZABETH B. PRELOGAR
ELIAS S. KIM
COOLEY LLP
1299 Pennsylvania Ave. NW
Washington, DC 20004
(202) 842-7800
eprelogar@cooley.com

ADAM S. GERSHENSON
LIZ A. TRAFTON
ZACHARY SISKO
COOLEY LLP
500 Boylston St
Boston, MA 02116
(617) 937-2300
agershenson@cooley.com

BARRETT J. ANDERSON
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
(858) 550-6000
banderson@cooley.com

DOUGLAS N. LETTER
    *General Counsel*
TODD B. TATELMAN
    *Principal Deputy General Counsel*
ADAM A. GROGG
ERIC R. COLUMBUS
JONATHAN B. SCHWARTZ
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700
Douglas.Letter@mail.house.gov

Attorneys for *Amicus Curiae*[*]

---

[*] Attorneys for the Office of General Counsel for the U.S. House of Representatives and "any counsel specially retained by the Office of General Counsel" are "entitled, for the purpose of performing the counsel's functions, to

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES**
**AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

18

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on September 11, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to the parties in the case, all of whom are registered users of the CM/ECF system.

3

4

5                                      */s/ Douglas N. Letter*

6                                      DOUGLAS N. LETTER

7                                      OFFICE OF GENERAL COUNSEL

U.S. HOUSE OF REPRESENTATIVES

8                                      219 CANNON HOUSE OFFICE BUILDING

WASHINGTON, D.C. 20515

9                                      (202) 225-9700

10                                     Douglas.Letter@mail.house.gov

11                                     *Counsel for Amicus Curiae*

12   September 11, 2020

13

14

15

16

17

18

19

20

21

22

23

24   _____

25   enter an appearance in any proceeding before any court of the United States or of any State or political subdivision thereof without compliance with any requirements for admission to practice before such court."  2 U.S.C. § 5571.

26

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES**
**AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS**

19