1  ROBERT W. FERGUSON
   *Attorney General*
2  NOAH GUZZO PURCELL, WSBA #43492
   *Solicitor General*
3  NATHAN K. BAYS, WSBA #43025
4  KRISTIN BENESKI, WSBA #45478
   ANDREW R.W. HUGHES, WSBA #49515
5  CRISTINA SEPE, WSBA #53609
   *Assistant Attorneys General*
6  EMMA GRUNBERG, WSBA #54659
7  TERA M. HEINTZ, WSBA #54921
     (*application for admission forthcoming*)
8  KARL D. SMITH, WSBA #41988
   *Deputy Solicitors General*
9  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104
10 (206) 464-7744

11

12

13                    **UNITED STATES DISTRICT COURT**
                    **EASTERN DISTRICT OF WASHINGTON**
14                            **AT YAKIMA**

15  STATE OF WASHINGTON, et al.,          NO. 1:20-cv-03127-SAB

16                    Plaintiffs,          PLAINTIFFS' REPLY IN
                                          SUPPORT OF MOTION FOR
17         v.                             PRELIMINARY INJUNCTION

18  DONALD J. TRUMP, et al.,              NOTED FOR: September 17,
                                          2020 at 10:00 a.m.
19                    Defendants.          *With Oral Argument*

20

21

22

23

24

25

26

1

## TABLE OF CONTENTS

2

3   I.    INTRODUCTION ................................................................... 1

4   II.   ARGUMENT .......................................................................... 2

5       A.   The States Are Likely To Succeed on the Merits .................................... 2

6           1.   The States have standing .................................................. 2

7           2.   The States are likely to succeed on their claims under Section

8                3661(b) ...................................................................... 4

9                a.   This Court has jurisdiction to review Defendants' *ultra
                     vires* changes to the nature of postal services ........................... 9

10               b.   If *ultra vires* review were unavailable, then mandamus

11                    would be appropriate ...................................................... 14

12          3.   The changes unconstitutionally interfere with State authority ....... 16

13      B.   Irreparable Harm Will Occur Without an Injunction .......................... 22

14      C.   The Balance of Equities and Public Interest Favor an Injunction ........ 27

15      D.   Plaintiffs Seek an Appropriate Prohibitory Injunction ........................ 28

16          1.   A nationwide injunction is necessary for complete relief .............. 28

17          2.   Plaintiffs seek a prohibitory injunction ......................................... 29

18  III.   CONCLUSION .......................................................................... 30

19

20

21

22

23

24

25

26

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

# I.    INTRODUCTION

Defendants' own words and data refute their primary argument against preliminary relief. While they now claim that they have made no meaningful changes in postal services, Postmaster General DeJoy himself has described the changes he ordered in July as a "transformative initiative . . . that impacted our overall service levels" (Ex. E), and Postal Service officials announced "immediate, lasting, and impactful changes in our operations" (Ex. A). Defendants' words are confirmed by the facts on the ground, which show nationwide changes in the Postal Service's practices that have resulted in mail being left behind, significant delivery slowdowns, and Election Mail arriving so late that voters could not cast ballots.

Under the plain language of 39 U.S.C. § 3661 and cases interpreting that statute, the changes in postal services that Defendants implemented should have first been reviewed by the Postal Regulatory Commission. Defendants ignored that mandatory step, and the changes they implemented interfere with State election authority and the right to vote. Because the changes are illegal and are causing irreparable harm to the Plaintiff States, they should be enjoined.

To avoid this outcome, Defendants raise a host of unpersuasive procedural defenses. They first claim that the States lack standing, despite the clear proprietary harms the States are suffering as time-sensitive mail they send and receive— including Election Mail—is substantially delayed. They next claim that no one, including the States, can challenge these changes in district court, even if that will mean that it is impossible for the changes to be reviewed before the November election. But their argument is contrary to plain statutory language and history, and even if they were right, ultra vires or mandamus relief would still be appropriate.

In short, Defendants broke the law and harmed the States, and this Court can review their acts. The States respectfully ask the Court to enter preliminary relief.

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

## II.    ARGUMENT

### A.    The States Are Likely To Succeed on the Merits

#### 1.    The States have standing

Defendants have failed to counter any of the multiple independent grounds the States have to challenge Defendants' changes in postal services.

First, the States have standing based on Defendants' failure to comply with Section 3661 and provide them with an opportunity to comment regarding changes to the nature of postal services. *See Buchanan v. U.S. Postal Serv.*, 375 F. Supp. 1014, 1019 (N.D. Ala. 1974), *aff'd in part, vacated in part on other grounds by Buchanan v. U.S. Postal Serv.*, 508 F.2d 259, 266-67 (5th Cir. 1975) (holding the denial of an "opportunity for a hearing on [a] proposed change" to the nature of postal services under § 3661 is "alone a sufficient injury in fact to support the requisite standing to sue"). Defendants' reliance on *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009), is misplaced. Defendants cite *Summers* for the proposition that the States "cannot invoke this Court's jurisdiction based on a procedural injury without a corresponding harm to their substantive interests." Opp'n at 24–25. As the *Summers* Court noted, however, the plaintiffs in that case *did* have standing to contest a policy that would have harmed their members' interests if it "went forward without incorporation of the ideas [they] would have suggested [if given] an opportunity to comment." 555 U.S. at 494 ("The Government concedes this was sufficient to establish Article III standing.").

Here, the States have sufficiently demonstrated that Defendants' recent changes—made in contravention of Section 3661 and without any opportunity for comment—have caused concrete harms to their sovereign, proprietary, and *parens patriae* interests. *See, e.g.*, Peterson Decl. ¶¶ 6, 13 (USPS delays have undermined the State's administration of its FMLA program and have resulted in the State

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

2

1    "paying for unemployment benefits that would have been contested because USPS

2    delivered those letters past the responsive deadline"); Huff Decl. ¶¶ 5–6 (USPS

3    delays have compromised the State's testing of drinking water samples and

4    resulted in additional costs to the State); Cully Decl. ¶¶ 6–11 (USPS delays impede

5    the State's ability to administer SNAP, TANF, and various state-funded benefits

6    programs); *see also* Mot. at 17–19 (describing harms from delayed delivery of

7    prescriptions). Here, the procedural harms to the States are more than sufficient to

8    establish standing, but even if they were not, the States would independently have

9    standing to vindicate their interests. *See, e.g.*, *Washington v. Trump*, 847 F.3d

10    1151, 1161 (9th Cir. 2017) (States had standing based on proprietary interests).

11    Next, Defendants claim the States lack standing because they cannot show

12    these injuries are specifically attributable to DeJoy's changes "as opposed to other

13    causes, such as, for example, staffing limitations caused by COVID-19." Opp'n at

14    26. Defendants' argument, however, ignores DeJoy's candid admission that his

15    "transformative" changes led to "unintended consequences," including significant

16    and lasting delays in the delivery of mail.[1] DeJoy's admission is supported by

17    objective evidence, including data showing dramatic slowdowns coinciding with

18    these changes at the beginning of his tenure. *See* Mot. at 9–10. And USPS itself

19    has asserted that it has "so far experienced only minor operational impacts in the

20    United States as a result of the COVID-19 pandemic."[2]

21    Finally, Defendants incorrectly argue that the States' allegations about

22    harms to their sovereign interests in conducting elections are "entirely

23    _____

24    [1] *Path Forward* (Ex. E).

25    [2] *Service Alerts*, USPS.com, https://about.usps.com/newsroom/service-

26    alerts/ (last visited Sept. 15, 2020) (Ex. DD).

PLAINTIFFS' REPLY ISO                    3          ATTORNEY GENERAL OF WASHINGTON
MOTION FOR PRELIMINARY                                      Complex Litigation Division
INJUNCTION                                                  800 Fifth Avenue, Suite 2000
                                                              Seattle, WA  98104
NO. 1:20-CV-03127-SAB                                            (206) 464-7744

speculative." Opp'n at 26. But the States have introduced extensive evidence of concrete harms that are occurring right now, as well as compelling evidence that Defendants' changes threaten to further undermine the States' processes and disenfranchise voters in the November election. *See, e.g.*, Benson Decl. ¶ 15 (explaining that August primary ballots "took several weeks to reach voters"); Arndt Decl. ¶ 6 (voter still had not received ballot more than a month after it was mailed and thus missed voting in primary); Merrill Decl. ¶ 18 (describing "numerous complaints" from voters who "timely requested mail-in ballots for [the] August primary, but whose ballots did not arrive through USPS until Election Day had passed"); R. Thomas Decl. ¶ 5 (absentee voter "very disheartened to learn that my ballot for [the August] primary was rejected because it was incorrectly postmarked" even after timely mailing). The States continue to learn of additional harms resulting from Defendants' changes. *See* Supp. Benson Decl. ¶ 16 (Michigan election officials "had to reject at least 8,700 ballots that arrived after election day," with at least 3,000 of those ballots arriving within just three days of the election— well within the estimated range of USPS delays). The States have standing to pursue their claims.

**2.    The States are likely to succeed on their claims under Section 3661(b)**

Defendants' implementation of the "Leave Mail Behind" Policy and their decision to discontinue treating all Election Mail according to First Class standards meet each of the three prongs under Section 3661(b): they are (1) changes (2) affecting mail service (3) on a substantially nationwide basis. Indeed, they have led to mail delays nationwide and threaten to undermine the integrity of November's election. But Defendants ignored Section 3661(b)'s requirement that

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

they present these changes to the Postal Regulatory Commission (PRC) before implementing them. Defendants' justification for this decision falls flat.

First, notwithstanding clear evidence that Defendants' adoption of the "Leave Mail Behind" Policy led to immediate, widespread delays in mail service, Mot. at 28–29, Defendants claim there was no change. Instead, they categorize it as "a renewed focus on ensuring the Postal Service complies with its *existing policies*." Opp'n at 39–40. But the Court is "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (quotation omitted). This "'*post hoc* rationalizatio[n]'" is "nothing more than a 'convenient litigating position'" which is not entitled to any deference. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997) and *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 213 (1988) (alteration in *Auer*)). Defendants' claim that there has been no change is flatly contrary to their many prior admissions. *See* Mot. at 27–28. Indeed, when he was under oath in front a U.S. House committee, DeJoy touted "[t]he change [he] made … to run the transportation on time and mitigate extra trips," which "was a plan that was rolled out with operations."[3] Whether the

---

[3] House Testimony, https://bit.ly/2EsSDPW (video at 3:49:59); *see also id.* at 40:52 (referring to his "change[]" of "creating our new on time transportation network"); *id.* at 5:18:12 ("operational changes that go on throughout the whole organization around the country"); *id.* at 5:31:20 ("changes with regard to the … truck schedule"); Senate Testimony, https://bit.ly/2QoXAM9 (video at 27:27) ("the change that [he] made [to] run to our schedule, run to our transportation schedule"); *id.* at 30:23 ("[t]he transportation change"); *id.* at 1:23:11 ("The only change that I made ma'am was that the trucks leave on time.").

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

changes were embodied in a "new policy," Opp'n at 39, is irrelevant: Section 3661(b) requires an advisory opinion whenever there is "a *change* in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis," not merely whenever USPS rolls out a new written policy.

In support of their position, Defendants cite the declaration of Robert Cintron, who claims that "I did not direct any field managers never to use extra trips, to let trucks leave on time even if it meant that mail scheduled to be delivered that day was left behind, or to prevent all late and extra trips under any circumstances." Cintron Decl. ¶ 25 (quoted in Opp'n at 39). This claim is dubious, but ultimately irrelevant. Dubious because he wrote an email to all USPS area vice presidents in which he explicitly directed that "[t]rips must depart on time," and emphasized that "[o]ur focus is to eliminate unplanned extra transportation."[4] (Although Mr. Cintron purports to describe this email in his declaration, Cintron Decl. ¶ 25, he does not attach it.) But ultimately irrelevant because whether or not Mr. Cintron specifically said "trucks must leave on time even if mail gets left behind," that message was indisputably communicated throughout USPS and became its marching orders. *See, e.g.*, Fajardo Decl. ¶ 9 (late trips and extra trips prohibited in New Mexico); Yao Decl. ¶¶ 5–8 (Washington State); Cogan Decl. ¶¶ 12–13 (Oregon); Puhalski Decl. ¶¶ 9–10 (Michigan); Anthonasin Decl. ¶¶ 14–21 (Wisconsin); Hartwig Decl. ¶¶ 3–6 (Minnesota); Whitney Decl. ¶¶ 10–11 (Minnesota); *Mandatory Stand-Up Talk* (Ex. A); *PMGs Expectations and Plan* (July 2020) (Ex. B); *see also* Supp. Cintron Decl. ¶ 3 (admitting that the "Mandatory Stand-Up Talk" document reflects statements made at a "teleconference conducted with AVPs and members of Headquarters"). The Postal

---

[4] Email from Robert Cintron (July 14, 2020) (USPS00000216) (Ex. EE).

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Service continues to enforce this; the following banner hung in an Oregon plant as of early September: [5]



Defendants further urge that if their "Leave Mail Behind" Policy were regarded as a change in the nature of mail services merely because "there was a delay in the mail" then "*any* managerial change can be said to have the effect of changing the Postal Service's operations (i.e., changing how the mail is delivered)." Opp'n at 40 (emphasis in original). But as the States' opening brief explained, this policy has led to ongoing significant delays in the delivery of millions of pieces of mail. Mot. at 9–10, 29. USPS itself has previously considered such substantial changes to require review under Section 3661(b), Mot. at 29–30, and rightly so: when USPS contemplates a change that will materially affect mail service on a nationwide basis, Section 3661(b) requires that the PRC and the public be given an opportunity to weigh in, even where the change is arguably "managerial." *See* Mot. at 30–31; *cf. United Parcel Serv., Inc. v. U.S. Postal Serv.*, 604 F.2d 1370, 1380 (3d Cir. 1979) ("We do not here hold that all 'test plans' must be submitted to the Rate Commission . . . . We do hold, however, that any proposal

---

[5] Geoff R. Bennett (@GeoffRBennett), Twitter (Sept. 6, 2020, 3:15pm), https://twitter.com/geoffrbennett/status/1302732181949816832/.

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    which would effect a change in mail classification or a rate, including a test or

2    experiment embodying those features, must be submitted to the Rate Commission,

3    no matter how experimental, temporary, or limited in scope the change.").

4        Second, with respect to their decision to no longer treat Election Mail

5    according to First Class standards, Defendants first argue that there has been no

6    change because USPS never had a formal policy of treating Election Mail as First

7    Class mail. Opp'n at 40–41. But the evidence shows this is USPS's longstanding

8    *practice*. *See* Goldway Decl. ¶¶ 7, 9; Benson Decl. ¶¶ 9–10; Griswold Decl. ¶ 13;

9    Merrill Decl. ¶ 20; Yao Decl. ¶ 9; 2018 OIG Report (Ex. I) at 7 (comparing

10   Election Mail against the First Class Mail goal because "per our discussions with

11   management at seven facilities and in one Postal Servi[c]e area, they stated that

12   they treat Election Mail . . . as First-Class Mail"); 2020 OIG Report (Ex. X) at 12

13   ("The Postal Service often prioritizes Election and Political Mail mailed as

14   Marketing Mail and treats it as First-Class Mail."). Indeed, Defendants admit that

15   "the Postal Service has several longstanding practices to prioritize the expeditious

16   processing and delivery of election mail, particularly ballots."[6] Again, Section

17   3661(b) does not merely apply to formal policy changes; it applies to any changes

18   impacting mail service on a nationwide basis. Changes to longstanding (and

19   critically important) Postal Service practices regarding Election Mail certainly

20   meet that threshold.

21       And there has been a change. In recent letters to State election officials and

22   messages to the public, USPS has indicated that ballots sent as Marketing Mail

23   "will" be sent slower than ballots sent as First Class Mail. Mot. at 13–14. And

24   DeJoy has still not submitted a written statement to Congress clarifying the Postal

25   ───────────────

26       [6] Discovery Responses (Ex. J) at 13; *see also* Glass Decl. ¶ 21.

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Service's plans for treatment of Election Mail. As Defendants point out, their interrogatory responses pledge to devote "excess" First Class capacity to election mail and to prioritize "placing election mail, including ballots, on the truck,"[7] but this ignores that USPS has dramatically reduced excess capacity by decommissioning sorting machines in the run-up to the November election and directed trucks to leave on time even if they are fully or partially empty. Thus, even if Defendants have the capacity to treat all Election Mail as First Class Mail, they have refused to commit to doing so.[8]

### a.    This Court has jurisdiction to review Defendants' *ultra vires* changes to the nature of postal services

Defendants argue that this Court lacks jurisdiction to review their violation of Section 3661(b) because any claims relating to Section 3661(b) must be brought only in the PRC. But Defendants argue themselves into a lose-lose proposition. If they are wrong, they are wrong. But even if they are right, this only *strengthens* the argument for *ultra vires* review because channeling this claim to the PRC would be "the practical equivalent of a total denial of judicial review." *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 497 (1991). Either way, this Court can properly review Defendants' *ultra vires* actions.

---

[7] Discovery Responses (Ex. J) at 14.

[8] Defendants assert that "Plaintiffs challenge '[t]he removal of hundreds of mail processing and sorting machines.'" Opp'n at 39 (quoting Mot. at 15). But as Plaintiffs' motion and proposed order demonstrate, they are not at this time seeking to enjoin such removals as general violations of Section 3661(b). Plaintiffs have thus far argued only that this change should be enjoined to the extent it alters USPS's longstanding treatment of Election Mail. *See* ECF No. 54-3 (Prop. Order).

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

First, Defendants' argument is wrong. Even if Section 3662's permissive language is mandatory as to some types of claims, claims channeled to the PRC via Section 3662 are fundamentally different than claims arising under Section 3661(b). Section 3662 encompasses claims that USPS has failed to adhere to its rate and service standards or that those standards are inadequate. For example, *Powell v. USPS* concerned allegations that a single post office failed to provide mail service to a single individual. No. CV 15-12913, 2016 WL 409672, at *1 (D. Mass. Feb. 2, 2016). In *LeMay v. USPS*, the plaintiff alleged that USPS failed to fulfill a "common law contract" for "preferred handling and expedited treatment of Priority Mail." 450 F.3d 797, 798 (8th Cir. 2006). *See also, e.g.*, *Rodriguez v. Hemit*, C16-778, 2018 WL 3618260, at *1 (W.D. Wash. July 30, 2018) (alleging that letter carrier put trash in plaintiff's mailbox); *Pep-Wku, LLC v. U.S. Postal Serv.*, 20-CV-00009, 2020 WL 2090514, at *1 (W.D. Ky. Apr. 30, 2020) (alleging that letter carrier stopped sorting mail into individual mail boxes in an apartment building). In each of these cases, courts have emphasized that they lack jurisdiction over claims relating to the *quality* of plaintiff's mail service. *See Pep-Wku*, 2020 WL 2090514, at *2–3 (collecting quotations).

By contrast, Section 3661(b) concerns USPS's implementation of nationwide policy changes without oversight by the PRC or public. Unlike the cases cited by Defendants, the States' claims here are not properly service-related claims, but instead allege that Defendants adopted policies without the proper procedure, thereby denying them (and the PRC) an opportunity for notice and comment. This is precisely the distinction the *Buchanan* Court recognized in concluding that Sections 3661 and 3662 are "complement[ary]" and "together they form a harmonious scheme." *Buchanan*, 508 F.2d 259, 264 (5th Cir. 1975). Importantly, in adopting the current version of Section 3662, Congress showed no

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

intention to upset this harmonious scheme. Defendants try to elide this problem by arguing that the statutory language of Section 3662 encompasses claims under Section 3661(b), Opp'n at 34, but this doesn't cut it. It is not enough for Defendants to show that claims concerning Section 3661(b) *could* be brought in the PRC; they have to show that Congress intended such claims to be brought *exclusively* in the PRC. They have not even tried to meet this burden.

Defendants try to ground their contra-textual argument in policy, touting the importance of deference to agency expertise, Opp'n at 29, but this argument in fact cuts sharply against them here. As Defendants note, courts should generally defer "when Congress creates procedures 'designed to permit agency expertise to be brought to bear on particular problems.'" *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 589 (2010) (quoting *Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420 (1965)) (quoted in Opp'n at 29). But here, USPS ignored the very process through which Congress has required it to seek out the expertise of the PRC *before* it implements changes in postal services.[9] The States brought this suit specifically to compel Defendants to submit their policy changes to the PRC, as Congress requires. Defendants cannot invoke agency deference to frustrate agency oversight of their actions.

But even if Defendants were correct that Section 3662 operated as the States' exclusive avenue for relief, this would only strengthen the case for *ultra vires* review. According to Defendants, the States' *ultra vires* claim requires them to show "that barring review by the district court 'would wholly deprive [the States]

---

[9] *See* Testimony of S. David Fineman before the House Committee on Oversight and Reform (Sept. 11, 2020), https://bit.ly/32Amdfr (Congress intended to require PRC review of operational changes that affect postal service) (Ex. FF).

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   of a meaningful and adequate means of vindicating [their] statutory rights." Opp'n

2   at 36 (quoting *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses*

3   *Panel*, 437 F.3d 1256, 1264 (D.C. Cir. 2006) (quoting *Bd. of Governors, Fed. Rsrv.*

4   *Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)). If the States were required to file

5   their claim in the PRC, this is exactly what would happen. As Defendants

6   effectively concede, Opp'n at 30–31 n.12, there is no way the PRC could provide

7   the States any meaningful relief prior to the election, much less immediate relief

8   from the harms they are suffering from delays in delivery of critical, time-sensitive

9   mail. Mot. at 38–39. Consequently, because requiring Plaintiffs to file in the PRC

10  "is the practical equivalent of a total denial of judicial review," this Court is not

11  barred from reviewing the States' claims. *See McNary*, 498 U.S. at 497.

12      Defendants try to sidestep this conclusion by pointing to two Supreme Court

13  cases that they claim demonstrate that a lack of "pre-implementation" or

14  "immediate" review does not necessarily render administrative review inadequate.

15  Opp'n at 37 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) and

16  *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1 (2000)). But

17  Defendants ignore far more apt precedent, in which the Supreme Court has held

18  that where requiring plaintiffs to file administrative claims would effectively deny

19  them relief, the administrative review provisions are not construed as jurisdictional

20  bars. *McNary*, 498 U.S. at 483–84 (holding that "the District Court had jurisdiction

21  to hear respondents'" claims because if the Court were "to hold otherwise and

22  instead require respondents to avail themselves of the limited judicial review

23  procedures set forth in § 210(e) of the INA, meaningful judicial review of their

24  statutory and constitutional claims would be foreclosed"); *Ross v. Blake*, 136 S.

25  Ct. 1850, 1855, 1859 (2016) (holding mandatory administrative exhaustion statute

26  required litigants to exhaust only truly *available* remedies, i.e., "procedures that

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    are 'capable of use' to obtain 'some relief for the action complained of'") (citations

2    omitted); *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992) (holding that a

3    plaintiff need not exhaust administrative remedies, "[e]ven where the

4    administrative decisionmaking schedule is otherwise reasonable and definite," if

5    "a particular plaintiff may suffer irreparable harm if unable to secure immediate

6    judicial consideration of his claim").

7         By contrast, the case law on which Defendants rely is distinguishable. In

8    *Thunder Basin*, a mining company sought "pre-enforcement" judicial review of an

9    administrative order requiring the company to post information about union

10   representatives authorized to conduct site inspections on its property. The Supreme

11   Court held that the "structure" of the federal Mine Act precluded pre-enforcement

12   judicial review and vested exclusive jurisdiction in the Mine Safety and Health

13   Review Commission. 510 U.S. at 208. The Court acknowledged that judicial

14   review remains available where the "practical effect" of requiring administrative

15   exhaustion would be to "foreclose all access to the courts," but held that that was

16   not the case under the facts presented. *Id.* at 218 (citing *Ex parte Young*, 209 U.S.

17   123, 148 (1908)). Rather, the company's fear that a non-employee union

18   representative could "abuse his privileges" during a site visit was "speculative,"

19   and if the company refused to comply with the order pending administrative

20   review, at most it would merely incur civil penalties. *Id.* at 217–18.

21        Similarly, in *Shalala*, the Supreme Court held that while judicial review is

22   available where administrative exhaustion would amount to the "practical

23   equivalent of a total denial of judicial review," 529 U.S. at 20 (quoting *McNary*,

24   498 U.S. at 479), plaintiffs in that case were incorrect that the relevant statute

25   provided no administrative channel for their claims; rather, the agency's

26   regulations validly interpreted the statute to allow administrative review of

PLAINTIFFS' REPLY ISO                    13        ATTORNEY GENERAL OF WASHINGTON
MOTION FOR PRELIMINARY                                     Complex Litigation Division
INJUNCTION                                                 800 Fifth Avenue, Suite 2000
NO. 1:20-CV-03127-SAB                                         Seattle, WA  98104
                                                                (206) 464-7744

plaintiffs' claims. *Id.* at 20–21. In terms of actual harm, plaintiffs had shown nothing other than "potentially isolated instances of the inconveniences sometimes associated with the postponement of judicial review." *Id.* at 23. *See also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 757 (D.C. Cir. 2019) (plaintiff unions had several "administrative options" for challenging executive orders and were not foreclosed from meaningful review); *Am. Fed'n of Gov't Emps. v. Sec. of Air Force*, 716 F.3d 633, 640 (D.C. Cir. 2013) (plaintiff unions had "multiple paths" to administratively challenge Air Force dress code) (cited in Opp'n at 37).

This case presents a sharp contrast. Defendants admit—twice—that the PRC is unable to provide "immediate" relief. Opp'n at 30–31 n.12, 37. Absent immediate relief, the Leave Mail Behind and Election Mail policies will continue to irreparably harm States every day, and threaten to disenfranchise voters in an election that will have consequences for decades. Defendants' empty assurance that the PRC may "eventually" afford some relief, *id.* at 30–31 n.12, is hardly "meaningful" or "adequate" in the face of this extraordinary harm.

> **b.    If *ultra vires* review were unavailable, then mandamus would be appropriate**

In the event this Court determines it lacks jurisdiction to review Defendants' *ultra vires* actions, mandamus would be appropriate. The States meet each of the three prongs for mandamus relief: (1) Defendants had a mandatory duty to seek an advisory opinion before implementing their changes, (2) their failure to do so deprived the States of their right to participate in a public hearing on the changes, and (3) if *ultra vires* review is unavailable, the States have no adequate remedy. *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997).

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Defendants' Opposition focuses almost entirely on the third prong.[10] Defendants argue that because the States could theoretically seek relief before the PRC, they are foreclosed from mandamus relief. Opp'n at 44–45. But Defendants make no effort to show that the PRC can actually provide the States with any *meaningful* relief. *See* Wright & Miller, 14 Fed. Prac. & Proc. Juris. § 3655, *Actions Against Federal Agencies and Officers* (4th ed.) ("Because equitable considerations guide the grant of mandamus relief, courts also consider whether available remedies are effective[.]"). Nor could they: there is no apparent way the PRC could make a ruling quickly enough to prevent the States' ongoing irreparable harms or sufficiently in advance of the November election for the States to avoid the irreparable harm that will ensue if Defendants' mail-delaying policies continue. As Defendants admit, the PRC *cannot* grant "immediate" relief, *supra* at 14,—and the election is now less than seven weeks away.

Defendants suggest that a remedy is not inadequate merely because it will take time. Opp'n at 45–46.[11] This misses the point. The problem is not how long

---

[10] Defendants also incorporate their merits argument, arguing that the States have not shown that Defendants had a duty to seek an advisory opinion. As discussed above, *supra* at 4–9, Defendants are wrong. And the mere fact that this Court may have to interpret Section 3661(b) to determine what duties Defendants owed does not mean the duties imposed are insufficiently clear for mandamus. *Knuckles v. Weinberger*, 511 F.2d 1221, 1222 (9th Cir. 1975).

[11] Defendants quote *Moreno v. Bureau of Citizenship & Immigration Services* for the proposition that "the time require[d] to exhaust the administrative remedy [does not] make[] it an inadequate remedy." Opp'n at 45 (quoting 185 F. App'x 688 (9th Cir. 2006)). Defendants misstate the holding of *Moreno*. What the

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

PRC review would take, but what would happen during that time. People will continue to go without needed medicine; States will face delays in delivering and receiving critical, time-sensitive mail; and a national election will be held in which millions of voters could be disenfranchised. The States are not required to spin their wheels seeking futile administrative remedies while experiencing irreparable harm. *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); *U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 515 (4th Cir. 1999); *Martinez v. Richardson*, 472 F.2d 1121, 1125 n.10 (10th Cir. 1973). In the absence of any other *adequate* remedy, mandamus is appropriate to remedy the harms caused by Defendants' "transformative" changes.

### 3. The changes unconstitutionally interfere with State authority

The States are also likely to prevail on their claim that Defendants have unconstitutionally interfered with their authority to regulate elections. *See* U.S. Const., art. I, § IV, cl. 1; U.S. Const., amend. X.

The States' constitutional argument is straightforward. The Constitution explicitly assigns to States the authority for regulating elections, including establishing the "Manner of holding Elections." U.S. Const., art. I, § IV, cl. 1; *see also* U.S. Const. art. II, § 1 (power to appoint presidential electors); U.S. Const.,

---

court actually said was that it was "unpersuaded . . . that the time required to exhaust the administrative remedy makes it an inadequate remedy" *because* "any hardship brought about by delay was in large part caused by Petitioner, who waited more than two years after his green card was confiscated to file an application for a replacement." 185 F. App'x at 689. Here, by contrast, Plaintiffs filed suit within weeks of the first news reports on Defendants' changes and have expeditiously sought relief.

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  amend. X (reserving to States powers not delegated to United States). Defendants

2  do not contest that mail-in voting is a "manner of holding Elections." *Id.* While

3  Congress may override state laws regarding the manner of holding elections for

4  members of Congress, the federal executive branch has no such authority. *Id.*

5  Unconstitutional interference by affirmative acts of the federal executive branch is

6  subject to judicial review. *See, e.g.*, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137

7  (1803). This Court would not be the first to first to recognize the viability of such

8  a cause of action. *See, e.g.*, *Colorado v. DeJoy*, No. 20-CV-2768, 2020 WL

9  5513567, at *2 (D. Colo. Sept. 14, 2020) (States are "perfectly free to . . . assert

10  their own constitutional claims . . . under the Elections Clause").

11        Fundamental to several of Defendants' arguments is the assumption "that

12  USPS has done nothing to limit States' legal authority to issue laws governing how

13  their citizens may vote." Opp'n at 50; *see also id.* at 47. But federal interference

14  need not take the form of blocking States from making laws to be impermissible,

15  and States' theoretical ability to revise their laws in response to USPS changes is

16  cold comfort where USPS has already shown a willingness to change its practices

17  shortly before an election. The Constitution does not permit the federal executive

18  branch to interfere with States' constitutional authority to regulate elections by

19  undermining procedures States have adopted. USPS cannot accomplish indirectly

20  what it is prohibited from accomplishing directly. *See Rutan v. Republican Party*,

21  497 U.S. 62, 77–78 (1990).

22        Defendants repeatedly suggest that so long as an impact on States' elections

23  can be characterized as "incidental," States have no remedy for the executive

24  branch's interference with their constitutional authority. Opp'n at 3, 23, 47, 48, *see*

25  *id.* 51–54. But changing the treatment of Election Mail is hardly "incidental," and

26  Defendants' constitutional theory is deeply problematic. Under Defendants'

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

17

1    theory, USPS could cease all delivery of mail for the two weeks leading up to
2    Election Day and avoid constitutional scrutiny because the impact on elections was
3    merely "incidental." So too could the executive branch order closure on Election
4    Day of all schools receiving federal funds that serve as polling sites, with no
5    opportunity for redress. Such interference is clearly prohibited by the Constitution.

6        Defendants significantly overstate the Supreme Court's holding in *Smiley v.*
7    *Holm*, 285 U.S. 355 (1932). Defendants suggest *Smiley* stands for the proposition
8    that the Elections Clause does nothing more than allow State legislatures to draft
9    and vote on legislation, leaving the federal executive branch free to interfere with
10   implementation of state election laws. Opp'n at 48. *Smiley* held no such thing.
11   Rather, *Smiley* held only that the laws adopted pursuant to the Elections Clause
12   must be adopted "in accordance with the method which the state has prescribed for
13   legislative enactments." 285 U.S. at 367. In *Smiley*, that meant that an election law
14   in Minnesota was subject to the governor's veto, as provided in the Minnesota
15   Constitution. *Id.* at 372–73. But no State has prescribed a method for legislative
16   enactments that involves the Postal Service.

17       Defendants' "slippery slope" arguments mischaracterize the States' legal
18   theory. The States agree that not every incidental impact on a State election law is
19   unconstitutional or even subject to heightened scrutiny. Any interference must be
20   assessed by considering its severity and weighing it against the purported
21   justifications. Mot. at 40–52; *cf. Burdick v. Takushi*, 504 U.S. 428, 434 (1992)
22   (employing similar framework in analogous context). The States do not seek to
23   "commander the federal government" or compel USPS to take some new action to
24   "accommodate any given State's election law." Opp'n at 49. Instead, the States
25   simply seek to enjoin changes that were made just months before the election and
26   that will have a material impact on the States' chosen manner of holding elections.

PLAINTIFFS' REPLY ISO                    18              ATTORNEY GENERAL OF WASHINGTON
MOTION FOR PRELIMINARY                                        Complex Litigation Division
                                                              800 Fifth Avenue, Suite 2000
INJUNCTION                                                       Seattle, WA  98104
NO. 1:20-CV-03127-SAB                                            (206) 464-7744

1    The constitutional test also includes several significant limiting principles.

2   First, actions by the federal executive branch that are neutral and involve

3   insignificant interference with the States' constitutional authority would be subject

4   at most to deferential review. Mot. at 40–51 (relying on severity of USPS's

5   interference to justify strict scrutiny); *see also Burdick*, 504 U.S. at 434 (applying,

6   in analogous context, deferential review standard where laws do not impose severe

7   burdens). Second, even significant interference with the constitutional authority of

8   States could be justified if narrowly tailored to serve a compelling governmental

9   interest. Mot. at 51–52. Third, federal actions that comply with congressional

10  directives might be entitled to more deference than those, as here, that violate

11  federal law. *See* 39 U.S.C. §3661. Finally, intent can affect the appropriate level of

12  scrutiny for this type of claim, and here, given the President's repeated falsehoods

13  attacking voting by mail and raising partisan concerns about voting by mail,

14  Defendants' intent is highly suspect. Mot. at 49–50.

15    Defendants' reliance on the principle of "federal supremacy" with respect to

16  elections ignores the plain text of the Constitution. The Elections Clause assigns

17  to *States* the authority to regulate the "Times, Places and Manner of holding

18  Elections." U.S. Const., art. I, § 4, cl. 1. Under the plain language of that provision,

19  only *Congress* may displace State laws; the executive branch has no such authority.

20  The reference to "federal supremacy" in *U.S. Term Limits, Inc. v. Thornton*, 514

21  U.S. 779, 810 (1995), refers to the premises "of petitioners' argument" in that case.

22  It at most refers to the textual grant of authority to Congress. Notably, here, the

23  House of Representatives has filed an amicus brief in support of the States

24  expressing significant concerns regarding USPS's actions. *See* Br. of the U.S.

25  House of Representatives as *Amicus Curiae*, ECF No. 57-1 at 22–23.

26

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1       Defendants also misunderstand the relevance of the right to vote. Opp'n at

2   41–56. The States primarily seek to protect their own constitutional authority to

3   choose the manner of holding elections and appointing presidential electors. This

4   is not solely or primarily a *parens patriae* action to vindicate citizens' right to vote.

5   As a result, Defendants' reliance on *Commonwealth of Massachusetts v. Mellon*,

6   262 U.S. 447, 485-86 (1923), is misplaced. *Mellon* does not preclude the States

7   from protecting their own constitutional prerogatives from federal interference.

8   *See, e.g.*, *New York v. United States*, 505 U.S. 144, 187–88 (1992); *Alfred L. Snapp*

9   *& Son, Inc. v. Puerto Rico*, *ex. rel., Barez*, 458 U.S. 592, 601 (1982); *see also*

10  *Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment*, 477 U.S. 41, 50 n.17

11  (1986).[12] Here, the States bring the present action "to vindicate their own sovereign

12  powers and rights as accorded" under the Constitution. *Oregon v. Trump*, 406 F.

13  Supp. 3d 940, 958 (D. Or. 2019), *appeal docketed*, No. 19-35843 (9th Cir. Oct. 4,

14  2019). Nor is *Mellon* nearly so broad as Defendants suggest. *Mellon* did not

15  categorically prohibit state actions—such as this one—seeking to protect quasi-

16  sovereign interests. 262 U.S. at 487. And in *Massachusetts v. EPA*, 549 U.S. 497,

17  516–21 (2007), the Supreme Court rejected the broad reading advocated by

18  Defendants, confirming that States can assert standing to protect their citizens

19  when the federal government violates federal law.

20      Here, USPS's interference with voters' ability to cast ballots is relevant to

21  the Plaintiff States' claims in two ways. First, by interfering with voters' ability to

22

---

23      [12] Additionally, the States also retain a "quasi-sovereign interest" to sue on

24  behalf of their citizens to protect the integrity of elections from interference by

25  the executive branch. *See, e.g., Colorado v. DeJoy*, No. 20-CV-2768, 2020 WL

26  5513567, at *2 (D. Colo. Sept. 14, 2020).

PLAINTIFFS' REPLY ISO                           20          ATTORNEY GENERAL OF WASHINGTON
MOTION FOR PRELIMINARY                                          Complex Litigation Division
                                                                  800 Fifth Avenue, Suite 2000
INJUNCTION                                                            Seattle, WA  98104
NO. 1:20-CV-03127-SAB                                                  (206) 464-7744

cast ballots by mail, USPS is directly interfering with the States' selected "Manner of holding Elections," U.S. Const., art. I, § IV, cl. 1—*i.e.*, holding elections by mail. Second, the degree of interference with the States' selected manner of holding elections is relevant to the level of scrutiny that courts should apply to the actions of the Federal executive branch. The fact that USPS's actions interfere with State authority by means of diminishing citizens' right to vote—and the magnitude of that interference—strongly support the application of strict scrutiny.

Defendants' attempt to distinguish cases imposing heightened scrutiny only further support the application of strict scrutiny here. Opp'n at 51. For cases challenging state election laws, the Supreme Court has adopted the *Anderson-Burdick* framework. *Burdick*, 504 U.S. 428; *Anderson v. Celebrezze*, 460 U.S. 780 (1983). This framework balances voters' right to vote and associational rights against the States' constitutional authority to regulate elections. *See Burdick*, 504 U.S. at 433. In light of the States' authority, courts typically apply a deferential standard of review to alleged interference with voters' rights. *See id.* at 433–34. Here, though, there is *no* constitutional basis for the *federal* executive branch's interference with the States' regulation of their elections. Accordingly, more exacting scrutiny will frequently be appropriate. Here, the magnitude of the interference warrants strict scrutiny. Mot. at 40–51.

*McDonald v. Board of Election Comm'r of Chicago*, 394 U.S. 802 (1969), is inapposite. There, the Court applied rational basis review to the plaintiff's equal protection claim against the state for failing to provide prisoners absentee ballots because there was "nothing in the record to indicate that the Illinois statutory scheme has an impact on appellants' ability to exercise the fundamental right to vote." *Id.* at 807. *McDonald* is inapplicable here for two key reasons. First, the record evidence here demonstrates a substantial burden on the States'

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  administration of elections, appointment of electors, and the fundamental right to

2  vote. Second, *McDonald* did not involve a State's constitutional authority to

3  regulate elections. Even if an individual voter has no constitutional right to receive

4  an absentee ballot, States have constitutional authority to authorize vote-by-mail.

5  *McDonald* does not support the application of rational basis review here.

6        Defendants do not even attempt to justify the challenged policies under the

7  heightened scrutiny. *See* Opp'n at 53–54. Strict scrutiny is the applicable standard

8  because of USPS's significant interference with States' constitutional authority.

9  Mot. at 40–51. As a result, Defendants' failure to even identify a compelling

10  interest—much less establish that its policy changes are narrowly tailored to that

11  interest—is dispositive for purposes of this motion. *See Gonzalez v. O Centro*

12  *Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429–30 (2006) ("[T]he

13  burdens at the preliminary injunction stage track the burdens at trial.").

14  **B.    Irreparable Harm Will Occur Without an Injunction**

15        Contrary to Defendants' contention, Opp'n at 56–57, Plaintiffs have

16  established by concrete facts that irreparable harm will result in the absence of a

17  preliminary injunction: both by the harms they have suffered and will suffer from

18  mail delays and by the deprivation of procedural protection.

19        Defendants attempt to dismiss all evidence presented by the Plaintiff States

20  of current and future harm—to their ability to conduct elections and count the votes

21  of their citizens, administer state benefits and programs, and more, *see* Mot. at 17–

22  24—by speculating that "COVID-related staffing delays" could have been the

23  culprit. Opp'n at 56. This flatly contradicts the Postal Service's own statement that

24  it "has so far experienced only minor operational impacts in the United States as a

25

26

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

result of the COVID-19 pandemic."[13] Moreover, the sudden and precipitous July 2020 drops in on-time delivery cannot be explained by a pandemic that had been ongoing for months previously. *See* Mot. at 8–10. And Defendants ignore DeJoy's own unequivocal acknowledgments to employees and to Congress that his "transformative changes" have had negative service impacts nationwide.[14] As noted in a recent *New York Times* report, which found on-time delivery declined noticeably in July: "Former postal officials, postal workers, and private companies that track the mail all pointed to [the "Leave Mail Behind"] policy as having a significant and almost immediate impact on the timeliness of mail delivery."[15]

Despite Defendants' claim that these delays and all resulting harms will vanish prior to the election, the States have at the very least shown a "reasonable probability" that the absence of an injunction will cause them harm. *See California v. Azar*, 911 F.3d 558, 571 (9th Cir. 2018). According to the Postal Service's own data, national service levels are still well behind performance standards, Mot. at 10, and many of the most populous cities within the States—including Seattle, Detroit, and Baltimore—lag 15% or more behind.[16] An investigation by the *Los Angeles Times* found that first-class delivery from Los Angeles as of late August

---

[13] *Service Alerts*, *supra* n.2.

[14] *Path forward* (Ex. E); Senate Testimony, supra n.3 (video at 27:10) ("Our production processing within the plants was not fully aligned with this established schedule. So we had some delays in the mail. And our recovery process in this should have been a few days and it's mounted to be a few weeks").

[15] Emily Badger et al., *Is the Mail Getting Slower? We're Tracking It*, N.Y. Times (Sept. 14, 2020), https://nyti.ms/3mgtdpT.

[16] *See* Service Performance Data (produced at USPS00002260) (Ex. GG).

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

23

was "[s]potty at best, dismal at worst," with a 75% on-time rate compared to the Postal Service's most recent 92.4% performance metric from April, May, and June 2020, and with fully half of letters sent to the San Francisco Bay Area arriving late.[17] First-class on-time performance for Michigan in early August hovered between 60–65%—approximately *25%* below on-time performance prior to the changes[18]—and as for Election Mail specifically, the Michigan Secretary of State testifies that the primary in early August experienced thousands of ballots being received after Election Day and therefore rejected. Supp. Benson Decl. ¶ 16.

Defendants' claim that the States have no interest in the ability of their own citizens to vote is incorrect. States have a sovereign interest in implementing the election systems they have chosen and thus in ensuring that voters who vote in compliance with State law have their votes counted. States are also harmed when federal agencies improperly interfere with their sovereign authority to conduct elections. *See supra* at pp. 3–4; Mot. at 25. And that is happening here. *See* Supp. Benson Decl. ¶ 16 (Michigan election officials "had to reject at least 8,700 ballots that arrived after election day," with at least 3,000 of those ballots arriving within just three days of the election—well within the estimated range of USPS delays); Merrill Decl. ¶ 18 ("numerous complaints" from voters who "timely requested mail-in ballots for [the] August primary, but whose ballots did not arrive through USPS until Election Day had passed"); Witzel-Behl Decl. ¶ 11 (state rejected

---

[17] Maria L. La Ganga & Rong-Gong Lin II, *Is first-class USPS delivery slower? Yes it is. We tested it*, L.A. Times (Sept. 15, 2020), https://lat.ms/3iza540; *Quarterly Performance for Single-Piece First Class Mail*, Quarter III, FY2020, U.S. Postal Service, https://bit.ly/3c6KHjy (Ex. HH).

[18] Service Performance Data, *supra* n.16 (Ex. GG).

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

almost double number of late-arrived August primary ballots compared with previous comparable election). Just this week, the Postal Service further harmed the States' authority to conduct elections by sending notices about the November election to all residential addresses in the United States conveying false information about mail-in voting policies of some States, including directing voters to request an absentee ballot in states where ballots are automatically mailed to all voters and providing misleading ballot-return information.[19]

Finally, the Postal Service's failure to hold the statutorily required hearing under Section 3661 has inflicted procedural injury, depriving the States of their right to raise their concerns—and the concerns of their residents—prior to implementation of the challenged policies. *See California v. Health & Human Servs.*, 281 F. Supp. 3d 806, 830 (N.D. Cal. 2017) (plaintiff states' right to give input on agency decision "does not exist in a vacuum" but is "in large part defined by what is at stake: the health of Plaintiffs' citizens and Plaintiffs' fiscal interests").

Defendants baselessly claim, ignoring all relevant case law, that "the deprivation of a procedural right, standing alone, is not . . . sufficient . . . to justify the extraordinary remedy of a mandatory injunction." Opp'n at 56. They are

---

[19] Colorado has obtained a TRO blocking further distribution in that state, and multiple Secretaries of State have sought to publicly clarify the inaccuracies. *Colorado v. DeJoy*, No. 20-cv-2768-WJM (D. Colo.), ECF No. 11 (Sept. 12, 2020) (granting TRO); ECF No. 21 (Sept. 14, 2020) (denying Defs's Mot. for Reconsideration); Marshall Cohen, *Bipartisan officials from several states rebuke USPS' inaccurate election mailers*, CNN (Sept. 14, 2020), https://cnn.it/2Rwt9UU; *Secretary of State: Registered voters in Washington do not need to request a mail-in ballot* (Sept. 11, 2020), https://bit.ly/3hzVLXU.

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1   wrong. They do not address on-point case law establishing that the denial of a

2   Section 3661 hearing is itself "sufficient irreparable injury to support interlocutory

3   injunctive relief." *Buchanan*, 375 F. Supp. at 1022. Defendants similarly fail to

4   mention, let alone attempt to distinguish, the broader body of case law establishing

5   that "[a] procedural injury may serve as a basis for a finding of irreparable harm

6   when a preliminary injunction is sought." *California v. Health & Human Servs.*,

7   281 F. Supp. 3d at 829 (plaintiff states suffered ongoing harm where "every day

8   the [agency's challenged regulations] stand is another day [the agency] may

9   enforce regulations likely promulgated in violation of the APA's notice and

10  comment provision, without [the Plaintiff States'] advance input"), *aff'd in

11  relevant part*, *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (affirming

12  district court's finding on "irreparable procedural harm" and "reaffirming that the

13  harm flowing from a procedural violation can be irreparable"); *N. Mariana Islands

14  v. United States*, 686 F. Supp. 2d 7, 17 (D.D.C. 2009) (in preliminary injunction

15  context, party "experiences actionable harm when 'depriv[ed] of a procedural

16  protection to which he is entitled"); *Save Strawberry Canyon v. Dep't of Energy*,

17  613 F. Supp.2d 1177, 1189–90 (N.D. Cal. 2009) (irreparable harm requirement

18  satisfied by claimed procedural violation of National Environmental Policy Act).[20]

19

20  ───────────────────

21       [20] Rather than address this controlling case law, Defendants rely on

22  *Summers*, 555 U.S. 488, which does not address irreparable harm. *Summers* is

23  irrelevant: there, the Court found no standing where the plaintiffs sought to

24  generally compel an agency to accept notice and comment for certain types of

25  projects, but fatally had already settled their only claim involving a *specific* project

26  that would cause them alleged harm. *Id*. at 494–96.

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

**C.     The Balance of Equities and Public Interest Favor an Injunction**

The balance of equities and the public interest weigh strongly in favor of an injunction restoring the status quo prior to Defendants' "transformative" changes.

Although Defendants claim the equities weigh in their favor because there is "no dispute" that they have the capacity to "handle the anticipated surge in Election Mail," their failure to timely deliver Election Mail in this summer's primaries in many States, together with the testimony of State election officials and former postal officials, show otherwise.[21] The former Chair of the Postal Service Board of Governors written testimony to Congress just days ago stated that "recent cutbacks in sorting capability and the forced reduction of extra delivery trips seriously threatens voters' ability to have their votes counted."[22]

In claiming the equities weigh against an injunction because the challenged operational changes "never actually occurred," Opp'n at 58, Defendants ask the Court to accept a fiction that contradicts their own repeated admissions. *See supra* at p. 3. For similar reasons, Plaintiffs' requested relief would not require this Court

---

[21] Goldway Decl. ¶¶ 10–12; Simon Decl. ¶ 13 (Minnesota Secretary of State); Benson Decl. ¶¶ 4–15 (Michigan Secretary of State); Supp. Benson Decl. ¶ 15; Griswold Decl. ¶ 25 (Colorado Secretary of State); Merrill Decl. ¶¶ 17–20 (Connecticut Secretary of State); Rock Decl. ¶¶ 24–27 (Rhode Island Director of Elections); Winters Decl. ¶¶ 10–13 (Vermont Deputy Secretary of State); Yarbrough Decl. ¶¶ 21–25 (Cook County, Illinois Clerk); Witzel-Behl Decl. ¶¶ 6–7, 10–12 (Madison, Wisconsin City Clerk); Harvey Decl. ¶¶ 5–8 (Elections Director for Frederick County, Maryland); Gough Decl. ¶¶ 21–25 (Executive Director of the Chicago Board of Election Commissioners).

[22] Fineman Testimony, *supra* n.9 (Ex. FF).

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    to determine "the propriety of the Postal Service's schedule," much less whether

2    each extra mail-carrying trip would constitute an "unreasonabl[e] restricti[on]," as

3    Defendants contend. Opp'n at 58. Instead, the injunction Plaintiffs seek would halt

4    the implementation of specific operational changes—changes the Postal Service

5    has repeatedly acknowledged—until the proper statutory procedure is followed.

6    **D.    Plaintiffs Seek an Appropriate Prohibitory Injunction**

7        **1.    A nationwide injunction is necessary for complete relief**

8        This Court has "considerable discretion in ordering an appropriate equitable

9    remedy." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir.

10   2018). And while Defendants essentially argue for "a blanket restriction on all

11   nationwide injunctions," the Ninth Circuit has already rejected that position. *Id.* at

12   1244. Rather, an injunction is appropriate "when necessary to remedy a plaintiff's

13   harm." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 855 (9th Cir. 2020).

14   Contrary to Defendants' position, "there is 'no general requirement that an

15   injunction affect only the parties in the suit.'" *Id.* at 856 (quoting *Bresgal v. Brock*,

16   843 F.2d 1163, 1169–70 (9th Cir. 1987)). Nor is the scope of injunctive relief

17   dictated by "the geographical extent of the plaintiff class." *Califano v. Yamasaki*,

18   442 U.S. 682, 702 (1979).

19       A nationwide injunction is appropriate here because it is the only means of

20   affording complete relief to the Plaintiff States and providing a meaningful

21   remedy. Defendants' own documents have shown the nationwide delays caused by

22   their actions.[23] Moreover, Defendants fail to refute the evidence that delays in one

23

24   _____

25       [23] *See Service Performance Measurement: PMG Briefing*, (Ex. F); Service

26   Performance Data, *supra* n.16 (Ex. GG).

1    State affect postal delivery in other States. *See* Mot. at 56–57. And a preliminary

2    injunction pending PRC review would provide relief from the procedural harm.

3        Other factors also support a nationwide injunction. First, courts have often

4    presumed, in cases reviewing agency action, that "the offending action should be

5    set aside in its entirety rather than only in limited geographical areas." *Innovation*

6    *Law Lab v. Wolf*, 951 F.3d 1073, 1094 (9th Cir. 2020). Second, an injunction that

7    is not nationwide in scope could create significant "administrability issues." *E. Bay*

8    *Sanctuary Covenant v. Barr*, 391 F. Supp. 3d 974, 985 (N.D. Cal. 2019), *aff'd*, 964

9    F.3d 832 (9th Cir. 2020). Defendants offer no solution for a more limited injunction

10   that accounts for mail that travels across state lines.

### 2.    Plaintiffs seek a prohibitory injunction

12       Defendants also argue that Plaintiffs' requested preliminary injunction is

13   mandatory and thus subject to a heightened burden of proof. Opp'n at 22–23. This

14   argument—based on the factually incorrect premise that no "changes" have been

15   made—is wrong. "A mandatory injunction orders a responsible party to take

16   action, while a prohibitory injunction prohibits a party from taking action and

17   preserves the status quo pending a determination of the action on the merits." *Ariz.*

18   *Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (internal

19   quotation and alteration marks removed). The "'status quo' refers to the legally

20   relevant relationship between the parties before the controversy arose." *Id.* at 1061

21   (emphasis removed).

22       Here, a preliminary injunction is necessary to preserve the status quo ante

23   and would put the parties in the same position they would be in but for the Postal

24   Service's illegal implementation prior to PRC review of the "Leave Mail Behind"

25   policy and change in treatment of Election Mail. Plaintiffs ask the Court to enjoin

26

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  Defendants from continuing the implementation of their July 2020 policy changes

2  and from deviating from their long-standing policy for treatment for Election Mail.

3  ECF No. 54-3 (Proposed Order); *see Hecox v. Little*, No. 20-CV-00184, 2020 WL

4  4760138, at *25 (D. Idaho Aug. 17, 2020) (defining the status quo as the policy

5  prior to the enactment of the challenged statute); *Al Otro Lado, Inc. v. McAleenan*,

6  423 F. Supp. 3d 848, 875 (S.D. Cal. 2019) ("When the Government seeks to revise

7  a policy, it is affirmatively changing the status quo, and any injunction ordering

8  that the new policy not take effect is a prohibitory injunction."). The injunction

9  sought is prohibitory, not mandatory.

### III.    CONCLUSION

11      Because the Postal Service's changes violate 39 U.S.C. § 3661 and the

12  Constitution and are irreparably harming States, and because the equities and

13  public interest favor the States, the Court should grant a preliminary injunction.

14      DATED this 16th day of September, 2020.

15                                  ROBERT W. FERGUSON
16                                  Attorney General

17                                  */s/ Noah Guzzo Purcell*
18                                  NOAH GUZZO PURCELL, WSBA #43492
                                    *Solicitor General*
19                                  NATHAN K. BAYS, WSBA #43025
                                    KRISTIN BENESKI, WSBA #45478
20                                  ANDREW R.W. HUGHES, WSBA #49515
                                    CRISTINA SEPE, WSBA #53609
21                                  *Assistant Attorneys General*
22                                  EMMA GRUNBERG, WSBA #54659
                                    TERA M. HEINTZ, WSBA #54921
23                                  *(application for admission forthcoming)*
                                    KARL D. SMITH, WSBA #41988
24                                  *Deputy Solicitors General*
                                    800 Fifth Avenue, Suite 2000
25                                  Seattle, WA  98104
                                    (206) 464-7744
26

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    noah.purcell@atg.wa.gov
     nathan.bays@atg.wa.gov
2    kristin.beneski@atg.wa.gov
     andrew.hughes@atg.wa.gov
3    cristina.sepe@atg.wa.gov
     emma.grunberg@atg.wa.gov
4    tera.heintz@atg.wa.gov
     karl.smith@atg.wa.gov
5        *Attorneys for Plaintiff State of Washington*
6

7    PHIL WEISER
8    Attorney General of Colorado

9    */s/ Eric R. Olson*
     _____
10   ERIC R. OLSON, CO #36414
     Solicitor General
11   Office of the Attorney General
     Colorado Department of Law
12   1300 Broadway, 10th Floor
     Denver, CO 80203
13   (720) 508 6548
     Eric.Olson@coag.gov
14       *Attorneys for Plaintiff the State of*
15       *Colorado*

16

17   WILLIAM TONG
     Attorney General
18   State of Connecticut

19   *s/ Joshua Perry*
     _____
20   JOSHUA PERRY, #439166
     Special Counsel for Civil Rights
21   Office of the Attorney General
     165 Capitol Avenue
22   Hartford, CT  06106
     (860) 808-5372
23   joshua.perry@ct.gov
24       *Attorneys for Plaintiff State of*
         *Connecticut*
25

26

PLAINTIFFS' REPLY ISO                    31
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

1

2

KWAME RAOUL
Attorney General State of Illinois

3

_s/ Christopher G. Wells_
CHRISTOPHER G. WELLS

4

(ARDC #6304265)
Chief, Public Interest Division

5

Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor

6

Chicago, IL  60601
(312) 814-1134

7

cwells@atg.state.il.us

8

    _Attorneys for Plaintiff State of Illinois_

9

10

BRIAN E. FROSH
Attorney General of Maryland

11

_s/ Jeffrey P. Dunlap_

12

JEFFREY P. DUNLAP
D. Md. #20846, Md. Bar #181210004

13

_Assistant Attorney General_

14

200 St. Paul Place
Baltimore, MD 21202

15

T: (410) 576-7906
F: (410) 576-6955

16

jdunlap@oag.state.md.us

17

    _Attorneys for Plaintiff State of Maryland_

18

19

DANA NESSEL
Michigan Attorney General

20

_s/ Christina Grossi_

21

CHRISTINA GROSSI (P67482)
Chief of Operations

22

Michigan Department of Attorney General

23

525 W. Ottawa Street
Lansing, MI 48933

24

    _Attorneys for Plaintiff State of Michigan_

25

26

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

KEITH ELLISON
Attorney General of Minnesota

*s/ Angela Behrens*
ANGELA BEHRENS, MN 0351076
Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131
(651) 757-1204 (Voice)
angela.behrens@ag.state.mn.us
    *Attorneys for Plaintiff State of Minnesota*


AARON D. FORD
Attorney General

*s/ Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
555 E. Washington Avenue, Suite 3900
Las Vegas, NV 89101
hstern@ag.nv.gov
    *Attorneys for Plaintiff State of Nevada*


HECTOR BALDERAS
Attorney General

*s/ Nicholas M. Sydow*
Nicholas M. Sydow
Civil Appellate Chief
Office of the New Mexico Attorney General
201 Third Street NW, Suite 300
Albuquerque, NM  87102
(505) 717-3571
nsydow@nmag.gov
    *Attorneys for Plaintiff State of New Mexico*

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    ELLEN F. ROSENBLUM
     Attorney General of the State of Oregon
2
3    *s/ James S. Smith*
     JAMES S. SMITH, WSBA #14761
4    MICHAEL C. KRON
     Special Counsel
5    Oregon Department of Justice
     100 SW Market Street
6    Portland, OR 97201
     Phone: (971) 673-3891
7    james.s.smith @doj.state.or.us
8    michael.c.kron@doj.state.or.us
         *Attorneys for Plaintiff State of Oregon*
9

10   PETER F. NERONHA
     Attorney General of Rhode Island
11
12   *s/ Keith Hoffmann*
     KEITH HOFFMANN, #9874
13   Special Assistant Attorney General
     Rhode Island Office of the Attorney General
14   150 South Main Street
     Providence, RI  02903
15   Tel: (401) 274-4400, Extension 1882
     Fax: (401) 222-2995
16   khoffmann@riag.ri.gov
17       *Attorneys for Plaintiff State of Rhode Island*

18
19   THOMAS J. DONOVAN, JR.
     Attorney General
20
21   *s/ Eleanor Spottswood*
     JOSHUA DIAMOND
22   Deputy Attorney General
     ELEANOR SPOTTSWOOD
23   Assistant Attorney General
     Office of the Attorney General
24   109 State Street
     Montpelier, VT 05609-1001
25   (802) 828-3178
     joshua.diamond@vermont.gov
26       *Attorneys for Plaintiff State of Vermont*

PLAINTIFFS' REPLY ISO
MOTION FOR PRELIMINARY
INJUNCTION
NO. 1:20-CV-03127-SAB

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1

2          MARK R. HERRING
           Attorney General of Virginia

3          *s/ Michelle S. Kallen*
           MICHELLE S. KALLEN, VSB #94542
4          CAROL L. LEWIS, VSB #92362
           Office of the Attorney General
5          202 North Ninth Street
           Richmond, VA  23219
6          (804) 786-7240 – Telephone
           (804) 371-0200 – Facsimile
7          mkallen@oag.state.va.us
8              *Attorneys for Plaintiff Commonwealth of*
               *Virginia*
9

10         JOSHUA L. KAUL
           *Attorney General of Wisconsin*
11

12         *s/ Colin T. Roth*
           COLIN T. ROTH, #1103985
13         *Assistant Attorney General*
           Wisconsin Department of Justice
14         P. O. Box 7857
           Madison, WI  53707-7857
15         (608) 264-6219
           rothct@doj.state.wi.us
16             *Attorneys for Plaintiff State of Wisconsin*
17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' REPLY ISO              35        ATTORNEY GENERAL OF WASHINGTON
MOTION FOR PRELIMINARY                              Complex Litigation Division
INJUNCTION                                          800 Fifth Avenue, Suite 2000
NO. 1:20-CV-03127-SAB                                  Seattle, WA  98104
                                                        (206) 464-7744

1

## DECLARATION OF SERVICE

2      I hereby declare that on this day I caused the foregoing document to be

3  electronically filed with the Clerk of the Court using the Court's CM/ECF System

4  which will serve a copy of this document upon all counsel of record.

5      DATED this 16th day of September, 2020, at Tumwater, Washington.

6

7                                          */s/ Jennifer D. Williams*
                                          JENNIFER D. WILLIAMS
8                                          Paralegal

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26