FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 17, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF ILLINOIS STATE OF MARYLAND, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, and STATE OF WISCONSIN,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America; UNITED STATES OF AMERICA; LOUIS DEJOY, in his official capacity as Postmaster General; UNITED STATES POSTAL SERVICE,<br><br>    Defendants. | No. 1:20-CV-03127-SAB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION \* 1**

Before the Court is Plaintiffs' Motion for Preliminary Injunction, ECF No. 54. A hearing on the motion was held on September 17, 2020. Plaintiffs were represented by Kristen Beneski and Noah Purcell; Defendants were represented by Joseph Borson, who appeared by videoconference. The following attorneys also participated by telephone: Andrew Hughes (Washington); Cristina Sepe (Washington); Karl Smith (Washington); Emma Grunberg (Washington); Tera Heintz (Washington); Nathan Bays (Washington); Daniel DeCecco (Colorado); Danny Rheiner (Colorodo); Joshua Perry (Connecticut); Jeffrey Dunlap (Maryland); Angela Behrens (Minnesota); Nicholas Sydow (New Mexico); Elleanor Chin (Oregon); Carol Lewis (Virginia); and Colin Roth (Wisconsin). The Court also considered the briefs of amici curiae. ECF Nos. 57-1; 63-1; 66-1; and 78.

## Background Facts

The case is a result of Defendant Postmaster General Louis DeJoy's institution of "transformative" changes that caused "immediate, lasting, and impactful changes" in the operations and culture on the United States Postal Service ("Postal Service"). These changes were set forth in a "Mandatory Stand-up Talk: All Employees, July 10, 2020" document. Bullet points identified specific examples of "transformative" changes that were being implemented immediately:

- ✓ All operations must meet our 24-hour clock commitment
- ✓ All trips will depart on time (Network, Plant and Delivery); late trips are no longer authorized or accepted
- ✓ Extra trips are no longer authorized or accepted
- ✓ There must be proper annotation in the scanner, if a Contractor Failure occurs
- ✓ All PVS/HCR drives must be notified that trips depart on time
- ✓ Function 3 must start on time and end on time and we must make scheduled DUT
- ✓ Carriers must begin on time, leave for the street on time, and return on time

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION \* 2**

- ✓ Carriers must make the final dispatch of value; no additional transportation will be authorized to dispatch mail to the Plant after the intended dispatch
- ✓ The right mail must go on the right truck – every time
- ✓ ALL EMPLOYEES have an essential role with trips departing on time

The document noted that "[o]ne aspect of these changes that may be difficult for employees is that–temporarily–we may see mail left behind or mail on the workroom floor or docks, (in P&DCs), which is not typical."

Other actions taken by DeJoy include: (1) eliminating overtime; (2) decommissioning sorting machines; (3) removing mailboxes; (4) reducing operating hours; and (5) changing how election mail is classified. Plaintiffs assert the Postal Service has indicated that it will no longer treat election mail as First Class mail regardless of the paid class of service and do so could delay the delivery of the ballots by 1-5 days.

Plaintiffs allege these changes were made for political reasons, a few months before a presidential election and in the middle of a global pandemic, with no analysis on how they would affect voters or people relying on delivery of time-critical items. Plaintiffs allege that while the removal of sorting machines is taking place across the county, the removals would particularly affect sorting capacity in states where recent presidential elections have been particularly close. Plaintiffs assert the removal of the sorting machines are diminishing and will continue to diminish the Postal Service's capacity to speedily process flat mail, such as ballots. If the states are required to pay the First Class rate, it will cost them tens of millions of dollars.

In their Complaint, Plaintiffs state that reports have confirmed that delivery has been delayed because of the new policy. "People have reported delay in receiving time-sensitive medications, businesses that rely on the mail have reported delays harming their finances, and state agencies have seen delays in delivery of

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION * 3**

important documents and benefits." ECF No. 1. Plaintiffs report that in Tennessee, trucks are leaving sorting facilities for cross-country trips completely empty as a result of the new policy not allowing a truck to remain even five minutes so it can be loaded with mail. They allege that postal workers report that the mail is piling up in their offices and that mail is backed up across the country. Plaintiffs assert the effects of the mail delays are widespread, with troubling impacts on vulnerable populations, small business, and political franchise. Medications and prescriptions provided by the Department of Veterans Affairs are taking weeks to be delivered, causing veterans to miss doses of their vital medications. Other Americans rely on the Postal Service for delivery of prescriptions, as well and the delays affect the delivery of their medications.

Plaintiffs assert the changes to the Postal Service operations threaten to disrupt the successful use of mail in balloting. States are reporting increased anxiety on the part of voters who have expressed concern that their mail-in ballots will not be delivered on time or at all. Officials in some states are concerned that voters may choose to vote in-person thereby increasing the risk of COVID-19 transmission at the voting centers.

On August 18, 2020, the day Plaintiffs filed their lawsuit, DeJoy announced the suspension of some operational changes to the Postal Service, including the nationwide removal of hundreds of mail processing and sorting machines, the removal of mail collection boxes, and the reduction in post office retail hours. The policy described above, referred to by Plaintiffs as the "Leave Mail Behind" policy, however, still remains in place. Moreover, it appears that the Postal Service will not treat election mail as First Class mail unless First Class postage is paid.

Plaintiffs assert that the delays in delivery and postmarking caused by the "Leave Mail Behind" policy and the Postal Service's decision to no longer treat Election Mail as First Class mail have already disenfranchised voters and will disenfranchise many more in November.

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION \* 4**

**Plaintiffs' Complaint**

In their Complaint, Plaintiffs are bringing eight claims. First, they are seeking a writ of mandamus under 28 U.S.C. § 1361, directing Defendants to "submit a proposal . . . to the Postal Regulatory Commission requesting an advisory opinion on the 'transformative' changes and enjoining Defendants from implementing these changes pending receipt of the requested advisory opinion."

Second, Plaintiffs also seek declaratory relief that declares Defendants' "transformative" changes unlawful and enjoined because they are *ultra vires.*

Third, Plaintiffs allege that Defendants' actions violate the States' right to prescribe "the Time, Places and Manner of holding Elections for Senators and Representatives" guaranteed by Article I, Section 4, Clause 1 of the United States Constitution.

Fourth, Plaintiffs assert Defendants' actions violate Article II, Section I of the United States Constitution and the Twelfth Amendment of the United States Constitution.

Fifth, Plaintiffs allege Defendants violated the Tenth Amendment to the U.S. Constitution because Defendants' actions—implemented well after the States established systems for voting using the Postal Service—interfere with the manner chosen by the States to elect state officers and deprive the States of their constitutional rights to regulate state elections and determine the manner in which state officers will be chosen.

Sixth, Plaintiffs assert Defendants' actions interfere with the ability of their residents to timely receive and return voter registration forms and ballots and have their vote counted, thereby burdening their residents' right to vote. Plaintiffs also maintain that Defendants' actions interfere with the States' constitutional interest in choosing the method of electing national officers that respects the constitutional right to vote.

Seventh, Plaintiffs allege Defendants' actions violate the Fifth Amendment

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION \* 5**

to the United States Constitution, which guarantees qualified voters a substantive right to participate equally with other qualified voters in the electoral process. Plaintiffs assert Defendants' actions burden the right of qualified voters in the States to cast their ballot effectively and these actions are not supported by any interest that justifies the serious burden on the right of qualified voters the equal protection secured by the Fifth Amendment.

Eighth, Plaintiffs allege Defendants' actions violate § 504 of the Rehabilitation Act because Defendants' actions impermissibly interfere with the rights of the States' residents with disabilities to be free from discrimination; impermissibly interfere with the rights of the States' residents with disabilities to receive the benefits of and participate meaningfully in the programs and services of the Postal Service; and will have a disparate impact on individuals with disabilities, severely imperiling their ability to receive critical, life-saving medications through the mail, participate in elections, and conduct other important, time-sensitive activities.

## Jurisdiction

Plaintiffs' Complaint is properly before this Court pursuant to 39 U.S.C. § 409, which provides that "[e]xcept as otherwise provided in this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service." Thus, this Court has jurisdiction to review Plaintiffs' claim that the Postal Service has violated § 3661(b).[1]

---

[1] 39 U.S.C. § 3662 does not limit this Court's jurisdiction. By its terms, § 3662 is discretionary, not mandatory. Section 3662 does not divest district courts of the broad jurisdiction granted to them under 28 U.S.C. § 1339 over "any civil action arising under any Act of Congress relating to the postal service," nor the grant of "jurisdiction over all actions brought by or against the Postal Service" in 39 U.S.C. § 409(a). Moreover, § 3662 encompasses claims that the Postal Service has failed

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION * 6**

Under 28 U.S.C. § 1361, this Court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Under 28 U.S.C. 1331, this Court has original jurisdiction over all civil actions arising under the Constitution and laws of the United States.

## Motion Standard

"A preliminary injunction is a matter of equitable discretion and is 'an extraordinary remedy that may only be awarded upon a clear showing that a plaintiff is entitled to such relief.'" *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (quoting *Winter v. N.R.D.C.*, 555 U.S. 7, 22 (2008)). "A party can obtain a preliminary injunction by showing that (1) it is 'likely to succeed on the merits,' (2) it is 'likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in [its] favor,' and (4) 'an injunction is in the public interest.'" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (alteration in original) (quoting *Winter*, 555 U.S. at 20). The Ninth Circuit uses a "sliding scale" approach in which the elements are "balanced so that a stronger showing of one element may offset a weaker showing of another." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (quotation omitted). When the government is a party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). This means that when the government is a party, the court considers the balance of equities and the public interest together. *Azar*, 911 F.3d at 575. "[B]alancing the equities is not an exact science." *Id*.

to adhere to its rate and service standards or that those standards are inadequate. That is not the case here. Instead, Plaintiffs are arguing the Postal Service's implementation of nationwide policy changes without oversight by the Postal Regulatory Commission or the public was unlawful. Such claims are properly brought under §§ 409 and 3661.

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION * 7**

(quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 609 (1952) (Frankfurter, J., concurring) ("Balancing the equities . . . is lawyers' jargon for choosing between conflicting public interests.")).

Likelihood of success on the merits is the most important factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors. *Disney*, 869 F.3d at 856 (citation omitted). A plaintiff seeking preliminary relief must "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. The analysis focuses on irreparability, "irrespective of the magnitude of the injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999). Economic harm is not normally considered irreparable. *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).

"'[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs' before the Court." *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). This is particularly true where there is no class certification. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996) ("[I]njunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification."); *Meinhold v. U.S. Dep't of Defense*, 34 F.3d 1469, 1480 (9th Cir. 1994) (district court erred in enjoining the defendant from improperly applying a regulation to all military personnel (*citing Califano*, 442 U.S. at 702)).

That being said, there is no bar against nationwide relief in the district courts or courts of appeal, even if the case was not certified as a class action, if such broad relief is necessary to give prevailing parties the relief to which they are entitled. *Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987).

//
//
//

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION \* 8**

## Analysis

Here, Plaintiffs have established a likelihood of success on the merits of their claims that the United States Postal Service and the Postmaster General violated 39 U.S.C. § 3661(b) and infringed on the States' constitutional authority to regulate elections and the people's right to vote. Plaintiffs would suffer irreparable harm absent preliminary injunctive relief, and the balance of equities and the public interest weigh in favor of a preliminary injunction.

Although not necessarily apparent on the surface, at the heart of DeJoy's and the Postal Service's actions is voter disenfranchisement. This is evident in President Trump's highly partisan words and tweets, the actual impact of the changes on primary elections that resulted in uncounted ballots, and recent attempts and lawsuits by the Republican National Committee and President Trump's campaign to stop the States' efforts to bypass the Postal Service by utilizing ballot drop boxes, as well as the timing of the changes. It is easy to conclude that the recent Postal Services' changes is an intentional effort on the part the current Administration to disrupt and challenge the legitimacy of upcoming local, state, and federal elections, especially given that 72% of the decommissioned high speed mail sorting machines that were decommissioned were located in counties where Hillary Clinton receive the most votes in 2016.

Moreover, the fact that fourteen States, members of the United States House of Representatives, members of the United States Senate, and various local and tribal governments have asked this Court to intervene to prevent the Postal Service and others from disenfranchising citizens from participating in federal, state, and local elections suggest that the Postal Service's actions are not the result of any legitimate business concerns. DeJoy's actions fly in the face of Congress's intent to insulate the management of the Postal Service from partisan politics and political influence and acknowledgement that free and fair elections depend on a reliable mail service.

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION \* 9**

  In addition, these parties have demonstrated that the recent changes implemented by DeJoy and the Postal Service have the unintended but very serious consequences of interfering with other essential government functions such as collecting fees and taxes, sending pension payments, and enforcing local ordinances, as well as interfering with the provision of critical health care services such as prescription refills, contract tracing, sexually-transmitted infection testing and opioid overdose prevention.

  Defendants take the remarkable position that nothing has changed in the Postal Service's approach to election mail from past years. This is simply not true. Statistics show there has been a drastic decrease in delivery rates. Most telling is the picture of the banner that was hung at an Oregon Postal Service facility in early September. *See* ECF No. 79. That banner includes the following phrases: "No Employee has Authorization to Hold Trucks," "ALL HCR & PVS TRIPS WILL DEPART ON TIME, NO EXCEPTIONS," "DO NOT HOLD A TRUCK * NO MORE HOLDING TRUCKS," "Make sure every single employee in our building understands * All Trips Depart on Time." *Id.* The banner reflects the "Leave Mail Behind" policy that was instituted in July 2020 and is a significant change from past practice. Moreover, the letters sent to the States regarding the Postal Service's decision to change the past practice of handling election mail sent as Marketing Mail indicate a significant change in policy and practice.

  Here, Plaintiffs have made an extensive showing of irreparable harm that is caused and will be caused by the Postal Service's "Leave Mail Behind" policy and the Postal Service's refusal to ensure that election mail will be treated as First Class mail to ensure timely delivery. Indeed, the Postal Service sent out mailers to all voters that warned that voters should take extra steps to minimize delays that presumably the Postal Service anticipates, which supports Plaintiffs' arguments there would be harm in the future. Moreover, Plaintiffs have shown actual harm with respect to recent primary elections. In this case, this significant and

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION * 10**

irreparable harm tips the balance of the scale in such a manner that Plaintiffs need not make a strong showing of substantial likelihood of success on the merits.

Even so, Plaintiffs have made a strong showing of substantial likelihood of success on the merits. The Postal Service is required under § 3661(b) to present such sweeping nationwide changes to the Postal Regulatory Commission prior to implementing such changes, and the failure to do so suggests that the Postal Service acted *ultra vires*. Plaintiffs have made a strong showing that the Postal Service's actions have infringed on the States' constitutional rights to appoint presidential electors and set the time, manner, and place of elections. Plaintiffs have made a strong showing that the recent changes are the result of an effort by the current Administration to use the Postal Service as a tool in partisan politics, which violates the spirit and purpose of the Postal Reorganization Act and the Postal Accountability and Enhancement Act.

Finally, Defendants' burden in complying with the Court's preliminary injunction is negligible.

The Court finds that a nationwide injunction is appropriate in this case. Indeed, if there ever were a mandate for the need of a nationwide injunction, it is this case. It is easy to envision situations where the mail needs to cross state lines, for example, residents who are residing out of state and want to send in an absentee ballot, medications being sent from other states, as well as small businesses who send their products to customers who live in other states. A nationwide injunction is necessary to give Plaintiffs the relief to which they are entitled.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Preliminary Injunction, ECF No. 54, is **GRANTED**.

2. The USPS Defendants, and all their respective officers, agents, servants, employees and attorneys, and persons in active concert or participation with them are hereby **ENJOINED** from the following until the Court resolves the

ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION * 11

merits of this case:

    a.    continued implementation or enforcement of policy changes announced in July 2020 that have slowed mail delivery, including:

        i.    instructing mail carriers to leave mail behind for processing or delivery at a later date;

        ii.    requiring mail carriers or delivery trucks to leave at set times regardless of whether the mail is actually ready;

        iii.    prohibiting or unreasonably restricting return trips to distribution centers, if necessary, to complete timely mail delivery; and

        iv.    taking any actions to implement or enforce the operational changes outlined in the USPS's "Mandatory Stand-Up Talk: All Employees" dated July 10, 2020;

    b.    deviating from the USPS's long-standing policy of treating election mail in accordance with First Class Mail delivery standards, regardless of the paid class;

    c.    taking any actions in violation of the commitments made in the "Postmaster General Louis DeJoy Statement," dated August 18, 2020, such as removal or decommissioning of any mail sorting machines, reducing hours at post offices, or closing mail processing facilities; and

    d.    implementing or enforcing any "change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis," absent a duly issued advisory opinion of the Postal Regulatory Commission, 39 U.S.C. § 3661(b).

    3.    If any post office, distribution center, or other postal facility will be unable to process election mail for the November 2020 election in accordance with First Class delivery standards because of the Postal Service's recent removal and decommissioning of equipment, such equipment will be replaced, reassembled, or reconnected to ensure that the Postal Service can comply with its prior policy of

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION \* 12**

delivering election mail in accordance with First Class delivery standards, and that if any post office or distribution center has requested, or in the future requests, to reconnect or replace any decommissioned or removed sorting machine(s), any such request must be presented to this Court within three days of this Order or within three days of the date of the request, whichever is later, unless the Postal Service has already approved the request. If the Postal Service has denied the request or has not responded, the Court will determine whether granting the request is likely necessary to ensure that election mail is processed according to First Class delivery standards or otherwise to protect the constitutional right to vote, and if the Court so finds, it shall order that the request be approved by the USPS Defendants.

4. The USPS Defendants shall notify their officers, agents, representatives, servants, employees, attorneys, and all persons in active concert or participation with them of the requirements herein.

5. The Court deems no security bond is required under Federal Rule of Civil Procedure 65(c).

6. This injunction shall remain in effect until a final judgment is entered or until further order of the Court.

**IT IS SO ORDERED**. The Clerk of Court is directed to enter this Order and forward copies to counsel.

**DATED** this 17th day of September 2020.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION * 13**