JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
ERIC R. WOMACK
Assistant Director, Federal Programs Branch
JOSEPH E. BORSON (Va. Bar No. 85519)
KUNTAL CHOLERA
ALEXIS ECHOLS
DENA M. ROTH
Trial Attorney, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 514-1944
joseph.borson@usdoj.gov
Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

# AT YAKIMA

| | |
|---|---|
| STATE OF WASHINGTON, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF MICHGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, and STATE OF WISCONSIN,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America; UNITED STATES OF AMERICA; LOUIS DEJOY, in his official capacity as Postmaster General; UNITED STATES POSTAL SERVICE,<br><br>Defendants. | NO. 1:20-cv-03127-SAB<br><br><br>DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION<br><br>NOTING DATE: October 2, 2020 Without Oral Argument |

---

1

## **<u>INTRODUCTION</u>**

2        On September 17, 2020, this Court entered a Preliminary Injunction enjoining

3   the Postal Service from taking certain actions, including, *inter alia*, (1) "continued

4   implementation or enforcement of policy changes announced in July 2020 that have

5   slowed mail delivery," and (2) "deviating from the USPS's long-standing policy of

6   treating election mail in accordance with First Class Mail delivery standards,

7   regardless of the paid class."  Prelim. Inj. Order ("PI Order"), at 12, ECF No. 81.  On

8   Monday, September 21, 2020, the Postal Service put in place detailed operational

9   guidance regarding how to comply with this Court's injunction.  *See* Clarifying

10  Operational Instructions (Sept. 21, 2020) ("Instructions") [attached hereto as Ex. A.].

11       In issuing these Instructions, Defendants have endeavored to ensure that the

12  Court's orders are faithfully translated into specific and precise operational

13  instructions.  Defendants have issued the Instructions in the interests of immediately

14  implementing the Court's injunction because it takes its legal obligations seriously.

15       However, a broad reading of the Court's injunction would impose serious harm

16  on the Postal Service and its ability to deliver the mail, resulting in delays that would

17  be contrary to the goals that Plaintiffs expressly seek to obtain through this litigation.

18  Accordingly, Defendants seek clarification from this Court on a limited number of

19  issues covered by the order.  These include: (1) the circumstances in which the Postal

20  Service is required to delay transportation of certain pieces of mail if such a delay

21  would result in an overall degradation of the Postal Service's timely mail delivery

22  operations , (2) whether Election Mail sent as Marketing Mail must, for the first time,

23  be sent via plane, which would constitute a major change that would seriously disrupt

24  the processing of the mail and may not, in fact, be possible, and (3) the circumstances

25  under which the Postal Service is required to bring mail processing equipment back

26  into service.  Absent clarification on these issues, in order to ensure that the Postal

27  Service is in compliance with the injunction and can effectively carry out its mission,

28  Defendants would need to consider seeking a stay of those obligations pending appeal

to the Ninth Circuit.  Defendants therefore seek this limited clarification in order to ensure that it is in full compliance with the order of this Court, as well as to prevent any unintended consequences that could result from a broader reading of this Court's order.

Counsel for the Defendants have conferred with Counsel for the Plaintiffs, who represent that they take no position on this motion at this time.

## POSTAL SERVICE INSTRUCTIONS

The Court entered its preliminary injunction at the end of the day on September 17, 2020, ECF No. 81.  By the next day, the Postal Service had notified senior managers about the issuance of the injunction, as required by the Court's order.  The Postal Service then worked over the weekend to develop guidance that would, among other things, implement the order of this Court and clarify its policies on other related issues.  On September 21, 2020, the Postal Service issued Instructions detailing how its employees were to comply with the injunction.  The requirements of the injunction and the associated relevant portions of the Postal Service's Instructions are detailed as follows:

| Preliminary Injunction, ECF No. 81 | USPS Instructions, Ex. A. |
| --- | --- |
| *Subject of the motion for clarification | |
| *Late and Extra Trips** | |
| USPS is enjoined from "[c]ontinued implementation or enforcement of policy changes announced in July 2020 that have slowed mail delivery, including: (i) instructing mail carriers to leave mail behind for processing or delivery at a later date; | (1) "The Postmaster General has not banned the use of late or extra trips, when operationally required, extra or late trips are permitted," (2) mail "should not" be left behind; and (3) "[T]ransportation, in the form of late or extra trips that are reasonably |

DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION

| | |
|---|---|
| (ii) requiring mail carriers or delivery trucks to leave at set times regardless of whether the mail is actually ready; (iii) prohibiting or unreasonably restricting return trips to distribution centers, if necessary, to complete timely mail delivery; and | necessary to compete timely mail delivery, is not to be unreasonably restricted or prohibited.  Managers are authorized to use their best business judgment to meet [USPS] service commitments." Instructions ¶ 5. |
| (iv) taking any actions to implement or enforce the operational changes outlined in the USPS's 'Mandatory Stand-Up Talk: All Employees" dated July 10, 2020.'"  PI Order ¶ 2(a)."[1] | The Instructions "supersede any previous guidance provided on these specific topics that could be seen as conflicting with these Instructions, whether from Headquarters or the field," Instructions at 1, *i.e.*, the Stand-Up Talk.  Furthermore, Instructions clarified that late and extra trips were not prohibited.  Instructions ¶ 5. |
| *Mail Processing** | |
| USPS is directed that "[i]f any post office, distribution center, or other postal facility will be unable to process election mail for the November 2020 election in accordance with First Class | As of September 18, 2020, Headquarters have approved all requests to reconnect machines directed to the Headquarters Director of Processing Operations and has |

---

[1] A copy of this Stand-Up Talk – which does, and did, not represent official USPS policy, *see* Supp. Cintron Decl. ¶ 4, ECF No. 77-1 – is available at:

https://federalnewsnetwork.com/wp-content/uploads/2020/07/071020-stand-up-talk.pdf [hereinafter "SUT"].

DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION

delivery standards because of the Postal Service's recent removal and decommissioning of equipment, such equipment will be replaced, reassembled, or reconnected to ensure that the Postal Service can comply with its prior policy of delivering election mail in accordance with First Class delivery standards, and that if any post office or distribution center has requested, or in the future requests, to reconnect or replace any decommissioned or removed sorting machine(s), any such request must be presented to this Court within three days of this Order or within three days of the date of the request, whichever is later, unless the Postal Service has already approved the request. If the Postal Service has denied the request or has not responded, the Court will determine whether granting the request is likely necessary to ensure that election mail is processed according to First Class delivery standards or otherwise to protect the constitutional right to vote, and if the Court so finds,

provided Regional Vice Presidents with authority to reconnect machines where doing so is necessary, i.e., if it is determined that it is necessary to add processing capacity to fulfill [USPS] service commitments with regard to Election Mail, available processing equipment will be returned to service.

Any requests to reconnect a sorting machine reduced since July 2020, because it is believed that the machine is necessary to ensure the timely processing and delivery of Election Mail should be made by the relevant installation head to the relevant Regional Vice President, and such request will be processed within three days.  Instructions ¶ 6.

- 4 -

| | |
|---|---|
| it shall order that the request be approved by the USPS Defendants. PI Order ¶ 3. | |
| **_Election Mail*_** | |
| USPS is enjoined from "[d]eviating from the USPS's long-standing policy of treating election mail in accordance with First Class Mail delivery standards, regardless of the paid class." PI Order ¶ 2(b). | The Postal Service will "prioritize Election Mail that is entered as Marketing Mail regardless of the paid class." This includes:<br>• Using standardized log sheets to track Election Mail through processing.<br>• Conducing daily "all clears" to ensure that all Election Mail is accounted for in the system and mail scheduled or "committed" to go out is processed accordingly.<br>• Advancing Election Mail entered as Marketing Mail ahead of all other Marketing Mail and processed expeditiously to the extent feasible so that it is generally delivered in line with the First-Class Mail Delivery standards.<br>• Expanding processing windows on letter and flat sorting equipment to ensure that all |

- 5 -

| | |
|---|---|
| | Election Mail received prior to the First-Class Mail Critical Entry Time is processed the same day.<br>• Prioritizing Election Mail when loading trucks. Instructions ¶ 7. |
| ***The Postmaster General's Commitments*** | |
| USPS is enjoined from taking any actions in violation of the commitments made in the "Postmaster General Louis DeJoy Statement," dated August 18, 2020, such as removal or decommissioning of any mail sorting machines, reducing hours at post offices, or closing mail processing facilities.  PI Order. ¶ 2(c). | ***Mail Sorting Machines and Collection Boxes***<br>Mail processing equipment and blue collection boxes will not be removed until after the November 2020 elections (except where collection boxes are damaged or temporarily removed for public safety).  *See* Instruction ¶¶ 4, 6.<br>***Retail Hours***<br>Retail hours will not be adjusted prior to the November 2020 elections, absent temporary changes due to unforeseen circumstances beyond the Postal Service's control, such as natural disasters. Instructions ¶ 3.<br>***Mail Processing Facilities***<br>No mail processing facilities will be closed or consolidated until after the November 2020 elections. Instruction ¶ 6.  The Postal Service has suspended all removal of letter and flat sorting |

DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION

| | machines until after the November 2020 elections. (*Id.*) |
|---|---|
| | ***Overtime*** |
| | Postal Service Headquarters has not imposed, and will not impose, any nationwide changes of any kind that would ban or newly restrict overtime prior to Election Day.  Overtime use has not been banned, nor have any caps been placed on overtime hours.  Front-line supervisors and managers will continue to schedule employees' work hours and oversee employee overtime, including planning for any needed prescheduled overtime, directing unscheduled overtime, and approving employee requests for overtime work based on the workload.  (Instruction ¶ 1). |
| ***Nationwide Changes in Service*** | |
| Implementing or enforcing any "change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis," absent a duly issued advisory opinion of the Postal Regulatory | "Under the applicable law, the Postal Service cannot make changes to the nature of Postal Services without first seeking an advisory opinion from the Postal Regulatory Commission.  Consistent with the order of the federal district court referenced above, the |

DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION

| | |
|---|---|
| Commission, 39 U.S.C. § 3661(b). PI Order ¶ 2(d). | Postal Service will not make any changes to our retail, delivery or processing operations, that will generally affect service on a nationwide, or substantially nationwide, basis, prior to the upcoming national election." Instructions ¶ 8. |

In issuing the Instructions, the Postal Service recognized that certain aspects may require clarification. *See* Instructions ¶ 8 (discussing Election Mail). The Postal Service intends to provide additional guidance as necessary to carry out the Instructions to ensure that it is in full compliance with this Court's order.

## STANDARD OF REVIEW

A preliminary injunction order must "state its terms specifically," and "describe in detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). To ensure compliance with Rule 65(d)(1), a district court may clarify the scope of an injunction. *Paramount Pictures Corp. v. Carol Publ'g Group, Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945)). By clarifying the scope of a previously issued preliminary injunction, a court "add[s] certainty to an implicated party's effort to comply with the order and provide[s] fair warning as to what future conduct may be found contemptuous." *See N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984); *see also Robinson v. Delicious Vinyl Records Inc.*, No. CV134111CASPLAX, 2013 WL 12119735, at *1 (C.D. Cal. Sept. 24, 2013).

## ANALYSIS

The Postal Service has strived to ensure compliance with the Court's order in the above instructions. Nonetheless, Defendants have identified a limited set of

1    circumstances where, if construed as required by the Court's order, compliance would
2    either be impossible, or may result in material delays in the mail.    Therefore,
3    Defendants make the following requests for clarification to ensure that their
4    interpretation is consistent with the Court's intent.

5        *First*, the Court enjoined the "continued implementation or enforcement of
6    policy changes announced in July 2020 that have slowed mail delivery."  PI Order ¶
7    2(a).  Specifically, the Court enjoined the Postal Service from instructing mail carriers
8    to leave mail behind, requiring postal employees to leave at set times regardless of
9    whether the mail is actually ready; prohibiting or unreasonably restricting return trips
10   to distribution centers; or enforcing operational changes established in the July 10,
11   2020 Stand-Up Talk.  *Id.* ¶ 2(a).

12        The Postal Service understands this provision of the Order to enjoin
13   prohibitions on late or extra trips, either by individual mail carriers, or by trucks,
14   particularly if that would require mail to be left behind.  In light of this requirement,
15   USPS has clarified that "transportation, in the form of late or extra trips that are
16   reasonably necessary to complete timely mail delivery, is not to be unreasonably
17   restricted or prohibited.  Managers are authorized to use their best business judgment
18   to meet [the Postal Service's] service commitments."  Instructions ¶ 5.  The Postal
19   Service further instructed that mail "should not" be left behind.  *Id.*

20        The Postal Service believes that this instruction is in accordance with this
21   Court's intention in the order to prohibit any ban on late or extra trips that may
22   negatively impact mail service.  However, if the Court's order is interpreted to
23   prohibit any trips where mail is left behind, then there may be a situation where
24   waiting for a small amount of mail will cause the delay of a greater volume of mail,
25   resulting in an overall delay in the delivery of mail.  *See, e.g.*, PI Order ¶ 2(a)(i)
26   (prohibiting "instructing mail carriers to leave mail behind for processing or delivery
27   at a later date"); *id.* ¶ 2(a)(ii) (prohibiting "requiring mail carriers or delivery trucks
28   to leave at set times regardless of whether the mail is actually ready").    This

- 9 -
DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

operational scenario is not hypothetical.    As discussed in the attached Second Supplemental Cintron Declaration:

> During the course of the seven-day-a-week nationwide transportation operations, circumstances arise where some late trips and extra trips are not appropriate, and thus some mail may be left behind, but this is necessary to avoid the delay of a greater volume of mail.  Every day, local managers in both delivery and processing operations must evaluate whether, under the existing circumstances, a truck should leave on time or be delayed and whether extra trips should be utilized.

2d Supp. Cintron Dec. ¶ 12.  Under certain circumstances – such as where trucks are held at a processing and distribution in order to wait for additional mail, such delay will cause them to "arrive to an air transportation center too late to meet the scheduled departure time of the flight," *id.* ¶ 14, and thus would delay *all* of the mail on that truck.  While extra trips can often remedy at least some of this delay, there are circumstances "when extra trips are not feasible," such as where contractors have no trucks available.  *Id.* ¶ 17.  Managers therefore require a certain amount of discretion to make operational decisions about when to permit late and extra trips in order to maximize timely mail transportation and delivery operations.  *See id.* ¶ 16; *see also* Instructions ¶ 5.

Defendants respectfully request that this Court clarify that its Order does not require this result in this circumstance, *i.e.*, it does not require the Postal Service to delay a trip in order to prevent a small amount of mail to be delayed if doing so would cause a larger amount of mail to be delayed from a subsequent missed connection.  More specifically, Defendants request that this Court modify paragraph 2(a) of its Order to clarify that "the Postal Service is not required to delay a trip when the impact of the delay will be an overall degradation in service, *e.g.*, in order to prevent a small amount of mail from being delayed if doing so would cause a larger amount of mail to be delayed."

DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION

*Second*, the Postal Service requests two clarifications regarding its treatment of Election Mail.  As an initial note, the Postal Service throughout this litigation has understood the term "Election Mail"—which is not defined in the Order—as "any item mailed to or from authorized election officials that enables citizens to participate in the voting process," including ballots, voter registration forms, ballot applications, polling place notifications, and similar materials.  Instructions ¶ 7.  This definition is consistent with other Postal Service uses of the term, including by the Postal Service's Office of the Inspector General.[2]  It is also consistent with the recent injunction issued by the Southern District of New York.  *See Jones v. USPS*, No. 20-cv-6516-VM, ECF No. 49, at 17 n.8 (S.D.N.Y. Sept. 21, 2020).  This definition would exclude Political Mail that is sent by candidates to support their election—mail that is unrelated to the injuries alleged by Plaintiffs and the claims asserted in their Complaint.

With respect to "Election Mail," as opposed to "Political Mail," the Postal Service has indicated that it will "prioritize Election Mail that is entered as Marketing Mail regardless of the paid class," as long as the Election Mail is identified as such to the Postal Service (such as by the use of the official Election Mail logo or other Postal Service visibility tools).  Instructions ¶ 7.  In other words, it will prioritize Election Mail entered as Marketing Mail as long as there is an indication that the mail *is* Election Mail.

Notwithstanding this Court's direction that the Postal Service be enjoined from "deviating from [its] long-standing policy," PI Order ¶ 2(b), there is a construction of the Order that would require the Service, for the first time, to change its policies to transport Election Mail entered as Marketing Mail by air.  Defendants seek

---

[2] U.S. Postal Service Office of the Inspector General, Audit Report: Processing Readiness of Election and Political Mail During the 2020 General Elections, Rpt. No. 20-225-R20 (Aug. 31, 2020, https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-225-R20.pdf

DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION

1   clarification that the Court does not require this result, which is not possible for

2   technical reasons without seriously disrupting the Postal Service's operations.

3       As discussed above and in the attached Instructions, the Postal Service has

4   numerous steps in place to process Election Mail "expeditiously so that it is generally

5   delivered in line with the First-Class Mail delivery standards." *Id.* The Postal Service

6   clarifies, however, that "[i]n limited circumstances, specifically when mail is to be

7   transported across the county, it is not operationally possible for Election Mail entered

8   as Marketing Mail to be delivered as quickly as First-Class Mail . . . due to certain

9   inherent differences between the products and the inability of mail processing

10  machines to distinguish between Election Mail entered as Marketing Mail and other

11  Marketing Mail." Supp. Glass Dec. ¶ 5. As "has been historically true and has not

12  changed," "a portion of First-Class Mail travels by air transportation," while

13  "Marketing Mail is transported strictly on a surface network," *id.*, and therefore

14  "Election Mail sent via Marketing Mail is not transported by air." *Id*. ¶ 6. "This is

15  no different than in past elections and does not reflect any change in the Postal

16  Service's policies or practices this year." *Id.*

17      There are technical reasons that prevent the Postal Service from being able to

18  modify this policy, at least at the scale required by the Court's order. Based on their

19  programing, "[w]hen Postal Service scanning machines sort mail, mail labeled as

20  Marketing Mail is sorted for ground transportation." *Id.* ¶ 7. Because the scanning

21  machines "cannot distinguish between different kinds of Marketing Mail," "there is

22  no way to instruct the machines to [specifically] sort Election Mail that is sent as

23  Marketing Mail for air transportation." *Id.*

24      The Postal Service has considered several workarounds, but none are feasible,

25  at least in the short time between now and the Election. First, it could send *all*

26  Marketing Mail for air transportation, but this "is likely to have a negative impact on

27  the air transportation network," *id.*, which has already suffered a "substantial

28  reduction" due to COVID-19, *id* ¶ 9. Second, it could instruct employees to manually

- 12 -

DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION

1  re-label all the trays of Marketing Mail that it identifies as containing Election Mail.
2  *Id.* ¶ 8.  Large-scale relabeling is not practicable for at least four reasons.  First,
3  manual re-labeling would consume significant employee time, diverting employees
4  from other critical mail-sortation tasks (and thus delay that mail).  *Id.*; *see also id*
5  ("[t]here is no way to do a mass relabeling or reprinting without manually replacing
6  each label with a manually printed label.")  Second, manual re-labeling would also
7  require that the mail be held for the labor-intensive manual review, which delays all
8  mail, including Election Mail.  Because the Postal Service relies on machines to
9  process mail, it is not staffed at levels to sort all Election Mail entered as Marketing
10  Mail by hand.  *Id.* Third, large-scale relabeling could also tax or exceed the Postal
11  Service's air capacity.  "Due to COVID-19, there has been a substantial reduction in
12  commercial flights and flights by other air transportation contractors, which the Postal
13  Service uses to move mail, which limits the Postal Service's capacity to move mail
14  by air." *Id.* ¶ 9.  Finally, manual re-labeling would override the initial tray-level, and
15  would remove the ability of election officials to track ballots.  *Id.* ¶ 10.  While the
16  Postal Service may be able to implement long-term solutions to distinguish Election
17  Mail sent as Marketing Mail from other Marketing Mail, it is not possible to
18  implement those solutions this close to an election, especially as states have begun
19  printing and mailing ballots.  *Id.* ¶ 11.

20      The Postal Service therefore respectfully requests clarification that—consistent
21  with its long-standing practice—Election Mail sent as Marketing Mail need not be
22  sent by air if such practices are not operationally possible.  Specifically, the Postal
23  Service requests that the Court amend paragraph 2(c) of its Order to clarify that "The
24  Postal Service is not required to ship Election Mail sent as Marketing Mail by air."

25      To be clear, this practical barrier would only affect Election Mail entered as
26  Marketing Mail that is traveling long distances.  "Because First-Class Mail sent within
27  shorter distances does not generally travel by air, the practical barrier identified above
28  should not prevent Election Mail sent within shorter distances from receiving a

- 13 -

delivery speed equal to First-Class Mail even when it is entered as Marketing Mail." *Id.* ¶ 12. Moreover, the Postal Service will employ special individualized measures to deliver individual ballots mailed close to elections, which may include manually separating them and moving them by air. And, as discussed above, the Postal Service has, and will continue to have numerous policies in place to prioritize Election Mail so that "it is generally delivered in line with the First-Class Mail delivery standards." Instructions ¶ 7. Indeed, the Postal Service is "expanding processing windows on letter and flat sorting equipment to ensure that all Election Mail received prior to the First-Class Mail Critical Entry Time[3] is processed that same day." *Id.* [4]

*Finally*, the Postal Service will return "available processing equipment" to service "if it is determined that it is necessary to add processing capacity to fulfil [its] service commitments with regard to Election Mail." Instructions ¶ 6. The Postal

------------------------------

[3] "By ensuring that Election Mail entered as Marketing Mail is processed with the same Critical Entry Time as First-Class Mail, the Postal Service can ensure that Election Mail entered as Marketing Mail at its final destinating facility [i.e., the center that last processes the mail before it is sent to delivery units] is transported to delivery units and delivered locally by letter carriers with the same speed as First-Class Mail." Supp. Glass Dec. ¶ 4.

[4] There are other distinctions between First-Class Mail and Marketing Mail that are not related to delivery speed, including the fact that First-Class Mail is sealed from inspection. *See* Supp. Glass Dec. ¶¶ 13-15. Defendants do not understand this Court's injunction, which discusses "First Class Mail Delivery Standards," to reach these features. That is consistent with Plaintiffs' Counsel's statement that "we're not asking for a literal upgrade to first-class mail status. We're asking for treatment of election mail in accordance with the first-class mail timelines, delivery timelines, and the on-time percentage." Mot. Hr'g for Prelim. Inj. (Sept. 17, 2020), 82: 9-12.

DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION

1   Service seeks clarification that it is appropriate to define "available" to refer to
2   machines that were disconnected, but not dismantled.  Dismantled machines "are
3   generally dissembled for their usable parts, with such parts being removed to maintain
4   or enhance other machines."  *Id.*  It is therefore not possible to return such machines
5   to service.  The Postal Service clarifies, however, that it has "more than sufficient
6   capacity to process current and anticipated mail volumes with the existing machine
7   fleet," and therefore does not expect the availability of machines to be an issue.  *Id.*

8                                          **CONCLUSION**

9           For the aforementioned reasons, Defendants request that this Court clarify the
10   September 17, 2020 Preliminary Injunction Order as discussed above.

11

12   Dated:  September 23, 2020          Respectfully submitted,

13                                       JEFFREY BOSSERT CLARK
14                                       Acting Assistant Attorney General

                                         ERIC R. WOMACK
15                                       Assistant Director, Federal Programs Branch

16                                       */s/ Joseph E. Borson*
                                         JOSEPH E. BORSON (Va. Bar No. 85519)
17                                       KUNTAL CHOLERA
                                         ALEXIS ECHOLS
18                                       DENA M. ROTH
                                         Trial Attorneys
19                                       U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
20                                       1100 L. Street, NW
                                         Washington D.C. 20005
21                                       (202) 514-1944
                                         Joseph.Borson@usdoj.gov
22

23

24

25

26

27

28

                                      - 15 -
──────────────────────────────────────────────────────
DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 23d day of September, I electronically filed the foregoing Motion for Clarification with the Clerk by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  September 23, 2020

By:  */s/ Joseph E. Borson*
Joseph E. Borson

Counsel for Defendants

- 16 -
DEFENDANTS' MOTION TO CLARIFY THE PRELIMINARY INJUNCTION