# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

# AT YAKIMA

| | |
|---|---|
| STATE OF WASHINGTON, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF ILLINOIS, STATE OF MARYLAND, STATE OF MICHGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW MEXICO, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, and STATE OF WISCONSIN,<br><br>      Plaintiffs,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America; UNITED STATES OF AMERICA; LOUIS DEJOY, in his official capacity as Postmaster General; UNITED STATES POSTAL SERVICE,<br><br>      Defendants. | NO. 1:20-cv-03127-SAB<br><br>SECOND SUPPLEMENTAL DECLARATION OF ROBERT CINTRON |

I, Robert Cintron, under penalty of perjury and in lieu of affidavit as permitted by 28 U.S.C. § 1746, state as follows:

1. I am familiar with the Order Granting Plaintiff's Motion for Preliminary Injunction, issued by the U.S. District Court for the Eastern District of Washington on September 17, 2020.  I submit this declaration to explain Postal Service operations relating to transportation routes and the feasibility of operational changes that might be considered for implementation before the November 2020 elections.

1

2. This declaration is based on information available to me in the course of my official duties and responsibilities at the United States Postal Service ("Postal Service"), including oversight of nationwide transportation schedules and mail processing operations, and information provided to me by other Postal Service officials.

3. I am currently employed as Vice President, Logistics at Postal Service Headquarters in Washington, D.C., and have approximately 35 years' experience serving in numerous management positions in mail processing operations and/or logistics organization.

4. On September 8, 2020, I submitted a declaration in opposition to plaintiffs' motion for a preliminary injunction in the *Jones v. USPS*, No. 20-cv-6516 (S.D.N.Y.), which was subsequently submitted in this case, and on September 15, I submitted a supplemental declaration to clarify footnote 1 of that declaration.

5. On September 18, 2020, the Postal Service Chief Retail and Delivery Officer and Executive Vice President, along with the Chief Logistics and Processing Operations Officer and Executive Vice President notified all Postal Service Officers that this Court issued an Order that applies to all postal operations nationwide, with directions requiring them to distribute the notice to all executives reporting to them.

6. On September 21, 2020, the Postal Service Executive Vice Presidents issued Operational Instructions ("Instructions") to all Officers, PCES (Postal Career Executive Service), and Pay Band employees reiterating that the Postmaster General and the Postal Service's number one priority between now and Election Day is the secure and on-time delivery of the nation's Election Mail. The Officers, PCES, and Pay Band (Management and Technical Pay Band) employees were instructed to share the Instructions with all EAS (Executive and Administrative Schedule) employees.

7. The Postal Service has not and will not ban the use of late or extra trips in its transportation network. Postal Service officials have directed all postal managers that transportation, in the form of late or extra trips that are reasonably necessary to complete timely mail delivery, will not to be unreasonably restricted or prohibited. Local managers are authorized to use their best business judgment to meet our service commitments.

8. The Postal Service has authorized the use of extra and late trips as necessary and feasible to ensure that Election Mail is promptly delivered from now through the November 2020 elections.

9. The Postal Service operates 24 hours a day, 7 days a week, through an integrated network of retail and delivery functions (performed by facilities such as post offices and station branches), processing and distribution functions (performed by processing and distribution centers), and transportation functions (largely via ground and air transportation contractors). All of these functions have operating plans and transportation schedules that work together to timely deliver mail throughout the nation.

10. The Postal Service contracts with commercial airlines and other air transportation contractors. It transports mail by air, using terminal handling services that tender mail to our air contractors; and contracts with surface transfer centers that have a cross-dock operation in our surface network cargo carriers.

11. The transportation network connects the Postal Service's approximately 289 processing facilities, ground and air transportation centers (or airports), and over 31,000 retail post offices and delivery units (whose letter carriers collect and deliver

3

over 230,000 delivery routes). Ground transportation includes delivery trucks of various types and sizes, including long-haul tractor-trailers, which transport large volumes of mail along highway contract routes. The Postal Service refers to all such vehicles as "trucks." Thirteen Surface Transportation Centers serve as hubs surrounded by routes to mail processing facilities. Trucks travel from the processing facilities to the hub for transfer of mail to other trucks, including larger long-haul trucks. The Postal Service also transports mail to our commercial air carriers and to terminal handling services that tender mail to our Cargo Carriers and contracts with surface transfer centers that have a cross-dock operation in our surface network.

12. During the course of the seven-day-a-week nationwide transportation operations, circumstances arise where some late trips and extra trips are not appropriate, and thus some mail may be left behind, but this is necessary to avoid the delay of a greater volume of mail. Every day, local managers in both delivery and processing operations must evaluate whether, under the existing circumstances, a truck should leave on time or be delayed and whether extra trips should be utilized.

13. For numerous reasons that cannot be predicted (e.g., trucking contractor failure, accidents, extreme weather conditions), a truck may arrive at a delivery unit or a processing facility late or not at all. Local managers have discretion to hold the trip where necessary to ensure that all mail is loaded, but, if held too long, it may arrive too late at its next destination to ensure timely delivery. Occasionally, the best decision is to direct the truck to leave, even where a small volume of mail is left behind to ensure that a greater volume of mail is timely delivered.

14. For example, a truck at a processing and distribution center held too long past its scheduled departure time may arrive to an air transportation center too late to meet the scheduled departure time of the flight. Airlines and Postal Service air transport contractors have set schedules that the Postal Service must follow. In such circumstances, the local manager at the processing center may direct the truck to leave, even where a small volume of mail is left behind, to ensure that the truck does not miss the air connection and to ensure that a greater volume of mail is timely delivered.

15. In addition, a truck held too long past its scheduled departure time may reach a delivery unit past the time when letter carriers must leave the facility in order to safely and efficiently deliver mail along their routes.

16. Local managers have discretion to order extra trips when necessary due to late or delayed arrival, where a contractor fails to fulfill its contractual obligation to send a truck to a facility, or when necessary to transport a volume of mail that is greater than anticipated for particular day(s) or week(s).

17. Occasionally, circumstances arise when extra trips are not feasible. For example, when a truck is fully loaded and must leave by a specific time in order to transport the mail to an air transportation center to avoid missing an air connection, local managers may not be able to order an extra trip because the Postal Service's contractors have no trucks available that day. In addition, due to the decline in airline travel arising from COVID-19, the Postal Service's air transportation network, which uses commercial air carriers and other air transportation contractors as a part of its transportation network, has diminished capacity, as compared to the period prior to March 2020, thus limiting options for arranging alternative timely transportation of the mail.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed at Washington, DC on this 23rd day of September 2020.

_____
Robert Cintron