# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, *et al.*<br><br>  Plaintiffs,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, *et al.*,<br><br>  Defendants. | NO. 1:20-cv-03127-SAB |

### SUPPLEMENTAL DECLARATION OF ROBERT JUSTIN GLASS

I, Robert Justin Glass, under penalty of perjury and in lieu of affidavit as permitted by 28 U.S.C. § 1746, hereby declare as follows

1. In light of the preliminary injunction issued by this Court, this declaration is intended to supplement my previous declaration, which explained the measures the Postal Service takes to process and deliver Election Mail. This declaration provides information about efforts the Postal Service is undertaking to comply with the injunction and explains some operational limitations on the Postal Service's ability to comply.

**Efforts to Comply**

2. After the Court issued its order, the Postal Service prepared a detailed set of operational instructions to be distributed to all managers, who are in turn required to convey its

contents to all employees in their groups. These instructions explained that they are intended to provide guidance on compliance with the injunction, and that they supersede any conflicting guidance issued previously from either Headquarters or the field. The instructions clarify and reinforce that the Postal Service will continue its practices from past elections and are intended to dispel any misconceptions that there have been changes to policies such as overtime.

3. The instructions also make commitments that go beyond the Postal Service's historical practices. They instruct managers to expand mail processing windows sufficiently to ensure that all Election Mail receives same-day processing if it is received prior to the First-Class Mail Critical Entry Time. This has never been a Postal Service policy before and doing this will ensure that Election Mail entered as Marketing Mail typically will receive a processing speed equal to First-Class Mail, which will result in additional Election Mail sent as Marketing Mail being delivered within First-Class Mail timeframes.

4. The Critical Entry Time is a part of what determines when a mailpiece is processed and sorted and, therefore, how much time the piece spends in the processing and distribution center ("center"). Centers process mail by machine and after processing, the mail is transported either to another center in a different part of the country or to local delivery units with the mail sorted into delivery point sequence for letter carriers to deliver. More specifically, the Critical Entry Time is the time by which mail needs to be received at a center, either from a customer or another Postal Service facility, to be treated as arriving that day for processing at the center. The Critical Entry Time for destinating[1] First-Class

---

[1] Destinating mail refers to mail at the processing and distribution center that is ready to be transmitted to delivery units for carriers to deliver, as opposed to originating mail (which is mail that has just been collected on routes and needs to be processed).

Mail is 8:00 AM. If First-Class Mail is received by the Critical Entry Time at the correct destinating facility it is processed that day and transported to delivery units for delivery by letter carriers the next day. Marketing Mail normally must arrive at the destinating center by 4:00 PM to be processed and then delivered 3-4 days later, depending on the day of the week it is received (although it may sometimes be processed more quickly using excess First-Class capacity). By ensuring that Election Mail entered as Marketing Mail is processed with the same Critical Entry Time as First-Class Mail, the Postal Service can ensure that Election Mail entered as Marketing Mail at its final destinating facility is transported to delivery units and delivered locally by letter carriers with the same speed as First-Class Mail. Prior to these instructions, local managers were free to expand mail processing windows (i.e., the time that the processing machines operate) on their own initiative, and they often did so, but it was not required.

**Limitations on the Postal Service's ability to comply**

<u>Air Transportation</u>

5. One of the differences between First-Class Mail and Marketing Mail is that Marketing Mail is transported strictly on a surface network, while a portion of First-Class Mail travels by air transportation. This has been historically true and has not changed.  In limited circumstances, specifically when mail is to be transported across the country, it is not operationally possible for Election Mail entered as Marketing Mail to be transported as quickly as First-Class Mail, and therefore it is not possible to deliver such Election Mail within the same timeframe as First-Class Mail, due to certain inherent differences between the products and the inability of mail processing machines to distinguish between Election Mail entered as Marketing Mail and other Marketing Mail.  It is not

feasible and may be impossible nationwide to change the established practice of transporting Marketing Mail by surface transportation.

6. Because Marketing Mail is not transported by air, Election Mail that has to travel substantial distances will likely take longer if sent as Marketing Mail than if sent as First-Class Mail, despite efforts on the part of the Postal Service to prioritize it. For example, if a printer (retained by election officials to print election materials and to mail them) enters Election Mail under the Marketing Mail class and rate at a Postal Service facility on the West Coast to be delivered to election officials or voters on the East Coast, this mail does not travel by air (as discussed below), unlike First-Class Mail. This is no different than in past elections and does not reflect any change in the Postal Service's polices or practices this year.

7. When Postal Service scanning machines sort mail, mail labeled as Marketing Mail is sorted for ground transportation. The Postal Service does not have unique tray barcodes for Election Mail which means tray scanning machines cannot distinguish between different kinds of Marketing Mail. Because there is no unique tray barcode for Election Mail, there is no way to instruct the machines to sort Election Mail that is sent as Marketing Mail for air transportation without also sorting all other Marketing Mail for air transportation, which is likely to have a negative impact on the air transportation network.

8. The Postal Service has considered the possibility of instructing employees to manually re-label trays of Marketing Mail that they identify as containing Election Mail. This task would consume a large amount of employee time, diverting employees from other critical mail-sortation tasks. Employees would have to remove the original tray label, print a new

label, and relabel the tray. There is no way to do a mass relabeling or reprinting without manually replacing every label with a manually printed label. More importantly, this task would require that mail be held for this labor-intensive process, which would, as a result, delay the mail. The Postal Service relies on machines to process mail and is not staffed at levels necessary to sort all Election Mail trays entered as Marketing Mail by hand.

9. Large-scale relabeling also could tax or exceed the Postal Service's air transportation capacity. Due to the COVID-19 pandemic, there has been a substantial reduction in commercial flights and flights by other air transportation contractors, which the Postal Service uses to move mail, which limits the Postal Service's capacity to move mail by air.

10. Finally, because re-labeling would override the tray label, any election officials (or Mail Service Providers on behalf of election officials) using Full-Service mailings would lose the ability to track trays through the Postal network, affecting their overall mail visibility.

11. The Postal Service has considered other possible solutions, such as creating a new code for distinguishing Election Mail sent via Marketing Mail from other Marketing Mail. However, it is not realistic to implement a new solution this close to an election, especially as some states have already begun printing and mailing ballots.

12. To be clear, the preceding paragraphs concern the practical impossibility of any large-scale re-labeling of Election Mail entered as Marking Mail to enable such mail to be transported by air. Because First-Class Mail sent within shorter distances does not generally travel by air, the practical barrier identified above should not prevent Election Mail sent within shorter distances from receiving a delivery speed equal to First-Class Mail even when it is entered as Marketing Mail

First-Class Mail features

13. Delivery speed is not the only distinction between First-Class Mail and Marketing Mail. First-Class Mail has several features that Marketing Mail does not. These features include, but are not limited to, the fact that First-Class Mail is sealed against inspection, comes with automatic mail forwarding service (which may be purchased separately as an endorsement for Marketing Mail), an address correction service, a zip code completion service, and the fact that First-Class Mail is returned to sender if undeliverable (also separately purchasable for Marketing Mail). The Postal Service has never extended these benefits to Election Mail sent as Marketing Mail.

14. The majority of these features are, at least in part, controlled by the Postal Service's automated systems. As such, it would not be feasible for the Postal Service to provide these features for Election Mail sent as Marketing Mail

15. In addition, there are reasons that mail customers (here, election officials) may not want the Postal Service to apply all the additional features of First-Class Mail to their Marketing Mail Election Mail. For example, election officials may not want sensitive mail, such as ballots, to be forwarded to a new address if the original address is incorrect. They may also not want the Postal Service to make its best guess at deciphering an incomplete address.  For the above reasons, the Postal service is not applying all First-Class Mail features to Election Mail sent via Marketing Mail.

Executed at Washington, District of Columbia, on this 23rd day of September, 2020

_____
Robert Justin Glass